**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **BLUEPRINT IP SOLUTIONS, LLC,** | |
|     **Plaintiff,** | **CASE NO. 1:20-cv-20403-MGC** |
| **v.** | **PATENT CASE** |
| **BANKUNITED, INC.,** | **JURY TRIAL DEMANDED** |
|     **Defendant.** | |

**BANKUNITED, INC'S RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO**
<u>**STATE A CLAIM AND INCORPORATED MEMORANDUM OF LAW**</u>

{00325309.DOC }

## TABLE OF CONTENTS

**Page(s)**

I.  SUMMARY OF THE ARGUMENT ....................................................................5

II.  STATEMENT OF THE ISSUE...........................................................................6

III.  STATEMENT OF THE FACTS ...........................................................................7

IV.  ARGUMENT ......................................................................................................9

    A.  Legal Standard ........................................................................................9

        1.  This Case Should Be Disposed of at the Pleading Stage Through Rule 12(b)(6)...................................................................9

        2.  The Law of 35 U.S.C. § 101. ......................................................10

    B.  The Patent-in-Suit is Invalid under 35 U.S.C. § 101. ..............................11

        1.  The independent claims of the '980 Patent are patent-ineligible. ...................................................................................11

        2.  The dependent claims of the '980 Patent are not patent eligible.........................................................................................19

        3.  There are no claim construction or factual disputes preventing the Court from ruling on this issue at the Rule 12 stage............................................................................21

V.  CONCLUSION...................................................................................................22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018)....................................................................................6

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014)..................................................................................... *passim*

*Ancora Technologies, Inc. v. HTC America, Inc.*,
  --- F.3d ---, 2018 WL 6005021 (Fed. Cir. Nov. 16, 2018) ....................................16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................................9

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*,
  687 F.3d 1266 (Fed. Cir. 2012).............................................................................10, 18

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018)............................................................................21, 22

*Bilski v. Kappos*,
  561 U.S. 593 (2010)..................................................................................9, 10, 11, 12

*BSG Tech LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018).............................................................................13, 21

*buySAFE, Inc. v. Google, Inc.*,
  765 F.3d 1350 (Fed. Cir. 2014).............................................................................16, 18

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
  927 F.3d 1306 (Fed. Cir. 2019)....................................................................................6

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*,
  21 F. Supp. 3d 758 (E.D. Tex. 2014).........................................................................20

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014).............................................................................12, 18

*Core Wireless Licensing S.A.R.L. v. LG Elec., Inc.*,
  880 F.3d 1356 (Fed. Cir. 2018)..................................................................................15

*Cuvillier v. Sullivan*,
  503 F.3d 397 (5th Cir. 2007) .......................................................................................9

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011)........................................................................................11

*Data Engine Techs. LLC v. Google LLC*,
    906 F.3d 999 (Fed. Cir. 2018)..........................................................................................15

*Diamond v. Chakrabarty*,
    447 U.S. 303 (1980)..........................................................................................................10

*Diamond v. Diehr*,
    450 U.S. 175 (1981)..........................................................................................................11

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)..........................................................................15, 16, 19

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016)........................................................................................13

*Epic IP LLC v. Backblaze, Inc.*,
    No. 1:18-cv-141, 2018 WL 6107029 (D. Del. Nov. 21, 2018)............................5, 14

*Finjan, Inc. v. Blue Coat System, Inc.*,
    879 F.3d 1299 (Fed. Cir. 2018)........................................................................................13

*Fort Props., Inc. v. Am. Master Lease LLC*,
    671 F.3d 1317 (Fed. Cir. 2012)........................................................................................11

*Gottschalk v. Benson*,
    409 U.S. 63 (1972)............................................................................................................10

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012)................................................................................................10, 11

*McRO, Inc. v. Bandai Namco Games Am., Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016)........................................................................................14

*Morales v. Square, Inc.*,
    75 F. Supp. 3d. 716 (W.D. Tex. 2014), *aff'd*, 621 F. App'x 660 (Fed. Cir.
    2015), *cert. denied*, 136 S. Ct. 1461 (2016)..............................................................12

*Parker v. Flook*,
    437 U.S. 584 (1978)....................................................................................................11, 16

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*,
    No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938 (E.D. Tex. Mar. 8, 2017) ............................12

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
    855 F.3d 1322 (Fed. Cir. 2017)........................................................................................15

*SAP Am., Inc. v. InvestPic, LLC,*
  898 F.3d 1161 (Fed. Cir. 2018)..................................................................................13, 14

*Simpson v. Sanderson Farms, Inc.,*
  744 F.3d 702 (11th Cir. 2014) .............................................................................................9

*Solis-Ramirez ex rel Solis v. United States Dep't of Justice,*
  758 F.2d 1426 (11th Cir. 1985) ...........................................................................................9

*In re TLI Commc'ns LLC Patent Litigation,*
  823 F.3d 607 (Fed. Cir. 2016)............................................................................................17

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC,*
  874 F.3d 1329 (Fed. Cir. 2017)..........................................................................................14

*Ultramercial, Inc. v. Hulu, LLC,*
  772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring)......................................................10

**Statutes**

35 U.S.C. § 101...................................................................................................... *passim*

**Other Authorities**

Federal Rules of Civil Procedure Rule 12(b)(6) ................................................6, 9, 11

Rule 12 ....................................................................................................................6, 21

U.S. Patent No. 8,089,980.................................................................................... *passim*

## I.    SUMMARY OF THE ARGUMENT

The idea of failover—i.e., switching to a backup device when a main device fails—is an abstract concept ineligible for patent protection. The claims of U.S. Patent No. 8,089,980 that Blueprint IP asserts in this case against BankUnited are directed to this abstract concept and do not claim any inventive concept sufficient to confer patent eligibility on the claimed abstract idea.

Providing redundancy for networking devices is a well-known networking concept. From the outset of computer networking, network operators deployed a backup device that would take over operations in the event that a main device fails. This concept is known in the computing world as "failover." It could be accomplished manually by a human operator, or automatically by detecting some adverse behavior from the main device. The '980 Patent suggests adding a monitoring device that communicates with the main device using "standard IP protocols" to detect the main device's failure, and then switching over operations to the backup device. This idea is no different than a human operator monitoring the status of the main device, and if he detects a failure, switching over to the backup device. In essence, the applicants thought, "Wouldn't it be nice to have a device that monitors a system and automatically switches the system over to a backup in the event of a failure?" And then they claimed precisely that concept.

Thus, the '980 Patent's applicants did not claim an unconventional system to solve the problem they identified, as various failover methods were well-known. Nor did they claim a particular mechanism for improving computing systems. As Judge Bryson, sitting by designation in the District of Delaware, noted, claims that "recite the concept, but not the way to implement it," are ineligible for patenting. *Epic IP LLC v. Backblaze, Inc.*, No. 1:18-cv-141, 2018 WL 6107029, at *5 (D. Del. Nov. 21, 2018). The '980 Patent simply claims the abstract concept of

failover, not a specific implementation of that concept. Its claims are therefore invalid for failure to claim patent-eligible subject matter.

Blueprint IP included allegations of non-abstractness in its complaint. *See, e.g.*, Compl., ¶ 13. These allegations consist of legal conclusions and characterizations of the claimed invention that are contradicted by the patent's specification. While pleadings may properly be considered for a Rule 12 motion to dismiss (subject to the *Twombly/Iqbal* pleading standards), the pleadings cannot be used to alter or rewrite the terms of a patent or to confer eligibility on otherwise ineligible subject matter. *Cf Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018); *see also Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019) ("While we do not read Aatrix to say that any allegation about inventiveness, wholly divorced from the claims or the specification, defeats a motion to dismiss, plausible and specific factual allegations that aspects of the claims are inventive are sufficient."). They are thus irrelevant to the § 101 analysis.

Resolving these issues does not require more discovery or claim construction. Blueprint IP's factual allegations, when presumed true, do not avoid dismissal. Therefore, to avoid waste of judicial and party resources further litigating an invalid patent, BankUnited requests the Court dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

## II.    STATEMENT OF THE ISSUE

Abstract ideas are ineligible for patentability under 35 U.S.C. § 101, absent an inventive concept that amounts to significantly more than the abstract idea. The claims of the '980 Patent are directed to the abstract idea of failover. The '980 Patent does not include an inventive concept beyond that idea. Should the Court therefore dismiss Blueprint IP's claims pursuant to Rule 12(b)(6)?

## III.     STATEMENT OF THE FACTS

The '980 Patent is entitled, "Method for Protection Switching of Geographically Separate Switching Systems." It relates to providing redundancy for network devices, specifically for switching systems. *See* '980 Patent at 1:17-18. The 1:1 redundancy mechanism described in the '980 Patent had been a networking solution long before the alleged invention claimed in the patent. In this type of redundancy, there is an *active* device (main device) and a *standby* device (backup device)—the latter stands ready to become active in the event that the *active* device fails. For protection against catastrophic events in a single location, network operators would place the *active* and *standby* devices in separate locations. This method was referred to as geographical redundancy (or geo-redundancy). If and when the *active* device failed, a switchover would take place, making the *standby* device the new *active* device so it can undertake network operations.

The applicants of the '980 Patent had one goal in mind: "to specify a method for protection switching of switching systems which ensures an ***efficient*** switchover of a failed switching system to a redundancy partner in the event of a fault." '980 Pat., 1:46-49 (emphasis added). To accomplish this goal, the applicants "assign[ed] each switching system requiring protection an identical clone as a redundancy partner having identical hardware, software and database." *Id.*, 1:38-41. Further, "[b]oth switching systems [would be] controlled by a realtime-capable monitor . . . which controls the switchover operations." *Id.*, 1:43-45. The single figure in the patent depicts the relationship between the *active* device, the *standby* device, and the realtime-capable monitor:



But the *active* and *standby* devices are off-the-shelf switching systems, with no requirement other than to have "identical hardware, software and database." *Id.*, 1:38-41. The alleged solution could also be used on other networking devices, such as routers. *See id.*, 2:3-7. Indeed, as the applicants explained, "The solution is comprehensively deployable and cost-effective, because **essentially only the outlay for the monitor is incurred**." *Id.*, 1:58-60 (emphasis added). And the realtime-capable monitor "can be implemented in hardware or software" (*id.*, 2:65); for example, the "central computer of a further switching system" could be the realtime-capable monitor (*id.*, 4:64-66). Further, for communcating with the *active* and *standby* switching systems, the monitor would use a "protocol [that] is based on the **standard** IP protocols BOOTP/DHCP which **are usually supported by every IP implementation**." *Id.*, 1:53-55 (emphasis added). As the applicants made clear, "This solution can therefore be implemented in any switching system with IP-based interfaces with minimal implementation overhead." *Id.*, 1:55-58.

Consequently, the alleged invention claimed in the '980 Patent amounts to nothing more than using two off-the-shelf networking devices that are identical in hardware and software,

connecting them to a monitor that can be implemented on any hardware and software, and using standardized IP communication between them to detect any failure in the *active* device and then switch operations to the *standby* device.

## IV.   ARGUMENT

### A.   Legal Standard

#### 1.   This Case Should Be Disposed of at the Pleading Stage Through Rule 12(b)(6).

Under Rule 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint "must present sufficient factual matter, accepted as true, to 'raise a right to relief above the speculative level.'" *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014) (internal citations and quotations omitted). In deciding a Rule 12(b)(6) motion, courts consider documents attached to or incorporated into the complaint as well as facts alleged in the complaint. *Solis-Ramirez ex rel Solis v. United States Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985). Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (internal citations and quotations omitted).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject

matter. *See Ultramercial, Inc. v. Hulu*, *LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

### 2.   The Law of 35 U.S.C. § 101.

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. Also, the law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and ***abstract ideas***." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980) (emphasis added). Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611–12. In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted).

Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id*. at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). Indeed, if a claim could be performed

in the human mind, or by a human using pen and paper, it is not patent-eligible. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). Also, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297–98, 1300–01; *Bilski*, 561 U.S. at 610; *Diamond v. Diehr*, 450 U.S. 175, 191–92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope.").

### B.    The Patent-in-Suit is Invalid under 35 U.S.C. § 101.

Blueprint IP's claims regarding the '980 Patent should be dismissed. The claims of the asserted patent are invalid under 35 U.S.C. § 101 because they fail both prongs of the *Alice* test. Each of the claims is directed to the abstract idea of failover. Abstract ideas are not eligible for patenting. None of the claims contains an "'inventive concept' . . . sufficient to ensure that the patent in practice amounts to ***significantly more*** than a patent upon the ineligible concept itself." *See Alice*, 134 S. Ct. at 2355 (emphasis added). Because Blueprint IP has failed to state a claim upon which relief may be granted, BankUnited respectfully requests that the Court grant its motion and dismiss Blueprint IP's '980 Patent claims with prejudice. FED. R. CIV. P. 12(b)(6).

### 1.    The independent claims of the '980 Patent are patent-ineligible.

In determining patent eligibility under § 101, the Court must first determine whether the claims are directed to an abstract idea. *Alice*, 134 S. Ct. at 2355. Under any plausible reading, the claims of the patent are directed to an unpatentable, abstract idea because they claim nothing

more than the "longstanding," "routine," and "conventional" concept of failover. *See Alice*, 134 S. Ct. at 2356-59; *Bilski*, 561 U.S. at 611.

> (a)  *Alice* **Step 1: The independent claims are directed to the abstract idea of failover.**

Claim 1 of the '980 Patent is representative of the independent claims.[1] *See, e.g.*, *Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*, No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938, at *8–9 (E.D. Tex. Mar. 8, 2017) (invalidating 974 claims after analyzing only a few "representative claims" where the other claims were "substantially similar" and "linked to the same abstract idea."). In assessing whether this claim is directed to an abstract idea, the Court must look past the claim language for the purpose of the claim to determine what the invention is trying to achieve. *Morales v. Square, Inc.*, 75 F. Supp. 3d. 716, 725 (W.D. Tex. 2014), *aff'd*, 621 F. App'x 660 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 1461 (2016). All Claim 1 of the '980 Patent explains is switching to the backup device when the main device fails:

| Claim Language | Claimed Idea |
|---|---|
| 1. A method for protection switching of geographically separate switching systems arranged in pairs, comprising: | |
| providing a pair of switching systems which are geographically separate and which supply a dedicated redundancy to each other, one of the pair of switching systems is in an active operating state and the other is in a hot-standby operating state; | Two computers, one designated as main and the other as backup, located at different locations |
| controlling the communication between the each of the pair switching system and a monitoring unit in accordance with the an operating state of the respective switching system; | The two computers sending data to a third computer |
| when a loss of the communication to the switching system in the | The third computer |

---

[1] Where claims are "substantially similar and linked to the same abstract idea," courts may look to representative claims in a § 101 analysis. *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

| Claim Language | Claimed Idea |
|---|---|
| active operating state occurs: | stops receiving data from the main computer |
| activating, by the monitoring unit, the switching system in the hot-standby operating state to be in the active operating state, and deactivating, by the monitoring unit, the switching system with the communication loss to be in the hot-standby operating state, wherein when in the hot-standby operating state, the respective switching system is not active in terms of switching functions; and | Designating the backup computer as the new main |
| further features: periodically sending an IP lease request to the monitoring unit by a packet-based interface of the switching system in the hot-standby operating state, the packet-based interface is in an inactive state. | The backup computer periodically sending data |

As seen above, the claim quickly reduces down to the bare idea of switching to the backup device when the main device fails. That is an abstract idea ineligible for patenting.

The abstract idea inquiry begins by analyzing the "focus" of the claim, i.e., its "character as a whole," in order to determine whether the claim is directed to an abstract idea. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). For example, the Federal Circuit has explained that this Court should examine the patent's "'claimed advance' to determine whether the claims are directed to an abstract idea." *Finjan, Inc. v. Blue Coat System, Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018). "In cases involving software innovations, this inquiry often turns on whether the claims focus on 'the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool.'" *Id.* (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016)); *see BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1285-86 (Fed. Cir. 2018).

Here, Claim 1 is not directed to any specific means or method for improving technology—it is directed to the abstract idea of switching to the backup device when the main

device fails. The patent's stated goal was to provide "a method for protection switching of switching systems which ensures an ***efficient*** switchover of a failed switching system to a redundancy partner in the event of a fault." '980 Pat., 1:46-49 (emphasis added).  But failover, even when done efficiently, is a concept, not an invention, and thus ineligible for patenting. *See, e.g.*, *Epic IP*, 2018 WL 6107029 at *5 ("The problem, however, is that the idea of a chat session separate from the original website is not an invention; it is a concept. The asserted claims of the '599 patent recite the concept, but not the way to implement it.").

The functional nature of Claim 1's limitations further supports its abstractness. In determining whether a particular claim is directed to an abstract idea, courts have focused on whether the claim is purely functional in nature rather than containing the specificity necessary to recite how the claimed function is achieved. For example, in *SAP America*, the court asked whether the claim had "the specificity required to transform [it] from one claiming only a result to one claiming a way of achieving it." 898 F.3d at 1167. To answer that question, the Federal Circuit has directed courts to "look to whether the claims focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017); *McRO, Inc. v. Bandai Namco Games Am., Inc.,* 837 F.3d 1299, 1314 (Fed. Cir. 2016) ("We therefore look to whether the claims in these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoked generic processes and machinery."). Therefore, the question in such cases is "whether the claims are directed to 'a specific means or method' for improving technology or whether they are simply directed to an

abstract end-result." *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017).

Claim 1 is directed to an abstract end-result. It lacks any of the specificity that the Federal Circuit has held is sufficient to confer patent eligibility. *Cf. Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018) (holding eligible claims with the required specificity, but ineligible those without it); *Core Wireless Licensing S.A.R.L. v. LG Elec., Inc.,* 880 F.3d 1356, 1361–63 (Fed. Cir. 2018) (holding claims eligible where they were "directed to a ***specific*** improvement in the capabilities of computing devices") (emphasis added); *see also RecogniCorp*, 855 F.3d at 1326 (claims were ineligible because they were not directed to "a ***specific*** means or method for improving technology") (emphasis added). Claim 1 does not require a new or unconventional machine or process for monitoring the main device and switching over to the backup if the main fails—it requires only monitoring data communication to the main device, and if data communication to the main device fails, switching over operations to the backup device. "Inquiry therefore must turn to any requirements for *how* the desired result is achieved." *Elec. Power Grp., LLC v. Alstom S.A.,* 830 F.3d 1350, 1355 (Fed. Cir. 2016). But Claim 1 does not describe how the desired result—failover—is achieved. The mechanism to implement the idea is impermissibly unbounded in scope.

Claim 1 thus differs from the claims that the Federal Circuit has held to be eligible because they claimed specific means for improving specific computer technology or solving specific computer problems. For example, the Federal Circuit addressed the eligibility of claims directed to improving computer security in *Ancora Techs. v. HTC Am., Inc.*, 908 F.3d 1343 (Fed. Cir. 2018). In that case, the Federal Circuit held the claims eligible and stated, "Improving security—here, against a computer's unauthorized use of a program—can be a ***non-abstract***

computer-functionality improvement . . . done by a ***specific technique*** that departs from earlier approaches to solve a ***specific computer problem***." *Id.* at 1348 (emphasis added). The court was persuaded because "[t]he claimed method here specifically identifies how that functionality improvement is effectuated in an assertedly unexpected way." *Id.* The same is not true of Claim 1 of the '980 Patent. It does not require a specific and unconventional technique, and it does not identify any specific improvement to computer functionality, much less an unexpected way of effectuating such an improvement. Indeed, the '980 Patent already notes that the failover could also be accomplished manually. *See* '980 Patent at 3:36-40 ("For security reasons the network management NM should have the functionality to be able also to effect the above described switchovers manually. Optionally, the automatic switchover can be blocked so that the switchover can only be performed manually.).

That Claim 1 is limited to a computer in a telecommunications environment, such as switching systems, does not alter this analysis. "Most obviously, limiting the claims to [a] particular technological environment . . . is, without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core." *Elec. Power Grp.*, 830 F.3d at 1354. As the Supreme Court explained in *Alice, Parker v. Flook,* 437 U.S. 584 (1978), stands for the proposition that the prohibition on patenting abstract ideas cannot be circumvented by attempting to limit the use of the idea to a particular technological environment. *Alice,* 134 S. Ct. at 2358; *see also buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (claims' "narrowing to cover only online transactions was an attempt to limit the use of the abstract guarantee idea to a particular technological environment, which has long been held insufficient to save a claim in this context") (internal quotations and citations omitted). Claim 1 is directed to an abstract idea even if its limitations require practicing that idea for switching systems.

The other two independent claims of the '980 Patent, Claim 11 and Claim 14, fare no better under this analysis: they are directed to the same abstract idea. Claim 11 describes a method where each of the main and backup devices "comprises a database which is identical to each other" (Cl. 11), but the claim only describes the end-result, without providing any details as to the how to implement it. Similarly, Claim 14 describes a method where the main and backup devices "comprise software identical to each other" (Cl. 14), but the claim does not describe how this result is achieved. The claimed advance of the independent claims is the abstract concept of failover, albeit with the desire that it occur "efficiently." This concept is an abstract idea, not an invention, and the desire for the concept to be accomplished efficiently, without more, does not confer eligibility. Accordingly, the independent claims fail the first step of the *Alice* analysis.

**(b)      *Alice* Step 2: The independent claims do not contain an inventive concept sufficient to confer patent eligibility.**

The independent claims of the '980 Patent are implemented on generic computer technology and therefore do not contain an inventive concept sufficient to confer eligibility. There is simply nothing "inventive" about using identical, generic networking devices, one as the main and one as the backup, connecting them to another generic device for monitoring, using conventional methods of data communication to monitor if the main device is functional, and switching over to the backup device when the main device fails. As explained above, the abstract functional descriptions in the independent claims of the '980 Patent are devoid of any technical explanation as to how to implement the purported invention in an inventive way. *See In re TLI Commc'ns LLC Patent Litigation*, 823 F.3d 607, 615 (Fed. Cir. 2016) (claims failed *Alice*'s step 2 where specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention"). Similar to the invalidated claims in *Intellectual Ventures I LLC v.*

*Symantec Corp.*, nothing in Claim 1 "contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." 838 F.3d 1307, 1316 (Fed. Cir. 2016) (citing omitted).

Courts have repeatedly held that the presence of generic hardware and software like the kind recited in the independent claims of the '980 Patent does not make an otherwise abstract idea patent-eligible. *See, e.g.*, *buySAFE*, 765 F.3d at 1355 ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *Content Extraction*, 776 F.3d at 1348 ("At most, [the] claims attempt to limit the abstract idea of recognizing and storing information from hard copy documents using a scanner and a computer to a particular technological environment. Such a limitation has been held insufficient to save a claim in this context."); *Bancorp*, 687 F.3d at 1276–77. The independent claims only require using identical, generic networking devices, monitored by another generic device that is capable of effecting a failover if necessary. The patent explains that the main and backup devices are off-the-shelf switching systems, with no requirement but to have "identical hardware, software and database." '980 Pat, 1:38-41. The alleged solution could also be used on other networking devices, such as routers. *See id.*, 2:3-7. Indeed, as the applicants explained, "The solution is comprehensively deployable and costeffective, because ***essentially only the outlay for the monitor is incurred***." *Id.*, 1:58-60 (emphasis added). And the realtime-capable monitor "can be implemented in hardware or software" (*id.*, 2:65); for example, the "central computer of a further switching system" could be the realtime-capable monitor (*id.*, 4:64-66). Further, for communicating with the main and backup devices, the monitor would use a "protocol [that] is based on the ***standard*** IP protocols BOOTP/DHCP which ***are usually supported by every IP implementation***." *Id.*, 1:53-55 (emphaiss added). As the applicants made

clear, "This solution can therefore be implemented in any switching system with IP-based interfaces with minimal implementation overhead." *Id.*, 1:55-58. "Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer . . . technology." *Elec. Power Grp.*, 830 F.3d at 1355. There is thus no limitation in the independent claims that could be considered an inventive concept under step two of the *Alice* test.

### 2.     The dependent claims of the '980 Patent are not patent eligible.

The dependent claims of the '980 Patent add additional limitations regarding the abstract idea, but they do not include the specificity necessary to claim patent-eligible subject matter. They also do not include anything other than generic components and processes such that they fail to contain an inventive concept. Accordingly, the dependent claims suffer from the same flaws as the independent claims, despite their additional limitations, and should therefore be treated the same as the independent claims.

The dependent claims recite insignificant pre- or post-solution activity:

| Pre- or Post-Solution Activity | Claim |
|---|---|
| a pre-definable number of packet-based interfaces | Claim 2 |
| the monitoring unit does not respond to the request while the switching system is in the hot-standby operating state | Claim 3 |
| changing the packet-based interface from the inactive state to an active state in response to receiving an IP lease response | Claim 4 |
| the IP lease response from the monitoring unit contains an IP address leased to the requesting packet-based interface | Claim 5 |
| sending IP lease request to the monitoring unit by a packet-based interface of the switching system in the active operating state, the packet-based interface is in an active operating state | Claim 6 |
| receiving a monitoring message from the monitoring unit by a packet-based interface of the switching system in the active operating state, the packet-based interface is in an active state; and acknowledging the message by the packet-based interface | Claim 7 |
| determining, by the monitoring unit, a fault condition when an acknowledgement is not received from the packet-based interface in the active state; and | Claim 8 |

| Pre- or Post-Solution Activity | Claim |
|---|---|
| sending an IP lease response to a packet-based interface, which is inactive, of the switching system in the hot-standby operating state | |
| changing the packet-based interface from the inactive state to an active state in response to receiving the IP response | Claim 9 |
| wherein the operating state of the switching system having the communication loss changes to a hot-standby operation state and remains defined as the hot-standby switching system until a new fault situation forces a new switchover | Claim 10 |
| changing the packet-based interface from the inactive state to an active state in response to receiving an IP lease response, the IP lease response from the monitoring unit contains an IP address leased to the requesting packet-based interface | Claim 12 |
| receiving a monitoring message from the monitoring unit by a packet-based interface of the switching system in the active operating state, the packet-based interface in an active state; sending a response by the switching system in the active operating state via the packet-based interface to the monitoring message in order to acknowledge the monitoring message; determining by the monitoring unit a fault condition when an acknowledgement is not received from the packet-based interface in the active state; and sending an IP lease response to a packet-based interface, which is inactive, of the switching system in the hot-standby operating state | Claim 13 |
| changing the packet-based interface from the inactive state to an active state in response to receiving an IP lease response, the IP lease response from the monitoring unit contains an IP address leased to the requesting packet-based interface | Claim 15 |
| receiving a monitoring message from the monitoring unit by a packet-based interface of the switching system in the active operating state, the packet-based interface in an active state; sending a response by the switching system in the active operating state via the packet-based interface to the monitoring message in order to acknowledge the monitoring message; determining by the monitoring unit a fault condition when an acknowledgement is not received from the packet-based interface in the active state; and sending an IP lease response to a packet-based interface, which is inactive, of the switching system in the hot-standby operating state. | Claim 16 |

Each of these claims, like Claim 1 of the '980 Patent, is not meaningfully limited because these activities are not "essential to the invention." *Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, 21 F. Supp. 3d 758, 763 (E.D. Tex. 2014) (noting limitations must "do more than recite pre- or post-solution activity, they [must be] central to the solution itself" to be

meaningful) (quotations omitted). Because all of these claims are directed to the abstract idea of failover and none includes any inventive concept, the claims similarly fail both steps of the *Alice* test.

The dependent claims also do not contain any inventive concept amounting to "significantly more" than the abstract idea. They do not inject any unconventional computer components or techniques. The claims simply apply the same abstract concept of failover, and the Federal Circuit has been clear that the abstract idea itself cannot confer an inventive concept. *See BSG Tech*, 899 F.3d at 1290 ("It has been clear since *Alice* that a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept."). Accordingly, the dependent claims, like the independent claims, fail both steps of the *Alice* test and should be found ineligible.

### 3. There are no claim construction or factual disputes preventing the Court from ruling on this issue at the Rule 12 stage.

The issue of the patent eligibility of the '980 Patent is ripe for the Court's consideration. There are no claim construction issues affecting the *Alice* analysis, as Blueprint IP has not proposed any constructions of the '980 Patent's terms that would alter the ineligibility of the claims. Additionally, there are no factual disputes on this record. The '980 Patent does not assert any unconventional mechanism of implementing the claimed idea of switching to the backup device when the main device fails.

This case is thus unlike *Berkheimer*, where the Federal Circuit noted that the specification explicitly "describe[d] an inventive feature that store[d] parsed data in a purportedly unconventional manner." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). The Federal Circuit then examined whether the improvements described in the specification were included in the claims. For those claims where the inventive feature in the specification was

"captured in the claims," the Federal Circuit found a "factual dispute regarding whether the invention describe[d] well-understood, routine, and conventional activities." *Id*. But where the claims did not recite the purportedly inventive features described in the specification, the Federal Circuit concluded that they were directed to patent ineligible subject matter under § 101. *Id.* Here, in contrast, neither the claims nor the specification describes any unconventional components or the use of generic components in some unconventional manner.

This case is also unlike *Cellspin* where Federal Circuit found that "plausible and specific factual allegations that aspects of the claims are inventive are sufficient" to defeat a motion to dismiss. *Cellspin*, 927 F.3d at 1317. Here, in contrast, the allegations of non-abstractness in Blueprint IP's complaint consist of legal conclusions and characterizations of the claimed invention that are contradicted by the patent's specification. *See, e.g.*, Compl., ¶ 13. While pleadings may properly be considered for a Rule 12 motion to dismiss, the pleadings cannot be used to alter or rewrite the terms of a patent or to confer eligibility on otherwise ineligible subject matter. *Cf Aatrix,* 882 F.3d at 1125; *see also Cellspin,* 927 F.3d at 1317. They are thus irrelevant to the § 101 analysis.

Accordingly, this issue is ripe for the Court's consideration, and the '980 Patent should be found invalid for failing to claim patent-eligible subject matter.

## V.     CONCLUSION

For the foregoing reasons, BankUnited respectfully requests that the Court dismiss Blueprint IP's claims based on the '980 Patent for failure to state a claim upon which relief can be granted. Because leave to amend would be futile, BankUnited requests dismissal with prejudice.

Dated: March 6, 2020

Respectfully submitted,

By:  */s/ Eleanor T. Barnett*
       Eleanor T. Barnett, Esq.
       Florida Bar No. 0355630
       WALDMAN BARNETT, P.L.
       3250 Mary Street, Suite 102
       Coconut Grove, Florida 33133
       Tel: (305) 371-8809
       ebarnett@waldmanbarnett.com
       litservice@waldmanbarnett.com

       Neil J. McNabnay
       Texas Bar No. 24002583
       mcnabnay@fr.com
       Ricardo J. Bonilla
       Texas Bar No. 24082704
       rbonilla@fr.com
       Rodeen Talebi
       Texas Bar No. 24103958
       talebi@fr.com
       FISH & RICHARDSON P.C.
       1717 Main Street, Suite 5000
       Dallas, Texas 75201
       (214) 747-5070 - Telephone
       (214) 747-2091 – Facsimile
       *Pro Hac Vice Application Forthcoming*
       **COUNSEL FOR DEFENDANT**
       **BANKUNITED, INC.**

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy has been electronically filed using the CM/ECF filing system on March 6, 2020, which automatically send email notifications to all counsel of record and which will permit viewing and downloading of same from the CM/ECF system.

       */s/ Eleanor T. Barnett_____.*
       Eleanor T. Barnett, Esq.