# EXHIBIT C

AO 120 (Rev. 08/10)

| TO: | Mail Stop 8<br>Director of the U.S. Patent and Trademark Office<br>P.O. Box 1450<br>Alexandria, VA 22313-1450 | REPORT ON THE<br>FILING OR DETERMINATION OF AN<br>ACTION REGARDING A PATENT OR<br>TRADEMARK |
|---|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court _____Middle District of Florida_____ on the following

☐ Trademarks or  ✖ Patents.  ( ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO.<br>6:19-cv-2396-Orl-40GJK | DATE FILED<br>December 20, 2019 | U.S. DISTRICT COURT<br>Middle District of Florida |
|---|---|---|
| PLAINTIFF<br><br>BLUEPRINT IP SOLUTIONS, LLC | | DEFENDANT<br><br>WALT DISNEY COMPANY |

| PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|
| 1   see Complaint | 8089980 | |

| CLERK<br>ELIZABETH M. WARREN | (BY) DEPUTY CLERK<br>ROlsen | DATE<br>December 23, 2019 |
|---|---|---|

Copy 1—Upon initiation of action, mail this copy to Director    Copy 3—Upon termination of action, mail this copy to Director
Copy 2—Upon filing document adding patent(s), mail this copy to Director    Copy 4—Case file copy

BLUEPRINT 000001

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/582,589 | 01/03/2012 | 8089980 | 2003P18829WOUS | 2784 |

22116        7590        12/14/2011
SIEMENS CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
170 WOOD AVENUE SOUTH
ISELIN, NJ 08830

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above.

### Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment is 1131 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Application Assistance Unit (AAU) of the Office of Data Management (ODM) at (571)-272-4200.

APPLICANT(s) (Please see PAIR WEB site http://pair.uspto.gov for additional applicants):

Norbert Löbig, Darmstadt, GERMANY;
Jürgen Tegeler, Penzberg, GERMANY;

IR103 (Rev. 10/09)

**BLUEPRINT 000002**

**PART B - FEES TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to: Mail**    Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
**or Fax**    (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

22116     7590     09/13/2011

SIEMENS CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
170 WOOD AVENUE SOUTH
ISELIN, NJ 08830

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_Alice McCorkle_ (Depositor's name)
_Alice McCorkle_ (Signature)
December 1, 2011 (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/582,589 | 06/09/2006 | Norbert Lobig | 2003P18829WOUS | 2784 |

TITLE OF INVENTION: METHOD FOR PROTECTION SWITCHING OF GEOGRAPHICALLY SEPARATE SWITCHING SYSTEMS

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO | $1510 | $300 | $0 | $1810 | 12/13/2011 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| BROCKMAN, ANGEL T | 2463 | 524-442000 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

**2. For printing on the patent front page, list**

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____
2 _____
3 _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)**

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE        (B) RESIDENCE: (CITY and STATE or COUNTRY)

Siemens Aktiengesellschaft, Muenchen, Republic Germany

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☑ Individual ☐ Corporation or other private group entity ☐ Government

**4a. The following fee(s) are submitted:**
☑ Issue Fee
☑ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

**4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)**
☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☑ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account Number 192179 (enclose an extra copy of this form).

**5. Change in Entity Status (from status indicated above)**
☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.
☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _James D. Hood_      Date December 1, 2011

Typed or printed name Janet D. Hood      Registration No. 61,142

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

**BLUEPRINT 000003**

PTOL-85 (Rev. 02/11) Approved for use through 08/31/2013.    OMB 0651-0033    U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 10582589 |
| **Filing Date:** | 09-Jun-2006 |
| **Title of Invention:** | METHOD FOR PROTECTION SWITCHING OF GEOGRAPHICALLY SEPARATE SWITCHING SYSTEMS |
| **First Named Inventor/Applicant Name:** | Norbert Löbig |
| **Filer:** | Janet D. Hood/Alice McCorkle |
| **Attorney Docket Number:** | 2003P18829WOUS |

Filed as Large Entity

## U.S. National Stage under 35 USC 371 Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| Utility Appl issue fee | 1501 | 1 | 1740 | 1740 |
| Publ. Fee- early, voluntary, or normal | 1504 | 1 | 300 | 300 |

**BLUEPRINT 000004**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | **Total in USD ($)** | | **2040** | |

**BLUEPRINT 000005**

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 11519197 |
| **Application Number:** | 10582589 |
| **International Application Number:** | |
| **Confirmation Number:** | 2784 |
| **Title of Invention:** | METHOD FOR PROTECTION SWITCHING OF GEOGRAPHICALLY SEPARATE SWITCHING SYSTEMS |
| **First Named Inventor/Applicant Name:** | Norbert  Löbig |
| **Customer Number:** | 22116 |
| **Filer:** | Janet D. Hood/Alice McCorkle |
| **Filer Authorized By:** | Janet D. Hood |
| **Attorney Docket Number:** | 2003P18829WOUS |
| **Receipt Date:** | 01-DEC-2011 |
| **Filing Date:** | 09-JUN-2006 |
| **Time Stamp:** | 11:38:14 |
| **Application Type:** | U.S. National Stage under 35 USC 371 |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Deposit Account |
| Payment was successfully received in RAM | $ 2040 |
| RAM confirmation Number | 11394 |
| Deposit Account | 192179 |
| Authorized User | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|

BLUEPRINT-000006

| 1 | Issue Fee Payment (PTO-85B) | 2003P18829WOUS.pdf | 204994<br><br>04c601c3bc1bc591b6295912cc130cd3996<br>0976d | no | 1 |
|---|---|---|---|---|---|

| Warnings: |
|---|

| Information: |
|---|

| 2 | Fee Worksheet (SB06) | fee-info.pdf | 32306<br><br>1ff08f661561c1ab35331aa7a61676a7a737<br>b6fd | no | 2 |
|---|---|---|---|---|---|

| Warnings: |
|---|

| Information: |
|---|

| Total Files Size (in bytes): | 237300 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

BLUEPRINT 000007

## PART B - FEES TRANSMITTAL

**Complete and send this form, together with applicable fee(s), to:** **Mail** **Mail Stop ISSUE FEE**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**

**or Fax** **(571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

22116     7590     09/13/2011

SIEMENS CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
170 WOOD AVENUE SOUTH
ISELIN, NJ 08830

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

Alice McCorkle        (Depositor's name)

*Alice McCorkle*        (Signature)

December 1, 2011        (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/582,589 | 06/09/2006 | Norbert Lobig | 2003P18829WOUS | 2784 |

TITLE OF INVENTION: METHOD FOR PROTECTION SWITCHING OF GEOGRAPHICALLY SEPARATE SWITCHING SYSTEMS

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO | $1510 | $300 | $0 | $1810 | 12/13/2011 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| BROCKMAN, ANGEL T | 2463 | 524-442000 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

**2. For printing on the patent front page, list**

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____
2 _____
3 _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT** (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE        (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Siemens Aktiengesellschaft, Muenchen, Republic Germany

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☑ Individual ☐ Corporation or other private group entity ☐ Government

**4a. The following fee(s) are submitted:**

☑ Issue Fee
☑ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

**4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)**

☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account Number 192179 (enclose an extra copy of this form).

**5. Change in Entity Status (from status indicated above)**

☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.
☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature *Janet D. Hood*        Date December 1, 2011

Typed or printed name Janet D. Hood        Registration No. 61,142

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

**BLUEPRINT 000008**

PTOL-85 (Rev. 02/11) Approved for use through 08/31/2013.      OMB 0651-0033      U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 10582589 |
| **Filing Date:** | 09-Jun-2006 |
| **Title of Invention:** | METHOD FOR PROTECTION SWITCHING OF GEOGRAPHICALLY SEPARATE SWITCHING SYSTEMS |
| **First Named Inventor/Applicant Name:** | Norbert Löbig |
| **Filer:** | Ye Ren/Alice McCorkle |
| **Attorney Docket Number:** | 2003P18829WOUS |

Filed as Large Entity

## U.S. National Stage under 35 USC 371 Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| Utility Appl issue fee | 1501 | 1 | 1740 | 1740 |
| Publ. Fee- early, voluntary, or normal | 1504 | 1 | 300 | 300 |

BLUEPRINT 000009

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | **2040** |

**BLUEPRINT 000010**

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 11519136 |
| **Application Number:** | 10582589 |
| **International Application Number:** | |
| **Confirmation Number:** | 2784 |
| **Title of Invention:** | METHOD FOR PROTECTION SWITCHING OF GEOGRAPHICALLY SEPARATE SWITCHING SYSTEMS |
| **First Named Inventor/Applicant Name:** | Norbert Löbig |
| **Customer Number:** | 22116 |
| **Filer:** | Ye Ren/Alice McCorkle |
| **Filer Authorized By:** | Ye Ren |
| **Attorney Docket Number:** | 2003P18829WOUS |
| **Receipt Date:** | 01-DEC-2011 |
| **Filing Date:** | 09-JUN-2006 |
| **Time Stamp:** | 11:33:18 |
| **Application Type:** | U.S. National Stage under 35 USC 371 |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Issue Fee Payment (PTO-85B) | 2003P18829WOUS.pdf | 204994 <br> 04c601c3bc1bc591b6295912cc130cd39960976d | no | 1 |

Warnings:

Information:

BLUEPRINT 000011

| 2 | Fee Worksheet (SB06) | fee-info.pdf 32298<br>064d4bb219c6eac881a9ceac66818a3ca489e921 | no | 2 |
|---|---|---|---|---|

| **Warnings:** | | | | |
| **Information:** | | | | |

| **Total Files Size (in bytes):** | 237292 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

## PART B - FEE(S) TRANSMITTAL

**Complete and send this form, together with applicable fee(s), to: Mail**  Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
**or Fax**  (571) 273-2885

*PAP* *DEC 0 1 2011*

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

22116    7590    09/13/2011
SIEMENS CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
170 WOOD AVENUE SOUTH
ISELIN, NJ 08830

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

Alice McCorkle                          (Depositor's name)
Alice McCorkle                          (Signature)
December 1, 2011                        (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/582,589 | 06/09/2006 | Norbert Lobig | 2003P18829WOUS | 2784 |

TITLE OF INVENTION: METHOD FOR PROTECTION SWITCHING OF GEOGRAPHICALLY SEPARATE SWITCHING SYSTEMS

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO | $1510 | $300 | $0 | $1810 | 12/13/2011 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| BROCKMAN, ANGEL T | 2463 | 524-442000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).
☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.
☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. Use of a Customer Number is required.

2. For printing on the patent front page, list
(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,    1 _____
(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.    2 _____
    3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)
PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Siemens Aktiengesellschaft, Muenchen, Republic Germany

Please check the appropriate assignee category or categories (will not be printed on the patent): ☑ Individual  ☐ Corporation or other private group entity  ☐ Government

4a. The following fee(s) are submitted:
☑ Issue Fee
☑ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)
☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number 192179 (enclose an extra copy of this form).

5. Change in Entity Status (from status indicated above)
☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.    ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature  *Janet D. Hood*          Date  December 1, 2011

Typed or printed name  Janet D. Hood            Registration No. _____

12/01/2011 INTFSW 00011394 10582589
01 FC:1501       1510.00 DA
02 FC:1504        300.00 DA

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 02/11) Approved for use through 08/31/2013.    OMB 0651-0033    U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

**BLUEPRINT 000013**



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

## BIB DATA SHEET

CONFIRMATION NO. 2784

| SERIAL NUMBER | FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 10/582,589 | 06/09/2006 **RULE** | 524 | 2463 | 2003P18829WOUS |

**APPLICANTS**
Norbert Lobig, Darmstadt, GERMANY;
Jurgen Tegeler, Penzberg, GERMANY;

** CONTINUING DATA ***************************
This application is a 371 of PCT/EP04/51925 08/26/2004

** FOREIGN APPLICATIONS ***************************
GERMANY 10358344.0 12/12/2003

** IF REQUIRED, FOREIGN FILING LICENSE GRANTED **
02/10/2007

| | STATE OR COUNTRY | SHEETS DRAWINGS | TOTAL CLAIMS | INDEPENDENT CLAIMS |
|---|---|---|---|---|
| Foreign Priority claimed ☑ Yes ☐ No<br>35 USC 119(a-d) conditions met ☑ Yes ☐ No<br>Verified and Acknowledged _____ Examiner's Signature | ☐ Met after Allowance<br>A.B. Initials | GERMANY | 1 | 17 | 1 |

**ADDRESS**

SIEMENS CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
170 WOOD AVENUE SOUTH
ISELIN, NJ 08830
UNITED STATES

**TITLE**

METHOD FOR PROTECTION SWITCHING OF GEOGRAPHICALLY SEPARATE SWITCHING SYSTEMS

| FILING FEE RECEIVED 900 | FEES: Authority has been given in Paper No._____ to charge/credit DEPOSIT ACCOUNT No._____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees (Filing) |
| | | ☐ 1.17 Fees (Processing Ext. of time) |
| | | ☐ 1.18 Fees (Issue) |
| | | ☐ Other _____ |
| | | ☐ Credit |

BIB (Rev. 05/07).

BLUEPRINT 000014

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/582,589 | 06/09/2006 | Norbert Lobig | 2003P18829WOUS | 2784 |

7590     10/04/2011

SIEMENS CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
170 WOOD AVENUE SOUTH
ISELIN, NJ 08830

| EXAMINER |
|---|
| BROCKMAN, ANGEL T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2463 | |

DATE MAILED: 10/04/2011

# PRIORITY ACKNOWLEDGMENT

☑ 1. Receipt is acknowledged of priority papers submitted under 35 U.S.C. 119. The papers have been placed of record in the file.

❑ 2. Applicant's claim for priority, based on papers filed in parent Application Number _____ submitted under 35 U.S.C. 119, is acknowledged.

❑ 3. The priority papers, submitted _____, after payment of the issue fee are
   ❑ acknowledged
       While the priority claim or certified copy filed will be placed in the file record, neither will be reviewed and the patent when published will not include the priority claim.
       See 37 CFR 1.55(a)(2).
   ❑ not acknowledged since the processing fee in 37 CFR 1.17(i) has not been received.

❑ 4. For utility and plant applications filed on or after November 29, 2000, the priority claim is not entered because the claim was not presented within the time limit required by 37 CFR 1.55(a)(1). A petition to accept a delayed claim for priority under 35 U.S.C. 119(a) - (d) or (f), or 365(a) may be filed. See 37 CFR 1.55(c) and MPEP 201.14(a).

*Dougla Gald For.*

571-272-4200  or 1-888-786-0101
Application Assistance Unit
Office of Data Management

PTOL-147 (Rev. 03/08)

**BLUEPRINT 000015**



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| | | |
|---|---|---|
| 22116 | 7590 | 09/13/2011 |

SIEMENS CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
170 WOOD AVENUE SOUTH
ISELIN, NJ 08830

| EXAMINER |
|---|
| BROCKMAN, ANGEL T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2463 | |

DATE MAILED: 09/13/2011

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/582,589 | 06/09/2006 | Norbert Lobig | 2003P18829WOUS | 2784 |

TITLE OF INVENTION: METHOD FOR PROTECTION SWITCHING OF GEOGRAPHICALLY SEPARATE SWITCHING SYSTEMS

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO | $1510 | $300 | $0 | $1810 | 12/13/2011 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown above.

B. If the status above is to be removed, check box 5b on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check box 5a on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and 1/2 the ISSUE FEE shown above.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

PTOL-85 (Rev. 02/11)

**BLUEPRINT 000016**

**Complete and send this form, together with applicable fee(s), to:** <u>Mail</u>

Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

**or** <u>Fax</u>   **(571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

22116     7590     09/13/2011

SIEMENS CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
170 WOOD AVENUE SOUTH
ISELIN, NJ 08830

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/582,589 | 06/09/2006 | Norbert Lobig | 2003P18829WOUS | 2784 |

TITLE OF INVENTION: METHOD FOR PROTECTION SWITCHING OF GEOGRAPHICALLY SEPARATE SWITCHING SYSTEMS

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO | $1510 | $300 | $0 | $1810 | 12/13/2011 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| BROCKMAN, ANGEL T | 2463 | 524-442000 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

**2. For printing on the patent front page, list**

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT** (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

(B) RESIDENCE: (CITY and STATE or COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :   ☐ Individual   ☐ Corporation or other private group entity   ☐ Government

**4a. The following fee(s) are submitted:**

☐ Issue Fee
☐ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

**4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)**

☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

**5. Change in Entity Status** (from status indicated above)

☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.        ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____     Date _____

Typed or printed name _____     Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

**BLUEPRINT 000017**

PTOL-85 (Rev. 02/11) Approved for use through 08/31/2013.     OMB 0651-0033     U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/582,589 | 06/09/2006 | Norbert Lobig | 2003P18829WOUS | 2784 |

22116      7590      09/13/2011
SIEMENS CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
170 WOOD AVENUE SOUTH
ISELIN, NJ 08830

| EXAMINER |
|---|
| BROCKMAN, ANGEL T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2463 | |

DATE MAILED: 09/13/2011

**Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)**
(application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 540 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 540 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

**BLUEPRINT 000018**

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

**BLUEPRINT 000019**

| *Notice of Allowability* | Application No. | Applicant(s) | |
|---|---|---|---|
| | 10/582,589 | LOBIG ET AL. | |
| | Examiner | Art Unit | |
| | ANGEL BROCKMAN | 2463 | |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to _06/06/2011_.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are _11-12, 14-20,26,28,30-32,34 and 35_.

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   a) ☐ All   b) ☐ Some*   c) ☐ None   of the:
   1. ☐ Certified copies of the priority documents have been received.
   2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
   3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   * Certified copies not received: _____.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

6. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.
   (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached
      1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____.
   (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.

   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

7. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)
2. ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____
4. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

5. ☐ Notice of Informal Patent Application
6. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____.
7. ☒ Examiner's Amendment/Comment
8. ☒ Examiner's Statement of Reasons for Allowance
9. ☐ Other _____.

| /ANGEL BROCKMAN/<br>Examiner, Art Unit 2463 | /Derrick W Ferris/<br>Supervisory Patent Examiner, Art Unit 2463 |
|---|---|

BLUEPRINT 000020

Application/Control Number: 10/582,589                                      Page 2

Art Unit: 2463

## EXAMINER'S AMENDMENT

1.      An examiner's amendment to the record appears below. Should the changes and/or

additions be unacceptable to applicant, an amendment may be filed as provided by 37 CFR

1.312. To ensure consideration of such an amendment, it MUST be submitted no later than the

payment of the issue fee.

2.      Authorization for this examiner's amendment was given in a telephone interview with

Janet Hood on August 23, 2011.


**IN THE CLAIMS:**

11. A method for protection switching of geographically separate switching systems arranged in

pairs, comprising:

providing a pair of switching systems which are geographically separate and which supply a

dedicated redundancy to each other, one of the pair of switching systems is in an active operating

state and the other is in a hot-standby operating state;

controlling the communication between the each of the pair switching system and a monitoring

unit in accordance with the an operating state of the respective switching system; ~~and~~

when a loss of the communication to the switching system in the active operating state

occurs:

activating, by the monitoring unit, the switching system in the hot-standby operating state to be

in the active operating state, and deactivating, by the monitoring unit, the switching system with

the communication loss to be in the hot-standby operating state, wherein when in the hot-standby

operating state, the respective switching system is not active in terms of switching functions; **and**

Application/Control Number: 10/582,589                                       Page 3
Art Unit: 2463

**further features: periodically sending an IP lease request to the monitoring unit by a packet-based interface of the switching system in the hot-standby operating state, the packet-based interface is in an inactive state.**

13. Cancelled

14. The method as claimed in claim ~~13~~ **11** ,wherein the monitoring unit does not respond to the request while the switching system is in the hot-standby operating state.

15. The method as claimed in claim ~~13~~ **11** ,further comprising changing the packet-based interface from the inactive state to an active state in response to receiving an IP lease response.

03P18829WOUS 3rdAppealBrief.rtf Page 15 of 21

28. A method for protection switching of geographically separate switching systems arranged in pairs, comprising:

providing a pair of switching systems which are geographically separate and which supply a dedicated redundancy to each other, one of the pair of switching systems is in an active operating state and the other is in a hot-standby operating state, each of the pair of switching systems comprises a database which is identical to each other, the database comprises only permanent data and semi-permanent data such that transient data pertaining to calls is excluded;

controlling the communication between the each of the pair switching system and a monitoring unit in accordance with the an operating state of the respective switching system; ~~and~~

when a loss of the communication to the switching system in the active operating state occurs:

Application/Control Number: 10/582,589                                                    Page 4

Art Unit: 2463

activating, by the monitoring unit, the switching system in the hot-standby operating state to be

in the active operating state, and

deactivating, by the monitoring unit, the switching system with the communication loss to be in

the hot-standby operating state, wherein when in the hot-standby operating state, the respective

switching system is not active in terms of switching functions; **and further features:**

**periodically sending an IP lease request to the monitoring unit by a packet-based interface**

**of the switching system in the hot-standby operating state, the packet-based interface is in**

**an inactive state; and ignoring the IP lease request by the monitoring unit while the**

**switching system is in the hot-standby operating state.**


29. Cancelled

30. The method as claimed in claim ~~29~~ **28** ,further comprising changing the packet-based

interface from the inactive state to an active state in response to receiving an IP lease response,

the IP lease response from the monitoring unit contains an IP address leased to the requesting

packet-based interface.



32. A method for protection switching of geographically separate switching systems arranged in

pairs, comprising:

providing a pair of switching systems which are geographically separate and which supply a

dedicated redundancy to each other, the pair of switching systems comprise software identical to

each other, one of the pair of switching systems is in an active operating state and the other is in

Application/Control Number: 10/582,589                                         Page 5
Art Unit: 2463

a hot-standby operating state;

providing a monitoring unit that communicates with the pair of switching systems;

controlling the communication between the each of the pair switching system and a monitoring

unit in accordance with the an operating state of the respective switching system; ~~and~~

when a loss of the communication to the switching system in the active operating state

occurs:

activating, by the monitoring unit, the switching system in the hot-standby operating state to be

in the active operating state, and

deactivating, by the monitoring unit, the switching system with the communication loss to be in

the hot-standby operating state,

wherein every software update including patches is delivered in identical fashion to the first and

redundant switching system, and

wherein when in the hot-standby operating state, the respective switching system is not active in

terms of switching functions; **and  further features: periodically sending an IP lease request**

**to the monitoring unit by a packet-based interface of the switching system in the hot-**

**standby operating state, the packet-based interface is in an inactive state; and ignoring the**

**IP lease request by the monitoring unit while the switching system is in the hot-standby**

**operating state.**

33. Cancelled

BLUEPRINT 000024

Application/Control Number: 10/582,589                                          Page 6
Art Unit: 2463

34. The method as claimed in claim 33 **32**, further comprising changing the packet-based interface from the inactive state to an active state in response to receiving an IP lease response, the IP lease response from the monitoring unit contains an IP address leased to the requesting packet-based interface.

## REASONS FOR ALLOWANCE

1.     Claims 11-12, 14-20, 26, 28, 30-32, and 34-35 are allowed.

2.     The following is an examiner's statement of reasons for allowance: Prior art does not disclose and further features: periodically sending an IP lease request to the monitoring unit by a packet-based interface of the switching system in the hot-standby operating state, the packet-based interface is in an inactive state in combination with the rest of the limitations in the claims.

### *Conclusion*

1.     Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee.  Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

2.     Any inquiry concerning this communication or earlier communications from the examiner should be directed to ANGEL BROCKMAN whose telephone number is (571)270-5664.  The examiner can normally be reached on Monday-Friday ,7:30-5:00pm.

3.     If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Derrick Ferris can be reached on 571-272-3123.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

**BLUEPRINT 000025**

Application/Control Number: 10/582,589                                        Page 7
Art Unit: 2463

4.      Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system.  Status information for published applications

may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished

applications is available through Private PAIR only.  For more information about the PAIR

system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR

system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would

like assistance from a USPTO Customer Service Representative or access to the automated

information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


ANGEL  BROCKMAN

Examiner

Art Unit 2463


/A. B./

Examiner, Art Unit 2463

/Derrick W Ferris/

Supervisory Patent Examiner, Art Unit 2463

BLUEPRINT 000026

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 10582589 | LOBIG ET AL. |
| | **Examiner** | **Art Unit** |
| | ANGEL BROCKMAN | 2463 |

| SEARCHED | | | | |
|---|---|---|---|---|
| **Class** | **Subclass** | | **Date** | **Examiner** |
| 370 | 442 | | 02/20/2009 | A.B. |
| 370 | 217,219,220 | | | A.B. |

| SEARCH NOTES | | |
|---|---|---|
| **Search Notes** | **Date** | **Examiner** |
| Talked to Spe Derrick Ferris | 02/19/2009 | A.B. |
| Inventor Name Search | 02/19/2009 | A.B. |
| EAST SEARCH | 02/20/2009 | A.B. |
| Update EAST | 9/9/2009 | A.B. |
| Update EAST | 12/9/2009 | A.B. |
| UPDATE EAST | 8/13/2010 | A.B. |
| UPDATE EAST | 1/25/2011 | A.B. |
| UPDATE EAST | 8/24/2011 | A.B. |
| INTERFERENCE | 8/24/2011 | A.B. |

| INTERFERENCE SEARCH | | | | |
|---|---|---|---|---|
| **Class** | **Subclass** | | **Date** | **Examiner** |
| 370 | 442 | | 02/20/2009 | A.B. |
| 370 | 217 | | 8/24/2011 | A.B. |

**BLUEPRINT 000027**

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 10582589 | LOBIG ET AL. |
| | Examiner | Art Unit |
| | ANGEL BROCKMAN | 2463 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant    ☐ CPA    ☐ T.D.    ☐ R.1.47

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 02/24/2009 | 09/11/2009 | 12/09/2009 | 08/14/2010 | 01/26/2011 | 08/12/2011 | | | |
| | 11 | ✓ | ✓ | ✓ | ✓ | ✓ | = | | | |
| | 12 | ✓ | ✓ | ✓ | ✓ | ✓ | = | | | |
| | 13 | ✓ | ✓ | ✓ | ✓ | ✓ | - | | | |
| | 14 | ✓ | ✓ | ✓ | ✓ | ✓ | = | | | |
| | 15 | ✓ | ✓ | ✓ | ✓ | ✓ | = | | | |
| | 16 | ✓ | ✓ | ✓ | ✓ | ✓ | = | | | |
| | 17 | ✓ | ✓ | ✓ | ✓ | ✓ | = | | | |
| | 18 | ✓ | ✓ | ✓ | ✓ | ✓ | = | | | |
| | 19 | ✓ | ✓ | ✓ | ✓ | ✓ | = | | | |
| | 20 | ✓ | | ✓ | ✓ | ✓ | = | | | |
| | 21 | ✓ | - | - | - | - | - | | | |
| | 22 | ✓ | - | - | - | - | - | | | |
| | 23 | ✓ | - | - | - | - | - | | | |
| | 24 | ✓ | - | - | - | - | - | | | |
| | 25 | ✓ | - | - | - | - | - | | | |
| | 26 | ✓ | ✓ | ✓ | ✓ | ✓ | - | | | |
| | 27 | ✓ | - | - | - | - | - | | | |
| | 28 | | ✓ | ✓ | ✓ | ✓ | = | | | |
| | 29 | | ✓ | ✓ | ✓ | ✓ | - | | | |
| | 30 | | ✓ | ✓ | ✓ | ✓ | = | | | |
| | 31 | | ✓ | ✓ | ✓ | ✓ | = | | | |
| | 32 | | ✓ | ✓ | ✓ | ✓ | = | | | |
| | 33 | | ✓ | ✓ | ✓ | ✓ | - | | | |
| | 34 | | ✓ | ✓ | ✓ | ✓ | = | | | |
| | 35 | | ✓ | ✓ | ✓ | ✓ | = | | | |

Part of Paper No. : 20110824

**BLUEPRINT 000028**

EAST Search History

EAST Search History (Prior Art)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|-------|------|-------------|-----|------------------|---------|-----------|
| L1 | 431228 | (switch or router) and (backup or redundant or secondary or substitute) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | OR | OFF | 2011/08/24 09:28 |
| S1 | 45911 | monitor$3 (status or state$1) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 08:12 |
| S2 | 206 | monitor$3 (status or state$1) near20 (absen$2 or silen$3) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 08:23 |
| S3 | 0 | monitor$3 (status or state$1) near20 (absen$2 or silen$3) same isochronous | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 08:42 |
| S4 | 0 | S2 and isochronous | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 08:44 |
| S5 | 7 | monitor$3 (status or state$1) near20 (absen$2 or silen$3) same (task$1 or action$1) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 08:44 |
| S6 | 2 | monitor$3 (status or state$1) near20 (absen$2 or silen$3) and (isochronous or IEEE "1394") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 08:46 |
| S7 | 20 | monitor$3 (status or state$1) near20 (absen$2 or silen$3) near20 (interval$1 or time or interval $1) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 08:47 |

BLUEPRINT 000029

| S8 | 19 | monitor$3 (status or state$1) near25 (absen$2 or silen$3) near10 (interval$1 or time or interval $1) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 08:51 |
|----|----|----|----|----|----|----|
| S9 | 22 | monitor$3 (status or state$1) near25 (absen$2 or silen$3) near10 (interval$1 or time or interval$1 or period$2) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 08:52 |
| S10 | 5 | monitor$3 (status or state$1) near25 (absen$2 or silen$3) near10 (interval$1 or time or interval$1 or period$2) near20 (device$1 or receiver $1) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 09:18 |
| S11 | 277 | isochronous near20 monitor$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 09:29 |
| S12 | 2 | isochronous near20 monitor$3 near20 (absen$2) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 09:30 |
| S13 | 21 | isochronous near20 monitor$3 near20 (state$1 or status) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 09:31 |
| S14 | 80 | isochronous same monitor$3 near20 (state$1 or status) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 10:03 |
| S15 | 9 | isochronous same monitor$3 near20 (state$1 or status) and ((absen$2) near10 (data$1 or packet$1 or frame $1)) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 10:04 |

**BLUEPRINT 000030**

file:///Cl/Documents%20and%20Settings/abrockman/My%2...589/EASTSearchHistory.10582589_AccessibleVersion.htm (2 of 8)8/24/2011 9:37:26 AM

| S16 | 355 | first switch$3 system $1 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 10:32 |
| S17 | 233 | S16 and ( second switch$3 system$1 or (backup or stand-by )near3 switch) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 10:34 |
| S18 | 79 | S17 and (active) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 10:34 |
| S19 | 45 | S18 and (monitor $3) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 10:40 |
| S20 | 14 | S19 and (deactivat $3) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 10:40 |
| S21 | 1 | S19 and (deactivat $3 same loss) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 10:40 |
| S22 | 95 | (backup or redundant) switch$3 system | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 10:58 |
| S23 | 99 | (backup or redundant) switch$3 system$1 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 10:58 |
| S24 | 0 | (backup or redundant) switch$3 system$1 NEAR20 ( monitor$3 adj2 (state$1 or status) near20 switch$3) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 10:59 |

**BLUEPRINT 000031**

| S25 | 3 | (backup or redundant) switch$3 system$1 NEAR20 ( monitor$3 NEAR20 (state$1 or status)) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 10:59 |
| S26 | 5 | (backup or redundant) switch$3 system$1 NEAR20 ( monitor$3 NEAR20 (active or inactive)) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 11:00 |
| S27 | 5 | (backup or redundant or secondary) switch$3 system$1 NEAR20 ( monitor$3 NEAR20 (active or inactive)) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 11:00 |
| S28 | 8 | (backup or redundant ) switch $3 system$1 NEAR20 ( monitor $3) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 11:01 |
| S29 | 0 | ("6081591" "5743599" "6327260" "6456626" "5915013" "6778491" "6711357" "6005841").pn. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 11:06 |
| S30 | 16 | ("6081591" "5743599" "6327260" "6456626" "5915013" "6778491" "6711357" "6005841").pn. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | OR | OFF | 2009/02/20 11:06 |
| S31 | 675537 | (backup or second $3 or substitut$4) near10 (switch or node$1 or router$1 or switch$3) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | OR | OFF | 2009/02/20 11:10 |
| S32 | 643 | S31 and (370/217,219.ccls.) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | OR | OFF | 2009/02/20 11:17 |

**BLUEPRINT 000032**

| S33 | 143 | S32 and (monitor $3) same (active or idle or stand-by or standby) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | OR | OFF | 2009/02/20 11:18 |
| S34 | 4 | S33 and hot$1stand $1by | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | OR | OFF | 2009/02/20 11:18 |
| S35 | 445 | S31 and 370/396,220.ccls. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | OR | OFF | 2009/02/20 11:20 |
| S36 | 51 | S35 and ( monitor $3 near10 (active or idle or stand$by)) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | OR | OFF | 2009/02/20 11:21 |
| S37 | 3 | S35 and (hot$1stand $1by) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | OR | OFF | 2009/02/20 11:21 |
| S39 | 10714 | (switch or router) and (backup or redundant or secondary or substitute) near20 (geographic$3 or location$1) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | OR | OFF | 2009/02/20 11:26 |
| S40 | 1062 | (switch or router) and (backup or redundant or secondary or substitute) near20 (geographic$3 or location$1) same (failure or fault) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | OR | OFF | 2009/02/20 11:26 |
| S41 | 99 | S40 and (monitor$3 near10 (active or idle or stand$1by)) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | OR | OFF | 2009/02/20 11:27 |
| S42 | 16 | S41 and "370".clas. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | OR | OFF | 2009/02/20 11:27 |

**BLUEPRINT 000033**

| S43 | 3813 | (fail$4 over$1 OR restor$4 OR fault $1over$1 OR switch $3over$1$1 OR recover$3) with ("2" or two) NEAR2 (sec $1 or second$2$1) SAME (fault$1 OR fail$4 OR error$1) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | OR | OFF | 2009/02/25 16:21 |
|---|---|---|---|---|---|---|
| S44 | 74 | (fail$4 over$1 OR restor$4 OR fault $1over$1 OR switch $3over$1$1 OR recover$3) with ("2" or two) NEAR2 (sec $1 or second$2$1) WITH call$3 SAME (fault$1 OR fail$4 OR error$1) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | OR | OFF | 2009/02/25 16:22 |
| S45 | 7 | (fail$4over$1 OR restor$4 OR fault $1over$1 OR switch $3over$1$1 OR recover$3) with ("2" or two) NEAR2 (sec $1 or second$2$1) WITH call$3 SAME (fault$1 OR fail$4 OR error$1) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | OR | OFF | 2009/02/25 16:23 |
| S46 | 63 | (fail$4over$1 OR restor$4 OR fault $1over$1 OR switch $3over$1$1 OR recover$3) with ("2" or two) NEAR2 (sec $1 or second$2$1) WITH call$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | OR | OFF | 2009/02/25 16:25 |
| S47 | 67 | ("2" OR two) NEAR2 (sec$1 OR second $1) WITH call$3 WITH drop$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | OR | OFF | 2009/02/25 16:26 |
| S48 | 326 | (fail$4over$1 OR restor$4 OR fault $1over$1 OR switch $3over$1$1 OR recover$3) with ("2" or two) NEAR2 (sec $1 or second$2$1) SAME (fault$1 OR fail$4 OR error$1) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | OR | OFF | 2009/02/26 08:27 |

**BLUEPRINT 000034**

| S49 | 28 | (IP or internet protocol) with (leas$3) messag$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/08/15 07:36 |
| S50 | 18 | S49 and (fail$5 or fault or error$1) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/08/15 07:36 |
| S51 | 2 | "5,103,463".pn. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/08/15 07:42 |
| S52 | 1 | S51 and clock | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/08/15 07:42 |
| S53 | 1 | S52 and generat$4 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/08/15 07:42 |
| S54 | 2 | "5,103,463".pn. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/08/15 09:07 |

## EAST Search History (Interference)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L2 | 186989 | (switch or router) and (backup or redundant or secondary or substitute) | USPAT; UPAD | OR | OFF | 2011/08/24 09:28 |
| L3 | 11272 | (IP or internet protocol) with (assign$4 or address$3 or leas$3) same (fail$5 or error or redundan$4) | USPAT; UPAD | OR | OFF | 2011/08/24 09:29 |

**BLUEPRINT 000035**

| L4 | 2606 | 3 and (clon$3 or redund$5 or identical) with (partner or system or switch$3) | USPAT; UPAD | OR | OFF | 2011/08/24 09:31 |
| L5 | 64 | 4 and (hot$1stand $1by) | USPAT; UPAD | OR | OFF | 2011/08/24 09:32 |

8/24/2011 9:36:46 AM
C:\ Documents and Settings\ abrockman\ My Documents\ EAST\ Workspaces\ 10582589.wsp

BLUEPRINT 000036

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 10582589 | LOBIG ET AL. |
| | **Examiner** | **Art Unit** |
| | ANGEL BROCKMAN | 2463 |

| ORIGINAL | | INTERNATIONAL CLASSIFICATION | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **CLASS** | **SUBCLASS** | **CLAIMED** | | | | | | **NON-CLAIMED** | | | |
| 370 | 442 | H | 0 | 4 | B | 7 / 212 (2006.01.01) | | | | | |
| **CROSS REFERENCE(S)** | | G | 0 | 1 | R | 31 / 08 (2006.01.01) | | | | | |

| CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 370 | 217 | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

| ☐ Claims renumbered in the same order as presented by applicant | | | | ☐ CPA | | ☐ T.D. | | ☐ R.1.47 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Final** | **Original** | **Final** | **Original** | **Final** | **Original** | **Final** | **Original** | **Final** | **Original** | **Final** | **Original** | **Final** | **Original** | **Final** | **Original** |
| 1 | 11 | | 27 | | | | | | | | | | | | |
| 2 | 12 | 11 | 28 | | | | | | | | | | | | |
| | 13 | | 29 | | | | | | | | | | | | |
| 3 | 14 | 12 | 30 | | | | | | | | | | | | |
| 4 | 15 | 13 | 31 | | | | | | | | | | | | |
| 5 | 16 | 14 | 32 | | | | | | | | | | | | |
| 6 | 17 | | 33 | | | | | | | | | | | | |
| 7 | 18 | 15 | 34 | | | | | | | | | | | | |
| 8 | 19 | 16 | 35 | | | | | | | | | | | | |
| 9 | 20 | | | | | | | | | | | | | | |
| | 21 | | | | | | | | | | | | | | |
| | 22 | | | | | | | | | | | | | | |
| | 23 | | | | | | | | | | | | | | |
| | 24 | | | | | | | | | | | | | | |
| | 25 | | | | | | | | | | | | | | |
| 10 | 26 | | | | | | | | | | | | | | |

| /ANGEL BROCKMAN/ Examiner.Art Unit 2463 | 08/24/2011 | **Total Claims Allowed:** | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 16 | |
| /DERRICK FERRIS/ Supervisory Patent Examiner.Art Unit 2463 | 08/29/2011 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 11 | 1 |

U.S. Patent and Trademark Office

Part of Paper No. 20110824

**BLUEPRINT 000037**

# SIEMENS

PATENT

Attorney Docket No. 2003P18829WOUS

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

| | | | | |
|---|---|---|---|---|
| Inventor: | N. Lobig et al. | ) | Confirmation No: | 2784 |
| | | ) | | |
| Serial No.: | 10/582,589 | ) | Examiner: | A. Brockman |
| | | ) | | |
| Filed: | June 9, 2006 | ) | Group Art Unit: | 2463 |

Title      METHOD FOR PROTECTION SWITCHING OF GEOGRAPHICALLY SEPARATE SWITCHING SYSTEMS

**Commissioner For Patents**
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

<u>APPELANTS BRIEF</u>

This Appeal Brief relates to an appeal from the rejection of claims 11-20, 26, and 28-35 in the Office Action mailed February 1, 2011, which reopens prosecution from Applicant's Appeal Brief filed on November 11, 2010.

**BLUEPRINT 000038**

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

I.    Real Party in Interest....................................................................................................... 3

II.   Related Appeals and Interferences.................................................................................. 3

III.  Status of Claims ............................................................................................................... 3

IV.   Status of Amendments ..................................................................................................... 3

V.    Summary of Claimed Subject Matter .............................................................................. 4
      A.   Claim 11                                                                                    4
      B.   Claim 28                                                                                    5
      C.   Claim 32                                                                                    6

VI.   Grounds for Rejection to be Reviewed ........................................................................... 7

VII.  Appellants' Argument ...................................................................................................... 7
      A.   The rejection of claims 11-15, 28 and 28-35 under 35 U.S.C. § 103(a) as being obvious
           over Blum et al. (US 5,974,114) in view of Guess et al (US 2003/0048746)             7
           a)   Independent claim 11                                                             8
           b)   Dependent claim 13                                                               9
           c)   Dependent claim 14                                                              10
      B.   The rejection of claims 16-17 and 19-20 under 35 U.S.C. § 103(a) as being obvious
           over Blum in view of Guess and Khan (US 2003/0152064).                               11
           a)   Dependent claim 19                                                              11
      C.   The rejection of claims 28-35  under 35 U.S.C. § 103(a) as being obvious over Blum in
           view of Guess and Rusmisel (US 7,535,827).                                           12
           a)   Independent claim 28                                                            12
           b)   Dependent claim 29                                                              12
           c)   Dependent claim 31                                                             12
           d)   Independent claim 32                                                            12

VIII. Conclusion ...................................................................................................................... 14

IX.   Claims Appendix ............................................................................................................ 15

X.    Evidence Appendix ........................................................................................................ 20

XI.   Related Procedings Appendix ........................................................................................ 21

**BLUEPRINT 000039**

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

I.     Real Party in Interest

The real party in interest is Siemens Aktiengesellschaft of Munich, Germany, the assignee of record.

II.    Related Appeals and Interferences

There are no known related appeals or interferences.

III.   Status of Claims

Claims 1-10, 21-25, and 27 have been canceled. Claims 11-20, 26 and 28-35 are rejected. No claims have been allowed. Claims 11-20, 26 and 28-35 are being appealed.

IV.    Status of Amendments

No amendment has been filed subsequent to the rejection.

BLUEPRINT 000040

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

V.    Summary of Claimed Subject Matter

Page and line numbers are in reference to Applicant's English Translation.

A.    Claim 11

Referring to the Figure and paragraphs page 1 lines 20-27; page 5 lines 2-15; page 11 lines 1-3, lines 16-21, and lines 28-34, independent claim 11 recites a method for protection switching of geographically separate switching systems ($S_1$) ($S_{1b}$) arranged in pairs, comprising:

providing a pair of switching systems ($S_1$) ($S_{1b}$) which are geographically separate and which supply a dedicated redundancy to each other, one of the pair of switching systems ($S_1$) is in an active operating state (act) and the other ($S_{1b}$) is in a hot-standby operating state (stb);

controlling the communication between the each of the pair switching system ($S_1$) ($S_{1b}$) and a monitoring unit (SC) in accordance with the an operating state of the respective switching system ($S_1$) ($S_{1b}$); and

when a loss of the communication to the switching system ($S_1$) in the active operating state (act) occurs:

activating, by the monitoring unit (SC), the switching system ($S_{1b}$) in the hot-standby operating state (stb) to be in the active operating state (act), and

deactivating, by the monitoring unit (SC), the switching system ($S_1$) with the communication loss to be in the hot-standby operating state (stb),

wherein when in the hot-standby operating state (stb), the respective switching system ($S_1$) ($S_{1b}$) is not active in terms of switching functions.

BLUEPRINT 000041

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

B. Claim 28

Referring to the Figure paragraphs page 1 lines 20-27; page 3 line 22 - page 4 line 2; page 5 lines 2-15; page 11 lines 1-3, lines 16-21, and lines 28-34, independent claim 28 recites a method for protection switching of geographically separate switching systems $(S_1)$ $(S_{1b})$ arranged in pairs, comprising:

providing a pair of switching systems $(S_1)$ $(S_{1b})$ which are geographically separate and which supply a dedicated redundancy to each other, one of the pair of switching systems $(S_1)$ is in an active operating state (act) and the other $(S_{1b})$ is in a hot-standby operating state (stb), each of the pair of switching systems $(S_1)$ $(S_{1b})$ comprises a database which is identical to each other, the database comprises only permanent data and semi-permanent data such that transient data pertaining to calls is excluded;

controlling the communication between the each of the pair switching system $(S_1)$ $(S_{1b})$ and a monitoring unit (SC) in accordance with the an operating state of the respective switching system $(S_1)$ $(S_{1b})$; and

when a loss of the communication to the switching system $(S_1)$ in the active operating state occurs (act):

activating, by the monitoring unit (SC), the switching system $(S_1)$ $(S_{1b})$ in the hot-standby operating state (stb) to be in the active operating state (act), and

deactivating, by the monitoring unit (SC), the switching system $(S_1)$ $(S_{1b})$ with the communication loss to be in the hot-standby operating state (stb),

wherein when in the hot-standby operating state (stb), the respective switching system $(S_1)$ $(S_{1b})$ is not active in terms of switching functions.

BLUEPRINT 000042

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

C.  Claim 32

Referring to the Figure paragraphs [page 1 lines 20-27; page 5 lines 2-15; page 11 lines 1-3, lines 16-21, and lines 28-34, independent claim 11 recites method for protection switching of geographically separate switching systems ($S_1$) ($S_{1b}$) arranged in pairs, comprising:

providing a pair of switching systems which are geographically separate and which supply a dedicated redundancy to each other, the pair of switching systems ($S_1$) ($S_{1b}$) comprise software identical to each other, one of the pair of switching systems ($S_1$) ($S_{1b}$) is in an active operating state (act) and the other ($S_{1b}$) is in a hot-standby operating state (stb);

providing a monitoring unit (SC) that communicates with the pair of switching systems($S_1$) ($S_{1b}$);

controlling the communication between the each of the pair switching system ($S_1$) ($S_{1b}$) and a monitoring unit (SC) in accordance with the an operating state of the respective switching system ($S_1$) ($S_{1b}$); and

when a loss of the communication to the switching system ($S_1$) in the active operating state (act) occurs:

activating, by the monitoring unit (SC), the switching system ($S_{1b}$) in the hot-standby operating state (stb) to be in the active operating state (act), and

deactivating, by the monitoring unit (SC), the switching system ($S_1$) with the communication loss to be in the hot-standby operating state (stb),

wherein every software update including patches is delivered in identical fashion to the first and redundant switching system($S_1$) ($S_{1b}$), and

wherein when in the hot-standby operating state (stb), the respective switching system ($S_1$) ($S_{1b}$) is not active in terms of switching functions.

BLUEPRINT 000043

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

## VI.   Grounds for Rejection to be Reviewed

The rejection of claims 11-20 and 28-35 under 35 U.S.C. § 103(a) as being obvious over Blum et al. (US 5,974,114) in view of Guess et al (US 2003/0048746).

The rejection of claims 16-17 and 19-20 under 35 U.S.C. § 103(a) as being obvious over Blum in view of Guess and Khan (US 2003/0152064).

The rejection of claims 28-35  under 35 U.S.C. § 103(a) as being obvious over Blum in view of Guess and Rusmisel (US 7,535,827).

## VII.   Appellants' Argument

Applicant has made two previous attempts for Appeal. In each case prosecution was reopened with new prior art cited. According to compact prosecution [*I]t is essential that patent applicants obtain a prompt yet complete examination of their applications* (MPEP 2106). *The first search should be such that the examiner need not ordinarily make a second search of the prior art, unless necessitated by amendments to the claims by the applicant in the first reply, except to check to determine whether any reference which would appear to be substantially more pertinent than the prior art cited in the first Office action has become available subsequent to the initial prior art search* (MPEP 904). Applicant respectfully submit that claims have neither been amended nor the newly cited prior become available since the initial prior art search.

A.   The rejection of claims 11-15, 28 and 28-35 under 35 U.S.C. § 103(a) as being obvious over Blum et al. (US 5,974,114) in view of Guess et al (US 2003/0048746)

The Examiner has indicated that claims 28-35 have been rejected as being obvious over Blum in view of Guess. However, there are no rejections in this section regarding these claims. Applicant respectfully submit that this was inadvertent and these claims were rejected as being obvious over Blum in view of Guess and Rusmisel as shown on page 7 of the rejection.

BLUEPRINT 000044

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

a)              Independent claim 11

Applicant's claim 11 includes the limitations:

> when a loss of the communication to the switching system in the
> active operating state occurs:
> activating, by the monitoring unit, the switching system in the hot-
> standby operating state to be in the active operating state, and
> deactivating, by the monitoring unit, the switching system with the
> communication loss to be in the hot-standby operating state.

Applicant's switchover takes place when a loss of communication to the switching system in the active operating state occurs. In contrast Blum teaches that not only does the monitoring processes (HAD or MON) have to <u>detect a failure that affects call processing capabilities</u> of the active call control computer, they also register to a vote to switch with the standby call control computer and only <u>upon receiving two such votes</u> does the switchover occur (see e.g., col. 4 lines 43-51).

Moreover, Applicant's <u>monitoring unit</u> is responsible for both <u>activating</u> the switching system in the hot-standby operating state to be in the active operating state and <u>deactivating</u> the switching system with the communication loss. In contrast, Blum teaches that the switching system switched from the standby operating state deactivates the formally active switching system.

For at least the reasons above, Applicant respectfully submits that claim 11 is patentable as well as claims 12-20, and 26, which depend thereon.

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

b)         Dependent claim 13

Applicant's claim 13 recites:

> periodically sending an <u>IP lease</u> request to the monitoring unit by a packet-based interface of the switching system in the hot-standby operating state, the packet-based interface is in an inactive state.

Consistent with the specification, plain meaning and the interpretation of one skilled in the art, an IP addresses may be dynamically assigned. An IP lease provides this assignment (see e.g., page 9 lines 16-19 regarding BOOT page 10 lines 2-3 regarding DHCP, e.g., page 11 lines 20-21,). In contrast, Blum teaches to send StateQueries to the monitoring processes (MONs) in order to receive a state of the device (see e.g., Blum col 14 lines 43-66). Applicant respectfully submits that one skilled in the art would not reasonably interpret Blum's StateQueries as Applicant's IP lease. Applicant further submits that neither Blum or Guess alone or in combination teach or suggest sending an IP lease, let alone sending an IP lease to the monitoring unit by a packet-based interface of the switching system in the hot-standby operating state.

Furthermore, neither Blum or Guess alone or in combination teach that the packet-based interface is in an inactive state which would be understood by those skilled in the art as not having leased IP address and therefore unable to receive call traffic (not active in terms of switching). Applicant further submits that this is not a mere design choice but facilitates the switching system in the hot-standby operating state to not be active in terms of switching functions.

For at least the reasons above, Applicant respectfully submits that claim 13 is patentable as well as claims 14-16, which depend thereon.

BLUEPRINT 000046

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

c)              Dependent claim 14

Applicant's claim 14 recites:

> the monitoring unit <u>does not respond</u> to the request while the switching system is in the hot-standby operating state

Applicant's monitoring unit unconditionally does not respond to the request (IP lease). Not responding facilitates keeping the interface in the hot-standby operating state to remain not active in terms of switching functions by not responding with an IP address. In contrast, Blum teaches to send a State Query to determine the state of the switching system. Blum further teaches that <u>when</u> a response to a StateQueries request is not received that a determination is made if a communication problem exists. Applicant further submits that there would be no motivation to modify Blum to unconditionally not respond to the StateQueries since this would always be interpreted as a potential communication error.

> If the proposed modification or combination of the prior art would change the principle of operation of the prior art invention being modified, then the teachings of the references are not sufficient to render the claims *prima facie* obvious (MPEP 2143 section VI).

For at least the reasons above, Applicant respectfully submits that claim 14.

BLUEPRINT 000047

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

B.  The rejection of claims 16-17 and 19-20 under 35 U.S.C. § 103(a) as being obvious over Blum in view of Guess and Khan (US 2003/0152064).

a)              Dependent claim 19

Applicant's claim 19 recites:

> determining, by the monitoring unit, a fault condition <u>when</u> an acknowledgement is not received from the packet-based interface in the active state; and sending a IP lease response to a packet-based interface, which is inactive, of the switching system in the hot-standby operating state.

The Examiner admits that Blum and Guess do not disclose an IP message and turns to Khan to supply this missing limitation. However, as Applicant has noted before in regards to claim 13 that a IP lease assigns an IP address. The Examiner has merely found a message used in a Voice over IP (VoIP) call and indicates that includes an IP address in the response. More specifically, the Examiner has found and an IAM message (Khan ¶[0034]) as the IP lease response. Applicant respectfully disagrees with the Examiner's interpretation at least for the following reasons:

- An IAM message is based on ISUP which for circuit based switching. There is no indication that the ISUP message includes and IP address.
- Applicant's IP lease message is a <u>response</u> message; in contrast, an IAM message is a <u>request</u> message.
- Applicant is directed to a switchover of the switching systems when a fault condition is detected from not receiving an acknowledgement from a monitoring message. When the fault is detected, the IP lease response is sent to the inactive packet based interface in order to activate the interface. In contrast, an IAM message is sent to initial a call between two subscribers.

For at least the reasons above, Applicant respectfully submits that claim 19 is patentable as well as claim 20, which depends thereon.

BLUEPRINT 000048

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

C. <u>The rejection of claims 28-35 under 35 U.S.C. § 103(a) as being obvious over Blum in view of Guess and Rusmisel (US 7,535,827).</u>

a)         Independent claim 28

Applicant respectfully submits that for at least the reasons above for independent claim 11, independent claim 29 is not patentable. Furthermore, claim 28 includes the limitations:

> each of the pair of switching systems comprises a database which is identical to each other, the database comprises only permanent data and semi-permanent data such that transient data pertaining to calls is **excluded**

In contrast Blum teaches the data pertaining to calls is include (see e.g., col. 4 lines 52-58). Applicant respectfully submits that modifying Blum so that the data pertaining to the calls is excluded would change a principle of operation of Blum and therefore there would be no motivation to make said modification.

For at least the reasons above, Applicant respectfully submits that claim 28 is patentable as well as claims 29-31, which depend thereon.

b)         Dependent claim 29

Claim 28 includes limitations similar to limitations of claims 13 and 14. For at least the reasons above for claims 13 and 14, Applicant respectfully submits that claim 29 is patentable as well as claim 30, which depends thereon.

c)         Dependent claim 31

Claim 31 includes limitations similar to limitations of claim 19. For at least the reasons above for claims 19, Applicant respectfully submits that claim 31 is patentable.

d)         Independent claim 32

For at least the reasons above for claim 11, Applicant respectfully submits that claim 32 is patentable. Further more, claim 32 includes the limitation:

> Every software update including patches is delivered in identical fashion to the first and redundant switching system.

**BLUEPRINT 000049**

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

The Examiner states "through software and hardware implementation". However, Applicant is not claiming a software implementation. Even if Rumisel teaches that the database are kept identical this is not the same as teaching that the software updates are identical. Furthermore, on skilled in the art would understand that patches are to fix or enhance the software. The Examiner has failed to show where Rumisel teaches or suggest that a patch are delivered to the switching systems let alone delivered in an identical fashion

For at least the reasons above, Applicant respectfully submits that claim 32 is patentable as well as claims 33-35, which depend thereon.

BLUEPRINT 000050

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

VIII. <u>Conclusion</u>

For the foregoing reasons, it is respectfully submitted that the rejections set forth in the outstanding Office Action are inapplicable to the present claims. The honorable Board is therefore respectfully requested to reverse the rejection of the Examiner and to remand the application to the Examiner with instructions to allow the pending claims.  Please grant any extensions of time required to enter this paper.  Please charge any appropriate fees due in connection with this paper or credit any overpayments to Deposit Acct. No. 19-2179.

Respectfully submitted,

Dated: June 6, 2011                              By:    /Janet D. Hood/

Janet D. Hood
Registration No. 61,142
(407) 736-4234

Siemens Corporation
Intellectual Property Department
170 Wood Avenue South
Iselin, New Jersey 08830

BLUEPRINT 000051

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

IX.  <u>Claims Appendix</u>

11.     A method for protection switching of geographically separate switching systems arranged in pairs, comprising:

providing a pair of switching systems which are geographically separate and which supply a dedicated redundancy to each other, one of the pair of switching systems is in an active operating state and the other is in a hot-standby operating state;

controlling the communication between the each of the pair switching system and a monitoring unit in accordance with the an operating state of the respective switching system; and

when a loss of the communication to the switching system in the active operating state occurs:

activating, by the monitoring unit, the switching system in the hot-standby operating state to be in the active operating state, and

deactivating, by the monitoring unit, the switching system with the communication loss to be in the hot-standby operating state,

wherein when in the hot-standby operating state, the respective switching system is not active in terms of switching functions .

12.     The method as claimed in claim 11, wherein an operating state selected from the group consisting of active operating state and hot-standby state has a pre-definable number of packet-based interfaces.

13.     The method as claimed in claim 11, further comprising periodically sending an IP lease request to the monitoring unit by a packet-based interface of the switching system in the hot-standby operating state, the packet-based interface is in an inactive state.

14.     The method as claimed in claim 13, wherein the monitoring unit does not respond to the request while the switching system is in the hot-standby operating state.

15.     The method as claimed in claim 13, further comprising changing the packet-based interface from the inactive state to an active state in response to receiving an IP lease response.

BLUEPRINT 000052

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

16.     The method as claimed in claim 15, wherein the IP lease response from the monitoring unit contains an IP address leased to the requesting packet-based interface.

17.     The method as claimed in claim 11, further comprising suppressing an sending IP lease request to the monitoring unit by a packet-based interface of the switching system in the active operating state, the packet-based interface is in an active operating state.

18.     The method as claimed in claim 11, further comprising:

receiving a monitoring message from the monitoring unit by a packet-based  interface of the switching system in the active operating state, the packet-based interface is in an active state; and

acknowledging the message by the packet-based interface.

19.     The method as claimed in claim 18, further comprising:

determining, by the monitoring unit, a fault condition when an acknowledgement is not received from the packet-based interface in the active state; and

sending a IP lease response to a packet-based interface, which is inactive, of the switching system in the hot-standby operating state.

20.     The method as claimed in claim 19, further comprising changing the packet-based interface from the inactive state to an active state in response to receiving the IP response.

26.     The method as claimed in claim 11,

wherein the operating state of the switching system having the communication loss changes to a hot-standby operation state and remains defined as the hot-standby switching system until a new fault situation forces a new switchover.

BLUEPRINT 000053

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

28.     A method for protection switching of geographically separate switching systems arranged in pairs, comprising:

providing a pair of switching systems which are geographically separate and which supply a dedicated redundancy to each other, one of the pair of switching systems is in an active operating state and the other is in a hot-standby operating state, each of the pair of switching systems comprises a database which is identical to each other, the database comprises only permanent data and semi-permanent data such that transient data pertaining to calls is excluded;

controlling the communication between the each of the pair switching system and a monitoring unit in accordance with the an operating state of the respective switching system; and

when a loss of the communication to the switching system in the active operating state occurs:

activating, by the monitoring unit, the switching system in the hot-standby operating state to be in the active operating state, and

deactivating, by the monitoring unit, the switching system with the communication loss to be in the hot-standby operating state,

wherein when in the hot-standby operating state, the respective switching system is not active in terms of switching functions.

29.     The method as claimed in claim 28, further comprising:

periodically sending an IP lease request to the monitoring unit by a packet-based interface of the switching system in the hot-standby operating state, the packet-based interface is in an inactive state; and

ignoring the IP lease request by the monitoring unit while the switching system is in the hot-standby operating state.

30.     The method as claimed in claim 29, further comprising changing the packet-based interface from the inactive state to an active state in response to receiving an IP lease response, the IP lease response from the monitoring unit contains an IP address leased to the requesting packet-based interface.

BLUEPRINT 000054

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

31.     The method as claimed in claim 28, further comprising:

receiving a monitoring message from the monitoring unit by a packet-based interface of the switching system in the active operating state, the packet-based interface in an active state;

sending a response by the switching system in the active operating state via the packet-based interface to the monitoring message in order to acknowledge the monitoring message;

determining by the monitoring unit a fault condition when an acknowledgement is not received from the packet-based  interface in the active state; and

sending a IP lease response to a packet-based interface, which is inactive, of the switching system in the hot-standby operating state.


32.     A method for protection switching of geographically separate switching systems arranged in pairs, comprising:

providing a pair of switching systems which are geographically separate and which supply a dedicated redundancy to each other, the pair of switching systems comprise software identical to each other, one of the pair of switching systems is in an active operating state and the other is in a hot-standby operating state;

providing a monitoring unit that communicates with the pair of switching systems;

controlling the communication between the each of the pair switching system and a monitoring unit in accordance with the an operating state of the respective switching system; and

when a loss of the communication to the switching system in the active operating state occurs:

activating, by the monitoring unit, the switching system in the hot-standby operating state to be in the active operating state, and

deactivating, by the monitoring unit, the switching system with the communication loss to be in the hot-standby operating state,

wherein every software update including patches is delivered in identical fashion to the first and redundant switching system, and

wherein when in the hot-standby operating state, the respective switching system is not active in terms of switching functions.

BLUEPRINT 000055

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

33.    The method as claimed in claim 32, further comprising:

periodically sending an IP lease request to the monitoring unit by a packet-based interface of the switching system in the hot-standby operating state, the packet-based interface is in an inactive state; and

ignoring the IP lease request by the monitoring unit while the switching system is in the hot-standby operating state.

34.    The method as claimed in claim 33, further comprising changing the packet-based interface from the inactive state to an active state in response to receiving an IP lease response, the IP lease response from the monitoring unit contains an IP address leased to the requesting packet-based interface.

35.    The method as claimed in claim 32, further comprising:

receiving a monitoring message from the monitoring unit by a packet-based interface of the switching system in the active operating state, the packet-based interface in an active state;

sending a response by the switching system in the active operating state via the packet-based interface to the monitoring message in order to acknowledge the monitoring message;

determining by the monitoring unit a fault condition when an acknowledgement is not received from the packet-based  interface in the active state; and

sending a IP lease response to a packet-based interface, which is inactive, of the switching system in the hot-standby operating state.

BLUEPRINT 000056

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

X.   <u>Evidence Appendix</u>

None

**BLUEPRINT 000057**

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS


XI.   <u>Related Procedings Appendix</u>

None

BLUEPRINT 000058

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 10235057 |
| **Application Number:** | 10582589 |
| **International Application Number:** | |
| **Confirmation Number:** | 2784 |
| **Title of Invention:** | Method for protection switching of geographically separate switching systems |
| **First Named Inventor/Applicant Name:** | Norbert Lobig |
| **Customer Number:** | 22116 |
| **Filer:** | Janet D. Hood |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | 2003P18829WOUS |
| **Receipt Date:** | 06-JUN-2011 |
| **Filing Date:** | 09-JUN-2006 |
| **Time Stamp:** | 08:31:50 |
| **Application Type:** | U.S. National Stage under 35 USC 371 |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Appeal Brief Filed | 03P18829WOUS_3rdAppealBrief.pdf | 187727<br>b19e35b89350b77a447197cb391c1e66a5ae8c2f | no | 21 |

**Warnings:**

**Information:**

BLUEPRINT 000059

Total Files Size (in bytes): 187727

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

BLUEPRINT 000060

PTO/SB/31 (09-04)
Approved for use through 07/31/2006. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| NOTICE OF APPEAL FROM THE EXAMINER TO THE BOARD OF PATENT APPEALS AND INTERFERENCES | Docket Number (Optional)<br>**2003P18829WOUS** |
|---|---|

| I hereby certify that this correspondence is being deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to "Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450" [37 CFR 1.8(a)] on filed on-line June 1, 2011.<br><br>Signature _____ /ANN HICKEY/ _____<br><br>Typed or printed<br>name _____ ANN HICKEY _____ | In re Application of<br>**NORBERT LÖBIG** |
|---|---|

| | Application Number<br>**10/582,589** | Filed<br>**JUNE 9, 2006** |
|---|---|---|

| For   METHOD FOR PROTECTION SWITCHING OF GEOGRAPHICALLY SEPARTE SWITCHING SYSTEMS | | |
|---|---|---|
| Art Unit<br>**2463** | Examiner<br>**ANGEL T. BROCKMAN** | |

Applicant hereby **appeals** to the Board of Patent Appeals and Interferences from the decision of the examiner.

The fee for this Notice of Appeal is (37 CFR 41.20(b)(1))

   **\*$540 WAS PREVIOUSLY PAID ON MARCH 15, 2010 FOR EARLIER FILED NTC OF APPEAL**     $ _____

☐ Applicant claims small entity status.  See 37 CFR 1.27. Therefore, the fee shown above is reduced
   by half, and the resulting fee is:                                                    $ _____

☐ A check in the amount of the fee is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The Director has already been authorized to charge fees in this application to a Deposit Account.
   I have enclosed a duplicate copy of this sheet.

☒ The Director is hereby authorized to charge any fees which may be required, or credit any overpayment
   to Deposit Account No. 19-2179 . I have enclosed a duplicate copy of this sheet.

☐ A petition for an extension of time under 37 CFR 1.136(a) (PTO/SB/22) is enclosed.

**WARNING: Information on this form may become public.  Credit card information should not be included on this form.  Provide credit card information and authorization on PTO-2038.**

I am the                                                     **/JANET D. HOOD/**

☐ applicant/inventor.                                        _____
                                                                      Signature

☐ assignee of record of the entire interest.                 **JANET D. HOOD**
   See 37 CFR 3.71.  Statement under 37 CFR 3.73(b) is enclosed.    Typed or printed name
   (Form PTO/SB/96)

☒ attorney or agent of record.                               **407-736-4234**

   Registration number  61,142 .                                Telephone number

☐ attorney or agent acting under 37 CFR 1.34.

   Registration number if acting under 37 CFR 1.34. _____     **JUNE 1, 2011**
                                                                      Date

NOTE: Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required. Submit multiple forms if more than one signature is required, see below*.

| ☐ *Total of _____ forms are submitted. |
|---|

This collection of information is required by 37 CFR 41.31. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11, 1.14 and 41.6. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

**BLUEPRINT 000061**

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 10582589 |
| **Filing Date:** | 09-Jun-2006 |
| **Title of Invention:** | Method for protection switching of geographically separate switching systems |
| **First Named Inventor/Applicant Name:** | Norbert Lobig |
| **Filer:** | Janet D. Hood/Ann Hickey |
| **Attorney Docket Number:** | 2003P18829WOUS |

Filed as Large Entity

## U.S. National Stage under 35 USC 371 Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| Extension - 1 month with $0 paid | 1251 | 1 | 130 | 130 |

BLUEPRINT 000062

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | **130** |

**BLUEPRINT 000063**

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 10203010 |
| **Application Number:** | 10582589 |
| **International Application Number:** | |
| **Confirmation Number:** | 2784 |
| **Title of Invention:** | Method for protection switching of geographically separate switching systems |
| **First Named Inventor/Applicant Name:** | Norbert Lobig |
| **Customer Number:** | 22116 |
| **Filer:** | Janet D. Hood/Ann Hickey |
| **Filer Authorized By:** | Janet D. Hood |
| **Attorney Docket Number:** | 2003P18829WOUS |
| **Receipt Date:** | 01-JUN-2011 |
| **Filing Date:** | 09-JUN-2006 |
| **Time Stamp:** | 09:30:42 |
| **Application Type:** | U.S. National Stage under 35 USC 371 |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Deposit Account |
| Payment was successfully received in RAM | $130 |
| RAM confirmation Number | 9185 |
| Deposit Account | 192179 |
| Authorized User | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|

BLUEPRINT-000064

| 1 | Notice of Appeal Filed | 2003P18832WOUSThirdNtcOfAppealPTOSB31FiledJun012011.pdf | 119804 | no | 1 |
| | | | 9dbf0eb728fe05e584e88f9099e15f4c35fa3bae | | |

**Warnings:**

**Information:**

| 2 | Fee Worksheet (PTO-875) | fee-info.pdf | 30425 | no | 2 |
| | | | 28bbc6e477221af93fdbdb1b308ec878cca1ef1c | | |

**Warnings:**

**Information:**

| | **Total Files Size (in bytes):** | 150229 |
|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

BLUEPRINT 000065

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/582,589 | 06/09/2006 | Norbert Lobig | 2003P18829WOUS | 2784 |

22116        7590        02/01/2011
SIEMENS CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
170 WOOD AVENUE SOUTH
ISELIN, NJ 08830

| EXAMINER |
|---|
| BROCKMAN, ANGEL T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2463 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 02/01/2011 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

**BLUEPRINT 000066**

| *Office Action Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 10/582,589 | LOBIG ET AL. |
| | Examiner | Art Unit | |
| | ANGEL BROCKMAN | 2463 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE *3* MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a).  In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment.  See 37 CFR 1.704(b).

**Status**

1)☒  Responsive to communication(s) filed on *11 November 2010*.

2a)☐ This action is **FINAL**.          2b)☒ This action is non-final.

3)☐  Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒  Claim(s) *11-20,26 and 28-35* is/are pending in the application.

   4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐  Claim(s) _____ is/are allowed.

6)☒  Claim(s) *11-20,26 and 28-35* is/are rejected.

7)☐  Claim(s) _____ is/are objected to.

8)☐  Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐  The specification is objected to by the Examiner.

10)☒  The drawing(s) filed on *14 May 2010* is/are:  a)☒ accepted or b)☐ objected to by the Examiner.

   Applicant may not request that any objection to the drawing(s) be held in abeyance.  See 37 CFR 1.85(a).

   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐  The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐  Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   a)☐ All   b)☐ Some * c)☐ None of:

   1.☐  Certified copies of the priority documents have been received.

   2.☐  Certified copies of the priority documents have been received in Application No. _____.

   3.☐  Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

   * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☐ Information Disclosure Statement(s) (PTO/SB/08)
   Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application

6)☐ Other: _____.

BLUEPRINT 000067

Application/Control Number: 10/582,589                                      Page 2
Art Unit: 2463

## DETAILED ACTION

1.      In view of the Appeal Brief  filed on November 11, 2010  PROSECUTION IS HEREBY

REOPENED.  A new grounds of rejection has been made and is set forth below.

        To avoid abandonment of the application, appellant must exercise one of the following

two options:

        (1) file a reply under 37 CFR 1.111 (if this Office action is non-final) or a reply under 37

CFR 1.113 (if this Office action is final); or,

        (2) initiate a new appeal by filing a notice of appeal under 37 CFR 41.31 followed by an

appeal brief under 37 CFR 41.37.  The previously paid notice of appeal fee and appeal brief fee

can be applied to the new appeal.  If, however, the appeal fees set forth in 37 CFR 41.20 have

been increased since they were previously paid, then appellant must pay the difference between

the increased fees and the amount previously paid.

        A Supervisory Patent Examiner (SPE) has approved of reopening prosecution by signing

below:

        /Derrick W Ferris/

        Supervisory Patent Examiner, Art Unit 2463


## Claim Rejections - 35 USC § 103

1.      This application currently names joint inventors.  In considering patentability of the

claims under 35 U.S.C. 103(a), the examiner presumes that the subject matter of the various

claims was commonly owned at the time any inventions covered therein were made absent any

evidence to the contrary.  Applicant is advised of the obligation under 37 CFR 1.56 to point out

Application/Control Number: 10/582,589                                    Page 3

Art Unit: 2463

the inventor and invention dates of each claim that was not commonly owned at the time a later

invention was made in order for the examiner to consider the applicability of 35 U.S.C. 103(c)

and potential 35 U.S.C. 102(e), (f) or (g) prior art under 35 U.S.C. 103(a).

2.      The factual inquiries set forth in Graham **v.** John Deere Co., 383 U.S. 1, 148 USPQ 459

(1966), that are applied for establishing a background for determining obviousness under 35

U.S.C. 103(a) are summarized as follows:

> 1.   Determining the scope and contents of the prior art.
> 2.   Ascertaining the differences between the prior art and the claims at issue.
> 3.   Resolving the level of ordinary skill in the pertinent art.
> 4.   Considering objective evidence present in the application indicating obviousness
>      or nonobviousness.

3.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in
> section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are
> such that the subject matter as a whole would have been obvious at the time the invention was made to a person
> having ordinary skill in the art to which said subject matter pertains.  Patentability shall not be negatived by the
> manner in which the invention was made.

4.      Claims 11-15, 18,  and 28-35are rejected under 35 U.S.C. 103(a) as being unpatentable

over Blum et al.(US 5,974,114, hereinafter Blum)in view of Guess et al.(US 2003/0048746 A1,

hereinafter Guess).

Regarding **claim 11**,  Blum discloses providing a pair of switching systems which are

geographically separate and which supply a dedicated redundancy to each other, one of the pair

of switching system is in an active operating state, the other is in a standby operating state (col 3,

lines 35-45) ; controlling the communication between each of the pair system  and the

monitoring unit  in accordance with the; controlling  the communication  between the first

switching system and the monitor  (col. 3, lines 45-51); when a loss of the communication to the

**BLUEPRINT 000069**

Application/Control Number: 10/582,589                                          Page 4
Art Unit: 2463

first switching system occurs: activating by the monitoring unit the switching system in the

standby operating state to be in the active operating state, and deactivating the first switching

system by the monitor (col. 3, lines 45-51). Blum does not explicitly disclose the standby state is

hot-standby. Guess discloses a hot-standby operating state (¶[0075], figure 6, wherein the

standby switch can be located separately) and  wherein when in the hot-standby operating state

the respective switching system is not active in terms of switching functions (¶[0080],¶[0088],

wherein the switch in hot-standby mode doesn't perform switching functions). Thus, it would

have been obvious to one of ordinary skill in the art at the time of invention to utilize the active

and hot-standby operating states as disclosed by Guess along with the system of Blum. The hot-

standby and active modes can be implemented into the system of Blum through software and

hardware implementation. The motivation for utilizing the active and hot-standby operating

states as disclosed by Guess along with the system of Blum is to increase the efficiency of the

system in the event of a failure.

Regarding **claim 12,**Blum discloses the operating state from the group consisting of

active and hot-standby has a pre-definable number of packet-base interfaces (col. 14, lines 55-

62).

Regarding  **claim13**, Blum discloses periodically sending IP lease requests to the monitor

by a packet-based interface of the switching system in the hot-standby operating state, the packet

based interfaces as in an inactive state(col.14, lines 45-57, col. 17 table 1- col 18 table 2).

Regarding **claim 14**, Blum discloses the monitor does not respond to the requests  while

the switching system is in the hot-standby state (col. 14, lines 45-57).

Application/Control Number: 10/582,589                                        Page 5
Art Unit: 2463

Regarding **claim 15,** Blum discloses changing the packet-based interface from an inactive

state to an active state in response to receiving an IP lease response(col.14, lines 45-57, col. 17

table 1).

Regarding **claim 18**, Blum discloses receiving a monitoring message from the monitoring

unit by a packet-based interface in the active state, the packet-based interface is in an active state

and acknowledging the message by the packet-based interface (col. 14, lines 44-62).


5.     Claims 16-17 and 19-20 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Blum et al.(US 5,974,114, hereinafter Blum)and Guess et al.(US 2003/0048746 A1, hereinafter

Guess) in view of Khan (US 2003/01562064, hereinafter Khan).

Regarding **claim 16,** Blum and Guess discloses all subject matter of the claimed

invention with the exception of the response from the monitor contains an IP address f the

requesting packet-based interface. Khan discloses the response from the monitor contains an IP

address f the requesting packet-based interface (¶[0034], where the IP address is included in the

IAM message, figure 3) . Thus it would have been obvious to one of ordinary skill in the art at

the time of invention to utilize the IP address and protocol as disclosed by Khan along with the

system of Blum and Guess. The IP address and protocol can be implemented through software

implementation such that the processor implements IP addresses. The motivation for utilizing the

IP address and protocol as disclosed by Khan along with the system of Blum and Guess is to

increase the efficiency of the system by utilizing a different protocol.

Application/Control Number: 10/582,589                                                        Page 6
Art Unit: 2463

Regarding **claim 17**, Blum discloses suppressing sending lease requests to the monitoring unit by a packet-based interface of the switching system in the active operating state, the packet-based interface in an active operating state (col. 14, lines 45-57). Blum and Guess do not discloses the request is IP. Khan discloses IP messaging (¶[0034], where the IP address is included in the IAM message, figure 3) . Thus it would have been obvious to one of ordinary skill in the art at the time of invention to utilize the IP message as disclosed by Khan along with the system of Blum and Guess. The IP message can be implemented through software implementation such that the processor implements IP message. The motivation for utilizing the IP messageas disclosed by Khan along with the system of Blum and Guess is to increase the efficiency of the system by utilizing a different protocol.


Regarding **claim 19,** Blum discloses determining by the monitoring unit a fault condition when an acknowledgement is not received form the packet-based interface in the active state; and sending an IP lease response to the switching system in the hot-standby operating state(col.14, lines 44-62). Blum and Guess do not discloses the request is IP. Khan discloses IP messaging (¶[0034], where the IP address is included in the IAM message, figure 3) . Thus it would have been obvious to one of ordinary skill in the art at the time of invention to utilize the IP message as disclosed by Khan along with the system of Blum and Guess. The IP message can be implemented through software implementation such that the processor implements IP message. The motivation for utilizing the IP messageas disclosed by Khan along with the system of Blum and Guess is to increase the efficiency of the system by utilizing a different protocol.

**BLUEPRINT 000072**

Application/Control Number: 10/582,589                                    Page 7
Art Unit: 2463

   Regarding **claim 20,**  Blum discloses changing the packet-based interface from an

inactive state to an active state in response to receiving an IP response (col. 14, lines 55-62).


4.     Claims 28-35  are rejected under 35 U.S.C. 103 (a)  as being unpatentable over Blum  and

Guess et al.(US 2003/0048746 A1, hereinafter Guess) in view of Rusmisel et al.(US 7,535,827

B2, hereinafter Rusmisel)

   Regarding **claims 28 and 32**, Blum discloses providing a pair of switching systems

which are geographically separate and which supply a dedicated redundancy to each other, one

of the pair of switching system is in an active operating state, the other is in a standby operating

state (col 3, lines 35-45) ; controlling the communication between each of the pair system  and

the monitoring unit  in accordance with the; controlling  the communication  between the first

switching system and the monitor  (col. 3, lines 45-51); when a loss of the communication to the

first switching system occurs: activating by the monitoring unit the switching system in the

standby operating state to be in the active operating state, and deactivating the first switching

system by the monitor (col. 3, lines 45-51). Blum does not explicitly disclose the standby state is

hot-standby. Guess discloses a hot-standby operating state (¶[0075], figure 6, wherein the

standby switch can be located separately) and  wherein when in the hot-standby operating state

the respective switching system is not active in terms of switching functions (¶[0080],¶[0088],

wherein the switch in hot-standby mode doesn't perform switching functions). Blum and Guess

disclose all subject matter of the claimed invention with the exception of wherein each of the pair

of switching systems comprises a database which is identical to each other, the database

comprises only permanent data and semi-permanent data such that transient data pertaining to

Application/Control Number: 10/582,589                                                         Page 8
Art Unit: 2463

calls is excluded .Rusmisel discloses wherein each of the pair of switching systems comprises a

database which is identical to each other, the database comprises only permanent data and semi-

permanent data such that transient data pertaining to calls is excluded (column 3, lines 1-18,

figure 4, wherein the hot-standby system is in synchrony with the active system. Thus, it would

have been obvious to one of ordinary skill in the art at the time of invention to utilize the active

and hot-standby operating states as disclosed by Guess along with the system of Blum. ). Thus, it

would have been obvious to one of ordinary skill in the art at the time of invention to utilize the

identical database in the active and hot-standby operating states as disclosed by Rusmisel along

with the system of Blum and Guess The hot-standby and active modes can be implemented into

the system of Blum through software and hardware implementation such that the servers

function as the control cards as disclosed by Guess. The identical database in the hot-standby and

active modes can be implemented into the system of Blum and Guess through software and

hardware implementation such that each switch includes the database.The motivation for

utilizing the active and hot-standby operating states as disclosed by Guess along with the system

of Blum is to increase the efficiency of the system in the event of a failure.The motivation for

utilizing the identical database in the active and hot-standby operating states as disclosed by

Rusmisel along with the system of Blum and Guess is to increase the efficiency of the system in

the event of a failure.

Regarding claim **29 and 33**, Blum discloses periodically sending IP lease requests to the

monitor by a packet-based interface of the switching system in the hot-standby operating state,

the packet based interfaces as in an inactive state(col.14, lines 45-57, col. 17 table 1- col 18 table

2).

**BLUEPRINT 000074**

Application/Control Number: 10/582,589                                        Page 9
Art Unit: 2463

Regarding **claims 30 and 34,** Blum discloses changing the packet-based interface from an inactive state to an active state in response to receiving an IP lease response(col.14, lines 45-57, col. 17 table 1).

Regarding **claims 31 and 35,** Blum discloses receiving a monitoring message from the monitoring unit by a packet-based interface of the switching system in the active operating state, the packet based interface in an active state(col.4, lines 25-40) sending a response by the switching system in the active operating state via the packet-based interface to the monitoring message in order to acknowledge the monitoring message (column 14, lines 55-62), determining by the monitoring unit a fault condition when an acknowledgement is not received from the packet-based interface in the active state(col. 14, lines 44-62); and sending a lease response to a packet-based interface, which is inactive of the switching system in the hot-standby operating state (col. 14, lines 44-62).

5.      Claim 26 is rejected under 35 U.S.C. 103 (a)  as being unpatentable over Blum (US 5,974,114, hereinafter Blum) and Guess et al.(US 2003/0048746 A1,hereinafter Guess)   in view of Kampe et al.(US 2002/0007468, hereinafter Kampe).

Regarding **claim 26,**  Blum and Guess discloses  all subject matter of the claimed invention as set forth above in claim 11 above. Blum and Guess does not explicitly disclose the operating state of the switching system having the communication loss changes to a hot-standby operation and remains defined as the hot-standby switching system until a new fault situation forces a new switchover. Kampe discloses the hot-standby switching system remains until a new fault situation forces a new switchover(¶[0079],¶[0084]). Thus, it would have been obvious to one of ordinary skill in the art at the time of invention to utilize the system as disclosed by

Application/Control Number: 10/582,589                                          Page 10
Art Unit: 2463

Kampe along with the teachings of Blum and Guess. The teachings of Kampe can be applied to

the system of Blum and Guess through software implementation. The motivation for utilizing the

system as disclosed by Kampe along with the teachings of Blum and Guess is to increase the

efficiency of the network and to provide communication in the event of a fault.

### Conclusion

6.      Any inquiry concerning this communication or earlier communications from the

examiner should be directed to ANGEL BROCKMAN whose telephone number is (571)270-

5664.  The examiner can normally be reached on Monday-Friday ,7:30-5:00pm.

7.      If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Derrick Ferris can be reached on 571-272-3123.  The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.

8.      Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system.  Status information for published applications

may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished

applications is available through Private PAIR only.  For more information about the PAIR

system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR

system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would

like assistance from a USPTO Customer Service Representative or access to the automated

information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

ANGEL  BROCKMAN
Examiner
Art Unit 2463

/A. B./

Application/Control Number: 10/582,589                                    Page 11

Art Unit: 2463

Examiner, Art Unit 2463


/Derrick W Ferris/

Supervisory Patent Examiner, Art Unit 2463

**BLUEPRINT 000077**

| **Notice of References Cited** | Application/Control No. | Applicant(s)/Patent Under Reexamination | |
|---|---|---|---|
| | 10/582,589 | LOBIG ET AL. | |
| | Examiner | Art Unit | |
| | ANGEL BROCKMAN | 2463 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-5,974,114 | 10-1999 | Blum et al. | 379/9 |
| | B | US- | | | |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

**BLUEPRINT 000078**

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| S1 | 286 | (loss or error or fail$3) and (active and hot$1standby) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:14 |
| S3 | 30 | (loss or error or fail$3) with (active same hot $1standby) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:14 |
| S4 | 14 | (loss or error or fail$3) with (active same hot $1standby) same (rout$3 or switch$2 or gateway$1) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:18 |
| S5 | 0 | ("2007/0150613").URPN. | USPAT | ADJ | OFF | 2009/12/09 10:19 |
| S6 | 0 | "20030152064".pn. | USPAT | ADJ | OFF | 2009/12/09 10:22 |
| S7 | 1 | "20030152064" | USPAT | ADJ | OFF | 2009/12/09 10:22 |
| S8 | 1 | (09/683753).APP. | US-PGPUB; USOCR | ADJ | OFF | 2009/12/09 10:23 |
| S9 | 10 | (loss or error or fail$3) and (active and hot$1standby).ab. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:27 |
| S10 | 6 | S9 and (router$1 or switch $2 or gateway$1) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:27 |
| S11 | 85 | (switch$2 or router$1) same (hot$1standby and active) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:30 |
| S12 | 286 | 370/219.ccls. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:31 |
| S13 | 210 | S12 and (router$1 or switch $3) same (fail$5 or error $1) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:31 |
| S14 | 110 | S12 and (backup) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:31 |

**BLUEPRINT 000079**

| S15 | 110 | S12 and (backup) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:31 |
| S16 | 0 | S15 and (acivat$3 near3 hot$1standby) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:32 |
| S17 | 0 | S12 and (backup near3 hot $1standby) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:33 |
| S18 | 0 | S12 and (hot$1standby near3 (router$1 or switch $3)) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:34 |
| S19 | 6 | S12 and (hot$1standby) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:34 |
| S20 | 13 | ("5473599" \| "5633866" \| "6009100" \| "6016319" \| "6115382" \| "6167025" \| "6172981" \| "6229787" \| "6304549" \| "6396815" \| "6490245" \| "6496479" \| "6714549").PN. OR ("7457235").URPN. | US-PGPUB; USPAT; USOCR | ADJ | OFF | 2009/12/09 10:38 |
| S21 | 1 | S20 and hot$1standby | US-PGPUB; USPAT; USOCR | ADJ | OFF | 2009/12/09 10:39 |
| S22 | 12 | hot$1standby switch$3 | US-PGPUB; USPAT; USOCR | ADJ | OFF | 2009/12/09 10:39 |
| S23 | 1 | S22 and "370".clas. | US-PGPUB; USPAT; USOCR | ADJ | OFF | 2009/12/09 10:40 |
| S24 | 0 | hot$1standby switch$3 same inactive | US-PGPUB; USPAT; USOCR | ADJ | OFF | 2009/12/09 10:40 |
| S25 | 4 | hot$1standby switch$3 same active | US-PGPUB; USPAT; USOCR | ADJ | OFF | 2009/12/09 10:40 |
| S26 | 490 | 370/219,220.ccls. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:41 |
| S27 | 2 | S26 and hot$1standby same (fail$3 or error$1 or crash$2) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:41 |
| S28 | 2 | "7535827" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:45 |

**BLUEPRINT 000080**

| S29 | 1 | "10350817" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:51 |
| S30 | 2 | "7535827" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:52 |
| S31 | 1 | (10/681238).APP. | US-PGPUB; USOCR | ADJ | OFF | 2009/12/09 10:52 |
| S32 | 0 | "10350817" | US-PGPUB; USOCR | ADJ | OFF | 2009/12/09 10:53 |
| S33 | 0 | method and apparatus for facilitating routing protocol redundancy | US-PGPUB; USOCR | ADJ | OFF | 2009/12/09 10:54 |
| S34 | 18307 | Harvey | US-PGPUB; USOCR | ADJ | OFF | 2009/12/09 10:54 |
| S35 | 1009 | Harvey et al | US-PGPUB; USOCR | ADJ | OFF | 2009/12/09 10:54 |
| S36 | 0 | S35 and routing redundancy.ab. | US-PGPUB; USOCR | ADJ | OFF | 2009/12/09 10:54 |
| S37 | 0 | S35 and routing.ab. | US-PGPUB; USOCR | ADJ | OFF | 2009/12/09 10:54 |
| S38 | 1 | kendall harvey | US-PGPUB; USOCR | ADJ | OFF | 2009/12/09 10:55 |
| S39 | 0 | "10350817" | US-PGPUB; USOCR | ADJ | OFF | 2009/12/09 10:58 |
| S40 | 1 | "20030140166" | US-PGPUB; USOCR | ADJ | OFF | 2009/12/09 10:59 |
| S41 | 0 | S40 and hot$1standby | US-PGPUB; USOCR | ADJ | OFF | 2009/12/09 11:00 |
| S42 | 6 | S26 and hot$1standby same active$1 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 11:33 |
| S43 | 106 | ("4958273" \| "4984240" \| "5473599" \| "5610905" \| "5621884" \| "5649091"). PN. OR ("5835696").URPN. | US-PGPUB; USPAT; USOCR | ADJ | OFF | 2009/12/09 11:34 |
| S44 | 0 | (active with hotstandby) and (router$1 or switch$3) | US-PGPUB; USPAT; USOCR | ADJ | OFF | 2009/12/09 11:35 |
| S45 | 267 | (active and hot$1standby) and (router$1 or switch$3) | US-PGPUB; USPAT; USOCR | ADJ | OFF | 2009/12/09 11:35 |
| S46 | 169 | (active and hot$1standby) and (router$1 or switch$3) same (fail$3 or error$1 or crash$3) | US-PGPUB; USPAT; USOCR | ADJ | OFF | 2009/12/09 11:35 |
| S47 | 2 | S46 and (hot$1standby near3 (inactive)) | US-PGPUB; USPAT; USOCR | ADJ | OFF | 2009/12/09 11:36 |

**BLUEPRINT 000081**

| S48 | 0 | S46 and hot$1standy near3 (router$1 or switch$3) | US-PGPUB; USPAT; USOCR | ADJ | OFF | 2009/12/09 11:38 |
| S49 | 169 | S46 and hot$1standby | US-PGPUB; USPAT; USOCR | ADJ | OFF | 2009/12/09 11:38 |
| S50 | 26 | S46 and hot$1standby mode | US-PGPUB; USPAT; USOCR | ADJ | OFF | 2009/12/09 11:38 |
| S51 | 29 | (active and hot$1standby) and (router$1 or switch$3) same (fail$3 or error$1 or crash$3).ab. | US-PGPUB; USPAT; USOCR | ADJ | OFF | 2009/12/09 11:40 |
| S52 | 113 | (loss or error or fail$3) and (active same hot $1standby) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 11:56 |
| S53 | 5 | "2002007468" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 12:21 |
| S54 | 2 | "20020007468" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 12:21 |
| S55 | 2 | "20090219804" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 12:30 |
| S56 | 9417 | (hot$1standby or stand $1by) same (redundan$3 or back$1up) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2010/08/06 13:21 |
| S57 | 389756 | S56 and (geographic$4 with separat$4) or (distant $1 or remote$2) with (locat $4) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2010/08/06 13:22 |
| S58 | 1408 | S56 and ((geographic$4 with separat$4) or (distant $1 or remote$2) with (locat $4)) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2010/08/06 13:22 |
| S59 | 343 | S58 and "370".clas. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2010/08/06 13:22 |
| S60 | 116 | S59 and @py<="2003" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2010/08/06 13:29 |
| S61 | 284 | (dedicat$3 with (back$1up or secondary) with (switch $3 or router$1)) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/18 12:14 |

**BLUEPRINT 000082**

| | | | | | | |
|---|---|---|---|---|---|---|
| S62 | 0 | S61 and hot$1stand$1by | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/18 12:15 |
| S63 | 50 | S61 and stand$1by | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/18 12:15 |
| S64 | 6 | S63 and (deactivat$3) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/18 12:15 |
| S65 | 8876 | (dedicat$3 OR select$4) with (back$1up or secondary) with (switch$3 or router$1) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/25 11:28 |
| S66 | 719 | S65 and (stand$1by) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/25 11:29 |
| S67 | 101 | S66 and (de$1activ$5) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/25 11:29 |
| S68 | 25 | S67 and (IP or internet protocol) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/25 11:31 |
| S69 | 7880 | (designat$3 or choos$3 or select$4) with (back$1up or protect$4) with switch $3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/25 11:44 |
| S70 | 997 | S69 and (stand$1by) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/25 11:45 |
| S71 | 354 | S70 and "370".clas. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/25 11:45 |
| S72 | 68 | S71 and (designat$3 with switch$3) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/25 11:45 |
| S73 | 284 | (dedicat$3) with (back $1up or secondary) with (switch$3 or router$1) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/25 12:53 |
| S74 | 50 | S73 and stand$1by | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/25 12:53 |

**BLUEPRINT 000083**

| S75 | 6 | S74 and (de$1activ$5) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/25 12:53 |
| S76 | 213 | dedicat$4 with (redundant or back$1up) with (switch $3 or router$1) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/25 13:08 |
| S77 | 22 | dedicat$4 with (redundant or back$1up) with (switch $3 or router$1).ab. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/25 13:09 |
| S78 | 53 | S76 and (stand$1by) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/25 13:11 |
| S79 | 52 | hot$1stand$1by.ab. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/25 13:16 |
| S80 | 1 | S79 and (dedicat$3) with (switch$3) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/25 13:17 |
| S81 | 11 | (hot$1stand$1by) same (dedicat$3 or assig$4) with (second$3 or back$1up or redund$5) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/25 13:51 |
| S82 | 6452 | (redundan$4) with (switch $3) same (separate or network) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/25 14:18 |
| S83 | 1462 | S82 and stand$1by | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/25 14:30 |
| S84 | 245 | S83 and dedicat$3 with (switch$3 or router$1) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/25 14:30 |
| S85 | 2 | "20070076727" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/26 08:38 |
| S86 | 1240 | dedicat$3 with redundancy | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/26 08:42 |
| S87 | 77 | dedicat$3 with redundancy. ab. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/26 08:43 |

BLUEPRINT 000084

| S88 | 6 | S87 and (stand$1by) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/26 08:43 |
| S89 | 15 | 2003/0048746 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/26 08:58 |
| S90 | 2 | "20030048746" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/26 09:06 |
| S91 | 272 | (dedicat$3 with (redundan $3 or back$1up) with (router$1 or switch$3)) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/26 09:19 |
| S92 | 5 | S91 and hot$1stand$1by | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/26 09:21 |
| S93 | 26 | (dedicat$3 with (redundan $3 or back$1up) with (router$1 or switch$3)).ab. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/26 09:26 |
| S94 | 12 | (dedicat$3 with (redundan $3) with (router$1 or switch$3)).ab. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/26 09:31 |
| S95 | 172 | (dedicat$3 with (redundan $3)).ab. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/26 09:37 |
| S96 | 0 | S95 and (hot stand$1by) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/26 09:37 |
| S97 | 2629 | hot stand$1by | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/26 09:37 |
| S98 | 708 | S97 and stand$1by.ab. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/26 09:38 |
| S99 | 4 | S98 and (dedicat$4 with redundan$4) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/26 09:39 |
| S100 | 2629 | hot stand$1by | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/26 11:20 |

BLUEPRINT 000085

| S101 | 708 | S100 and stand$1by.ab. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/26 11:20 |
| S102 | 4 | S101 and (dedicat$4 with redundan$4) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/26 11:20 |
| S103 | 4 | S102 and hot stand$1by | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/26 11:20 |
| S104 | 3 | S102 and IP | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/26 11:35 |
| S105 | 3 | S103 and IP | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/26 11:36 |
| S106 | 3 | S102 and IP | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/26 12:12 |
| S107 | 3 | S102 and protocol | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/26 12:12 |
| S108 | 0 | S107 and IP HAD | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/26 12:17 |
| S109 | 0 | S107 and IP with HAD | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2011/01/26 12:17 |

**EAST Search History (Interference)**

< This search history is empty>

**1/26/2011 2:09:00 PM**
**C:\ Documents and Settings\ abrockman\ My Documents\ EAST\ Workspaces\ 10582589-3.wsp**

**BLUEPRINT 000086**

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 10582589 | LOBIG ET AL. |
| | **Examiner** | **Art Unit** |
| | ANGEL BROCKMAN | 2463 |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 370 | 442 | 02/20/2009 | A.B. |
| 370 | 217,219,220 | | A.B. |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Talked to Spe Derrick Ferris | 02/19/2009 | A.B. |
| Inventor Name Search | 02/19/2009 | A.B. |
| EAST SEARCH | 02/20/2009 | A.B. |
| Update EAST | 9/9/2009 | A.B. |
| Update EAST | 12/9/2009 | A.B. |
| UPDATE EAST | 8/13/2010 | A.B. |
| UPDATE EAST | 1/25/2011 | A.B. |

## INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 370 | 442 | 02/20/2009 | A.B. |

| | |
|---|---|
| | |

**BLUEPRINT 000087**

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 10582589 | LOBIG ET AL. |
| | **Examiner** | **Art Unit** |
| | ANGEL BROCKMAN | 2463 |

| ✔ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant   ☐ CPA   ☐ T.D.   ☐ R.1.47

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 02/24/2009 | 09/11/2009 | 12/09/2009 | 08/14/2010 | 01/26/2011 | | | | |
| | 11 | ✔ | ✔ | ✔ | ✔ | ✔ | | | | |
| | 12 | ✔ | ✔ | ✔ | ✔ | ✔ | | | | |
| | 13 | ✔ | ✔ | ✔ | ✔ | ✔ | | | | |
| | 14 | ✔ | ✔ | ✔ | ✔ | ✔ | | | | |
| | 15 | ✔ | ✔ | ✔ | ✔ | ✔ | | | | |
| | 16 | ✔ | ✔ | ✔ | ✔ | ✔ | | | | |
| | 17 | ✔ | ✔ | ✔ | ✔ | ✔ | | | | |
| | 18 | ✔ | ✔ | ✔ | ✔ | ✔ | | | | |
| | 19 | ✔ | ✔ | ✔ | ✔ | ✔ | | | | |
| | 20 | ✔ | | ✔ | ✔ | ✔ | | | | |
| | 21 | ✔ | - | - | - | - | | | | |
| | 22 | ✔ | - | - | - | - | | | | |
| | 23 | ✔ | - | - | - | - | | | | |
| | 24 | ✔ | - | - | - | - | | | | |
| | 25 | ✔ | - | - | - | - | | | | |
| | 26 | ✔ | ✔ | ✔ | ✔ | ✔ | | | | |
| | 27 | ✔ | - | - | - | - | | | | |
| | 28 | | ✔ | ✔ | ✔ | ✔ | | | | |
| | 29 | | ✔ | ✔ | ✔ | ✔ | | | | |
| | 30 | | ✔ | ✔ | ✔ | ✔ | | | | |
| | 31 | | ✔ | ✔ | ✔ | ✔ | | | | |
| | 32 | | ✔ | ✔ | ✔ | ✔ | | | | |
| | 33 | | ✔ | ✔ | ✔ | ✔ | | | | |
| | 34 | | ✔ | ✔ | ✔ | ✔ | | | | |
| | 35 | | ✔ | ✔ | ✔ | ✔ | | | | |

BLUEPRINT 000088

# SIEMENS

PATENT
Attorney Docket No. 2003P18829WOUS

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

| | | | | |
|---|---|---|---|---|
| Inventor: | N. Lobig et al. | ) | Confirmation No: | 2784 |
| Serial No.: | 10/582,589 | ) | Examiner: | A. Brockman |
| Filed: | June 9, 2006 | ) | Group Art Unit: | 2463 |
| Title | METHOD FOR PROTECTION SWITCHING OF GEOGRAPHICALLY SEPARATE SWITCHING SYSTEMS | | | |

**Commissioner For Patents**
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

<u>APPELANTS BRIEF</u>

This Appeal Brief relates to an appeal from the rejection of claims 11-20, 26, and 28-35 in the Office Action mailed August 17, 2010, which reopens prosecution from Applicant's Appeal Brief filed on May 14, 2010.

BLUEPRINT 000089

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

I.    Real Party in Interest ......................................................................................... 3

II.   Related Appeals and Interferences ................................................................... 3

III.   Status of Claims ................................................................................................. 3

IV.   Status of Amendments ....................................................................................... 3

V.    Summary of Claimed Subject Matter ............................................................... 4
     A.    Claim 11 ....................................................................................................... 4
     B.    Claim 28 ....................................................................................................... 5
     C.    Claim 32 ....................................................................................................... 6

VI.   Grounds for Rejection to be Reviewed ............................................................ 7

VII.   Appellants' Argument ....................................................................................... 7
     A.    The rejection of claims 11-20 and 28-35 under 35 U.S.C. § 103(a) as being obvious over Khan et al. (US 2003/0152064) in view of Guess et al (US 2003/0048746) ................ 7
         a)    Independent claim 8 .................................................................................. 7
     B.    The rejection of claim 26 under 35 U.S.C. § 103(a) as being obvious over Khan et al. (US 2003/0152064) in view of Guess et al (US 2003/0048746) and Rusmisel (US 7,535,827) ........................................................................................................ 10
         a)    Independent claim 28 ............................................................................. 10
         b)    Independent claim 32 ............................................................................. 11
     C.    The rejection of claim 26 under 35 U.S.C. § 103(a) as being obvious over Khan et al. (US 2003/0152064) in view of Guess et al (US 2003/0048746) and Kampe (US 2002/0007468) ................................................................................................... 12
         a)    Dependent claim 26 .............................................................................. 12

VIII. Conclusion ....................................................................................................... 14

IX.   Claims Appendix ............................................................................................. 15

X.    Evidence Appendix .......................................................................................... 20

XI.   Related Procedings Appendix ......................................................................... 21

BLUEPRINT 000090

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

I.    Real Party in Interest

The real party in interest is Siemens Aktiengesellschaft of Munich, Germany, the assignee of record.

II.   Related Appeals and Interferences

There are no known related appeals or interferences.

III.  Status of Claims

Claims 1-10, 21-25, and 27 have been canceled. Claims 11-20, 26 and 28-35 are rejected. No claims have been allowed. Claims 24-28, 30-38, and 40-44 are being appealed.

IV.   Status of Amendments

No amendment has been filed subsequent to the rejection.

BLUEPRINT 000091

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

## V.   Summary of Claimed Subject Matter

Paragraph numbers are in reference to Applicant's Substitute Specification.

### A.   Claim 11

Referring to the Figure and paragraphs [0004][0013][0028]-[0030], independent claim 11 recites a method for protection switching of geographically separate switching systems ($S_1$) ($S_{1b}$) arranged in pairs, comprising:

providing a pair of switching systems ($S_1$) ($S_{1b}$) which are geographically separate and which supply a dedicated redundancy to each other, one of the pair of switching systems ($S_1$) is in an active operating state (act) and the other ($S_{1b}$) is in a hot-standby operating state (stb);

controlling the communication between the each of the pair switching system ($S_1$) ($S_{1b}$) and a monitoring unit (SC) in accordance with the an operating state of the respective switching system ($S_1$) ($S_{1b}$); and

when a loss of the communication to the switching system ($S_1$) in the active operating state (act) occurs:

activating, by the monitoring unit (SC), the switching system ($S_{1b}$) in the hot-standby operating state (stb) to be in the active operating state (act), and

deactivating, by the monitoring unit (SC), the switching system ($S_1$) with the communication loss to be in the hot-standby operating state (stb),

wherein when in the hot-standby operating state (stb), the respective switching system ($S_1$) ($S_{1b}$) is not active in terms of switching functions.

BLUEPRINT 000092

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

### B. Claim 28

Referring to the Figure paragraphs [0004][0010][0013][0028]-[0030], independent claim 28 recites a method for protection switching of geographically separate switching systems ($S_1$) ($S_{1b}$) arranged in pairs, comprising:

providing a pair of switching systems ($S_1$) ($S_{1b}$) which are geographically separate and which supply a dedicated redundancy to each other, one of the pair of switching systems ($S_1$) is in an active operating state (act) and the other ($S_{1b}$) is in a hot-standby operating state (stb), each of the pair of switching systems($S_1$) ($S_{1b}$) comprises a database which is identical to each other, the database comprises only permanent data and semi-permanent data such that transient data pertaining to calls is excluded;

controlling the communication between the each of the pair switching system ($S_1$) ($S_{1b}$) and a monitoring unit (SC) in accordance with the an operating state of the respective switching system ($S_1$) ($S_{1b}$); and

when a loss of the communication to the switching system ($S_1$) in the active operating state occurs (act):

activating, by the monitoring unit (SC), the switching system ($S_1$) ($S_{1b}$) in the hot-standby operating state (stb) to be in the active operating state (act), and

deactivating, by the monitoring unit (SC), the switching system ($S_1$) ($S_{1b}$) with the communication loss to be in the hot-standby operating state (stb),

wherein when in the hot-standby operating state (stb), the respective switching system ($S_1$) ($S_{1b}$) is not active in terms of switching functions.

BLUEPRINT 000093

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

### C. Claim 32

Referring to the Figure paragraphs [0004][0013][0028]-[0030], independent claim 11 recites method for protection switching of geographically separate switching systems $(S_1)$ $(S_{1b})$ arranged in pairs, comprising:

providing a pair of switching systems which are geographically separate and which supply a dedicated redundancy to each other, the pair of switching systems $(S_1)$ $(S_{1b})$ comprise software identical to each other, one of the pair of switching systems $(S_1)$ $(S_{1b})$ is in an active operating state (act) and the other $(S_{1b})$ is in a hot-standby operating state (stb);

providing a monitoring unit (SC) that communicates with the pair of switching systems $(S_1)$ $(S_{1b})$;

controlling the communication between the each of the pair switching system $(S_1)$ $(S_{1b})$ and a monitoring unit (SC) in accordance with the an operating state of the respective switching system $(S_1)$ $(S_{1b})$; and

when a loss of the communication to the switching system $(S_1)$ in the active operating state (act) occurs:

activating, by the monitoring unit (SC), the switching system $(S_{1b})$ in the hot-standby operating state (stb) to be in the active operating state (act), and

deactivating, by the monitoring unit (SC), the switching system $(S_1)$ with the communication loss to be in the hot-standby operating state (stb),

wherein every software update including patches is delivered in identical fashion to the first and redundant switching system $(S_1)$ $(S_{1b})$, and

wherein when in the hot-standby operating state (stb), the respective switching system $(S_1)$ $(S_{1b})$ is not active in terms of switching functions.

BLUEPRINT 000094

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

VI.   Grounds for Rejection to be Reviewed

Claims 11-20 and 28-35 are rejected under 35 U.S.C. § 103(a) as being obvious over Khan et al. (US 2003/0152064) in view of Guess et al (US 2003/0048746).

Claims 28-35 are rejected under 35 U.S.C. § 103(a) as being obvious over Khan et al. (US 2003/0152064) in view of Guess et al (US 2003/0048746) and Rusmisel (US 7,535,827).

Claim 26 is rejected under 35 U.S.C. § 103(a) as being obvious over Khan et al. (US 2003/0152064) in view of Guess et al (US 2003/0048746) and Kampe et al. (US 2002/0007468)

VII.   Appellants' Argument

A.   The rejection of claims 11-20 and 28-35 under 35 U.S.C. § 103(a) as being obvious over Khan et al. (US 2003/0152064) in view of Guess et al (US 2003/0048746)

a)             Independent claim 8

Applicant's claim 8 includes the limitation:

> providing a ***pair*** of switching systems which are geographically separate and which supply a ***dedicated*** redundancy to each other

Applicant's redundancy involves a pair (two) of switching systems which supply a ***dedicated*** redundancy to each other. This means that a first of the pair of the switching systems is dedicated wholly as a backup to the second of the pair. Likewise, the second of the pair is wholly dedicated as a backup to the first of the pair. Khan does not teach or suggest that the switching systems are in pairs nor does Khan teach or suggest that they are dedicated. In contrast, Khan teaches that each of a plurality of switching systems (softswitches SSC) may be a backup for any of the other systems (see e.g., Khan ¶[0029]).

The Examiner indicates that a dedicated redundancy is taught by Khan via figure 2, ¶[0053]. The Examiner states "wherein SSCb is dedicated to SSCa". However ¶[0053] of Khan recites:

> A series of calls are connected using SSCa where SSCa can play the role of an originating and/or terminating switch. SSCa goes through signaling flows (e.g., as shown in FIGS. 3 and 4). SSCb is ***designated*** as SSCa's backup site. Under normal condition, SSCa communicates with all other SSCs including SSCb using SIP, and SSCb does not send or receive ISUP messages using PC1 (which is

BLUEPRINT 000095

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

> the point code associated with SSCa). The SSCs communicate with
> the respective GWs that they control using MGCP.

Applicant respectfully submits that Khan merely uses SSCb as and example of a SSC that is designated as a backup (see e.g., Khan ¶[0029]). Furthermore, Applicant respectfully submits that the words of the claim must be given their plain meaning unless the plain meaning is inconsistent with the specification…[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention. (MPEP 2111.01). One skilled in the art would not reasonably consider the term "dedicated", which means wholly committed to something, the same as the term "designated", which means selected. Furthermore, Applicant's claim 11 includes the limitation:

> one of the pair of switching systems is in an active operating state
> and the other is in a hot-standby operating state…when a loss of
> the communication to the switching system in the active operating
> state occurs:
>> activating, by the monitoring unit, the switching
>> system in the hot-standby operating state to be
>> in the active operating state, and
>> deactivating, by the monitoring unit, the
>> switching system with the communication loss
>> to be in the hot-standby operating state,
> wherein when in the hot-standby operating state, the respective
> switching system is not active in terms of switching functions .

Thus, only one of the pair of switching systems is active in terms of switching functions. When the failed switching system is deactivated, the switching system in the hot-standby becomes activated. The Examiner agrees that Khan does not teach an active and hot-standby operating state but contends that Guess teaches this limitation. The Examiner states "it would have been obvious to one of ordinary skill in the art at the time of invention to utilize the active and hot-standby operating states as disclosed by Guess along with the system of Khan. The hot-standby and active modes can be implemented into the system of Khan through software and hardware implementation such that SSCa and SSCb function as the control cards as disclosed by Guess. The motivation for utilizing the active and hot-standby operating states as disclosed by Guess along with the system of Khan is to increase the efficiency of the system in event of a failure". Applicant respectfully notes that Guess does not teach control cards but teaches a ESRP

BLUEPRINT 000096

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

master and a ESRP standby(see e.g., Figure 6) and that the Examiner inadvertently left the term control cards in from the previous action.

Applicant respectfully disagrees with the Examiner assessment for the motivation to combine Khan and Guess for at least the following reasons. Each of Khan's SSC is active by controlling a gateway (GW), which is responsible for it's own set of circuits (see e.g., Khan ¶[0027][0028]). When an SSC fails (including congestion or any other traffic off loading), the backup SSC, which actively controls it's own GW (see e.g., Khan ¶[0027][0028]) is modified to control the GW for the failed SCC (see e.g., Khan ¶[0029]). Applicant respectfully submits that changing Khan's SSCa and SSCb to function as Guess's ESRP Master and Guess's ESRP Standby would render the prior art invention being modified unsatisfactory for its intended purpose. With this modification, both SSCa and SSCb could no longer be active at the same time as intended by Khan since one is active and the other is in hot-standby. This modification would only allow the active SSC to control the GW. The hot-standby (backup) SSC could not control it's GW. Not only does this clearly render the prior art unsatisfactory for its intended purpose but it also changes the principle of operation of the prior art.

> If proposed modification would render the prior art invention being modified unsatisfactory for its intended purpose, then there is no suggestion or motivation to make the proposed modification (MPEP 2143 section V).

> If the proposed modification or combination of the prior art would change the principle of operation of the prior art invention being modified, then the teachings of the references are not sufficient to render the claims *prima facie* obvious (MPEP 2143 section VI).

For at least the reasons above, Applicant respectfully submits that claim 11 is patentable as well as claims 12-20, and 26, which depend thereon.

BLUEPRINT 000097

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

B. The rejection of claim 26 under 35 U.S.C. § 103(a) as being obvious over Khan et al. (US 2003/0152064) in view of Guess et al (US 2003/0048746) and Rusmisel (US 7,535,827)

a)          Independent claim 28

Applicant's claim 28 includes the limitations:

> providing a ***pair*** of switching systems which are geographically separate and which supply a ***dedicated*** redundancy to each other, of the pair of switching systems is in an active operating state and the other is in a hot-standby operating state…when a loss of the communication to the switching system in the active operating state occurs:
>> activating, by the monitoring unit, the switching system in the hot-standby operating state to be in the active operating state, and
>> deactivating, by the monitoring unit, the switching system with the communication loss to be in the hot-standby operating state,
>
> wherein when in the hot-standby operating state, the respective switching system is not active in terms of switching functions .

For at least for the reasons argued for claim 8 for above limitations, Applicant respectfully submits claim 28 is patentable. Furthermore, claim 28 includes the limitation:

> each of the pair of switching systems comprises a ***database*** which is ***identical to each other***, the database comprises only permanent data and semi-permanent data such that transient data pertaining to calls is excluded

The Examiner asserts that Rumisel discloses the above limitation and cites column 3 lines 1-19, figure 4, wherein the hot-standby system is in synchrony with the active system. As previously stated, Applicant's redundancy involves a pair (two) of switching systems which supply a ***dedicated*** redundancy to each other. Thus, having an identical database may be possible.

However, Khan teaches that each of a plurality of switching systems (softswitches SSC) may be a backup for any of the other systems (see e.g., Khan ¶[0029]). Each of Khan's SSC is active by controlling a gateway (GW), which is responsible for it's own set of circuits (see e.g.,

BLUEPRINT 000098

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

Khan ¶[0027][0028]). As such, each of Khan's SSC would need to know what GW and circuits it was responsible for and information about said GW and circuits. Applicant's respectfully submit that this information would be different for each SSC. Therefore, the databases would not identical.

For at least the reasons above, Applicant respectfully submits that claim 28 is patentable as well as claims 29-31, which depend thereon.

     b)          Independent claim 32

Applicant's claim 32 includes the limitations:

> providing a **pair** of switching systems which are geographically separate and which supply a **dedicated** redundancy to each other, of the pair of switching systems is in an active operating state and the other is in a hot-standby operating state…when a loss of the communication to the switching system in the active operating state occurs:
>> activating, by the monitoring unit, the switching system in the hot-standby operating state to be in the active operating state, and
>> deactivating, by the monitoring unit, the switching system with the communication loss to be in the hot-standby operating state,
> wherein when in the hot-standby operating state, the respective switching system is not active in terms of switching functions .

For at least for the reasons argued for claim 8 for above limitations, Applicant respectfully submits claim 32 is patentable. Furthermore, claim 32 includes the limitation:

> the pair of switching systems comprises **software** which is **identical to each other**

The Examiner reads this limitation as "software that is identical to each other (¶[0029], wherein the provisioning includes the identical software)". ¶[0029] of Khan recites:

> According to the present invention, if an SSC, such as, SSCa (with any backup SSC) crashes, then another remote SSC (such as SSCb in FIG. 2) will be capable of controlling the circuits originally controlled by SSCa with no manual intervention needed and no impact on other carriers that will have trunks to this VoIP carrier. This can be enabled by: (1) allowing GWs controlled by SSCa to also be controlled by SSCb where SSCb is provisioned with PC1

BLUEPRINT 000099

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

> and controls the circuits controlled by PC1 (which can be the same
> circuits SSCa controls); and (2) provisioning a SS7 route over the
> STP SS7 network to SSCb for PC1 with lower priority than the
> route to SSCa for PC1.

The pertinence … must be explained. 37 CFR § 1.104(c)(2). Applicant is uncertain of the pertinence of this reference. The Examiner states that "wherein the provisioning includes the identical software". However, this paragraph does not use this language. The paragraph, however, discloses provisioning with PC1 and SS7 route. Applicant respectfully submit that PC1 is the point code for SSCa (see.e.g., Khan ¶[0028]). One skilled in the art would recognize that software is a set of instructions that are executed by a processor. In contrast, a point code is an address and SS& route pertains to how to route information in the network. One skilled in the art would not reasonably interpret an address or SS7 route as software.

For at least the reasons above, Applicant respectfully submits that claim 32 is patentable as well as claims 33-35, which depend thereon.

C. The rejection of claim 26 under 35 U.S.C. § 103(a) as being obvious over Khan et al. (US 2003/0152064) in view of Guess et al (US 2003/0048746) and Kampe (US 2002/0007468)

a)                Dependent claim 26

Applicant's claim 2 includes the limitation:

> the operating state of the switching system having the
> communication loss changes to a hot-standby operation state and
> remains defined as the hot-standby switching system until a new
> fault situation forces a new switchover.

Since Applicant's supply a *dedicated* redundancy, there is no need to switch back to the switching system having the communication loss once a recovery occurs unless a new fault occurs. In contrast, Khan teaches that once a recovery occurs to switch back to the switching system having the communication loss (see e.g., Khan ¶[0072]-[0081]). In Khan's redundancy, the SSC that provides the redundancy handles switching functions for itself as well as for the

BLUEPRINT 000100

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

failed SSC. Thus, extra load is placed on the SSC while providing the redundancy unlike Applicant's dedicated redundancy.

      The Examiner's asserts that the motivation to combine "is to increase efficiency of the network". In actuality, having Khan's SSC remain as the hot-standby decreases efficiency with said extra load. Furthermore, this change renders the prior art unsatisfactory for its intended purpose as well as changes the principle of operation of the prior art. Therefore, there would be **no motivation to modify Khan** so that the SSC providing the redundancy remains providing the redundancy (remains defined as the hot-standby switching system until a new fault situation forces a new switchover) once the failed SCC recovers. Applicant respectfully submits that claim 26 is not obvious over Kahn in view of Guess and Kampe.

BLUEPRINT 000101

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

VIII. <u>Conclusion</u>

For the foregoing reasons, it is respectfully submitted that the rejections set forth in the outstanding Office Action are inapplicable to the present claims. The honorable Board is therefore respectfully requested to reverse the rejection of the Examiner and to remand the application to the Examiner with instructions to allow the pending claims.  Please grant any extensions of time required to enter this paper.  Please charge any appropriate fees due in connection with this paper or credit any overpayments to Deposit Acct. No. 19-2179.

Respectfully submitted,

Dated: Nov. 11, 2010     By: Janet D. Hood

Janet D. Hood
Registration No. 61,142
(407) 736-4234

Siemens Corporation
Intellectual Property Department
170 Wood Avenue South
Iselin, New Jersey 08830

BLUEPRINT 000102

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

IX.   Claims Appendix

11.    A method for protection switching of geographically separate switching systems arranged in pairs, comprising:

providing a pair of switching systems which are geographically separate and which supply a dedicated redundancy to each other, one of the pair of switching systems is in an active operating state and the other is in a hot-standby operating state;

controlling the communication between the each of the pair switching system and a monitoring unit in accordance with the an operating state of the respective switching system; and

when a loss of the communication to the switching system in the active operating state occurs:

activating, by the monitoring unit, the switching system in the hot-standby operating state to be in the active operating state, and

deactivating, by the monitoring unit, the switching system with the communication loss to be in the hot-standby operating state,

wherein when in the hot-standby operating state, the respective switching system is not active in terms of switching functions .

12.    The method as claimed in claim 11, wherein an operating state selected from the group consisting of active operating state and hot-standby state has a pre-definable number of packet-based interfaces.

13.    The method as claimed in claim 11, further comprising periodically sending an IP lease request to the monitoring unit by a packet-based interface of the switching system in the hot-standby operating state, the packet-based interface is in an inactive state.

14.    The method as claimed in claim 13, wherein the monitoring unit does not respond to the request while the switching system is in the hot-standby operating state.

15.    The method as claimed in claim 13, further comprising changing the packet-based interface from the inactive state to an active state in response to receiving an IP lease response.

BLUEPRINT 000103

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

16.     The method as claimed in claim 15, wherein the IP lease response from the monitoring unit contains an IP address leased to the requesting packet-based interface.

17.     The method as claimed in claim 11, further comprising suppressing an sending IP lease request to the monitoring unit by a packet-based interface of the switching system in the active operating state, the packet-based interface is in an active operating state.

18.     The method as claimed in claim 11, further comprising:

receiving a monitoring message from the monitoring unit by a packet-based  interface of the switching system in the active operating state, the packet-based interface is in an active state; and

acknowledging the message by the packet-based interface.

19.     The method as claimed in claim 18, further comprising:

determining, by the monitoring unit, a fault condition when an acknowledgement is not received from the packet-based interface in the active state; and

sending a IP lease response to a packet-based interface, which is inactive, of the switching system in the hot-standby operating state.

20.     The method as claimed in claim 19, further comprising changing the packet-based interface from the inactive state to an active state in response to receiving the IP response.

26.     The method as claimed in claim 11,

wherein the operating state of the switching system having the communication loss changes to a hot-standby operation state and remains defined as the hot-standby switching system until a new fault situation forces a new switchover.

BLUEPRINT 000104

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

28.     A method for protection switching of geographically separate switching systems arranged in pairs, comprising:

providing a pair of switching systems which are geographically separate and which supply a dedicated redundancy to each other, one of the pair of switching systems is in an active operating state and the other is in a hot-standby operating state, each of the pair of switching systems comprises a database which is identical to each other, the database comprises only permanent data and semi-permanent data such that transient data pertaining to calls is excluded;

controlling the communication between the each of the pair switching system and a monitoring unit in accordance with the an operating state of the respective switching system; and

when a loss of the communication to the switching system in the active operating state occurs:

activating, by the monitoring unit, the switching system in the hot-standby operating state to be in the active operating state, and

deactivating, by the monitoring unit, the switching system with the communication loss to be in the hot-standby operating state,

wherein when in the hot-standby operating state, the respective switching system is not active in terms of switching functions.

29.     The method as claimed in claim 28, further comprising:

periodically sending an IP lease request to the monitoring unit by a packet-based interface of the switching system in the hot-standby operating state, the packet-based interface is in an inactive state; and

ignoring the IP lease request by the monitoring unit while the switching system is in the hot-standby operating state.

30.     The method as claimed in claim 29, further comprising changing the packet-based interface from the inactive state to an active state in response to receiving an IP lease response, the IP lease response from the monitoring unit contains an IP address leased to the requesting packet-based interface.

BLUEPRINT 000105

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

31.     The method as claimed in claim 28, further comprising:

receiving a monitoring message from the monitoring unit by a packet-based interface of the switching system in the active operating state, the packet-based interface in an active state;

sending a response by the switching system in the active operating state via the packet-based interface to the monitoring message in order to acknowledge the monitoring message;

determining by the monitoring unit a fault condition when an acknowledgement is not received from the packet-based interface in the active state; and

sending a IP lease response to a packet-based interface, which is inactive, of the switching system in the hot-standby operating state.

32.     A method for protection switching of geographically separate switching systems arranged in pairs, comprising:

providing a pair of switching systems which are geographically separate and which supply a dedicated redundancy to each other, the pair of switching systems comprise software identical to each other, one of the pair of switching systems is in an active operating state and the other is in a hot-standby operating state;

providing a monitoring unit that communicates with the pair of switching systems;

controlling the communication between the each of the pair switching system and a monitoring unit in accordance with the an operating state of the respective switching system; and

when a loss of the communication to the switching system in the active operating state occurs:

activating, by the monitoring unit, the switching system in the hot-standby operating state to be in the active operating state, and

deactivating, by the monitoring unit, the switching system with the communication loss to be in the hot-standby operating state,

wherein every software update including patches is delivered in identical fashion to the first and redundant switching system, and

wherein when in the hot-standby operating state, the respective switching system is not active in terms of switching functions.

BLUEPRINT 000106

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

33.     The method as claimed in claim 32, further comprising:

periodically sending an IP lease request to the monitoring unit by a packet-based interface of the switching system in the hot-standby operating state, the packet-based interface is in an inactive state; and

ignoring the IP lease request by the monitoring unit while the switching system is in the hot-standby operating state.

34.     The method as claimed in claim 33, further comprising changing the packet-based interface from the inactive state to an active state in response to receiving an IP lease response, the IP lease response from the monitoring unit contains an IP address leased to the requesting packet-based interface.

35.     The method as claimed in claim 32, further comprising:

receiving a monitoring message from the monitoring unit by a packet-based interface of the switching system in the active operating state, the packet-based interface in an active state;

sending a response by the switching system in the active operating state via the packet-based interface to the monitoring message in order to acknowledge the monitoring message;

determining by the monitoring unit a fault condition when an acknowledgement is not received from the packet-based interface in the active state; and

sending a IP lease response to a packet-based interface, which is inactive, of the switching system in the hot-standby operating state.

BLUEPRINT 000107

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

X.   <u>Evidence Appendix</u>

None

BLUEPRINT 000108

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

XI.   Related Procedings Appendix

None

BLUEPRINT 000109

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 8818219 |
| **Application Number:** | 10582589 |
| **International Application Number:** | |
| **Confirmation Number:** | 2784 |
| **Title of Invention:** | Method for protection switching of geographically separate switching systems |
| **First Named Inventor/Applicant Name:** | Norbert  Lobig |
| **Customer Number:** | 22116 |
| **Filer:** | Janet D. Hood/Ann Hickey |
| **Filer Authorized By:** | Janet D. Hood |
| **Attorney Docket Number:** | 2003P18829WOUS |
| **Receipt Date:** | 11-NOV-2010 |
| **Filing Date:** | 09-JUN-2006 |
| **Time Stamp:** | 14:57:24 |
| **Application Type:** | U.S. National Stage under 35 USC 371 |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Notice of Appeal Filed | 2003P18829WOUSSecondNtco fAppealPTOSB31FiledNov1120 10.pdf | 119528 <br> 728Bddba77823742fb7683eb95cb8332c4c 992ff | no | 1 |

**Warnings:**

**Information:**

BLUEPRINT 000110

| 2 | Appeal Brief Filed | 2003P18039WOUSSecondAppe alBriefFiledNov112010.pdf | 1362022<br><br>c0364bedfb1fb78e49c8f43448912070ad85 4d32 | no | 21 |

**Warnings:**

**Information:**

| | | Total Files Size (in bytes): | 1481550 |
|---|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

BLUEPRINT 000111

PTO/SB/31 (09-04)
Approved for use through 07/31/2006. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| NOTICE OF APPEAL FROM THE EXAMINER TO THE BOARD OF PATENT APPEALS AND INTERFERENCES | Docket Number (Optional)<br>**2003P18829WOUS** |
|---|---|

| I hereby certify that this correspondence is being deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to "Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450" [37 CFR 1.8(a)] on filed on-line November 11, 2010.<br><br>Signature _Ann Hickey_<br><br>Typed or printed name _____ ANN HICKEY _____ | In re Application of<br>NORBERT LÖBIG |
|---|---|
| | Application Number **10/582,589**    Filed **JUNE 9, 2006** |
| | For **METHOD FOR PROTECTION SWITCHING OF GEOGRAPHICALLY SEPARTE SWITCHING SYSTEMS** |
| | Art Unit **2463**    Examiner **ANGEL T. BROCKMAN** |

Applicant hereby **appeals** to the Board of Patent Appeals and Interferences from the decision of the examiner.

The fee for this Notice of Appeal is (37 CFR 41.20(b)(1))

    **\*$540 WAS PREVIOUSLY PAID ON MARCH 15, 2010 FOR EARLIER FILED NTC OF APPEAL**      $ _____

☐ Applicant claims small entity status. See 37 CFR 1.27. Therefore, the fee shown above is reduced by half, and the resulting fee is:      $ _____

☐ A check in the amount of the fee is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The Director has already been authorized to charge fees in this application to a Deposit Account. I have enclosed a duplicate copy of this sheet.

☒ The Director is hereby authorized to charge any fees which may be required, or credit any overpayment to Deposit Account No. 19-2179 . I have enclosed a duplicate copy of this sheet.

☐ A petition for an extension of time under 37 CFR 1.136(a) (PTO/SB/22) is enclosed.

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

I am the

☐ applicant/inventor.

☐ assignee of record of the entire interest.
    See 37 CFR 3.71. Statement under 37 CFR 3.73(b) is enclosed.
    (Form PTO/SB/96)

☒ attorney or agent of record.

    Registration number **61,142** .

☐ attorney or agent acting under 37 CFR 1.34.

    Registration number if acting under 37 CFR 1.34. _____

Signature: _Janet D. Hood_

Typed or printed name: **JANET D. HOOD**

Telephone number: **407-736-4234**

Date: **NOVEMBER 11, 2010**

NOTE: Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required. Submit multiple forms if more than one signature is required, see below*.

☐ *Total of _____ forms are submitted.

This collection of information is required by 37 CFR 41.31. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11, 1.14 and 41.6. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

**BLUEPRINT 000112**

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/582,589 | 06/09/2006 | Norbert Lobig | 2003P18829WOUS | 2784 |

22116        7590        08/17/2010

SIEMENS CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
170 WOOD AVENUE SOUTH
ISELIN, NJ 08830

| EXAMINER |
|---|
| BROCKMAN, ANGEL T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2463 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 08/17/2010 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

**BLUEPRINT 000113**

| | Application No. | Applicant(s) |
|---|---|---|
| ***Office Action Summary*** | 10/582,589 | LOBIG ET AL. |
| | Examiner | Art Unit | |
| | ANGEL BROCKMAN | 2463 | |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE *3* MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on *14 May 2010*.

2a)☐ This action is **FINAL**.        2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☐ Claim(s) *11-20,26 and 28-35* is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) *11-20,26 and 28-35* is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☒ The drawing(s) filed on *09 June 2006* is/are: a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All  b)☐ Some * c)☐ None of:

    1.☐ Certified copies of the priority documents have been received.

    2.☐ Certified copies of the priority documents have been received in Application No. _____.

    3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)
2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3)☐ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____.
5)☐ Notice of Informal Patent Application
6)☐ Other: _____.

Application/Control Number: 10/582,589                                           Page 2
Art Unit: 2463

## DETAILED ACTION

1.      In view of the Appeal Brief filed on May 14, 2010  PROSECUTION IS HEREBY

REOPENED.  A new grounds of rejection has been made and is set forth below.

To avoid abandonment of the application, appellant must exercise one of the following

two options:

(1) file a reply under 37 CFR 1.111 (if this Office action is non-final) or a reply under 37

CFR 1.113 (if this Office action is final); or,

(2) initiate a new appeal by filing a notice of appeal under 37 CFR 41.31 followed by an

appeal brief under 37 CFR 41.37.  The previously paid notice of appeal fee and appeal brief fee

can be applied to the new appeal.  If, however, the appeal fees set forth in 37 CFR 41.20 have

been increased since they were previously paid, then appellant must pay the difference between

the increased fees and the amount previously paid.

A Supervisory Patent Examiner (SPE) has approved of reopening prosecution by signing

below:

/Derrick W Ferris/

Supervisory Patent Examiner, Art Unit 2463.


### *Claim Rejections - 35 USC § 103*

1.      This application currently names joint inventors.  In considering patentability of the

claims under 35 U.S.C. 103(a), the examiner presumes that the subject matter of the various

claims was commonly owned at the time any inventions covered therein were made absent any

evidence to the contrary.  Applicant is advised of the obligation under 37 CFR 1.56 to point out

Application/Control Number: 10/582,589                                                    Page 3
Art Unit: 2463

the inventor and invention dates of each claim that was not commonly owned at the time a later

invention was made in order for the examiner to consider the applicability of 35 U.S.C. 103(c)

and potential 35 U.S.C. 102(e), (f) or (g) prior art under 35 U.S.C. 103(a).

2.      The factual inquiries set forth in *Graham* **v.** *John Deere Co.*, 383 U.S. 1, 148 USPQ 459

(1966), that are applied for establishing a background for determining obviousness under 35

U.S.C. 103(a) are summarized as follows:

    1.    Determining the scope and contents of the prior art.
    2.    Ascertaining the differences between the prior art and the claims at issue.
    3.    Resolving the level of ordinary skill in the pertinent art.
    4.    Considering objective evidence present in the application indicating obviousness
          or nonobviousness.

3.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in
> section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are
> such that the subject matter as a whole would have been obvious at the time the invention was made to a person
> having ordinary skill in the art to which said subject matter pertains.  Patentability shall not be negatived by the
> manner in which the invention was made.

4.      Claims 11-20  and 28-35are rejected under 35 U.S.C. 103(a) as being unpatentable over

Khan et al.(US 2003/0152064 A1, hereinafter Khan) in view of Guess et al.(US 2003/0048746

A1, hereinafter Guess).

        Regarding **claims 11**, Khan discloses providing a pair of switching systems which are

geographically separate (¶[0009]) and which supply a dedicated redundancy to each other (figure

2, ¶[0053], wherein SSCb is dedicated to SSCa); controlling the communication between each of

the pair system  and the monitoring unit  in accordance with the; controlling  the communication

between the first switching system and the monitor  ( ¶[0067]-¶[0069], where the FailoverMgr

controls the system based on the mode or state of the system); when a loss of the communication

Application/Control Number: 10/582,589                                                  Page 4
Art Unit: 2463

to the first switching system occurs: activating by the monitoring unit ¶[0067] where the

FailoverMGgr integrated in a GW monitors  the switching system in hot-standby operating state

to be in the active operating state (¶[0053]-¶[0056]), and deactivating the first switching system

by the monitor (¶[0069], ¶[0073], where the SSC is offline and deactivated by the FailoverMgr

component).  Khan does not explicitly disclose one of the pair of switching systems is in an

active operating state and the other is in a hot-standby operating state  or wherein when in the

hot-standby operating state the respective switching system is not active in terms of switching

functions . Guess discloses one of the pair of switching systems is in an active operating state

and the other is in a hot-standby operating state (¶[0075], figure 6, wherein the standby switch

can be located separately) and  wherein when in the hot-standby operating state the respective

switching system is not active in terms of switching functions (¶[0080],¶[0088], wherein the

switch in hot-standby mode doesn't perform switching functions). Thus, it would have been

obvious to one of ordinary skill in the art at the time of invention to utilize the active and hot-

standby operating states as disclosed by Guess along with the system of Khan. The hot-standby

and active modes can be implemented into the system of Khan through software and hardware

implementation such that SSCa and SSCb function as the control cards as disclosed by Guess.

The motivation for utilizing the active and hot-standby operating states as disclosed by Guess

along with the system of Khan is to increase the efficiency of the system in the event of a failure.

Regarding **claim 12,** Khan discloses the operating state from the group consisting of

active and hot-standby has a pre-definable number of packet-base interfaces (¶[0061], wherein

the current mode includes the operating state, ¶[0068], where the other SSC involved through

SIP are the pre-definable number of packet interfaces).

Application/Control Number: 10/582,589                                                    Page 5
Art Unit: 2463

Regarding  **claim13**, Khan discloses periodically sending IP lease requests to the monitor by a packet-based interface of the switching system in the hot-standby operating state, the packet based interfaces as in an inactive state(¶[0059,¶[0061], where the state is inactive or hot-stand by);

Regarding **claim 14**, Khan discloses the monitor does not respond to the requests  while the switching system is in the hot-standby state(¶[0069], where the heartbeat message include a lack of response,¶[0061]).

Regarding **claim 15,** Khan discloses changing the packet-based interface from an inactive state to an active state in response to receiving an IP lease response(figure 3, where the GW1 goes from inactive to active in response to receiving the acknowledgement from GW2, ¶[0035]-¶[0038]).

Regarding **claim 16,** Khan discloses the response from the monitor contains an IP address f the requesting packet-based interface (¶[0034], where the IP address is included in the IAM message, figure 3) .

Regarding **claim 17**, Khan discloses suppressing sending IP lease requests to the monitoring unit by a packet-based interface of the switching system in the active operating state, the packet-based interface in an active operating state (figure 2,¶[0042]-¶[0045], where the requests are no longer being sent in between calls or after the caller hangs up).

Regarding **claim 18**, Khan discloses receiving a monitoring message from the monitoring unit by a packet-based interface in the active state, the packet-based interface is in an active state and acknowledging the message by the packet-based interface ( figure 3, where SSA is the

**BLUEPRINT 000118**

Application/Control Number: 10/582,589                                          Page 6

Art Unit: 2463

monitor for the interfaces in the active state , and acknowledging is done by interfaces GW1 and

GW2).

Regarding **claim 19,** Khan discloses determining by the monitoring unit a fault condition

when an acknowledgement is not received form the packet-based interface in the active state;

and sending an IP lease response to the switching system in the hot-standby operating

state(¶[0059],¶[0061]-¶[0062], where the fault condition is in the current mode, ¶[0066]-

¶[0069]).

Regarding **claim 20,**  Khan discloses changing the packet-based interface from an

inactive state to an active state in response to receiving an IP response(figure 3, where the GW1

goes from inactive to active in response to receiving the acknowledgement from GW2, ¶[0035]-

¶[0038]).


4.      Claims 28-35  are rejected under 35 U.S.C. 103 (a)  as being unpatentable over Khan et

al.(US 2003/0152064 A1, hereinafter Khan) and  Guess et al.(US 2003/0048746 A1, hereinafter

Guess) in view of Rusmisel et al.(US 7,535,827 B2, hereinafter Rusmisel)

Regarding **claims 28 and 32**, Khan discloses providing a pair of switching systems which

are geographically separate (¶[0009]) and which supply a dedicated redundancy to each other

(figure 2, ¶[0053], wherein SSCb is dedicated to SSCa); the pair of switching systems comprise

software that is identical to each other (¶[0029], wherein the provisioning includes the identical

software);controlling the communication between each of the pair system  and the monitoring

unit  in accordance with the active operating state; controlling  the communication  between the

first switching system and the monitor ( ¶[0067]-¶[0069], where the FailoverMgr controls the

**BLUEPRINT 000119**

Application/Control Number: 10/582,589                                    Page 7
Art Unit: 2463

system based on the mode or state of the system); when a loss of the communication to the first

switching system occurs: activating by the monitoring unit ¶[0067] where the FailoverMGgr

integrated in a GW monitors (¶[0053]-¶[0056]), and deactivating the first switching system by

the monitor (¶[0069], ¶[0073], where the SSC is offline and deactivated by the FailoverMgr

component). Guess discloses one of the pair of switching systems is in an active operating state

and the other is in a hot-standby operating state (¶[0075], figure 6, wherein the standby switch

can be located separately) and  wherein when in the hot-standby operating state the respective

switching system is not active in terms of switching functions (¶[0080],¶[0088], wherein the

switch in hot-standby mode doesn't perform switching functions). Khan and Guess disclose all

subject matter of the claimed invention with the exception of wherein each of the pair of

switching systems comprises a database which is identical to each other, the database comprises

only permanent data and semi-permanent data such that transient data pertaining to calls is

excluded .Rusmisel discloses wherein each of the pair of switching systems comprises a database

which is identical to each other, the database comprises only permanent data and semi-permanent

data such that transient data pertaining to calls is excluded (column 3, lines 1-18, figure 4,

wherein the hot-standby system is in synchrony with the active system). Thus, it would have

been obvious to one of ordinary skill in the art at the time of invention to utilize the identical

database in the active and hot-standby operating states as disclosed by Rusmisel along with the

system of Khan and Guess. The identical database in the hot-standby and active modes can be

implemented into the system of Khan and Guess through software and hardware implementation

such that each switch includes . The motivation for utilizing the identical database in the active

Application/Control Number: 10/582,589                                             Page 8
Art Unit: 2463

and hot-standby operating states as disclosed by Rusmisel along with the system of Khan and

Guess is to increase the efficiency of the system in the event of a failure.

Regarding claim **29 and 33**, Khan discloses periodically sending IP lease requests to the

monitor by a packet-based interface of the switching system in the hot-standby operating state,

the packet based interfaces as in an inactive state(¶[0059,¶[0061]), and ignoring the IP lease

request by the monitoring unit while switching system is in the hot-standby operating state

(¶[0069], where the heartbeat message include a lack of response,¶[0061]).


Regarding **claims 30 and 34,** Khan discloses changing the packet-based interface from

an inactive state to an active state in response to receiving an IP lease response(figure 3, where

the GW1 goes from inactive to active in response to receiving the acknowledgement from GW2,

¶[0035]-¶[0038]),the  IP lease response from the monitor contains an IP address leased to the

requesting packet-based interface (¶[0034], where the IP address is included in the IAM

message, figure 3) .

Regarding **claims 31 and 35,** Khan discloses receiving a monitoring message from the

monitoring unit by a packet-based interface of the switching system in the active operating state,

the packet based interface in an active state ((¶[0059,¶[0061]) sending a response by the

switching system in the active operating state via the packet-based interface to the monitoring

message in order to acknowledge the monitoring message (¶[0061]) determining by the

monitoring unit a fault condition when an acknowledgement is not received from the packet-

based interface in the active state(¶[0067], where the heartbeats include the acknowledgements,

¶[0069], where the failure is in SSCa); and sending a IP lease response to a packet-based

Application/Control Number: 10/582,589                                    Page 9
Art Unit: 2463

interface, which is inactive of the switching system in the hot-standby operating state (¶[0035]-¶[0038]),¶[0061], where the inactive endpoint is the switching system in the hot-standby operating state)

5.      Claim 26 is rejected under 35 U.S.C. 103 (a)  as being unpatentable over Khan et al.(US 2003/0152064 A1, hereinafter Khan) and Guess et al.(US 2003/0048746 A1,hereinafter Guess) in view of Kampe et al.(US 2002/0007468, hereinafter Kampe).

        Regarding **claim 26,**  Khan and Guess discloses  all subject matter of the claimed invention as set forth above in claim 11 above. Khan and Guess does not explicitly disclose the operating state of the switching system having the communication loss changes to a hot-standby operation and remains defined as the hot-standby switching system until a new fault situation forces a new switchover. Kampe discloses the hot-standby switching system remains until a new fault situation forces a new switchover(¶[0079],¶[0084]). Thus, it would have been obvious to one of ordinary skill in the art at the time of invention to utilize the system as disclosed by Kampe along with the teachings of Khan and Guess. The teachings of Kampe can be applied to the system of Khan and Guess through software implementation. The motivation for utilizing the system as disclosed by Kampe along with the teachings of Khan and Guess is to increase the efficiency of the network and to provide communication in the event of a fault.

                                          *Conclusion*

6.      Any inquiry concerning this communication or earlier communications from the examiner should be directed to ANGEL BROCKMAN whose telephone number is (571)270-5664.  The examiner can normally be reached on Monday-Friday ,7:30-5:00pm.

Application/Control Number: 10/582,589                                       Page 10
Art Unit: 2463

7.      If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Derrick Ferris can be reached on 571-272-3123.  The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.

8.      Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system.  Status information for published applications

may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished

applications is available through Private PAIR only.  For more information about the PAIR

system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR

system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would

like assistance from a USPTO Customer Service Representative or access to the automated

information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


                                        ANGEL  BROCKMAN
                                        Examiner
                                        Art Unit 2463

/A. B./
Examiner, Art Unit 2463

/Derrick W Ferris/
Supervisory Patent Examiner, Art Unit 2463

BLUEPRINT 000123

| *Notice of References Cited* | Application/Control No. 10/582,589 | Applicant(s)/Patent Under Reexamination LOBIG ET AL. | |
|---|---|---|---|
| | Examiner ANGEL BROCKMAN | Art Unit 2463 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-2003/0048746 | 03-2003 | Guess et al. | 370/219 |
| | B | US- | | | |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 10582589 | LOBIG ET AL. |
| | **Examiner** | **Art Unit** |
| | ANGEL BROCKMAN | 2463 |

| ✓ | **Rejected** | | - | **Cancelled** | | N | **Non-Elected** | | A | **Appeal** |
|---|---|---|---|---|---|---|---|---|---|---|
| = | **Allowed** | | ÷ | **Restricted** | | I | **Interference** | | O | **Objected** |

☐ Claims renumbered in the same order as presented by applicant    ☐ CPA   ☐ T.D.   ☐ R.1.47

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 02/24/2009 | 09/11/2009 | 12/09/2009 | 08/14/2010 | | | | | |
| | 11 | ✓ | ✓ | ✓ | ✓ | | | | | |
| | 12 | ✓ | ✓ | ✓ | ✓ | | | | | |
| | 13 | ✓ | ✓ | ✓ | ✓ | | | | | |
| | 14 | ✓ | ✓ | ✓ | ✓ | | | | | |
| | 15 | ✓ | ✓ | ✓ | ✓ | | | | | |
| | 16 | ✓ | ✓ | ✓ | ✓ | | | | | |
| | 17 | ✓ | ✓ | ✓ | ✓ | | | | | |
| | 18 | ✓ | ✓ | ✓ | ✓ | | | | | |
| | 19 | ✓ | ✓ | ✓ | ✓ | | | | | |
| | 20 | ✓ | | ✓ | ✓ | | | | | |
| | 21 | ✓ | - | - | - | | | | | |
| | 22 | ✓ | - | - | - | | | | | |
| | 23 | ✓ | - | - | - | | | | | |
| | 24 | ✓ | - | - | - | | | | | |
| | 25 | ✓ | - | - | - | | | | | |
| | 26 | ✓ | ✓ | ✓ | ✓ | | | | | |
| | 27 | ✓ | - | - | - | | | | | |
| | 28 | | ✓ | ✓ | ✓ | | | | | |
| | 29 | | ✓ | ✓ | ✓ | | | | | |
| | 30 | | ✓ | ✓ | ✓ | | | | | |
| | 31 | | ✓ | ✓ | ✓ | | | | | |
| | 32 | | ✓ | ✓ | ✓ | | | | | |
| | 33 | | ✓ | ✓ | ✓ | | | | | |
| | 34 | | ✓ | ✓ | ✓ | | | | | |
| | 35 | | ✓ | ✓ | ✓ | | | | | |

| Search Notes | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 10582589 | LOBIG ET AL. |
| | **Examiner** | **Art Unit** |
| | ANGEL BROCKMAN | 2463 |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 370 | 442 | 02/20/2009 | A.B. |
| 370 | 217,219,220 | | A.B. |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Talked to Spe Derrick Ferris | 02/19/2009 | A.B. |
| Inventor Name Search | 02/19/2009 | A.B. |
| EAST SEARCH | 02/20/2009 | A.B. |
| Update EAST | 9/9/2009 | A.B. |
| Update EAST | 12/9/2009 | A.B. |
| UPDATE EAST | 8/13/2010 | A.B. |

## INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 370 | 442 | 02/20/2009 | A.B. |

U.S. Patent and Trademark Office

# SIEMENS

PATENT
Attorney Docket No. 2003P18829WOUS

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

| | | | | |
|---|---|---|---|---|
| Inventor: | N. Lobig et al. | ) | Confirmation No: | 2784 |
| | | ) | | |
| Serial No.: | 10/582,589 | ) | Examiner: | A. Brockman |
| | | ) | | |
| Filed: | June 9, 2006 | ) | Group Art Unit: | 2463 |

Title     METHOD FOR PROTECTION SWITCHING OF GEOGRAPHICALLY SEPARATE SWITCHING SYSTEMS

**Commissioner For Patents**
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

## APPELANTS BRIEF

    This Appeal Brief relates to an appeal from the rejection of claims 11-20, 26, and 28-35 in the Office Action mailed December 15, 2009,

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

I.  Real Party in Interest ................................................................................................ 3

II.  Related Appeals and Interferences .......................................................................... 3

III.  Status of Claims ...................................................................................................... 3

IV.  Status of Amendments ............................................................................................ 3

V.  Summary of Claimed Subject Matter ...................................................................... 4
    A.  Claim 11                                                                                4
    B.  Claim 28                                                                                5
    C.  Claim 32                                                                                6

VI.  Grounds for Rejection to be Reviewed .................................................................. 7

VII.  Appellants' Argument ............................................................................................ 7
    A.  The rejection of claims 24-28, 30-38, and 40-44 under 35 U.S.C. § 102(3) as being
    anticipated over Mussman et al. (US PgPub 2002/0159440) ...................................... 7
        a)  Independent claim 8                                                              7
        b)  Dependent claim 26                                                             10
        c)  Independent claim 28                                                          10
        d)  Independent claim 32                                                          12

VIII. Conclusion ............................................................................................................ 13

IX.  Claims Appendix .................................................................................................. 14

X.  Evidence Appendix ............................................................................................... 19

XI.  Related Procedings Appendix ............................................................................... 20

BLUEPRINT 000128

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

I.      Real Party in Interest

The real party in interest is Siemens Aktiengesellschaft of Munich, Germany, the assignee of record.

II.     Related Appeals and Interferences

There are no known related appeals or interferences.

III.    Status of Claims

Claims 1-10, 21-25, and 27 have been canceled. Claims 11-20, 26 and 28-35 are rejected. No claims have been allowed. Claims 24-28, 30-38, and 40-44 are being appealed.

IV.     Status of Amendments

No amendment has been filed subsequent to the rejection.

BLUEPRINT 000129

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

V.   <u>Summary of Claimed Subject Matter</u>

Paragraph numbers are in reference to Applicant's Substitute Specification.

A.   <u>Claim 11</u>

Referring to the Figure and paragraphs [0004][0013][0028]-[0030], independent claim 11 recites a method for protection switching of geographically separate switching systems ($S_1$) ($S_{1b}$) arranged in pairs, comprising:

providing a pair of switching systems ($S_1$) ($S_{1b}$) which are geographically separate and which supply a dedicated redundancy to each other, one of the pair of switching systems ($S_1$) is in an active operating state (act) and the other ($S_{1b}$) is in a hot-standby operating state (stb);

controlling the communication between the each of the pair switching system ($S_1$) ($S_{1b}$) and a monitoring unit (SC) in accordance with the an operating state of the respective switching system ($S_1$) ($S_{1b}$); and

when a loss of the communication to the switching system ($S_1$) in the active operating state (act) occurs:

activating, by the monitoring unit (SC), the switching system ($S_{1b}$) in the hot-standby operating state (stb) to be in the active operating state (act), and

deactivating, by the monitoring unit (SC), the switching system ($S_1$) with the communication loss to be in the hot-standby operating state (stb),

wherein when in the hot-standby operating state (stb), the respective switching system ($S_1$) ($S_{1b}$) is not active in terms of switching functions.

BLUEPRINT 000130

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

B. Claim 28

Referring to the Figure paragraphs [0004][0010][0013][0028]-[0030], independent claim 28 recites a method for protection switching of geographically separate switching systems $(S_1)$ $(S_{1b})$ arranged in pairs, comprising:

providing a pair of switching systems $(S_1)$ $(S_{1b})$ which are geographically separate and which supply a dedicated redundancy to each other, one of the pair of switching systems $(S_1)$ is in an active operating state (act) and the other $(S_{1b})$ is in a hot-standby operating state (stb), each of the pair of switching systems $(S_1)$ $(S_{1b})$ comprises a database which is identical to each other, the database comprises only permanent data and semi-permanent data such that transient data pertaining to calls is excluded;

controlling the communication between the each of the pair switching system $(S_1)$ $(S_{1b})$ and a monitoring unit (SC) in accordance with the an operating state of the respective switching system $(S_1)$ $(S_{1b})$; and

when a loss of the communication to the switching system $(S_1)$ in the active operating state occurs (act):

activating, by the monitoring unit (SC), the switching system $(S_1)$ $(S_{1b})$ in the hot-standby operating state (stb) to be in the active operating state (act), and

deactivating, by the monitoring unit (SC), the switching system $(S_1)$ $(S_{1b})$ with the communication loss to be in the hot-standby operating state (stb),

wherein when in the hot-standby operating state (stb), the respective switching system $(S_1)$ $(S_{1b})$ is not active in terms of switching functions.

BLUEPRINT 000131

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

### C. Claim 32

Referring to the Figure paragraphs [0004][0013][0028]-[0030], independent claim 11 recites method for protection switching of geographically separate switching systems ($S_1$) ($S_{1b}$) arranged in pairs, comprising:

providing a pair of switching systems which are geographically separate and which supply a dedicated redundancy to each other, the pair of switching systems ($S_1$) ($S_{1b}$) comprise software identical to each other, one of the pair of switching systems ($S_1$) ($S_{1b}$) is in an active operating state (act) and the other ($S_{1b}$) is in a hot-standby operating state (stb);

providing a monitoring unit (SC) that communicates with the pair of switching systems($S_1$) ($S_{1b}$);

controlling the communication between the each of the pair switching system ($S_1$) ($S_{1b}$) and a monitoring unit (SC) in accordance with the an operating state of the respective switching system ($S_1$) ($S_{1b}$); and

when a loss of the communication to the switching system ($S_1$) in the active operating state (act) occurs:

activating, by the monitoring unit (SC), the switching system ($S_{1b}$) in the hot-standby operating state (stb) to be in the active operating state (act), and

deactivating, by the monitoring unit (SC), the switching system ($S_1$) with the communication loss to be in the hot-standby operating state (stb),

wherein every software update including patches is delivered in identical fashion to the first and redundant switching system($S_1$) ($S_{1b}$), and

wherein when in the hot-standby operating state (stb), the respective switching system ($S_1$) ($S_{1b}$) is not active in terms of switching functions.

BLUEPRINT 000132

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

VI.   Grounds for Rejection to be Reviewed

Claims 24-28, 30-38, and 40-44 are rejected under 35 U.S.C. § 102(e) as being anticipated by Mussman et al. (US PgPub 2002/0159440).

VII.  Appellants' Argument

A.  The rejection of claims 24-28, 30-38, and 40-44 under 35 U.S.C. § 102(3) as being anticipated over Mussman et al. (US PgPub 2002/0159440)

a)                Independent claim 8

Applicant's claim 8 includes the limitation:

> providing a **pair** of switching systems which are geographically separate and which supply a **dedicated** redundancy to each other

Applicant's redundancy involves a pair (two) of switching systems which supply a **dedicated** redundancy to each other. This means that a first of the pair of the switching systems is dedicated wholly as a backup to the second of the pair. Likewise, the second of the pair is wholly dedicated as a backup to the first of the pair. Khan does not teach or suggest that the switching systems are in pairs nor does Khan teach or suggest that they are dedicated. In contrast, Khan teaches that each of a plurality of switching systems (softswitches SSC) may be a backup for any of the other systems (see e.g., Khan ¶[0029]).

The Examiner indicates that a dedicated redundancy is taught by Khan via figure 2, ¶[0053]. The Examiner states "wherein SSCb is dedicated to SSCa". However ¶[0053] of Khan recites:

> A series of calls are connected using SSCa where SSCa can play the role of an originating and/or terminating switch. SSCa goes through signaling flows (e.g., as shown in FIGS. 3 and 4). SSCb is **designated** as SSCa's backup site. Under normal condition, SSCa communicates with all other SSCs including SSCb using SIP, and SSCb does not send or receive ISUP messages using PC1 (which is the point code associated with SSCa). The SSCs communicate with the respective GWs that they control using MGCP.

Applicant respectfully submits that Khan merely uses SSCb as and example of a SSC that is designated as a backup (see e.g., Khan ¶[0029]). Furthermore, Applicant respectfully submits

**BLUEPRINT 000133**

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

that the words of the claim must be given their plain meaning unless the plain meaning is inconsistent with the specification…[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention. (MPEP 2111.01). One skilled in the art would not reasonably consider the term "dedicated", which means wholly committed to something, the same as the term "designated", which means selected. Furthermore, Applicant's claim 11 includes the limitation:

> one of the pair of switching systems is in an active operating state and the other is in a hot-standby operating state…when a loss of the communication to the switching system in the active operating state occurs:
>> activating, by the monitoring unit, the switching system in the hot-standby operating state to be in the active operating state, and
>> deactivating, by the monitoring unit, the switching system with the communication loss to be in the hot-standby operating state,
> wherein when in the hot-standby operating state, the respective switching system is not active in terms of switching functions .

Only one of the pair of switching systems is active in terms of switching functions. When the failed switching system is deactivated, the switching system in the hot-standby becomes activated. In the September 25, 2009 Office Action the Examiner states that Khan discloses that "one of the pair of switching systems is in an active operating state and the other is in a hot-standby operating state (SSCa is in the active operating state, redundant switching system (SSCB) is in a hot-standby operating state (SSCB) (figure 2, ¶[0009], ¶[0096].)". In response to Applicant's arguments on November 17, 2009, the Examiner agrees that Khan does not teach an active and hot-standby operating state but states that Rusmisel "discloses a pair of switching systems is in an active operating state and the other is in a hot-standby operating state (figure 4, wherein the active control card is th[e] active switching system and the inactive control card in the hot–standby state, column 5 lines 30-41)". The Examiner further states "The hot-standby and active modes can be implemented into the system of Khan through software and hardware implementation such that SSCa and SSCb function as the control cards as disclosed by Rusmisel".

Applicant respectfully disagrees with the Examiner. Each of Khan's SSC is active by controlling a gateway (GW), which is responsible for their own set of circuits (see e.g., Khan

BLUEPRINT 000134

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

¶[0027][0028]). When an SSC fails (including congestion or any other traffic off loading), the active backup SSC controls the GW of the failed SCC (see e.g., Khan ¶[0029]). Applicant respectfully submits that by changing Khan's SSCa and SSCb to function as Rusmisel's control cards, SSCa and SSCb may not be active to process switching functions (i.e. calls) at the same time because one card is active and the other is in hot-standby. Thus, Khan's backup SSC could not control its own GW. Applicant respectfully submits that modifying Khan as the Examiner suggests not only renders the prior art unsatisfactory for its intended purpose but also changes the principle of operation of the prior art.

> If proposed modification would render the prior art invention being modified unsatisfactory for its intended purpose, then there is no suggestion or motivation to make the proposed modification (MPEP 2143 section V).

> If the proposed modification or combination of the prior art would change the principle of operation of the prior art invention being modified, then the teachings of the references are not sufficient to render the claims *prima facie* obvious (MPEP 2143 section VI).

Furthermore, Applicant respectfully disagrees that Rusmisel discloses a pair of switching systems. In contrast, Rusmisel discloses a pair of control cards co-located within a switching system (node) (see e.g., Rusmisel FIG 1). Rusmisel's redundancy involves the active control card to keep the hot-standby control card in synch by sending Label Switch Path message from the active control card to the hot-standby control card. Applicant respectfully submits that there is no motivation to geographically separate Rusmisel's control cards.

For at least the reasons above, Applicant respectfully submits that claim 11 is patentable as well as claims 12-20, and 26, which depend thereon.

BLUEPRINT 000135

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

b)          Dependent claim 26

Applicant's claim 2 includes the limitation:

> the operating state of the switching system having the communication loss changes to a hot-standby operation state and remains defined as the hot-standby switching system until a new fault situation forces a new switchover.

Since Applicant's supply a *dedicated* redundancy, there is no need to switch back to the switching system having the communication loss once a recovery occurs unless a new fault occurs. In contrast, Khan teaches that once a recovery occurs to switch back to the switching system having the communication loss (see e.g., Khan ¶[0072]-[0081]). In Khan's redundancy, the SSC that provides the redundancy handles switching functions for itself as well as for the failed SSC. Thus, extra load is placed on the SSC while providing the redundancy unlike Applicant's dedicated redundancy. Therefore, there would be no motivation to modify Khan to for the SSC providing the redundancy to remain providing the redundancy (remains defined as the hot-standby switching system until a new fault situation forces a new switchover) once the failed SCC recovers. Applicant respectfully submits that claim 26.

c)          Independent claim 28

Applicant's claim 28 includes the limitations:

> providing a *pair* of switching systems which are geographically separate and which supply a *dedicated* redundancy to each other, of the pair of switching systems is in an active operating state and the other is in a hot-standby operating state…when a loss of the communication to the switching system in the active operating state occurs:
> > activating, by the monitoring unit, the switching system in the hot-standby operating state to be in the active operating state, and
> > deactivating, by the monitoring unit, the switching system with the communication loss to be in the hot-standby operating state,
> wherein when in the hot-standby operating state, the respective switching system is not active in terms of switching functions .

BLUEPRINT 000136

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

For at least for the reasons argued for claim 8 for above limitations, Applicant respectfully submits claim 28 is patentable. Furthermore, claim 28 includes the limitation:

> each of the pair of switching systems comprises a ***database*** which is ***identical to each other***, the database comprises only permanent data and semi-permanent data such that transient data pertaining to calls is excluded

The Examiner reads this limitation as "software that is identical to each other (¶[0029], wherein the provisioning includes the identical software)".

> During patent examination, the pending claims must be "given their broadest reasonable interpretation consistent with the specification." . . . The broadest reasonable interpretation of the claims must also be consistent with the interpretation that those skilled in the art would reach (MPEP 2111).

A database is an organized collection of data whereas software is a set of instructions that are executed by a processor. One skilled in the art would not reasonably interpret a database as software. Furthermore, Applicant's respectfully submit that Khan teaches that SSCb is provisioned with PC1 (see e.g., Khan ¶[0029],. which is the point code for SSCa (see.e.g., Khan ¶[0028]. However, merely teaching that SSCb is provisioned with the point code for SSCa does not reasonably suggest that SSCa and SSCb have identical databases.

For at least the reasons above, Applicant respectfully submits that claim 28 is patentable as well as claims 29-31, which depend thereon.

BLUEPRINT 000137

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

d)                    Independent claim 32

Applicant's claim 32 includes the limitations:

> providing a ***pair*** of switching systems which are geographically
> separate and which supply a ***dedicated*** redundancy to each other,
> of the pair of switching systems is in an active operating state and
> the other is in a hot-standby operating state…when a loss of the
> communication to the switching system in the active operating
> state occurs:
>> activating, by the monitoring unit, the switching
>> system in the hot-standby operating state to be
>> in the active operating state, and
>> deactivating, by the monitoring unit, the
>> switching system with the communication loss
>> to be in the hot-standby operating state,
> wherein when in the hot-standby operating state, the respective
> switching system is not active in terms of switching functions .

For at least for the reasons argued for claim 8 for above limitations, Applicant respectfully submits claim 32 is patentable. Furthermore, claim 32 includes the limitation:

> the pair of switching systems comprises ***software*** which is
> ***identical to each other***

The Examiner reads this limitation as "software that is identical to each other (¶[0029], wherein the provisioning includes the identical software)". However, Applicant's respectfully submit that Khan teaches that SSCb is provisioned with PC1 (see e.g., Khan ¶[0029]),. which is the point code for SSCa (see.e.g., Khan ¶[0028]).

One skilled in the art would recognize that software is a set of instructions that are executed by a processor. In contrast, a point code is an address. One skilled in the art would not reasonably interpret an address as software.

For at least the reasons above, Applicant respectfully submits that claim 32 is patentable as well as claims 33-35, which depend thereon.

BLUEPRINT 000138

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

VIII. <u>Conclusion</u>

For the foregoing reasons, it is respectfully submitted that the rejections set forth in the outstanding Office Action are inapplicable to the present claims. The honorable Board is therefore respectfully requested to reverse the rejection of the Examiner and to remand the application to the Examiner with instructions to allow the pending claims.  Please grant any extensions of time required to enter this paper.  Please charge any appropriate fees due in connection with this paper or credit any overpayments to Deposit Acct. No. 19-2179.

Respectfully submitted,

Dated: *May 14, 2010*   By: *Janet D. Hood*

Janet D. Hood
Registration No. 61,142
(407) 736-4234

Siemens Corporation
Intellectual Property Department
170 Wood Avenue South
Iselin, New Jersey 08830

BLUEPRINT 000139

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

IX.   Claims Appendix

11.   A method for protection switching of geographically separate switching systems arranged in pairs, comprising:

providing a pair of switching systems which are geographically separate and which supply a dedicated redundancy to each other, one of the pair of switching systems is in an active operating state and the other is in a hot-standby operating state;

controlling the communication between the each of the pair switching system and a monitoring unit in accordance with the an operating state of the respective switching system; and

when a loss of the communication to the switching system in the active operating state occurs:

activating, by the monitoring unit, the switching system in the hot-standby operating state to be in the active operating state, and

deactivating, by the monitoring unit, the switching system with the communication loss to be in the hot-standby operating state,

wherein when in the hot-standby operating state, the respective switching system is not active in terms of switching functions .

12.   The method as claimed in claim 11, wherein an operating state selected from the group consisting of active operating state and hot-standby state has a pre-definable number of packet-based interfaces.

13.   The method as claimed in claim 11, further comprising periodically sending an IP lease request to the monitoring unit by a packet-based interface of the switching system in the hot-standby operating state, the packet-based interface is in an inactive state.

14.   The method as claimed in claim 13, wherein the monitoring unit does not respond to the request while the switching system is in the hot-standby operating state.

15.   The method as claimed in claim 13, further comprising changing the packet-based interface from the inactive state to an active state in response to receiving an IP lease response.

BLUEPRINT 000140

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

16.    The method as claimed in claim 15, wherein the IP lease response from the monitoring unit contains an IP address leased to the requesting packet-based interface.

17.    The method as claimed in claim 11, further comprising suppressing an sending IP lease request to the monitoring unit by a packet-based interface of the switching system in the active operating state, the packet-based interface is in an active operating state.

18.    The method as claimed in claim 11, further comprising:

receiving a monitoring message from the monitoring unit by a packet-based  interface of the switching system in the active operating state, the packet-based interface is in an active state; and

acknowledging the message by the packet-based interface.

19.    The method as claimed in claim 18, further comprising:

determining, by the monitoring unit, a fault condition when an acknowledgement is not received from the packet-based interface in the active state; and

sending a IP lease response to a packet-based interface, which is inactive, of the switching system in the hot-standby operating state.

20.    The method as claimed in claim 19, further comprising changing the packet-based interface from the inactive state to an active state in response to receiving the IP response.

26.    The method as claimed in claim 11,

wherein the operating state of the switching system having the communication loss changes to a hot-standby operation state and remains defined as the hot-standby switching system until a new fault situation forces a new switchover.

BLUEPRINT 000141

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

28.     A method for protection switching of geographically separate switching systems arranged in pairs, comprising:

providing a pair of switching systems which are geographically separate and which supply a dedicated redundancy to each other, one of the pair of switching systems is in an active operating state and the other is in a hot-standby operating state, each of the pair of switching systems comprises a database which is identical to each other, the database comprises only permanent data and semi-permanent data such that transient data pertaining to calls is excluded;

controlling the communication between the each of the pair switching system and a monitoring unit in accordance with the an operating state of the respective switching system; and

when a loss of the communication to the switching system in the active operating state occurs:

activating, by the monitoring unit, the switching system in the hot-standby operating state to be in the active operating state, and

deactivating, by the monitoring unit, the switching system with the communication loss to be in the hot-standby operating state,

wherein when in the hot-standby operating state, the respective switching system is not active in terms of switching functions.

29.     The method as claimed in claim 28, further comprising:

periodically sending an IP lease request to the monitoring unit by a packet-based interface of the switching system in the hot-standby operating state, the packet-based interface is in an inactive state; and

ignoring the IP lease request by the monitoring unit while the switching system is in the hot-standby operating state.

30.     The method as claimed in claim 29, further comprising changing the packet-based interface from the inactive state to an active state in response to receiving an IP lease response, the IP lease response from the monitoring unit contains an IP address leased to the requesting packet-based interface.

BLUEPRINT 000142

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

31.    The method as claimed in claim 28, further comprising:

receiving a monitoring message from the monitoring unit by a packet-based interface of the switching system in the active operating state, the packet-based interface in an active state;

sending a response by the switching system in the active operating state via the packet-based interface to the monitoring message in order to acknowledge the monitoring message;

determining by the monitoring unit a fault condition when an acknowledgement is not received from the packet-based  interface in the active state; and

sending a IP lease response to a packet-based interface, which is inactive, of the switching system in the hot-standby operating state.

32.    A method for protection switching of geographically separate switching systems arranged in pairs, comprising:

providing a pair of switching systems which are geographically separate and which supply a dedicated redundancy to each other, the pair of switching systems comprise software identical to each other, one of the pair of switching systems is in an active operating state and the other is in a hot-standby operating state;

providing a monitoring unit that communicates with the pair of switching systems;

controlling the communication between the each of the pair switching system and a monitoring unit in accordance with the an operating state of the respective switching system; and

when a loss of the communication to the switching system in the active operating state occurs:

activating, by the monitoring unit, the switching system in the hot-standby operating state to be in the active operating state, and

deactivating, by the monitoring unit, the switching system with the communication loss to be in the hot-standby operating state,

wherein every software update including patches is delivered in identical fashion to the first and redundant switching system, and

wherein when in the hot-standby operating state, the respective switching system is not active in terms of switching functions.

BLUEPRINT 000143

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

33.     The method as claimed in claim 32, further comprising:

periodically sending an IP lease request to the monitoring unit by a packet-based interface of the switching system in the hot-standby operating state, the packet-based interface is in an inactive state; and

ignoring the IP lease request by the monitoring unit while the switching system is in the hot-standby operating state.

34.     The method as claimed in claim 33, further comprising changing the packet-based interface from the inactive state to an active state in response to receiving an IP lease response, the IP lease response from the monitoring unit contains an IP address leased to the requesting packet-based interface.

35.     The method as claimed in claim 32, further comprising:

receiving a monitoring message from the monitoring unit by a packet-based interface of the switching system in the active operating state, the packet-based interface in an active state;

sending a response by the switching system in the active operating state via the packet-based interface to the monitoring message in order to acknowledge the monitoring message;

determining by the monitoring unit a fault condition when an acknowledgement is not received from the packet-based  interface in the active state; and

sending a IP lease response to a packet-based interface, which is inactive, of the switching system in the hot-standby operating state.

BLUEPRINT 000144

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS


X.    Evidence Appendix

None

BLUEPRINT 000145

Serial No.: 10/582,589
Atty. Doc. No.: 2003P18829WOUS

XI.   <u>Related Procedings Appendix</u>

None

BLUEPRINT 000146

## Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 10582589 |
| **Filing Date:** | 09-Jun-2006 |
| **Title of Invention:** | Method for protection switching of geographically separate switching systems |
| **First Named Inventor/Applicant Name:** | Norbert Lobig |
| **Filer:** | Janet D. Hood/Ann Hickey |
| **Attorney Docket Number:** | 2003P18829WOUS |

Filed as Large Entity

### U.S. National Stage under 35 USC 371 Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| Filing a brief in support of an appeal | 1402 | 1 | 540 | 540 |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

**BLUEPRINT 000147**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| | | **Total in USD ($)** | | **540** |

**BLUEPRINT 000148**

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 7615920 |
| **Application Number:** | 10582589 |
| **International Application Number:** | |
| **Confirmation Number:** | 2784 |
| **Title of Invention:** | Method for protection switching of geographically separate switching systems |
| **First Named Inventor/Applicant Name:** | Norbert  Lobig |
| **Customer Number:** | 22116 |
| **Filer:** | Janet D. Hood/Ann Hickey |
| **Filer Authorized By:** | Janet D. Hood |
| **Attorney Docket Number:** | 2003P18829WOUS |
| **Receipt Date:** | 14-MAY-2010 |
| **Filing Date:** | 09-JUN-2006 |
| **Time Stamp:** | 15:32:31 |
| **Application Type:** | U.S. National Stage under 35 USC 371 |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Deposit Account |
| Payment was successfully received in RAM | $540 |
| RAM confirmation Number | 1741 |
| Deposit Account | 192179 |
| Authorized User | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|

BLUEPRINT-0001-49

| 1 | Appeal Brief Filed | 2003P18933WOUSAppealBriefF iledMay142010.pdf | 1241573 | no | 20 |
| | | | 9792c085c1adeda802d7148f32f75bac78f2 c9c7 | | |

**Warnings:**

**Information:**

| 2 | Fee Worksheet (PTO-875) | fee-info.pdf | 30375 | no | 2 |
| | | | 412509f6ca3ada7ec7c2b0545c098acf331f1 ff7 | | |

**Warnings:**

**Information:**

| | **Total Files Size (in bytes):** | 1271948 |
|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

BLUEPRINT 000150

PTO/SB/31 (09-04)
Approved for use through 07/31/2006. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| **NOTICE OF APPEAL** FROM THE EXAMINER TO THE BOARD OF PATENT APPEALS AND INTERFERENCES | Docket Number (Optional) **2003P18829WOUS** |
|---|---|

| I hereby certify that this correspondence is being deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to "Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450" [37 CFR 1.8(a)] on filed on-line March 15, 2010. | In re Application of **NORBERT LÖBIG** | |
|---|---|---|
| Signature _Ann Hickey_ | Application Number **10/582,589** | Filed **JUNE 9, 2006** |
| Typed or printed name    **ANN HICKEY** | For   **METHOD FOR PROTECTION SWITCHING OF GEOGRAPHICALLY SEPARTE SWITCHING SYSTEMS** | |
| | Art Unit **2463** | Examiner **ANGEL T. BROCKMAN** |

Applicant hereby **appeals** to the Board of Patent Appeals and Interferences from the decision of the examiner.

The fee for this Notice of Appeal is (37 CFR 41.20(b)(1))

$ <u>540.00</u>

☐ Applicant claims small entity status.  See 37 CFR 1.27. Therefore, the fee shown above is reduced by half, and the resulting fee is:                                                                          $ _____

☐ A check in the amount of the fee is enclosed.

☐ Payment by credit card.  Form PTO-2038 is attached.

☐ The Director has already been authorized to charge fees in this application to a Deposit Account.
   I have enclosed a duplicate copy of this sheet.

☒ The Director is hereby authorized to charge any fees which may be required, or credit any overpayment
   to Deposit Account No. <u>19-2179</u> . I have enclosed a duplicate copy of this sheet.

☐ A petition for an extension of time under 37 CFR 1.136(a) (PTO/SB/22) is enclosed.

**WARNING: Information on this form may become public.  Credit card information should not be included on this form.  Provide credit card information and authorization on PTO-2038.**

I am the

☐ applicant/inventor.

☐ assignee of record of the entire interest.
   See 37 CFR 3.71.  Statement under 37 CFR 3.73(b) is enclosed.
   (Form PTO/SB/96)

☒ attorney or agent of record.

   Registration number  <u>61,142</u>

☐ attorney or agent acting under 37 CFR 1.34.

   Registration number if acting under 37 CFR 1.34. _____

_Janet D. Hood_ (signature)
Signature

**JANET D. HOOD**
Typed or printed name

**407-736-4234**
Telephone number

**MARCH 15, 2010**
Date

NOTE: Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required. Submit multiple forms if more than one signature is required, see below*.

☐ *Total of _____ forms are submitted.

This collection of information is required by 37 CFR 41.31. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11, 1.14 and 41.6. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

BLUEPRINT 000151

## Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 10582589 |
| **Filing Date:** | 09-Jun-2006 |
| **Title of Invention:** | Method for protection switching of geographically separate switching systems |
| **First Named Inventor/Applicant Name:** | Norbert Lobig |
| **Filer:** | Janet D. Hood/Ann Hickey |
| **Attorney Docket Number:** | 2003P18829WOUS |

Filed as Large Entity

### U.S. National Stage under 35 USC 371 Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| Notice of appeal | 1401 | 1 | 540 | 540 |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

**BLUEPRINT 000152**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | **540** |

BLUEPRINT 000153

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 7206383 |
| **Application Number:** | 10582589 |
| **International Application Number:** | |
| **Confirmation Number:** | 2784 |
| **Title of Invention:** | Method for protection switching of geographically separate switching systems |
| **First Named Inventor/Applicant Name:** | Norbert Lobig |
| **Customer Number:** | 22116 |
| **Filer:** | Janet D. Hood/Ann Hickey |
| **Filer Authorized By:** | Janet D. Hood |
| **Attorney Docket Number:** | 2003P18829WOUS |
| **Receipt Date:** | 15-MAR-2010 |
| **Filing Date:** | 09-JUN-2006 |
| **Time Stamp:** | 11:54:57 |
| **Application Type:** | U.S. National Stage under 35 USC 371 |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Deposit Account |
| Payment was successfully received in RAM | $540 |
| RAM confirmation Number | 8840 |
| Deposit Account | 192179 |
| Authorized User | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|

BLUEPRINT-000154

| 1 | Notice of Appeal Filed | 2003P18732WOUSNoticeOfAppealPTOSB31FiledMar152010.pdf | 115177 04d4c6ca2368c627559ddac16bb079a61bcc51a3 | no | 1 |
|---|---|---|---|---|---|

| **Warnings:** |
|---|

| **Information:** |
|---|

| 2 | Fee Worksheet (PTO-875) | fee-info.pdf | 30360 b34d0cf1cfc3d703da82eb6eafff26ff21b8d5a8 | no | 2 |
|---|---|---|---|---|---|

| **Warnings:** |
|---|

| **Information:** |
|---|

| **Total Files Size (in bytes):** | 145537 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

BLUEPRINT 000155

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/582,589 | 06/09/2006 | Norbert Lobig | 2003P18829WOUS | 2784 |

22116          7590          12/15/2009

SIEMENS CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
170 WOOD AVENUE SOUTH
ISELIN, NJ 08830

| EXAMINER |
|---|
| BROCKMAN, ANGEL T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2463 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 12/15/2009 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

**BLUEPRINT 000156**

| *Office Action Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 10/582,589 | LOBIG ET AL. |
| | Examiner | Art Unit | |
| | ANGEL BROCKMAN | 2463 | |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>18 November 2009</u>.

2a)☐ This action is **FINAL**.          2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1-11,26 and 28-35</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>11-20,26 and 28-35</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☒ The drawing(s) filed on <u>09 June 2006</u> is/are: a)☒ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All   b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☐ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application

6)☐ Other: _____.

Application/Control Number: 10/582,589                                     Page 2
Art Unit: 2463

## DETAILED ACTION

### *Response to Amendment*

1.      Applicant's request for reconsideration of the finality of the rejection of the last Office

action is persuasive and, therefore, the finality of that action is withdrawn.


### *Claim Rejections - 35 USC § 103*

1.      This application currently names joint inventors.  In considering patentability of the

claims under 35 U.S.C. 103(a), the examiner presumes that the subject matter of the various

claims was commonly owned at the time any inventions covered therein were made absent any

evidence to the contrary.  Applicant is advised of the obligation under 37 CFR 1.56 to point out

the inventor and invention dates of each claim that was not commonly owned at the time a later

invention was made in order for the examiner to consider the applicability of 35 U.S.C. 103(c)

and potential 35 U.S.C. 102(e), (f) or (g) prior art under 35 U.S.C. 103(a).

2.      The factual inquiries set forth in *Graham* **v.** *John Deere Co.*, 383 U.S. 1, 148 USPQ 459

(1966), that are applied for establishing a background for determining obviousness under 35

U.S.C. 103(a) are summarized as follows:

        1.      Determining the scope and contents of the prior art.
        2.      Ascertaining the differences between the prior art and the claims at issue.
        3.      Resolving the level of ordinary skill in the pertinent art.
        4.      Considering objective evidence present in the application indicating obviousness
                or nonobviousness.

3.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

        (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in
        section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are
        such that the subject matter as a whole would have been obvious at the time the invention was made to a person

Application/Control Number: 10/582,589                                                    Page 3
Art Unit: 2463

    having ordinary skill in the art to which said subject matter pertains.  Patentability shall not be negatived by the
    manner in which the invention was made.

4.    Claims 11-20  and 28-35are rejected under 35 U.S.C. 103(a) as being anticipated by

Khan et al.(US 2003/0152064 A1, hereinafter Khan) in view of Rusmisel et al.(US 7,535,827

B2, hereinafter Rumisel).

Regarding **claims 11**, Khan discloses providing a pair of switching systems which are

geographically separate (¶[0009]) and which supply a dedicated redundancy to each other (figure

2, ¶[0053], wherein SSCb is dedicated to SSCa); controlling the communication between each of

the pair system  and the monitoring unit  in accordance with the; controlling  the communication

between the first switching system and the monitor i ( ¶[0067]-¶[0069], where the FailoverMgr

controls the system based on the mode or state of the system); when a loss of the communication

to the first switching system occurs: activating by the monitoring unit ¶[0067] where the

FailoverMGgr integrated in a GW monitors  the switching system in hot-standby operating state

to be in the active operating state (¶[0053]-¶[0056]), and deactivating the first switching system

by the monitor (¶[0069], ¶[0073], where the SSC is offline and deactivated by the FailoverMgr

component).  Khan does not explicitly disclose one of the pair of switching systems is in an

active operating state and the other is in a hot-standby operating state  or wherein when in the

hot-standby operating state the respective switching system is not active in terms of switching

functions . Rusmisel discloses one of the pair of switching systems is in an active operating state

and the other is in a hot-standby operating state ( figure 4, wherein the active control card is th

active switching system and the inactive control card in the hot-standby state, column 5, lines 30-

41) and  wherein when in the hot-standby operating state the respective switching system is not

active in terms of switching functions (column 6, lines 27-36, wherein the hot-standby system

**BLUEPRINT 000159**

Application/Control Number: 10/582,589                                        Page 4
Art Unit: 2463

only updates state machine and routing table). Thus, it would have been obvious to one of

ordinary skill in the art at the time of invention to utilize the active and hot-standby operating

states as disclosed by Rusmisel along with the system of Khan. The hot-standby and active

modes can be implemented into the system of Khan through software and hardware

implementation such that SSCa and SSCb function as the control cards as disclosed by Rusmisel.

The motivation for utilizing the active and hot-standby operating states as disclosed by Rusmisel

along with the system of Khan is to increase the efficiency of the system in the event of a failure.

Regarding **claim 12,** Khan discloses the operating state from the group consisting of

active and hot-standby has a pre-definable number of packet-base interfaces (¶[0061], wherein

the current mode includes the operating state, ¶[0068], where the other SSC involved through

SIP are the pre-definable number of packet interfaces).

Regarding  **claim13,** Khan discloses periodically sending IP lease requests to the monitor

by a packet-based interface of the switching system in the hot-standby operating state, the packet

based interfaces as in an inactive state(¶[0059,¶[0061], where the state is inactive or hot-stand

by);

Regarding **claim 14,** Khan discloses the monitor does not respond to the requests  while

the switching system is in the hot-standby state(¶[0069], where the heartbeat message include a

lack of response,¶[0061]).

Regarding **claim 15,** Khan discloses changing the packet-based interface from an inactive

state to an active state in response to receiving an IP lease response(figure 3, where the GW1

goes from inactive to active in response to receiving the acknowledgement from GW2, ¶[0035]-

¶[0038]).

Application/Control Number: 10/582,589                                           Page 5
Art Unit: 2463

Regarding **claim 16,** Khan discloses the response from the monitor contains an IP address f the requesting packet-based interface (¶[0034], where the IP address is included in the IAM message, figure 3) .

Regarding **claim 17**, Khan discloses suppressing sending IP leaserequests to the monitoring unit by a packet-based interface of the switching system in the active operating state, the packet-based interface in an active operating state (figure 2,¶[0042]-¶[0045], where the requests are no longer being sent in between calls or after the caller hangs up).

Regarding **claim 18**, Khan discloses receiving a monitoring message from the monitoring unit by a packet-based interface in the active state, the packet-based interface is in an active state and acknowledging the message by the packet-based interface ( figure 3, where SSA is the monitor for the interfaces in the active state , and acknowledging is done by interfaces GW1 and GW2).

Regarding **claim 19,** Khan discloses determining by the monitoring unit a fault condition when an acknowledgement is not received form the packet-based interface in the active state; and sending an IP lease response to the switching system in the hot-standby operating state(¶[0059],¶[0061]-¶[0062], where the fault condition is in the current mode, ¶[0066]-¶[0069]).

Regarding **claim 20,**  Khan discloses changing the packet-based interface from an inactive state to an active state in response to receiving an IP response(figure 3, where the GW1 goes from inactive to active in response to receiving the acknowledgement from GW2, ¶[0035]-¶[0038]).

Application/Control Number: 10/582,589                                                                Page 6
Art Unit: 2463

Regarding **claims 28 and 32**, Khan discloses providing a pair of switching systems which are geographically separate (¶[0009]) and which supply a dedicated redundancy to each other (figure 2, ¶[0053], wherein SSCb is dedicated to SSCa); the pair of switching systems comprise software that is identical to each other (¶[0029], wherein the provisioning includes the identical software);controlling the communication between each of the pair system  and the monitoring unit  in accordance with the active operating state; controlling  the communication  between the first switching system and the monitor ( ¶[0067]-¶[0069], where the FailoverMgr controls the system based on the mode or state of the system); when a loss of the communication to the first switching system occurs: activating by the monitoring unit ¶[0067] where the FailoverMGgr integrated in a GW monitors (¶[0053]-¶[0056]), and deactivating the first switching system by the monitor (¶[0069], ¶[0073], where the SSC is offline and deactivated by the FailoverMgr component) . Khan does not explicitly disclose one of the pair of switching systems is in an active operating state and the other is in a hot-standby operating state  or wherein when in the hot-standby operating state the respective switching system is not active in terms of switching functions or wherein each of the pair of switching systems comprises a database which is identical to each other, the database comprises only permanent data and semi-permanent data such that transient data pertaining to calls is excluded. . Rusmisel discloses one of the pair of switching systems is in an active operating state and the other is in a hot-standby operating state ( figure 4, wherein the active control card is the active switching system and the inactive control card in the hot-standby state, column 5, lines 30-41) and  wherein when in the hot-standby operating state the respective switching system is not active in terms of switching functions (column 6, lines 27-36, wherein the hot-standby system only updates state machine and routing

BLUEPRINT 000162

Application/Control Number: 10/582,589                                    Page 7
Art Unit: 2463

table).  Rusmisel discloses wherein each of the pair of switching systems comprises a database

which is identical to each other, the database comprises only permanent data and semi-permanent

data such that transient data pertaining to calls is excluded (column 3, lines 1-18, figure 4,

wherein the hot-standby system is in synchrony with the active system). Thus, it would have

been obvious to one of ordinary skill in the art at the time of invention to utilize the identical

database in the active and hot-standby operating states as disclosed by Rusmisel along with the

system of Khan. The identical database in the hot-standby and active modes can be implemented

into the system of Khan through software and hardware implementation such that SSCa and

SSCb function as the control cards as disclosed by Rusmisel. The motivation for utilizing the

identical database in the active and hot-standby operating states as disclosed by Rusmisel along

with the system of Khan is to increase the efficiency of the system in the event of a failure.

Regarding claim **29 and 33**, Khan discloses periodically sending IP lease requests to the

monitor by a packet-based interface of the switching system in the hot-standby operating state,

the packet based interfaces as in an inactive state(¶[0059,¶[0061]), and ignoring the IP lease

request by the monitoring unit while switching system is in the hot-standby operating state

(¶[0069], where the heartbeat message include a lack of response,¶[0061]).


Regarding **claims 30 and 34,** Khan discloses changing the packet-based interface from

an inactive state to an active state in response to receiving an IP lease response(figure 3, where

the GW1 goes from inactive to active in response to receiving the acknowledgement from GW2,

¶[0035]-¶[0038]),the  IP lease response from the monitor contains an IP address leased to the

**BLUEPRINT 000163**

Application/Control Number: 10/582,589                                           Page 8
Art Unit: 2463

requesting packet-based interface (¶[0034], where the IP address is included in the IAM

message, figure 3) .

    Regarding **claims 31 and 35,** Khan discloses receiving a monitoring message from the

monitoring unit by a packet-based interface of the switching system in the active operating state,

the packet based interface in an active state ((¶[0059,¶[0061]) sending a response by the

switching system in the active operating state via the packet-based interface to the monitoring

message in order to acknowledge the monitoring message (¶[0061]) determining by the

monitoring unit a fault condition when an acknowledgement is not received from the packet-

based interface in the active state(¶[0067], where the heartbeats include the acknowledgements,

¶[0069], where the failure is in SSCa); and sending a IP lease response to a packet-based

interface, which is inactive of the switching system in the hot-standby operating state (¶[0035]-

¶[0038]),¶[0061], where the inactive endpoint is the switching system in the hot-standby

operating state)


1.     Claim 26 is rejected under 35 U.S.C. 103 (a)  as being unpatentable over Khan et al.(US

2003/0152064 A1, hereinafter Khan) and Rusmisel et al.(US 7,535,827 B2, hereinafter

Rusmisel)  in view of Kampe et al.(US 2002/0007468, hereinafter Kampe).

    Regarding **claim 26,**  Khan and Rusmisel discloses  all subject matter of the claimed

invention as set forth above in claim 11 above. Khan and Rusmisel does not explicitly disclose

the operating state of the switching system having the communication loss changes to a hot-

standby operation and remains defined as the hot-standby switching system until a new fault

situation forces a new switchover. Kampe discloses the hot-standby switching system remains

Application/Control Number: 10/582,589                                    Page 9
Art Unit: 2463

until a new fault situation forces a new switchover(¶[0079],¶[0084]). Thus, it would have been

obvious to one of ordinary skill in the art at the time of invention to utilize the system as

disclosed by Kampe along with the teachings of Khan and Rusmisel. The teachings of Kampe

can be applied to the system of Khan and Rusmisel through software implementation. The

motivation for utilizing the system as disclosed by Kampe along with the teachings of Khan and

Rusmisel  is to increase the efficiency of the network and to provide communication in the event

of a fault.

### *Conclusion*

2.      The prior art made of record and not relied upon is considered pertinent to applicant's

disclosure. Harvey et al.(US 2003/0140166 A1).

3.      Any inquiry concerning this communication or earlier communications from the

examiner should be directed to ANGEL BROCKMAN whose telephone number is (571)270-

5664.  The examiner can normally be reached on Monday-Friday ,7:30-5:00pm.

4.      If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Derrick Ferris can be reached on 571-272-3123.  The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.

5.      Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system.  Status information for published applications

may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished

applications is available through Private PAIR only.  For more information about the PAIR

system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR

system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would

Application/Control Number: 10/582,589                                          Page 10

Art Unit: 2463

like assistance from a USPTO Customer Service Representative or access to the automated

information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

                                                    ANGEL  BROCKMAN
                                                    Examiner
                                                    Art Unit 2463

/A. B./

Examiner, Art Unit 2463

/Derrick W Ferris/

Supervisory Patent Examiner, Art Unit 2463

| Notice of References Cited | | Application/Control No.<br>10/582,589 | Applicant(s)/Patent Under Reexamination<br>LOBIG ET AL. | |
|---|---|---|---|---|
| | | Examiner<br>ANGEL BROCKMAN | Art Unit<br>2463 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-7,535,827 | 05-2009 | Rusmisel et al. | 370/219 |
| | B | US- | | | |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)          **Notice of References Cited**          Part of Paper No. 20091209

**BLUEPRINT 000167**

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 10582589 | LOBIG ET AL. |
| | **Examiner** | **Art Unit** |
| | ANGEL BROCKMAN | 2463 |

| ✓ | **Rejected** | - | **Cancelled** | N | **Non-Elected** | A | **Appeal** |
|---|---|---|---|---|---|---|---|
| = | **Allowed** | ÷ | **Restricted** | I | **Interference** | O | **Objected** |

☐ **Claims renumbered in the same order as presented by applicant** ☐ CPA ☐ T.D. ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 02/24/2009 | 09/11/2009 | 12/09/2009 | | | | | |
| | 11 | ✓ | ✓ | ✓ | | | | | |
| | 12 | ✓ | ✓ | ✓ | | | | | |
| | 13 | ✓ | ✓ | ✓ | | | | | |
| | 14 | ✓ | ✓ | ✓ | | | | | |
| | 15 | ✓ | ✓ | ✓ | | | | | |
| | 16 | ✓ | ✓ | ✓ | | | | | |
| | 17 | ✓ | ✓ | ✓ | | | | | |
| | 18 | ✓ | ✓ | ✓ | | | | | |
| | 19 | ✓ | ✓ | ✓ | | | | | |
| | 20 | ✓ | | ✓ | | | | | |
| | 21 | ✓ | - | - | | | | | |
| | 22 | ✓ | - | - | | | | | |
| | 23 | ✓ | - | - | | | | | |
| | 24 | ✓ | - | - | | | | | |
| | 25 | ✓ | - | - | | | | | |
| | 26 | ✓ | ✓ | ✓ | | | | | |
| | 27 | ✓ | - | - | | | | | |
| | 28 | | ✓ | ✓ | | | | | |
| | 29 | | ✓ | ✓ | | | | | |
| | 30 | | ✓ | ✓ | | | | | |
| | 31 | | ✓ | ✓ | | | | | |
| | 32 | | ✓ | ✓ | | | | | |
| | 33 | | ✓ | ✓ | | | | | |
| | 34 | | ✓ | ✓ | | | | | |
| | 35 | | ✓ | ✓ | | | | | |

Part of Paper No. : 20091209

**BLUEPRINT 000168**

| Search Notes | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 10582589 | LOBIG ET AL. |
| | **Examiner** | **Art Unit** |
| | ANGEL BROCKMAN | 2463 |

### SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 370 | 442 | 02/20/2009 | A.B. |
| 370 | 217,219,220 | | A.B. |

### SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Talked to Spe Derrick Ferris | 02/19/2009 | A.B. |
| Inventor Name Search | 02/19/2009 | A.B. |
| EAST SEARCH | 02/20/2009 | A.B. |
| Update EAST | 9/9/2009 | A.B. |
| Update EAST | 12/9/2009 | A.B. |

### INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 370 | 442 | 02/20/2009 | A.B. |

| | |
|---|---|
| | |

**BLUEPRINT 000169**

## EAST Search History

## EAST Search History (Prior Art)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|-------|------|--------------|-----|------------------|---------|------------|
| L1 | 113 | (loss or error or fail$3) and (active same hot $1standby) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 11:56 |
| L2 | 5 | "2002007468" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 12:21 |
| L3 | 2 | "20020007468" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 12:21 |
| L4 | 2 | "20090219804" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 12:30 |
| S1 | 286 | (loss or error or fail$3) and (active and hot $1standby) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:14 |
| S3 | 30 | (loss or error or fail$3) with (active same hot $1standby) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:14 |
| S4 | 14 | (loss or error or fail$3) with (active same hot $1standby) same (rout$3 or switch$2 or gateway$1) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:18 |
| S5 | 0 | ("2007/0150613").URPN. | USPAT | ADJ | OFF | 2009/12/09 10:19 |
| S6 | 0 | "20030152064".pn. | USPAT | ADJ | OFF | 2009/12/09 10:22 |
| S7 | 1 | "20030152064" | USPAT | ADJ | OFF | 2009/12/09 10:22 |
| S8 | 1 | (09/683753).APP. | US-PGPUB; USOCR | ADJ | OFF | 2009/12/09 10:23 |

BLUEPRINT 000170

| S9 | 10 | (loss or error or fail$3) and (active and hot $1standby).ab. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:27 |
| S10 | 6 | S9 and (router$1 or switch $2 or gateway$1) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:27 |
| S11 | 85 | (switch$2 or router$1) same (hot$1standby and active) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:30 |
| S12 | 286 | 370/219.ccls. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:31 |
| S13 | 210 | S12 and (router$1 or switch$3) same (fail$5 or error$1) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:31 |
| S14 | 110 | S12 and (backup) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:31 |
| S15 | 110 | S12 and (backup) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:31 |
| S16 | 0 | S15 and (acivat$3 near3 hot$1standby) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:32 |
| S17 | 0 | S12 and (backup near3 hot $1standby) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:33 |
| S18 | 0 | S12 and (hot$1standby near3 (router$1 or switch $3)) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:34 |

**BLUEPRINT 000171**

| S19 | 6 | S12 and (hot$1standby) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:34 |
| S20 | 13 | ("5473599" \| "5633866" \| "6009100" \| "6016319" \| "6115382" \| "6167025" \| "6172981" \| "6229787" \| "6304549" \| "6396815" \| "6490245" \| "6496479" \| "6714549").PN. OR ("7457235").URPN. | US-PGPUB; USPAT; USOCR | ADJ | OFF | 2009/12/09 10:38 |
| S21 | 1 | S20 and hot$1standby | US-PGPUB; USPAT; USOCR | ADJ | OFF | 2009/12/09 10:39 |
| S22 | 12 | hot$1standby switch$3 | US-PGPUB; USPAT; USOCR | ADJ | OFF | 2009/12/09 10:39 |
| S23 | 1 | S22 and "370".clas. | US-PGPUB; USPAT; USOCR | ADJ | OFF | 2009/12/09 10:40 |
| S24 | 0 | hot$1standby switch$3 same inactive | US-PGPUB; USPAT; USOCR | ADJ | OFF | 2009/12/09 10:40 |
| S25 | 4 | hot$1standby switch$3 same active | US-PGPUB; USPAT; USOCR | ADJ | OFF | 2009/12/09 10:40 |
| S26 | 490 | 370/219,220.ccls. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:41 |
| S27 | 2 | S26 and hot$1standby same (fail$3 or error$1 or crash$2) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:41 |
| S28 | 2 | "7535827" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:45 |
| S29 | 1 | "10350817" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:51 |
| S30 | 2 | "7535827" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/12/09 10:52 |
| S31 | 1 | (10/681238).APP. | US-PGPUB; USOCR | ADJ | OFF | 2009/12/09 10:52 |

**BLUEPRINT 000172**

| S32 | 0 | "10350817" | US-PGPUB; USOCR | ADJ | OFF | 2009/12/09 10:53 |
| S33 | 0 | method and apparatus for facillitating routing protocol redundancy | US-PGPUB; USOCR | ADJ | OFF | 2009/12/09 10:54 |
| S34 | 18307 | Harvey | US-PGPUB; USOCR | ADJ | OFF | 2009/12/09 10:54 |
| S35 | 1009 | Harvey et al | US-PGPUB; USOCR | ADJ | OFF | 2009/12/09 10:54 |
| S36 | 0 | S35 and routing redundancy.ab. | US-PGPUB; USOCR | ADJ | OFF | 2009/12/09 10:54 |
| S37 | 0 | S35 and routing.ab. | US-PGPUB; USOCR | ADJ | OFF | 2009/12/09 10:54 |
| S38 | 1 | kendall harvey | US-PGPUB; USOCR | ADJ | OFF | 2009/12/09 10:55 |
| S39 | 0 | "10350817" | US-PGPUB; USOCR | ADJ | OFF | 2009/12/09 10:58 |
| S40 | 1 | "20030140166" | US-PGPUB; USOCR | ADJ | OFF | 2009/12/09 10:59 |
| S41 | 0 | S40 and hot$1standby | US-PGPUB; USOCR | ADJ | OFF | 2009/12/09 11:00 |
| S42 | 6 | S26 and hot$1standby same active$1 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | | 2009/12/09 11:33 |
| S43 | 106 | ("4958273" \| "4984240" \| "5473599" \| "5610905" \| "5621884" \| "5649091"). PN. OR ("5835696"). URPN. | US-PGPUB; USPAT; USOCR | ADJ | OFF | 2009/12/09 11:34 |
| S44 | 0 | (active with hotstandby) and (router$1 or switch$3) | US-PGPUB; USPAT; USOCR | ADJ | OFF | 2009/12/09 11:35 |
| S45 | 267 | (active and hot$1standby) and (router$1 or switch$3) | US-PGPUB; USPAT; USOCR | ADJ | OFF | 2009/12/09 11:35 |
| S46 | 169 | (active and hot$1standby) and (router$1 or switch$3) same (fail$3 or error$1 or crash$3) | US-PGPUB; USPAT; USOCR | ADJ | OFF | 2009/12/09 11:35 |
| S47 | 2 | S46 and (hot$1standby near3 (inactive)) | US-PGPUB; USPAT; USOCR | ADJ | OFF | 2009/12/09 11:36 |
| S48 | 0 | S46 and hot$1standy near3 (router$1 or switch$3) | US-PGPUB; USPAT; USOCR | ADJ | OFF | 2009/12/09 11:38 |
| S49 | 169 | S46 and hot$1standby | US-PGPUB; USPAT; USOCR | ADJ | OFF | 2009/12/09 11:38 |

BLUEPRINT 000173

| S50 | 26 | S46 and hot$1standby mode | US-PGPUB; USPAT; USOCR | ADJ | OFF | 2009/12/09 11:38 |
| S51 | 29 | (active and hot$1standby) and (router$1 or switch $3) same (fail$3 or error $1 or crash$3).ab. | US-PGPUB; USPAT; USOCR | ADJ | OFF | 2009/12/09 11:40 |

**EAST Search History (Interference)**

< This search history is empty>

**12/9/2009 12:47:23 PM**
**C:\ Documents and Settings\ abrockman\ My Documents\ EAST\ Workspaces\ 10582589-3.wsp**

**BLUEPRINT 000174**

<u>Amendments to the Claims:</u>

   The text of all pending claims, (including withdrawn claims) is set forth below. Canceled and not entered claims are indicated with claim number and status only. The claims as listed below show added text with <u>underlining</u> and deleted text with ~~strikethrough~~. The status of each claim is indicated with one of (original), (currently amended), (canceled), (withdrawn), (new), (previously presented), or (not entered).

   Applicant reserves the right to pursue any canceled claims at a later date.

   The following listing of claims will replace all prior versions, and listings, of claims in the application:

```
         OK TO ENTER        /A.B./
```

**BLUEPRINT 000175**

Serial No. **10/582,589**
Atty. Doc. No. **2003P18829WOUS**

1.-10.   (canceled)

11.     (currently amended) A method for protection switching of geographically separate switching systems arranged in pairs, comprising:

providing a pair of switching systems which are geographically separate and which supply a dedicated redundancy to each other, one of the pair of switching systems is in an active operating state and the other is in a hot-standby operating state;

controlling the communication between the each of the pair switching system and ~~the~~ a monitoring unit in accordance with the an operating state of the respective switching system; and

when a loss of the communication to the switching system in the active operating state occurs:

activating, by the monitoring unit, the switching system in the hot-standby operating state to be in the active operating state, and

deactivating, by the monitoring unit, the switching system with the communication loss to be in the hot-standby operating state,

wherein when in the hot-standby operating state, the respective switching system is not active in terms of switching functions .

12.     (previously presented) The method as claimed in claim 11, wherein an operating state selected from the group consisting of active operating state and hot-standby state has a pre-definable number of packet-based interfaces.

13.     (previously presented) The method as claimed in claim 11, further comprising periodically sending an IP lease request to the monitoring unit by a packet-based interface of the switching system in the hot-standby operating state, the packet-based interface is in an inactive state.

14.     (previously presented) The method as claimed in claim 13, wherein the monitoring unit does not respond to the request while the switching system is in the hot-standby operating state.

**BLUEPRINT 000176**

Serial No. **10/582,589**
Atty. Doc. No. **2003P18829WOUS**

15.     (previously presented) The method as claimed in claim 13, further comprising changing the packet-based interface from the inactive state to an active state in response to receiving an IP lease response.

16.     (previously presented) The method as claimed in claim 15, wherein the IP lease response from the monitoring unit contains an IP address leased to the requesting packet-based interface.

17.     (previously presented) The method as claimed in claim 11, further comprising suppressing an sending IP lease request to the monitoring unit by a packet-based interface of the switching system in the active operating state, the packet-based interface is in an active operating state.

18.     (previously presented) The method as claimed in claim 11, further comprising:

receiving a monitoring message from the monitoring unit by a packet-based  interface of the switching system in the active operating state, the packet-based interface is in an active state; and

acknowledging the message by the packet-based interface.

BLUEPRINT 000177

Serial No. **10/582,589**
Atty. Doc. No. **2003P18829WOUS**

19.    (previously presented) The method as claimed in claim 18, further comprising:

determining, by the monitoring unit, a fault condition when an acknowledgement is not received from the packet-based interface in the active state; and

sending a IP lease response to a packet-based interface, which is inactive, of the switching system in the hot-standby operating state.

20.    (previously presented) The method as claimed in claim 19, further comprising changing the packet-based interface from the inactive state to an active state in response to receiving the IP response.

21– 25. (cancelled)

26.    (previously presented) The method as claimed in claim 11,

wherein the operating state of the switching system having the communication loss changes to a hot-standby operation state and remains defined as the hot-standby switching system until a new fault situation forces a new switchover.

27.    (cancelled)

**BLUEPRINT 000178**

Serial No. **10/582,589**
Atty. Doc. No. **2003P18829WOUS**

28.    (currently amended) A method for protection switching of geographically separate switching systems arranged in pairs, comprising:

providing a pair of switching systems which are geographically separate and which supply a dedicated redundancy to each other, one of the pair of switching systems is in an active operating state and the other is in a hot-standby operating state, each of the pair of switching systems comprises a database which is identical to each other, the database comprises only permanent data and semi-permanent data such that transient data pertaining to calls is excluded;

controlling the communication between the each of the pair switching system and a monitoring unit in accordance with the an operating state of the respective switching system; and

when a loss of the communication to the ~~witching~~ switching system in the active operating state occurs:

activating, by the monitoring unit, the switching system in the hot-standby operating state to be in the active operating state, and

deactivating, by the monitoring unit, the switching system with the communication loss to be in the hot-standby operating state,

wherein when in the hot-standby operating state, the respective switching system is not active in terms of switching functions.

29.    (previously presented) The method as claimed in claim 28, further comprising:

periodically sending an IP lease request to the monitoring unit by a packet-based interface of the switching system in the hot-standby operating state, the packet-based interface is in an inactive state; and

ignoring the IP lease request by the monitoring unit while the switching system is in the hot-standby operating state.

30.    (previously presented) The method as claimed in claim 29, further comprising changing the packet-based interface from the inactive state to an active state in response to receiving an IP lease response, the IP lease response from the monitoring unit contains an IP address leased to the requesting packet-based interface.

**BLUEPRINT 000179**

Serial No. **10/582,589**
Atty. Doc. No. **2003P18829WOUS**

31.    (previously presented) The method as claimed in claim 28, further comprising:

receiving a monitoring message from the monitoring unit by a packet-based interface of the switching system in the active operating state, the packet-based interface in an active state;

sending a response by the switching system in the active operating state via the packet-based interface to the monitoring message in order to acknowledge the monitoring message;

determining by the monitoring unit a fault condition when an acknowledgement is not received from the packet-based interface in the active state; and

sending a IP lease response to a packet-based interface, which is inactive, of the switching system in the hot-standby operating state.

32.    (currently amended) A method for protection switching of geographically separate switching systems arranged in pairs, comprising:

providing a pair of switching systems which are geographically separate and which supply a dedicated redundancy to each other, the pair of switching systems comprise software identical to each other, one of the pair of switching systems is in an active operating state and the other is in a hot-standby operating state;

providing a monitoring unit that communicates with the pair of switching systems;

controlling the communication between the each of the pair switching system and a monitoring unit in accordance with the an operating state of the respective switching system; and

when a loss of the communication to the ~~witching~~switching system in the active operating state occurs:

activating, by the monitoring unit, the switching system in the hot-standby operating state to be in the active operating state, and

deactivating, by the monitoring unit, the switching system with the communication loss to be in the hot-standby operating state,

wherein every software update including patches is delivered in identical fashion to the first and redundant switching system, and

wherein when in the hot-standby operating state, the respective switching system is not active in terms of switching functions.

BLUEPRINT 000180

Serial No. **10/582,589**
Atty. Doc. No. **2003P18829WOUS**

33.    (previously presented) The method as claimed in claim 32, further comprising:

periodically sending an IP lease request to the monitoring unit by a packet-based interface of the switching system in the hot-standby operating state, the packet-based interface is in an inactive state; and

ignoring the IP lease request by the monitoring unit while the switching system is in the hot-standby operating state.

34.    (previously presented) The method as claimed in claim 33, further comprising changing the packet-based interface from the inactive state to an active state in response to receiving an IP lease response, the IP lease response from the monitoring unit contains an IP address leased to the requesting packet-based interface.

35.    (previously presented) The method as claimed in claim 32, further comprising:

receiving a monitoring message from the monitoring unit by a packet-based interface of the switching system in the active operating state, the packet-based interface in an active state;

sending a response by the switching system in the active operating state via the packet-based interface to the monitoring message in order to acknowledge the monitoring message;

determining by the monitoring unit a fault condition when an acknowledgement is not received from the packet-based interface in the active state; and

sending a IP lease response to a packet-based interface, which is inactive, of the switching system in the hot-standby operating state.

**BLUEPRINT 000181**

# SIEMENS

PATENT

Attorney Docket No. 2003P18829WOUS

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

| | | | | |
|---|---|---|---|---|
| Inventor: | N. Lobig et al. | ) | Confirmation No: | 2784 |
| | | ) | | |
| Serial No.: | 10/582,589 | ) | Examiner: | A. Brockman |
| | | ) | | |
| Filed: | June 9, 2006 | ) | Group Art Unit: | 2416 |

Title      METHOD FOR PROTECTION SWITCHING OF GEOGRAPHICALLY
                SEPARATE SWITCHING SYSTEMS

**Commissioner For Patents**
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

RESPONSE TO FINAL OFFICE ACTION

In response to the Office Action mailed September 25, 2009, Applicant respectfully submits the following amendments and remarks in connection with the above-identified application to place the application in better condition for allowance. Amendments to the claims provided herewith are to correct spelling and antecedent basis issues.

**Remarks/Arguments** begin on page 2 of this paper.

BLUEPRINT 000182

Serial No. 10/582,589
Atty. Doc. No. 2003P18829WOUS

## REMARKS

Claims 1-10, 21-25 and 27 have been previously canceled. Claims 11, 28 and 32 have been amended to correct spelling and antecedent basis issues. No claims have been canceled or added by way of this response. Thus, claims 11-20, 26 and 28-35 are currently pending and presented for examination. Applicant respectfully requests reconsideration and allowance of the pending claims in view of the foregoing amendments and the following remarks.

**BLUEPRINT 000183**

Serial No. 10/582,589
Atty. Doc. No. 2003P18829WOUS

<u>Response to Rejections Under Section 102:</u>

Claims 11-20 stand rejected under 35 U.S.C § 102(e) as being anticipated by Khan et al. (US 2003/0152064). Applicant's claim 11 recites:

> one of the pair of switching systems is in an **active operating state** and the other is in a **hot-standby operating state**; controlling the communication between the each of the pair switching system and the monitoring unit in accordance with the an operating state of the respective switching system; and when **a loss of the communication** to the switching system in the active operating state occurs: activating, by the monitoring unit, the switching system in the hot-standby operating state to be in the active operating state, and deactivating, by the monitoring unit, the switching system with the communication loss to be in the hot-standby operating state, wherein when in the hot-standby operating state, the respective switching system is not active in terms of switching functions .

The Examiner states that Khan discloses that "one of the pair of switching systems is in an **active operating state** and the other is in a **hot-standby operating state** (SSCa is in the active operating state, redundant switching system (SSCB) in a hot-standby operating state (figure 2, ¶[0009], ¶[0096])". Applicant respectfully submits that paragraphs [0009] and [0096] of Khan do not teach or suggest an operating state let alone an active operating state and a hot-standby operating state.

Applicant respectfully submits that paragraph [0009] of Khan is not related to an operating state and merely teaches that a secondary location is geographical distant from a primary location. Paragraph [0009] of Khan recites:

> According to one aspect of the present invention, a method and architecture enable any available VoIP circuits to be controlled from a secondary location even after the primary controlling location becomes unavailable. Such embodiments are preferably used in environments where the two locations are geographically distant from each other. The distance separating the two locations may be affected by a number of factors (e.g., reduction in likelihood that links to both locations will experience problems and likelihood that power problems will effect both locations).

Applicant respectfully submits that Applicant's claim 11 is directed towards a loss of communication. In contrast, paragraph [0096] of Khan teaches a method to handle congestion. Paragraph [0096] of Khan recites:

03P18829WOUS_25Sep09OA_JDH.rtf

BLUEPRINT 000184

Serial No. 10/582,589
Atty. Doc. No. 2003P18829WOUS

> If level 3 congestion is experienced in SS7 network, it sends SS7 MTP layer messages called Transfer Controlled (TFC) towards an originating side. Messages for the destination are throttled or discarded. If an SSC, e.g. SSCa, experiences congestion, TFC messages will be generated from SSCa's home STP pair to the SS7 network. Then, new calls will be processed by a backed up SSC on a call-by-call basis.

One skilled in the art would recognize that congestion occurs when too much traffic is received by the switching system (SSC). Khan teaches that when the congestion occurs at an SCCa that switching functions for **new calls** will be processed by a back up SSCb while the congested SCCa continues to handle switching functions for calls in progress. Both the congested SCCa and the back up SCCb are active in terms of switching functions before the congestion, during the congestion and after the congestion. New calls are merely offloaded during the congestion. One skilled in the art would not reasonably interpret Khan's congested SCCa which redirects new calls to a back up SCCb as Applicant's one of the pair of switching systems is in an **active operating state** and the other is in a **hot-standby operating state.**

The Examiner further contends that Khan teaches when in the hot-standby operating state, the respective switching system is not active in terms of switching functions. The Examiner states "[0029], wherein SSCb is in hot stand-by mode because it is only active when SSCa has failed.)" Paragraph [0029] of Khan recites:

> According to the present invention, if an SSC, such as, SSCa (with any backup SSC) crashes, then another remote SSC (such as SSCb in FIG. 2) will be capable of controlling the circuits originally controlled by SSCa with no manual intervention needed and no impact on other carriers that will have trunks to this VoIP carrier. This can be enabled by: (1) allowing GWs controlled by SSCa to also be controlled by SSCb where SSCb is provisioned with PC1 and controls the circuits controlled by PC1 (which can be the same circuits SSCa controls); and (2) provisioning a SS7 route over the STP SS7 network to SSCb for PC1 with lower priority than the route to SSCa for PC1.

Applicant respectfully submits that paragraph [0029] does not teach or suggest that SCCb is *only active when SSCa has failed*. Furthermore, the Examiner further states "Khan does disclose the switching system in the hot-standby operating state (SSCb) does not handle switching functions (0029), wherein SSCb is in hot stand-by mode, therefore it is not handling

BLUEPRINT 000185

Serial No. 10/582,589
Atty. Doc. No. 2003P18829WOUS

switching function for the SSCa router". Applicant respectfully points out that the limitation of claim 11 recites:

> when in the hot-standby operating state, the respective switching system **is not active** in terms of switching functions

The Examiner has apparently interpreted the claim to read that the switching system is not active for the other switching system. However, the claim limitation simply shows the switching system is not active in terms of switching functions. Paragraph [0030] of Khan clearly shows that SSCb is actively processing calls for Point Code 2 (PC2) and that when SSCa fails, SSCb is not only active in terms of switching functions for PC2 but becomes active in terms of switching functions for Point Code 1 (PC1). Paragraph [0030] of Khan recites:

> SSCb under normal condition will only process for PC2. When SSCa goes down completely, SSCb may become aware of it in a number of ways. For example, SSCb may start receiving SS7 messages destined for PC1. SSCb will then start processing for PC1, as well as for its own PC2. When SSCa comes back up, SSCb will stop processing for PC1 since SSCa can do the job now.

In view of the above, Applicant respectfully submit that independent claim 11 is patentable over Khan. Likewise, independent claims 28 and 32 having similar limitations are also patentable. Furthermore, dependent claims 12-20, 26, 28-30 and 32-35 are patentable at least based on their dependency as well as based on their own merit. For Example, claim 13 recites "periodically sending an **IP lease request** to the monitoring unit by a packet-based interface of the switching system in the hot-standby operating state, the interface is in an inactive state" which is not taught or suggested by Khan

Response to Rejections Under Section 103:

Claim 26 stands rejected under 35 U.S.C § 103(a) as being obvious over Khan in view of Kampe et al. (US 2003/0007468). Claims 28-35 stand rejected under 35 U.S.C § 103(a) as being obvious over Khan in view of Cole et al. (US 2009/0219804). Applicant respectfully submits that claims 26, 28-35 are patentable at least in view of the Response to Rejections Under Section 102. Furthermore, Applicant's claim 26 recites:

BLUEPRINT 000186

Serial No. 10/582,589
Atty. Doc. No. 2003P18829WOUS

> the operating state of the switching system having the
> communication loss changes to a hot-standby operation state and
> <u>remains defined as the hot-standby switching system until a new</u>
> <u>fault situation forces a new switchover</u>

The Examiner contends that Kampe teaches this and states "The teaching of Kampe can be applied to the system of Khan through software implementation. The motivation for utilizing the system as disclosed by Khan along with the teachings of Kampe is to increase the efficiency of the network and to provide communication in the vent of a fault". Applicant respectfully disagrees with the Examiner. First, Khan teaches when the SSC with the fault comes back on line that the SSC is because active in terms of switching functions (see e.g., paragraphs [0073]-[0079]). Moreover, having the switching system (SSCa) of Kahn's network remain in hot-standby would not increase efficiency of the network but in fact degrade the system by overloading the backup switching system (SSCb). The backup switching system would be handling calls for both PC1 and PC2.

BLUEPRINT 000187

Serial No. 10/582,589
Atty. Doc. No. 2003P18829WOUS

Conclusion

The commissioner is hereby authorized to charge any appropriate fees due in connection with this paper, including fees for additional claims and terminal disclaimer fee, or credit any overpayments to Deposit Account No. 19-2179.

Respectfully submitted,

Dated: Nov. 17, 2009

By: _Janet D. Hood_

Janet D. Hood
Registration No. 61,142
(407) 736-4234

Siemens Corporation
Intellectual Property Department
170 Wood Avenue South
Iselin, New Jersey 08830

BLUEPRINT 000188

Amendments to the Claims:

      The text of all pending claims, (including withdrawn claims) is set forth below. Canceled and not entered claims are indicated with claim number and status only. The claims as listed below show added text with underlining and deleted text with ~~strikethrough~~. The status of each claim is indicated with one of (original), (currently amended), (canceled), (withdrawn), (new), (previously presented), or (not entered).

      Applicant reserves the right to pursue any canceled claims at a later date.

      The following listing of claims will replace all prior versions, and listings, of claims in the application:

BLUEPRINT 000189

Serial No. **10/582,589**
Atty. Doc. No. **2003P18829WOUS**

1.-10.   (canceled)

11.     (currently amended) A method for protection switching of geographically separate switching systems arranged in pairs, comprising:

providing a pair of switching systems which are geographically separate and which supply a dedicated redundancy to each other, one of the pair of switching systems is in an active operating state and the other is in a hot-standby operating state;

controlling the communication between the each of the pair switching system and ~~the~~ a monitoring unit in accordance with the an operating state of the respective switching system; and

when a loss of the communication to the switching system in the active operating state occurs:

activating, by the monitoring unit, the switching system in the hot-standby operating state to be in the active operating state, and

deactivating, by the monitoring unit, the switching system with the communication loss to be in the hot-standby operating state,

wherein when in the hot-standby operating state, the respective switching system is not active in terms of switching functions .

12.     (previously presented) The method as claimed in claim 11, wherein an operating state selected from the group consisting of active operating state and hot-standby state has a pre-definable number of packet-based interfaces.

13.     (previously presented) The method as claimed in claim 11, further comprising periodically sending an IP lease request to the monitoring unit by a packet-based interface of the switching system in the hot-standby operating state, the packet-based interface is in an inactive state.

14.     (previously presented) The method as claimed in claim 13, wherein the monitoring unit does not respond to the request while the switching system is in the hot-standby operating state.

**BLUEPRINT 000190**

Serial No. **10/582,589**
Atty. Doc. No. **2003P18829WOUS**

15.     (previously presented) The method as claimed in claim 13, further comprising changing the packet-based interface from the inactive state to an active state in response to receiving an IP lease response.

16.     (previously presented) The method as claimed in claim 15, wherein the IP lease response from the monitoring unit contains an IP address leased to the requesting packet-based interface.

17.     (previously presented) The method as claimed in claim 11, further comprising suppressing an sending IP lease request to the monitoring unit by a packet-based interface of the switching system in the active operating state, the packet-based interface is in an active operating state.

18.     (previously presented) The method as claimed in claim 11, further comprising:
receiving a monitoring message from the monitoring unit by a packet-based  interface of the switching system in the active operating state, the packet-based interface is in an active state; and
acknowledging the message by the packet-based interface.

**BLUEPRINT 000191**

Serial No. **10/582,589**
Atty. Doc. No. **2003P18829WOUS**

19.     (previously presented) The method as claimed in claim 18, further comprising:

determining, by the monitoring unit, a fault condition when an acknowledgement is not received from the packet-based interface in the active state; and

sending a IP lease response to a packet-based interface, which is inactive, of the switching system in the hot-standby operating state.

20.     (previously presented) The method as claimed in claim 19, further comprising changing the packet-based interface from the inactive state to an active state in response to receiving the IP response.

21– 25. (canceled)

26.     (previously presented) The method as claimed in claim 11,

wherein the operating state of the switching system having the communication loss changes to a hot-standby operation state and remains defined as the hot-standby switching system until a new fault situation forces a new switchover.

27.     (canceled)

**BLUEPRINT 000192**

Serial No. **10/582,589**
Atty. Doc. No. **2003P18829WOUS**

28.    (currently amended) A method for protection switching of geographically separate switching systems arranged in pairs, comprising:

providing a pair of switching systems which are geographically separate and which supply a dedicated redundancy to each other, one of the pair of switching systems is in an active operating state and the other is in a hot-standby operating state, each of the pair of switching systems comprises a database which is identical to each other, the database comprises only permanent data and semi-permanent data such that transient data pertaining to calls is excluded;

controlling the communication between the each of the pair switching system and a monitoring unit in accordance with the an operating state of the respective switching system; and

when a loss of the communication to the ~~witching~~ switching system in the active operating state occurs:

activating, by the monitoring unit, the switching system in the hot-standby operating state to be in the active operating state, and

deactivating, by the monitoring unit, the switching system with the communication loss to be in the hot-standby operating state,

wherein when in the hot-standby operating state, the respective switching system is not active in terms of switching functions.

29.    (previously presented) The method as claimed in claim 28, further comprising:

periodically sending an IP lease request to the monitoring unit by a packet-based interface of the switching system in the hot-standby operating state, the packet-based interface is in an inactive state; and

ignoring the IP lease request by the monitoring unit while the switching system is in the hot-standby operating state.

30.    (previously presented) The method as claimed in claim 29, further comprising changing the packet-based interface from the inactive state to an active state in response to receiving an IP lease response, the IP lease response from the monitoring unit contains an IP address leased to the requesting packet-based interface.

BLUEPRINT 000193

Serial No. **10/582,589**
Atty. Doc. No. **2003P18829WOUS**

31.     (previously presented) The method as claimed in claim 28, further comprising:

receiving a monitoring message from the monitoring unit by a packet-based interface of the switching system in the active operating state, the packet-based interface in an active state;

sending a response by the switching system in the active operating state via the packet-based interface to the monitoring message in order to acknowledge the monitoring message;

determining by the monitoring unit a fault condition when an acknowledgement is not received from the packet-based interface in the active state; and

sending a IP lease response to a packet-based interface, which is inactive, of the switching system in the hot-standby operating state.


32.     (currently amended) A method for protection switching of geographically separate switching systems arranged in pairs, comprising:

providing a pair of switching systems which are geographically separate and which supply a dedicated redundancy to each other, the pair of switching systems comprise software identical to each other, one of the pair of switching systems is in an active operating state and the other is in a hot-standby operating state;

providing a monitoring unit that communicates with the pair of switching systems;

controlling the communication between the each of the pair switching system and a monitoring unit in accordance with the an operating state of the respective switching system; and

when a loss of the communication to the ~~witching~~switching system in the active operating state occurs:

activating, by the monitoring unit, the switching system in the hot-standby operating state to be in the active operating state, and

deactivating, by the monitoring unit, the switching system with the communication loss to be in the hot-standby operating state,

wherein every software update including patches is delivered in identical fashion to the first and redundant switching system, and

wherein when in the hot-standby operating state, the respective switching system is not active in terms of switching functions.

**BLUEPRINT 000194**

Serial No. **10/582,589**
Atty. Doc. No. **2003P18829WOUS**

33.     (previously presented) The method as claimed in claim 32, further comprising:

periodically sending an IP lease request to the monitoring unit by a packet-based interface of the switching system in the hot-standby operating state, the packet-based interface is in an inactive state; and

ignoring the IP lease request by the monitoring unit while the switching system is in the hot-standby operating state.

34.     (previously presented) The method as claimed in claim 33, further comprising changing the packet-based interface from the inactive state to an active state in response to receiving an IP lease response, the IP lease response from the monitoring unit contains an IP address leased to the requesting packet-based interface.

35.     (previously presented) The method as claimed in claim 32, further comprising:

receiving a monitoring message from the monitoring unit by a packet-based interface of the switching system in the active operating state, the packet-based interface in an active state;

sending a response by the switching system in the active operating state via the packet-based interface to the monitoring message in order to acknowledge the monitoring message;

determining by the monitoring unit a fault condition when an acknowledgement is not received from the packet-based interface in the active state; and

sending a IP lease response to a packet-based interface, which is inactive, of the switching system in the hot-standby operating state.

**BLUEPRINT 000195**

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 6474348 |
| **Application Number:** | 10582589 |
| **International Application Number:** | |
| **Confirmation Number:** | 2784 |
| **Title of Invention:** | Method for protection switching of geographically separate switching systems |
| **First Named Inventor/Applicant Name:** | Norbert  Lobig |
| **Customer Number:** | 22116 |
| **Filer:** | Janet D. Hood/Ann Hickey |
| **Filer Authorized By:** | Janet D. Hood |
| **Attorney Docket Number:** | 2003P18829WOUS |
| **Receipt Date:** | 18-NOV-2009 |
| **Filing Date:** | 09-JUN-2006 |
| **Time Stamp:** | 09:20:45 |
| **Application Type:** | U.S. National Stage under 35 USC 371 |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | 2003P18829WOUSResponseto 09252009FinalOfficeActionFile dNov182009.pdf | 894352 <br> 099Bd8176ca3926b7534e357c4860312260 6f33e | yes | 14 |

**BLUEPRINT 000196**

**Multipart Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Amendment After Final | 1 | 1 |
| Applicant Arguments/Remarks Made in an Amendment | 2 | 7 |
| Claims | 8 | 14 |

| | |
|---|---|
| **Warnings:** | |
| **Information:** | |
| **Total Files Size (in bytes):** | 894352 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

BLUEPRINT 000197

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD Substitute for Form PTO-875 | Application or Docket Number 10/582,589 | Filing Date 06/09/2006 | ☐ To be Mailed |
|---|---|---|---|

## APPLICATION AS FILED – PART I

| | (Column 1) | (Column 2) | SMALL ENTITY ☐ | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) | RATE ($) | FEE ($) |
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | X $ = | OR | X $ = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | X $ = | | X $ = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | TOTAL | |

## APPLICATION AS AMENDED – PART II

| | (Column 1) | (Column 2) | (Column 3) | SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|
| AMENDMENT **11/18/2009** | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) | | RATE ($) | ADDITIONAL FEE ($) |
| Total (37 CFR 1.16(i)) | * 19 | Minus ** 20 | = 0 | X $ = | | OR | X $52= | 0 |
| Independent (37 CFR 1.16(h)) | * 3 | Minus *** 3 | = 0 | X $ = | | OR | X $220= | 0 |
| ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | OR | | |
| ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | **0** |

| | (Column 1) | (Column 2) | (Column 3) | RATE ($) | ADDITIONAL FEE ($) | OR | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| AMENDMENT | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | | | | | |
| Total (37 CFR 1.16(i)) | * | Minus ** | = | X $ = | | OR | X $ = | |
| Independent (37 CFR 1.16(h)) | * | Minus *** | = | X $ = | | OR | X $ = | |
| ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | OR | | |
| ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/GAIL D. D. WOOTEN/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

**BLUEPRINT 000198**

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/582,589 | 06/09/2006 | Norbert Lobig | 2003P18829WOUS | 2784 |

22116        7590        09/25/2009
SIEMENS CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
170 WOOD AVENUE SOUTH
ISELIN, NJ 08830

| EXAMINER |
|---|
| BROCKMAN, ANGEL T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2416 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 09/25/2009 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

**BLUEPRINT 000199**

| | Application No. | Applicant(s) |
|---|---|---|
| | 10/582,589 | LOBIG ET AL. |
| ***Office Action Summary*** | **Examiner** | **Art Unit** | |
| | ANGEL BROCKMAN | 2416 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>01 June 2009</u>.
2a)☒ This action is **FINAL**.    2b)☐ This action is non-final.
3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>11-20,26 and 28-35</u> is/are pending in the application.
    4a) Of the above claim(s) _____ is/are withdrawn from consideration.
5)☐ Claim(s) _____ is/are allowed.
6)☒ Claim(s) <u>11-20,26 and 28-35</u> is/are rejected.
7)☐ Claim(s) _____ is/are objected to.
8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.
10)☒ The drawing(s) filed on <u>09 June 2006</u> is/are: a)☒ accepted or b)☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).
11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    a)☐ All   b)☐ Some * c)☐ None of:
       1.☐ Certified copies of the priority documents have been received.
       2.☐ Certified copies of the priority documents have been received in Application No. _____.
       3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)
2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3)☐ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .
5)☐ Notice of Informal Patent Application
6)☐ Other: _____.

**BLUEPRINT 000200**

Application/Control Number: 10/582,589                                                    Page 2
Art Unit: 2416

## DETAILED ACTION

### *Response to Amendment*

1.      Claims 11-27 were formerly rejected under 35 USC 103 (a). Pursuant to applicant's

amendments these rejections have been withdrawn.

### *Claim Rejections - 35 USC § 102*

1.      The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the

basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (e) the invention was described in (1) an application for patent, published under section 122(b), by another filed
> in the United States before the invention by the applicant for patent or (2) a patent granted on an application for
> patent by another filed in the United States before the invention by the applicant for patent, except that an
> international application filed under the treaty defined in section 351(a) shall have the effects for purposes of this
> subsection of an application filed in the United States only if the international application designated the United
> States and was published under Article 21(2) of such treaty in the English language.

2.      Claims 11-20 are rejected under 35 U.S.C. 102(e) as being anticipated by Khan et al.(US

2003/0152064 A1, hereinafter Khan).

Regarding **claims 11**, Khan discloses providing a pair of switching systems which are

geographically separate (¶[0009]) and which supply a dedicated redundancy to each other (figure

2, ¶[0053], wherein SSCb is dedicated to SSCa) one of the pair of switching systems is in an

active operating state and the other is in a hot-standby operating state ( SSCa is in the active

operating state, redundant switching system(SSCB)  in a hot-standby operating state (figure 2,

¶[0009],¶[0096]); controlling the communication between each of the pair system  and the

monitoring unit  in accordance with the active operating state; controlling  the communication

between the first switching system and the monitor in accordance with the hot-standby operating

state( ¶[0067]-¶[0069], where the FailoverMgr controls the system based on the mode or state of

the system); when a loss of the communication to the first switching system occurs: activating by

Application/Control Number: 10/582,589                                    Page 3
Art Unit: 2416

the monitoring unit ¶[0067] where the FailoverMGgr integrated in a GW monitors t, the switching system in hot-standby operating state to be in the active operating state (¶[0053]-¶[0056]), and deactivating the first switching system by the monitor (¶[0069], ¶[0073], where the SSC is offline and deactivated by the FailoverMgr component) ;wherein when in the hot-standby operating state the respective switching system is not active in terms of switching functions (¶[0029], wherein SSCb is in hot stand-by mode because it is only active when SSCa has failed).

Regarding **claim 12,** Khan discloses the operating state from the group consisting of active and hot-standby has a pre-definable number of packet-base interfaces (¶[0061], wherein the current mode includes the operating state, ¶[0068], where the other SSC involved through SIP are the pre-definable number of packet interfaces).

Regarding **claim13,** Khan discloses periodically sending IP lease requests to the monitor by a packet-based interface of the switching system in the hot-standby operating state, the packet based interfaces as in an inactive state(¶[0059,¶[0061], where the state is inactive or hot-stand by);

Regarding **claim 14,** Khan discloses the monitor does not respond to the requests while the switching system is in the hot-standby state(¶[0069], where the heartbeat message include a lack of response,¶[0061]).

Regarding **claim 15,** Khan discloses changing the packet-based interface from an inactive state to an active state in response to receiving an IP lease response(figure 3, where the GW1 goes from inactive to active in response to receiving the acknowledgement from GW2, ¶[0035]-¶[0038]).

Application/Control Number: 10/582,589                                          Page 4
Art Unit: 2416

Regarding **claim 16,** Khan discloses the response from the monitor contains an IP address

f the requesting packet-based interface (¶[0034], where the IP address is included in the IAM

message, figure 3) .

Regarding **claim 17**, Khan discloses suppressing sending IP leaserequests to the

monitoring unit by a packet-based interface of the switching system in the active operating state,

the packet-based interface in an active operating state (figure 2,¶[0042]-¶[0045], where the

requests are no longer being sent in between calls or after the caller hangs up).

Regarding **claim 18**, Khan discloses receiving a monitoring message from the monitoring

unit by a packet-based interface in the active state, the packet-based interface is in an active state

and acknowledging the message by the packet-based interface ( figure 3, where SSA is the

monitor for the interfaces in the active state , and acknowledging is done by interfaces GW1 and

GW2).

Regarding **claim 19,** Khan discloses determining by the monitoring unit a fault condition

when an acknowledgement is not received form the packet-based interface in the active state;

and sending an IP lease response to the switching system in the hot-standby operating state(¶[0059],¶[0061]-¶[0062], where the fault condition is in the current mode, ¶[0066]-

¶[0069]).

Regarding **claim 20,**  Khan discloses changing the packet-based interface from an

inactive state to an active state in response to receiving an IP response(figure 3, where the GW1

goes from inactive to active in response to receiving the acknowledgement from GW2, ¶[0035]-

¶[0038]).

**BLUEPRINT 000203**

Application/Control Number: 10/582,589                                           Page 5
Art Unit: 2416

### *Claim Rejections - 35 USC § 103*

1.      This application currently names joint inventors.  In considering patentability of the

claims under 35 U.S.C. 103(a), the examiner presumes that the subject matter of the various

claims was commonly owned at the time any inventions covered therein were made absent any

evidence to the contrary.  Applicant is advised of the obligation under 37 CFR 1.56 to point out

the inventor and invention dates of each claim that was not commonly owned at the time a later

invention was made in order for the examiner to consider the applicability of 35 U.S.C. 103(c)

and potential 35 U.S.C. 102(e), (f) or (g) prior art under 35 U.S.C. 103(a).

2.      The factual inquiries set forth in *Graham* **v.** *John Deere Co.*, 383 U.S. 1, 148 USPQ 459

(1966), that are applied for establishing a background for determining obviousness under 35

U.S.C. 103(a) are summarized as follows:

      1.      Determining the scope and contents of the prior art.
      2.      Ascertaining the differences between the prior art and the claims at issue.
      3.      Resolving the level of ordinary skill in the pertinent art.
      4.      Considering objective evidence present in the application indicating obviousness
         or nonobviousness.

3.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

    (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in
    section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are
    such that the subject matter as a whole would have been obvious at the time the invention was made to a person
    having ordinary skill in the art to which said subject matter pertains.  Patentability shall not be negatived by the
    manner in which the invention was made.

Application/Control Number: 10/582,589                                              Page 6

Art Unit: 2416

4.      Claim 26 is rejected under 35 U.S.C. 103 (a)  as being unpatentable over Khan et al.(US

2003/0152064 A1, hereinafter Khan) in view of Kampe et al.(US 2002/0007468, hereinafter

Kampe).

         Regarding **claim 26,**  Khan discloses  all subject matter of the claimed invention as set

forth above in claim 11 above. Khan does not explicitly diclose the operating state of the

switching system having the communication loss changes to a hot-standby operation and remains

defined as the hot-standby switching system until a new fault situation forces a new switchover.

Kampe discloses the hot-standby switching system remains until a new fault situation forces a

new switchover(¶[0079],¶[0084]). Thus, it would have been obvious to one of ordinary skill in

the art at the time of invention to utilize the system as disclosed by Khan along with the

teachings of Kampe. The teachings of Kampe can be applied to the system of Khan through

software implementation. The motivation for utilizing the system as disclosed by Khan along

with the teachings of Kampe is to increase the efficiency of the network and to provide

communication in the event of a fault.

5.      Claim 28-35 are rejected under 35 U.S.C. 103 (a)  as being unpatentable over Khan et

al.(US 2003/0152064 A1, hereinafter Khan) in view of Cole et al.(US 2009/0219804 A1,

hereinafter Cole).

         Regarding **claims 28 and 32**, Khan discloses providing a pair of switching systems which

are geographically separate (¶[0009]) and which supply a dedicated redundancy to each other

(figure 2, ¶[0053], wherein SSCb is dedicated to SSCa) one of the pair of switching systems is in

an active operating state and the other is in a hot-standby operating state ( SSCa is in the active

operating state, redundant switching system(SSCB)  in a hot-standby operating state (figure 2,

Application/Control Number: 10/582,589                                    Page 7

Art Unit: 2416

¶[0009],¶[0096]); the pair of switching systems comprise software that is identical to each other

(¶[0029], wherein the provisioning includes the identical software);controlling the

communication between each of the pair system  and the monitoring unit  in accordance with the

active operating state; controlling  the communication  between the first switching system and

the monitor in accordance with the hot-standby operating state( ¶[0067]-¶[0069], where the

FailoverMgr controls the system based on the mode or state of the system); when a loss of the

communication to the first switching system occurs: activating by the monitoring unit ¶[0067]

where the FailoverMGgr integrated in a GW monitors t, the switching system in hot-standby

operating state to be in the active operating state (¶[0053]-¶[0056]), and deactivating the first

switching system by the monitor (¶[0069], ¶[0073], where the SSC is offline and deactivated by

the FailoverMgr component) ;wherein when in the hot-standby operating state the respective

switching system is not active in terms of switching functions (¶[0029], wherein SSCb is in hot

stand-by mode because it is only active when SSCa has failed . Khan does not disclose wherein

each of the pair of switching systems comprises a database which is identical to each other, the

database comprises only permanent data and semi-permanent data such that transient data

pertaining to calls is excluded.  Cole discloses each of the pair of switching systems comprises a

database which is identical to each other, the database comprises only permanent data and semi-

permanent data such that transient data pertaining to calls is excluded (figure 5, block 532, where

the link state database is the database copy). Thus, it would have been obvious to one of ordinary

skill in the art at the time of invention to utilize the database copy as disclosed by Cole along

with the system of Khan. The database copy as disclosed by Cole can be implemented into the

system of Khan through software implementation. The motivation for utilizing the database copy

Application/Control Number: 10/582,589                                                    Page 8
Art Unit: 2416

as disclosed by Cole in the system of Khan is to provide information to the redundant router in

the event of a failure.


Regarding claim **29 and 33**, Khan discloses periodically sending IP lease requests to the

monitor by a packet-based interface of the switching system in the hot-standby operating state,

the packet based interfaces as in an inactive state(¶[0059,¶[0061]), and ignoring the IP lease

request by the monitoring unit while switching system is in the hot-standby operating state

(¶[0069], where the heartbeat message include a lack of response,¶[0061]).


Regarding **claims 30 and 34,** Khan discloses changing the packet-based interface from

an inactive state to an active state in response to receiving an IP lease response(figure 3, where

the GW1 goes from inactive to active in response to receiving the acknowledgement from GW2,

¶[0035]-¶[0038]),the  IP lease response from the monitor contains an IP address leased to the

requesting packet-based interface (¶[0034], where the IP address is included in the IAM

message, figure 3) .

Regarding **claims 31 and 35,** Khan discloses receiving a monitoring message from the

monitoring unit by a packet-based interface of the switching system in the active operating state,

the packet based interface in an active state ((¶[0059,¶[0061]) sending a response by the

switching system in the active operating state via the packet-based interface to the monitoring

message in order to acknowledge the monitoring message (¶[0061]) determining by the

monitoring unit a fault condition when an acknowledgement is not received from the packet-

based interface in the active state(¶[0067], where the heartbeats include the acknowledgements,

Application/Control Number: 10/582,589                                                    Page 9

Art Unit: 2416

¶[0069], where the failure is in SSCa); and sending a IP lease response to a packet-based

interface, which is inactive of the switching system in the hot-standby operating state (¶[0035]-

¶[0038]),¶[0061], where the inactive endpoint is the switching system in the hot-standby

operating state)

### *Response to Arguments*

6.      Applicant's arguments filed 06/01/2009  have been fully considered but they are not

persuasive. Regarding claim 11, applicant argues Khan does not disclose a dedicated redundancy

partner. Examiner respectfully disagrees with the applicant. Khan discloses a 1:N configuration

which  includes 1:1 redundancy (¶[0053],where SSCb is dedicated redundancy partner to SSCa).

Applicant also argues Khan does not disclose that the switching system in the hot-standby

operating state does not handle switching functions. Examiner respectfully disagrees. Khan does

disclose the switching system in the hot-standby operating state (SSCb) does not handle

switching functions (0029], wherein SSCb is in hot stand-by mode, therefore it is not handling

switching functions for the SSCa router),

### *Conclusion*

7.      Applicant's amendment necessitated the new ground(s) of rejection presented in this

Office action.  Accordingly, **THIS ACTION IS MADE FINAL**.  See MPEP § 706.07(a).

Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

8.      A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action.  In the event a first reply is filed within TWO

Application/Control Number: 10/582,589                                    Page 10
Art Unit: 2416

MONTHS of the mailing date of this final action and the advisory action is not mailed until after

the end of the THREE-MONTH shortened statutory period, then the shortened statutory period

will expire on the date the advisory action is mailed, and any extension fee pursuant to 37

CFR 1.136(a) will be calculated from the mailing date of the advisory action.  In no event,

however, will the statutory period for reply expire later than SIX MONTHS from the date of this

final action.

9.      Any inquiry concerning this communication or earlier communications from the

examiner should be directed to ANGEL BROCKMAN whose telephone number is (571)270-

5664.  The examiner can normally be reached on Monday-Friday ,7:30-5:00pm.

10.      If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Derrick Ferris can be reached on 571-272-3123.  The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.

11.      Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system.  Status information for published applications

may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished

applications is available through Private PAIR only.  For more information about the PAIR

system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR

system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would

like assistance from a USPTO Customer Service Representative or access to the automated

information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

ANGEL  BROCKMAN
Examiner
Art Unit 2416

Application/Control Number: 10/582,589                                      Page 11

Art Unit: 2416

/A. B./

Examiner, Art Unit 2416

/Derrick W Ferris/

Supervisory Patent Examiner, Art Unit 2416

BLUEPRINT 000210

| *Notice of References Cited* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 10/582,589 | LOBIG ET AL. |
| | Examiner | Art Unit | Page 1 of 1 |
| | ANGEL BROCKMAN | 2416 | |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-2009/0219804 | 09-2009 | COLE et al. | 370/218 |
| | B | US- | | | |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)          **Notice of References Cited**          Part of Paper No. 20090911

**BLUEPRINT 000211**

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 10582589 | LOBIG ET AL. |
| | Examiner | Art Unit |
| | ANGEL BROCKMAN | 2416 |

| ✓ | **Rejected** | - | **Cancelled** | N | **Non-Elected** | A | **Appeal** |
|---|---|---|---|---|---|---|---|
| = | **Allowed** | ÷ | **Restricted** | I | **Interference** | O | **Objected** |

☐ **Claims renumbered in the same order as presented by applicant**  ☐ CPA  ☐ T.D.  ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 02/24/2009 | 09/11/2009 | | | | | | |
| | 11 | ✓ | ✓ | | | | | | |
| | 12 | ✓ | ✓ | | | | | | |
| | 13 | ✓ | ✓ | | | | | | |
| | 14 | ✓ | ✓ | | | | | | |
| | 15 | ✓ | ✓ | | | | | | |
| | 16 | ✓ | ✓ | | | | | | |
| | 17 | ✓ | ✓ | | | | | | |
| | 18 | ✓ | ✓ | | | | | | |
| | 19 | ✓ | ✓ | | | | | | |
| | 20 | ✓ | | | | | | | |
| | 21 | ✓ | - | | | | | | |
| | 22 | ✓ | - | | | | | | |
| | 23 | ✓ | - | | | | | | |
| | 24 | ✓ | - | | | | | | |
| | 25 | ✓ | - | | | | | | |
| | 26 | ✓ | | | | | | | |
| | 27 | ✓ | - | | | | | | |
| | 28 | | ✓ | | | | | | |
| | 29 | | ✓ | | | | | | |
| | 30 | | ✓ | | | | | | |
| | 31 | | ✓ | | | | | | |
| | 32 | | ✓ | | | | | | |
| | 33 | | ✓ | | | | | | |
| | 34 | | ✓ | | | | | | |
| | 35 | | ✓ | | | | | | |

Part of Paper No. : 20090911

**BLUEPRINT 000212**

## EAST Search History

## EAST Search History (Prior Art)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| S1 | 203 | (one$3one or "1:1") near4 (redundancy) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/09/11 10:14 |
| S2 | 20 | S1 and hot$3 near3 standby | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/09/11 10:14 |
| S3 | 21 | S1 and hot$3 near3 stand$1by | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/09/11 10:15 |
| S4 | 19 | S3 and monitor$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/09/11 10:15 |
| S5 | 16 | S4 and pair$1 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/09/11 10:15 |
| S6 | 122 | S1 and back$1up | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/09/11 10:20 |
| S7 | 2252 | hot$1 stand$1by | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/09/11 11:32 |
| S8 | 34 | S7 same operating near5 (switch$3) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/09/11 11:32 |

**BLUEPRINT 000213**

| S9 | 0 | S8 and IP lease | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/09/11 11:33 |
| S10 | 7 | S8 and IP | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/09/11 11:33 |
| S11 | 3 | S10 and hot$1stand $1by | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/09/11 11:34 |
| S12 | 0 | S10 and hot$ 1stand $1 by | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/09/11 11:34 |
| S13 | 0 | S10 and hot$1 stand $1 by | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/09/11 11:35 |
| S14 | 7 | S10 and hot$1 stand $1by | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/09/11 11:35 |
| S15 | 0 | hot$1 stand$1 by | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/09/11 11:36 |
| S16 | 519 | S7 and "370".clas. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/09/11 11:36 |

9/11/2009 1:30:41 PM

BLUEPRINT 000214

file:///C|/Documents%20and%20Settings/abrockman/My%20...2589/EASTSearchHistory.10582589_AccessibleVersion.htm (2 of 2)9/11/2009 1:30:49 PM

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 10582589 | LOBIG ET AL. |
| | **Examiner** | **Art Unit** |
| | ANGEL BROCKMAN | 2416 |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 370 | 442 | 02/20/2009 | A.B. |
| 370 | 217,219,220 | | A.B. |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Talked to Spe Derrick Ferris | 02/19/2009 | A.B. |
| Inventor Name Search | 02/19/2009 | A.B. |
| EAST SEARCH | 02/20/2009 | A.B. |
| Update EAST | 9/9/2009 | A.B. |

## INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 370 | 442 | 02/20/2009 | A.B. |

BLUEPRINT 000215

# SIEMENS

PATENT

Attorney Docket No. 2003P18829WOUS

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

| | | | | |
|---|---|---|---|---|
| Inventor: | N. Lobig et al. | ) | Confirmation No: | 2784 |
| | | ) | | |
| Serial No.: | 10/582,589 | ) | Examiner: | A. Brockman |
| | | ) | | |
| Filed: | June 9, 2006 | ) | Group Art Unit: | 2416 |

Title      METHOD FOR PROTECTION SWITCHING OF GEOGRAPHICALLY
SEPARATE SWITCHING SYSTEMS

**Commissioner For Patents**
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

RESPONSE TO OFFICE ACTION

In response to the Office Action mailed March 5, 2009, Applicant respectfully submit the following amendments and remarks in connection with the above-identified application

**Amendments to the Claims** begin on page 2 of this paper.

**Remarks/Arguments** begin on page 9 of this paper.

**BLUEPRINT 000216**

Serial No. 10/582,589
Atty. Doc. No. 2003P18829WOUS

Amendments to the Claims:

      The text of all pending claims, (including withdrawn claims) is set forth below. Canceled and not entered claims are indicated with claim number and status only. The claims as listed below show added text with underlining and deleted text with ~~strikethrough~~. The status of each claim is indicated with one of (original), (currently amended), (canceled), (withdrawn), (new), (previously presented), or (not entered).

      Applicant reserves the right to pursue any canceled claims at a later date.

      The following listing of claims will replace all prior versions, and listings, of claims in the application:

BLUEPRINT 000217

Serial No. 10/582,589
Atty. Doc. No. 2003P18829WOUS

1.-10.   (canceled)

11.   (currently amended) A method for protection switching of geographically separate switching systems arranged in pairs, comprising:

providing a pair of switching systems which are geographically separate and which supply a dedicated redundancy to each other, one of the pair of switching systems is in an active operating state and the other is in a hot-standby operating state;

~~providing a first switching system in an active operating state;~~

~~providing a redundant switching system as a pair to the first switching system, the redundant switching system in a hot-standby operating state;~~

~~providing a monitor that communicates with the first and the redundant switching systems;~~

controlling the communication between the ~~first~~ each of the pair switching system and the ~~monitor~~ monitoring unit in accordance with the ~~active operating state~~ an operating state of the respective switching system; and

~~controlling the communication between the first switching system and the monitor in accordance with the hot-standby operating state;~~

when a loss of the communication to the ~~first~~ switching system in the active operating state occurs:

activating, by the monitoring unit, the switching system in the hot-standby operating state to be in the active operating state, and

deactivating, by the monitoring unit, the ~~first~~ switching system with the communication loss to be in the hot-standby operating state ~~by the monitor~~, and

~~activating the redundant switching system to be in the active operating state by the monitor within 2 seconds~~

wherein when in the hot-standby operating state, the respective switching system is not active in terms of switching functions .

12.   (currently amended) The method as claimed in claim 11, wherein an operating state selected from the group consisting of active operating state and hot-standby state has a pre-definable number of packet-based interfaces.

BLUEPRINT 000218

Serial No. 10/582,589
Atty. Doc. No. 2003P18829WOUS

13.    (currently amended) The method as claimed in claim 11, further comprising periodically sending ~~an IP lease request~~ <u>requests</u> to the ~~monitor~~<u>monitoring unit</u> by <u>a</u> packet-based ~~interfaces~~ <u>interface</u> of the switching system in the hot-standby operating state, the ~~interfaces~~ <u>packet-based interface is</u> in an inactive state.

14.    (currently amended) The method as claimed in claim 13, wherein the ~~monitor~~<u>monitoring unit</u> does not respond <u>to the</u> ~~requests~~<u>request while the switching system is in the hot-standby operating state</u>.

15.    (currently amended) The method as claimed in claim 13, further comprising changing the ~~packet-based~~<u>packet-based</u> interface from the inactive state to an active state in response to receiving an IP <u>lease</u> response.

16.    (currently amended) The method as claimed in claim 15, wherein the <u>IP lease</u> response from the ~~monitor~~<u>monitoring unit</u> contains an IP address ~~of~~<u>leased to</u> the requesting packet-based interface.

17.    (currently amended) The method as claimed in claim 11~~13~~, further comprising suppressing an sending IP <u>lease</u> ~~requests~~<u>request</u> to the ~~monitor~~<u>monitoring unit</u> by <u>a</u> packet-based ~~interfaces~~ <u>interface</u> of the switching system in the active operating state, the ~~interfaces~~<u>packet-based interface is</u> in an active operating state.

18.    (currently amended) The method as claimed in claim 11~~13~~, further comprising:
receiving a monitoring message from the ~~monitor~~<u>monitoring unit</u> by ~~the interfaces~~<u>a packet-based  interface of the switching system in the active operating state, the packet-based interface is</u> in ~~the~~<u>an</u> active state; and
acknowledging the message by the <u>packet-based</u> interface.

BLUEPRINT 000219

Serial No. 10/582,589
Atty. Doc. No. 2003P18829WOUS

19.      (currently amended) The method as claimed in claim 18, further comprising:

determining, by the ~~monitor~~monitoring unit, a fault condition when an acknowledgement is not received from the packet-based interface in the active state; and

sending a IP lease response to a packet-based interface, which is inactive, of the switching system in the hot-standby operating state.

20.      (currently amended) The method as claimed in claim 19, further comprising changing the ~~packet-based~~packet-based ~~interface~~interface from the inactive state to an active state in response to receiving ~~an~~the IP response.

21– 25. (canceled)

26.      (currently amended) The method as claimed in claim 11~~18~~,

wherein the operating state of the switching system having the communication loss changes to a hot-standby operation state and remains defined as the hot-standby switching system until a new fault situation forces a new switchover.

27.      (canceled)

BLUEPRINT 000220

Serial No. 10/582,589
Atty. Doc. No. 2003P18829WOUS

28.    (new) A method for protection switching of geographically separate switching systems arranged in pairs, comprising:

providing a pair of switching systems which are geographically separate and which supply a dedicated redundancy to each other, one of the pair of switching systems is in an active operating state and the other is in a hot-standby operating state, each of the pair of switching systems comprises a database which is identical to each other, the database comprises only permanent data and semi-permanent data such that transient data pertaining to calls is excluded;

controlling the communication between the each of the pair switching system and a monitoring unit in accordance with the an operating state of the respective switching system; and

when a loss of the communication to the witching system in the active operating state occurs:

activating, by the monitoring unit, the switching system in the hot-standby operating state to be in the active operating state, and

deactivating, by the monitoring unit, the switching system with the communication loss to be in the hot-standby operating state,

wherein when in the hot-standby operating state, the respective switching system is not active in terms of switching functions.

29.    (new) The method as claimed in claim 28, further comprising:

periodically sending an IP lease request to the monitoring unit by a packet-based interface of the switching system in the hot-standby operating state, the packet-based interface is in an inactive state; and

ignoring the IP lease request by the monitoring unit while the switching system is in the hot-standby operating state.

30.    (new) The method as claimed in claim 29, further comprising changing the packet-based interface from the inactive state to an active state in response to receiving an IP lease response, the IP lease response from the monitoring unit contains an IP address leased to the requesting packet-based interface.

BLUEPRINT 000221

Serial No. 10/582,589
Atty. Doc. No. 2003P18829WOUS

31.     (new) The method as claimed in claim 28, further comprising:

receiving a monitoring message from the monitoring unit by a packet-based interface of the switching system in the active operating state, the packet-based interface in an active state;

sending a response by the switching system in the active operating state via the packet-based interface to the monitoring message in order to acknowledge the monitoring message;

determining by the monitoring unit a fault condition when an acknowledgement is not received from the packet-based  interface in the active state; and

sending a IP lease response to a packet-based interface, which is inactive, of the switching system in the hot-standby operating state.

32.     (new) A method for protection switching of geographically separate switching systems arranged in pairs, comprising:

providing a pair of switching systems which are geographically separate and which supply a dedicated redundancy to each other; the pair of switching systems comprise software identical to each other, one of the pair of switching systems is in an active operating state and the other is in a hot-standby operating state;

providing a monitoring unit that communicates with the pair of switching systems;

controlling the communication between the each of the pair switching system and a monitoring unit in accordance with the an operating state of the respective switching system; and

when a loss of the communication to the witching system in the active operating state occurs:

activating, by the monitoring unit, the switching system in the hot-standby operating state to be in the active operating state, and

deactivating, by the monitoring unit, the switching system with the communication loss to be in the hot-standby operating state,

wherein every software update including patches is delivered in identical fashion to the first and redundant switching system, and

wherein when in the hot-standby operating state, the respective switching system is not active in terms of switching functions.

BLUEPRINT 000222

Serial No. 10/582,589
Atty. Doc. No. 2003P18829WOUS

33.  (new) The method as claimed in claim 32, further comprising:

periodically sending an IP lease request to the monitoring unit by a packet-based interface of the switching system in the hot-standby operating state, the packet-based interface is in an inactive state; and

ignoring the IP lease request by the monitoring unit while the switching system is in the hot-standby operating state.

34.  (new) The method as claimed in claim 33, further comprising changing the packet-based interface from the inactive state to an active state in response to receiving an IP lease response, the IP lease response from the monitoring unit contains an IP address leased to the requesting packet-based interface.

35.  (new) The method as claimed in claim 32, further comprising:

receiving a monitoring message from the monitoring unit by a packet-based interface of the switching system in the active operating state, the packet-based interface in an active state;

sending a response by the switching system in the active operating state via the packet-based interface to the monitoring message in order to acknowledge the monitoring message;

determining by the monitoring unit a fault condition when an acknowledgement is not received from the packet-based interface in the active state; and

sending a IP lease response to a packet-based interface, which is inactive, of the switching system in the hot-standby operating state.

BLUEPRINT 000223

Serial No. 10/582,589
Atty. Doc. No. 2003P18829WOUS

# REMARKS

Claims 1-10 have been previously canceled, claims 21-25 and 27 are currently canceled, claims 11-20 and 26 have been amended and new claims 28-35 have been added. Thus, claims 11-20, 26 and 28-35 are currently pending and presented for examination. Applicant respectfully requests reconsideration and allowance of the pending claims in view of the foregoing amendments and the following remarks.

Response to Rejections Under Section 103:

Claims 11-27 stand rejected under 35 U.S.C § 103(a) as being obvious over Khan et al. (US 2003/0152064) in view of Kampe et al. (US 2002/0007468).

The Examiner apparently interprets Khan's SSCA as the switching system in an active operating state and SSCB as the switching system in a hot-standby operating state. Applicant has amended claim 11, as supported at paragraphs [0004] and [0008], for example, to recite:

> providing **a pair of switching systems** which are geographically separate and which supply **a dedicated redundancy** to each other, one of the pair of switching systems is in an active operating state and the other is in a hot-standby operating state

Thus, Applicant's switching systems are arranged as a **pair of switching systems**. One skilled in the art would recognize that such a one-to-one redundancy provides **a dedicated redundancy** partner. Having a dedicated redundancy partner not only insures that a backup is available but provides a specific backup so that no searching for a backup is required. In contrast, Khan teaches that if SSCa crashes, then any SSC that capable of controlling the circuits originally controlled by SCCa can be a backup SSCa [0029] and [0031]. Thefore, Khan teaches a one-to-many redundancy arrangement. One skilled in the art would not reasonably interpret Khan's one-to-many redundancy arrangement as Applicant's one-to-one redundancy arrangement of a pair of switching systems …which supply a dedicated redundancy.

The following is a quotation from MPEP 2111

> During patent examination, the pending claims must be "given their broadest reasonable interpretation consistent with the specification." . . . The broadest reasonable interpretation of the claims must also be consistent with the interpretation that those skilled in the art would reach.

**BLUEPRINT 000224**

Serial No. 10/582,589
Atty. Doc. No. 2003P18829WOUS

Moreover, Amended claim 11, as supported at paragraph [0009], for example, further recites:

> when in the hot-standby operating state the respective switching system is not active in terms of switching functions

Thus, the switching system in the hot-standby operating state does not handle switching functions, i.e. calls, but is merely in standby in case of a fault at the switching system in the active operating state. In contrast, Khan teaches that SSCB (which the Examiner identifies as the switching system in the hot-standby operating state) handles switching functions and further bases a backup decision on an the amount of switching functions, i.e. traffic, is handled the backup SCC [0084]. Applicant respectfully submits that Khan does not teach or suggest that the switching system in the hot-standby operating state does not handle switching functions.

In view of the above Applicant respectfully submit that independent claim 11 is patentable over Khan in view of Kampe. Furthermore, dependent claims 2-20, 25 and 26 are patentable at lease based on their dependency as well as based on their own merit. For example, claim 13 recites "periodically sending an **IP lease request** to the monitoring unit by a packet-based interface of the switching system in the hot-standby operating state, the interface is in an inactive state" which is not taught or suggested by Kampe.

New Claims:

New claims further define the scope of the invention as described in the specification and drawings. Support for new claim 29 and 33 may be found in claims 13 and 14. Support for new claim 30 and 34 may be found in claims 15 and 16 and support for new claims 31 and 35 may be found in claims 18 and 19.

Applicant's independent claim 28 includes most of the limitations in claims 11 and includes the limitation "each of the pair of switching systems comprises a database which is identical to each other, the database comprises only permanent data and semi-permanent data such that transient data pertaining to calls is excluded" which is supported, for example, at paragraph [0010]. This further limitation is not taught or suggested by Khan.

Applicant's independent claim 32 includes most of the limitations in claims 11 and includes the limitation "the pair of switching systems comprises software identical to each other... every software update including patches is delivered in identical fashion to the first and

BLUEPRINT 000225

Serial No. 10/582,589
Atty. Doc. No. 2003P18829WOUS

redundant switching system" which is supported, for example, at paragraphs [0004] and [0009]. This further limitation is not taught or suggested by Khan.

In view of the foregoing remarks regarding the other claims, Applicant respectfully submits that independent claims 28 and 32 are patentable. Furthermore, claims 29-31 which depend on independent claim 28 and claims 33-35 which depend on independent claim 32 are patentable at least based on their dependencies as well as on their own merits.

Conclusion

For the foregoing reasons, it is respectfully submitted that the objections and rejections set forth in the outstanding Office Action are inapplicable to the present claims. All correspondence should continue to be directed to our below-listed address. Accordingly, Applicant respectfully requests that the Examiner reconsider the objections and rejections and timely pass the application to allowance. Please grant any extensions of time required to enter this paper. The commissioner is hereby authorized to charge any appropriate fees due in connection with this paper, including fees for additional claims and terminal disclaimer fee, or credit any overpayments to Deposit Account No. 19-2179.

Respectfully submitted,

Dated: _June 1, 2009_                          By: _Janet D. Hood_

                                                Janet D. Hood
                                                Registration No. 61,142
                                                (407) 736-4234

Siemens Corporation
Intellectual Property Department
170 Wood Avenue South
Iselin, New Jersey 08830

BLUEPRINT 000226

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 5429087 |
| **Application Number:** | 10582589 |
| **International Application Number:** | |
| **Confirmation Number:** | 2784 |
| **Title of Invention:** | Method for protection switching of geographically separate switching systems |
| **First Named Inventor/Applicant Name:** | Norbert Lobig |
| **Customer Number:** | 22116 |
| **Filer:** | Janet D. Hood/Ann Hickey |
| **Filer Authorized By:** | Janet D. Hood |
| **Attorney Docket Number:** | 2003P18829WOUS |
| **Receipt Date:** | 01-JUN-2009 |
| **Filing Date:** | 09-JUN-2006 |
| **Time Stamp:** | 14:50:18 |
| **Application Type:** | U.S. National Stage under 35 USC 371 |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | 2003P18829WOUSResponseto03052009NonFinalOfficeActionFiledJune012009.pdf | 636155<br>ea0e62d6ce586100b97758bf8ce64e32c28b8c95 | yes | 11 |

**BLUEPRINT 000227**

**Multipart Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Amendment/Req. Reconsideration-After Non-Final Reject | 1 | 1 |
| Claims | 2 | 8 |
| Applicant Arguments/Remarks Made in an Amendment | 9 | 11 |

| | |
|---|---|
| **Warnings:** | |
| **Information:** | |
| **Total Files Size (in bytes):** | 636155 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

BLUEPRINT 000228

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>10/582,589 | Filing Date<br>06/09/2006 | ☐ To be Mailed |
|---|---|---|---|

## APPLICATION AS FILED – PART I

|  | | (Column 1)<br>NUMBER FILED | (Column 2)<br>NUMBER EXTRA | SMALL ENTITY ☐ | | OR | OTHER THAN<br>SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|
| FOR | | | | RATE ($) | FEE ($) | | RATE ($) | FEE ($) |
| ☐ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | | N/A | N/A | N/A | | | N/A | |
| ☐ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | | N/A | N/A | N/A | | | N/A | |
| ☐ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | | N/A | N/A | N/A | | | N/A | |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | | minus 20 = | * | X $ = | | OR | X $ = | |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | | minus 3 = | * | X $ = | | | X $ = | |
| ☐ APPLICATION SIZE FEE<br>(37 CFR 1.16(s)) | | colspan If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | | TOTAL | | | TOTAL | |

## APPLICATION AS AMENDED – PART II

|  |  | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA | SMALL ENTITY<br>RATE ($) | ADDITIONAL FEE ($) | OR | OTHER THAN SMALL ENTITY<br>RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|---|
| AMENDMENT | 06/01/2009 | | | | | | | | |
| | Total (37 CFR 1.16(i)) | * 19 | Minus ** 20 | = 0 | X $ = | | OR | X $52= | 0 |
| | Independent (37 CFR 1.16(h)) | * 3 | Minus ***3 | = 0 | X $ = | | OR | X $220= | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | 0 |

|  |  | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) | OR | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|---|
| AMENDMENT | | | | | | | | | |
| | Total (37 CFR 1.16(i)) | * | Minus ** | = | X $ = | | OR | X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | X $ = | | OR | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/LAWANDA MILTON/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

**BLUEPRINT 000229**

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/582,589 | 06/09/2006 | Norbert Lobig | 2003P18829WOUS | 2784 |

22116          7590          03/05/2009
SIEMENS CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
170 WOOD AVENUE SOUTH
ISELIN, NJ 08830

| EXAMINER |
|---|
| BROCKMAN, ANGEL T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2416 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 03/05/2009 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

**BLUEPRINT 000230**

| **Office Action Summary** | Application No. | Applicant(s) |
|---|---|---|
| | 10/582,589 | LOBIG ET AL. |
| | **Examiner** | **Art Unit** | |
| | ANGEL BROCKMAN | 2416 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE _3_ MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on _09 June 2006_.

2a)☐ This action is **FINAL**.     2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) _11-27_ is/are pending in the application.

4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) _11-27_ is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☒ The drawing(s) filed on _09 June 2006_ is/are: a)☒ accepted or b)☐ objected to by the Examiner.

Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

a)☐ All   b)☐ Some * c)☐ None of:

1.☐ Certified copies of the priority documents have been received.

2.☐ Certified copies of the priority documents have been received in Application No. _____.

3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☒ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____.

5)☐ Notice of Informal Patent Application

6)☐ Other: _____.

Application/Control Number: 10/582,589                                    Page 2

Art Unit: 2416

## DETAILED ACTION

### *Claim Rejections - 35 USC § 103*

1.      This application currently names joint inventors.  In considering patentability of the claims under 35 U.S.C. 103(a), the examiner presumes that the subject matter of the various claims was commonly owned at the time any inventions covered therein were made absent any evidence to the contrary.  Applicant is advised of the obligation under 37 CFR 1.56 to point out the inventor and invention dates of each claim that was not commonly owned at the time a later invention was made in order for the examiner to consider the applicability of 35 U.S.C. 103(c) and potential 35 U.S.C. 102(e), (f) or (g) prior art under 35 U.S.C. 103(a).

2.      The factual inquiries set forth in *Graham* **v.** *John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966), that are applied for establishing a background for determining obviousness under 35 U.S.C. 103(a) are summarized as follows:

    1.    Determining the scope and contents of the prior art.
    2.    Ascertaining the differences between the prior art and the claims at issue.
    3.    Resolving the level of ordinary skill in the pertinent art.
    4.    Considering objective evidence present in the application indicating obviousness or nonobviousness.

3.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.  Patentability shall not be negatived by the manner in which the invention was made.

Application/Control Number: 10/582,589                                                    Page 3
Art Unit: 2416

4.      Claims 11-27 are rejected under 35 U.S.C. 103 (a) as being anticipated by Khan et

al.(US 2003/0152064 A1, hereinafter Khan) in view of Kampe et al.(US 2002/0007468 A1,

hereinafter Kampe).

        Regarding **claim 11**, Khan discloses providing a first switching system in an active

operating state (SSCA); providing a redundant switching state as a pair to the first switching

system, the redundant switching system(SSCB) in a hot-standby operating state (figure 2,

¶[0009],¶[0096]); providing a monitor (FailoverMgr in GW) that communicates with the first

and the redundant switching systems(¶[0059], where the FailoverMgr monitors the systems,(e.g.

integrated in a ¶[0067] where the FailoverMGgr integrated in a GW monitors); controlling the

communication between the first switching system and the monitor in accordance with the

active operating state; controlling the communication between the first switching system and

the monitor in accordance with the hot-standby operating state( ¶[0067]-¶[0069], where the

FailoverMgr controls the system based on the mode or state of the system); when a loss of the

communication to the first switching system occurs: deactivating the first switching system by

the monitor (¶[0069], ¶[0073], where the SSC is offline and deactivated by the FailoverMgr

component) . Khan does not disclose activating the redundant switching system to be in the

active operating state by the monitor within 2 seconds. Kampe discloses activating the redundant

switch to be in the active operating state within 2 seconds(¶[0040], where the 2 second or less

restart or fail-over to a hot stand-by is the activation of the redundant switch. Thus, it would have

been obvious to one of ordinary skill in the art at the time of invention to utilize the prompt

restart of fail-over as disclosed by Kampe along with the system of Khan. The fail-over as

disclosed by Kampe can be implemented into the system of Khan through software

**BLUEPRINT 000233**

Application/Control Number: 10/582,589                                          Page 4
Art Unit: 2416

implementation. The motivation for utilizing the prompt restart of fail-over as disclosed by

Kampe along with the system of Khan is to maximize the efficiency of the system by responding

to faults quickly.

Regarding **claim 12,** Khan discloses the operating state from the group consisting of

active and hot-standby has a pre-definable number of packet-base interfaces (¶[0061], wherein

the current mode includes the operating state, ¶[0068], where the other SSC involved through

SIP are the pre-definable number of packet interfaces).

Regarding **claim13,** Khan discloses periodically IP requests to the monitor by packet-

based interfaces of the switching system in the hot-standby operating state, the interfaces as in an

inactive state(¶[0059,¶[0061], where the state is inactive or hot-stand by);

Regarding claim 14, Khan discloses the monitor does not respond to the requests

(¶[0069], where the heartbeat message include a lack of response,¶[0061]).

Regarding **claim 15,** Khan discloses changing the packet based interface from an inactive

state to an active state in response to receiving an IP response(figure 3, where the GW1 goes

from inactive to active in response to receiving the acknowledgement from GW2, ¶[0035]-

¶[0038]).

Regarding **claim 16,** Khan discloses the response from the monitor contains an IP address

f the requesting packet-based interface (¶[0034], where the IP address is included in the IAM

message, figure 3) .

Regarding **claim 17,** Khan discloses suppressing sending IP requests to the monitor by

packet-based interfaces of the switching system in the active operating state, the interfaces in an

Application/Control Number: 10/582,589                                                     Page 5
Art Unit: 2416

active operating state (figure 2,¶[0042]-¶[0045], where the requests are no longer being sent in

between calls or after the caller hangs up).

Regarding **claim 18**, Khan discloses receiving a monitoring message from the monitor by

the interfaces in the active state and acknowledging the message by the interface ( figure 3,

where SSA is the monitor for the interfaces in the active state , and acknowledging is done by

interfaces GW1 and GW2).

Regarding **claim 19,** Khan discloses determining by a monitor a fault condition when an

acknowledgement is not received form the interface in the active state; and sending an IP

response to the switching system in the hot-standby operating state(¶[0059],¶[0061]-¶[0062],

where the fault condition is in the current mode, ¶[0066]-¶[0069]).

Regarding **claim 20,**  Khan discloses changing the packet based interface from an

inactive state to an active state in response to receiving an IP response(figure 3, where the GW1

goes from inactive to active in response to receiving the acknowledgement from GW2, ¶[0035]-

¶[0038]).

Regarding **claim 21,** Khan discloses the response from the monitor contains an IP address

f the requesting packet-based interface (¶[0034], where the IP address is included in the IAM

message, figure 3) .

Regarding **claim 22,** Khan discloses changing the packet based interface from an inactive

state to an active state in response to receiving an IP response(figure 3, where the GW1 goes

from inactive to active in response to receiving the acknowledgement from GW2, ¶[0035]-

¶[0038]).

Application/Control Number: 10/582,589                                    Page 6
Art Unit: 2416

Regarding **claim 23,** Khan discloses changing the operating state from hot-standby to active in response to receiving an IP response(¶[0056],¶['0069], where SSCb changes to active state).

Regarding **claim 24,** Khan discloses the response from the monitor contains an IP address f the requesting packet-based interface (¶[0034], where the IP address is included in the IAM message, figure 3) .

Regarding **claim 25,** Khan discloses all subject matter of the claimed invention as set forth above in claim 19 above with the exception of changing the operating state of the switching system having the communication loss to a hot-standby operation state.  Kampe discloses changing the operating state of the switching system having the communication loss to a hot-standby state (¶[0073], where the active component is the active switch , ¶¶[0079]-¶[0082], where active and standby roles are assfned by the manager).. Thus, it would have been obvious to one of ordinary skill in the art at the time of invention to utilize the system as disclosed by Khan along with the teachings of Kampe. The  teachings of Kampe can be applied to the system of Khan through software implementation. The motivation for utilizing the system as disclosed by Khan along with the teachings of Kampe is to increase the efficiency of the network and to provide communication in the event of a fault.

Regarding **claim 26,** Khan discloses  all subject matter of the claimed invention as set forth above in claim 18 above. Khan does not explicitly diclose the operating state of the switching system having the communication loss changes to a hot-standby operation and remains defined as the hot-standby switching system until a new fault situation forces a new switchover. Kampe discloses the hot-standby switching system remains until a new fault situation forces a

Application/Control Number: 10/582,589                                    Page 7
Art Unit: 2416

new switchover(¶[0079],¶[0084]). Thus, it would have been obvious to one of ordinary skill in

the art at the time of invention to utilize the system as disclosed by Khan along with the

teachings of Kampe. The teachings of Kampe can be applied to the system of Khan through

software implementation. The motivation for utilizing the system as disclosed by Khan along

with the teachings of Hess is to increase the efficiency of the network and to provide

communication in the event of a fault.

Regarding **claim 27,** Khan discloses determining by the monitor a fault condition when

an acknowledgement is not received from the interface in the active state(¶[0067], where the

heartbeats include the acknowledgements, ¶[0069], where the failure is in SSCa); and sending a

message to the system in the hot-standby operating state a message indicating to change over to

the active operating state(¶[0053], where SSCb is in the hot-standby operating state and SSCa is

in the active state until a failure occurs ¶[0054], ¶[0056], where the message is sent to change

SSCb over to the active state,¶[0057]).

### *Conclusion*

5.      The prior art made of record and not relied upon is considered pertinent to applicant's

disclosure. Kicklighter(US 6,005,841) ,Hess (5,835,696) and  Hwu (US 7,023,795 B1).

6.      Any inquiry concerning this communication or earlier communications from the

examiner should be directed to ANGEL BROCKMAN whose telephone number is (571)270-

5664.  The examiner can normally be reached on Monday-Friday ,7:30-5:00pm.

Application/Control Number: 10/582,589                                          Page 8
Art Unit: 2416

7.      If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Derrick Ferris can be reached on 571-272-3123.  The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.

8.      Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system.  Status information for published applications

may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished

applications is available through Private PAIR only.  For more information about the PAIR

system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR

system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would

like assistance from a USPTO Customer Service Representative or access to the automated

information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


                                                        ANGEL  BROCKMAN
                                                        Examiner
                                                        Art Unit 2416

/A. B./
Examiner, Art Unit 2416

/Derrick W Ferris/

Supervisory Patent Examiner, Art Unit 2416

BLUEPRINT 000238

| Notice of References Cited | Application/Control No. | Applicant(s)/Patent Under Reexamination | |
|---|---|---|---|
| | 10/582,589 | LOBIG ET AL. | |
| | Examiner | Art Unit | |
| | ANGEL BROCKMAN | 2416 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-2003/0152064 | 08-2003 | Khan et al. | 370/352 |
| * | B | US-5,835,696 | 11-1998 | Hess, Gary C. | 714/10 |
| * | C | US-6,005,841 | 12-1999 | Kicklighter, Kevin C. | 370/217 |
| * | D | US-7,023,795 | 04-2006 | Hwu, Nan Shan | 370/219 |
| * | E | US-2002/0007468 | 01-2002 | Kampe et al. | 714/4 |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

BLUEPRINT 000239

| Search Notes | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 10582589 | LOBIG ET AL. |
| | **Examiner** | **Art Unit** |
| | ANGEL BROCKMAN | 2416 |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 370 | 442 | 02/20/2009 | A.B. |
| 370 | 217,219,220 | | A.B. |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Talked to Spe Derrick Ferris | 02/19/2009 | A.B. |
| Inventor Name Search | 02/19/2009 | A.B. |
| EAST SEARCH | 02/20/2009 | A.B. |

## INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 370 | 442 | 02/20/2009 | A.B. |

BLUEPRINT 000240

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 10582589 | LOBIG ET AL. |
| | **Examiner** | **Art Unit** |
| | ANGEL BROCKMAN | 2416 |

| ✓ | **Rejected** | - | **Cancelled** | N | **Non-Elected** | A | **Appeal** |
|---|---|---|---|---|---|---|---|
| = | **Allowed** | ÷ | **Restricted** | I | **Interference** | O | **Objected** |

☐ **Claims renumbered in the same order as presented by applicant**    ☐ CPA    ☐ T.D.    ☐ R.1.47

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 02/24/2009 | | | | | | | | |
| | 11 | ✓ | | | | | | | | |
| | 12 | ✓ | | | | | | | | |
| | 13 | ✓ | | | | | | | | |
| | 14 | ✓ | | | | | | | | |
| | 15 | ✓ | | | | | | | | |
| | 16 | ✓ | | | | | | | | |
| | 17 | ✓ | | | | | | | | |
| | 18 | ✓ | | | | | | | | |
| | 19 | ✓ | | | | | | | | |
| | 20 | ✓ | | | | | | | | |
| | 21 | ✓ | | | | | | | | |
| | 22 | ✓ | | | | | | | | |
| | 23 | ✓ | | | | | | | | |
| | 24 | ✓ | | | | | | | | |
| | 25 | ✓ | | | | | | | | |
| | 26 | ✓ | | | | | | | | |
| | 27 | ✓ | | | | | | | | |

PTO/SB/08a (05-07)
Approved for use through 09/30/2007. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | | |
|---|---|---|
| | Application Number | 10582589 |
| | Filing Date | 2006-06-12 |
| | First Named Inventor | Norbert Löbig |
| | Art Unit | ~~3643~~  2416 |
| | Examiner Name | Angel Brockman |
| | Attorney Docket  Number | 2003P18829WOUS |

## U.S.PATENTS  [Remove]

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| /A.B./ | 1 | 6173411 | B1 | 2001-01-09 | Hrist et al. | |

If you wish to add additional U.S. Patent citation information please click the Add button.  [Add]

## U.S.PATENT APPLICATION PUBLICATIONS  [Remove]

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| /A.B./ | 1 | 20030097610 | A1 | 2003-05-22 | Hofner | |

If you wish to add additional U.S. Published Application citation information please click the Add button.  [Add]

## FOREIGN PATENT DOCUMENTS  [Remove]

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| /A.B./ | 1 | 1321004 | CN | A | 2001-11-07 | Huawei Tech Co. LTD | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button  [Add]

## NON-PATENT LITERATURE DOCUMENTS  [Remove]

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|

EFS Web 2.0.1

**BLUEPRINT 000242**

| | INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 10582569 |
|---|---|---|---|
| | | Filing Date | 2006-06-12 |
| | | First Named Inventor | Norbert Löbig |
| | | Art Unit | ~~3643~~ 2416 |
| | | Examiner Name | Angel Brockman |
| | | Attorney Docket Number | 2003P18829WOUS |

| | 1 | | | ☐ |
|---|---|---|---|---|

If you wish to add additional non-patent literature document citation information please click the Add button | **Add**

**EXAMINER SIGNATURE**

| Examiner Signature | /Angel Brockman/ | Date Considered | 02/24/2009 |
|---|---|---|---|

\*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5] Applicant is to place a check mark here if English language translation is attached.

**BLUEPRINT 000243**

EAST Search History

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|-------|------|--------------|-----|------------------|---------|------------|
| S31 | 675537 | (backup or second $3 or substitut$4) near10 (switch or node$1 or router$1 or switch$3) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | OR | OFF | 2009/02/20 11:10 |
| S38 | 348015 | (switch or router) and (backup or redundant or secondary or substitute) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | OR | OFF | 2009/02/20 11:25 |
| S1 | 45911 | monitor$3 (status or state$1) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 08:12 |
| S39 | 10714 | (switch or router) and (backup or redundant or secondary or substitute) near20 (geographic$3 or location$1) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | OR | OFF | 2009/02/20 11:26 |
| S40 | 1062 | (switch or router) and (backup or redundant or secondary or substitute) near20 (geographic$3 or location$1) same (failure or fault) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | OR | OFF | 2009/02/20 11:26 |
| S32 | 643 | S31 and (370/217,219.ccls.) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | OR | OFF | 2009/02/20 11:17 |
| S35 | 445 | S31 and 370/396,220.ccls. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | OR | OFF | 2009/02/20 11:20 |
| S16 | 355 | first switch$3 system $1 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 10:32 |

**BLUEPRINT 000244**

| S11 | 277 | isochronous near20 monitor$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 09:29 |
| S17 | 233 | S16 and ( second switch$3 system$1 or (backup or stand-by )near3 switch) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 10:34 |
| S2 | 206 | monitor$3 (status or state$1) near20 (absen$2 or silen$3) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 08:23 |
| S33 | 143 | S32 and (monitor $3) same (active or idle or stand-by or standby) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | OR | OFF | 2009/02/20 11:18 |
| S23 | 99 | (backup or redundant) switch$3 system$1 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 10:58 |
| S41 | 99 | S40 and (monitor$3 near10 (active or idle or stand$1by)) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | OR | OFF | 2009/02/20 11:27 |
| S22 | 95 | (backup or redundant) switch$3 system | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 10:58 |
| S14 | 80 | isochronous same monitor$3 near20 (state$1 or status) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 10:03 |
| S18 | 79 | S17 and (active) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 10:34 |
| S36 | 51 | S35 and ( monitor $3 near10 (active or idle or stand$by)) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | OR | OFF | 2009/02/20 11:21 |

**BLUEPRINT 000245**

| S19 | 45 | S18 and (monitor $3) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 10:40 |
| S9 | 22 | monitor$3 (status or state$1) near25 (absen$2 or silen$3) near10 (interval$1 or time or interval$1 or period$2) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 08:52 |
| S13 | 21 | isochronous near20 monitor$3 near20 (state$1 or status) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 09:31 |
| S7 | 20 | monitor$3 (status or state$1) near20 (absen$2 or silen$3) near20 (interval$1 or time or interval $1) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 08:47 |
| S8 | 19 | monitor$3 (status or state$1) near25 (absen$2 or silen$3) near10 (interval$1 or time or interval $1) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 08:51 |
| S30 | 16 | ("6081591" "5743599" "6327260" "6456626" "5915013" "6778491" "6711357" "6005841").pn. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | OR | OFF | 2009/02/20 11:06 |
| S42 | 16 | S41 and "370".clas. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | OR | OFF | 2009/02/20 11:27 |
| S20 | 14 | S19 and (deactivat $3) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 10:40 |

BLUEPRINT 000246

file:///C|/Documents%20and%20Settings/abrockman/My%20...2589/EASTSearchHistory.10582589_AccessibleVersion.htm (3 of 5)2/24/2009 3:51:22 PM

| S15 | 9 | isochronous same monitor$3 near20 (state$1 or status) and ((absen$2) near10 (data$1 or packet$1 or frame $1)) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 10:04 |
| S28 | 8 | (backup or redundant ) switch $3 system$1 NEAR20 ( monitor $3) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 11:01 |
| S5 | 7 | monitor$3 (status or state$1) near20 (absen$2 or silen$3) same (task$1 or action$1) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 08:44 |
| S10 | 5 | monitor$3 (status or state$1) near25 (absen$2 or silen$3) near10 (interval$1 or time or interval$1 or period$2) near20 (device$1 or receiver $1) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 09:18 |
| S26 | 5 | (backup or redundant) switch$3 system$1 NEAR20 ( monitor$3 NEAR20 (active or inactive)) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 11:00 |
| S27 | 5 | (backup or redundant or secondary) switch$3 system$1 NEAR20 ( monitor$3 NEAR20 (active or inactive)) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 11:00 |
| S34 | 4 | S33 and hot$1stand $1by | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | OR | OFF | 2009/02/20 11:18 |
| S25 | 3 | (backup or redundant) switch$3 system$1 NEAR20 ( monitor$3 NEAR20 (state$1 or status)) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 10:59 |
| S37 | 3 | S35 and (hot$1stand $1by) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | OR | OFF | 2009/02/20 11:21 |

**BLUEPRINT 000247**

| S6 | 2 | monitor$3 (status or state$1) near20 (absen$2 or silen$3) and (isochronous or IEEE "1394") | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 08:46 |
| S12 | 2 | isochronous near20 monitor$3 near20 (absen$2) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 09:30 |
| S21 | 1 | S19 and (deactivat $3 same loss) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT | ADJ | OFF | 2009/02/20 10:40 |

2/24/2009 3:51:18 PM
C:\ Documents and Settings\ abrockman\ My Documents\ EAST\ Workspaces\ 10582589.wsp

BLUEPRINT 000248

10/582589

AP3 Rec'd PCT/PTO 0 9 JUN 2003

PTO/SB/08a (05-03)
Approved for use through 04/30/2003. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449A/PTO | Complete if Known | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(use as many sheets as necessary)* | Application Number | ~~Not Yet Assigned~~ 10582589 |
| | Filing Date | June 9, 2006 |
| | First Named Inventor | Norbert Löbig |
| | Art Unit | ~~Not Yet Assigned~~ 2416 |
| | Examiner Name | ~~Not Yet Assigned~~ Angel Brockman |

| Sheet | 1 | of | 1 | Attorney Docket Number | 2003P18829WOUS |
|---|---|---|---|---|---|

## U.S. PATENT DOCUMENTS

| Examiner Initials * | Cite No.[1] | Document Number — Number - Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| /A.B./ | 1 | US- 2003/0033030 A1 | 02-13-2003 | Naismith et al. | |
| /A.B./ | 2 | US- 6,108,300 | 08-22-2000 | Coile et al. | |
| /A.B./ | 3 | US- 5,473,599 | 12-05-1995 | Li et al. | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document Country Code[3] - Number[4] - Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| /A.B./ | 4 | EP 0 412 799 A2 | 02-13-1991 | BOSTON TECHNOLOGY | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | /Angel Brockman/ | Date Considered | 02/24/2009 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional). 2 See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. 3 Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). 4 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 5 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible. 6 Applicant is to place a check mark here if English language Translation is attached.

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: **Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

BLUEPRINT 000249

Page 1 of 1



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

## BIB DATA SHEET

**CONFIRMATION NO. 2784**

| SERIAL NUMBER | FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 10/582,589 | 06/09/2006<br><br>**RULE** | 452 | 2416 | 2003P18829WOUS |

**APPLICANTS**
Norbert Lobig, Darmstadt, GERMANY;
Jurgen Tegeler, Penzberg, GERMANY;

** **CONTINUING DATA** ************************
This application is a 371 of PCT/EP04/51925 08/26/2004

Yes A.B.

** **FOREIGN APPLICATIONS** **************************
GERMANY 10358344.0 12/12/2003

Yes A.B.

** **IF REQUIRED, FOREIGN FILING LICENSE GRANTED** **
02/10/2007

| Foreign Priority claimed ☐ Yes ☑ No | ☐ Met after Allowance A.B. | STATE OR COUNTRY | SHEETS DRAWINGS | TOTAL CLAIMS | INDEPENDENT CLAIMS |
|---|---|---|---|---|---|
| 35 USC 119(a-d) conditions met ☐ Yes ☑ No | | | | | |
| Verified and Acknowledged   /ANGEL T BROCKMAN/<br>Examiner's Signature | Initials | GERMANY | 1 | 17 | 1 |

**ADDRESS**

SIEMENS CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
170 WOOD AVENUE SOUTH
ISELIN, NJ 08830
UNITED STATES

**TITLE**

Method for protection switching of geographically separate switching systems

| FILING FEE RECEIVED<br>900 | FEES: Authority has been given in Paper No._____ to charge/credit DEPOSIT ACCOUNT No._____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees (Filing) |
| | | ☐ 1.17 Fees (Processing Ext. of time) |
| | | ☐ 1.18 Fees (Issue) |
| | | ☐ Other _____ |
| | | ☐ Credit |

BIB (Rev. 05/07).

**BLUEPRINT 000250**

PTO/SB/08a (05-07)
Approved for use through 09/30/2007. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

**INFORMATION DISCLOSURE STATEMENT BY APPLICANT**
( Not for submission under 37 CFR 1.99)

| | |
|---|---|
| Application Number | 10582589 |
| Filing Date | 2006-06-12 |
| First Named Inventor | Norbert Löbig |
| Art Unit | 3643 |
| Examiner Name | |
| Attorney Docket Number | 2003P18829WOUS |

## U.S.PATENTS   Remove

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 6173411 | B1 | 2001-01-09 | Hrist et al. | |

If you wish to add additional U.S. Patent citation information please click the Add button.   Add

## U.S.PATENT APPLICATION PUBLICATIONS   Remove

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 20030097610 | A1 | 2003-05-22 | Hofner | |

If you wish to add additional U.S. Published Application citation information please click the Add button.   Add

## FOREIGN PATENT DOCUMENTS   Remove

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | 1321004 | CN | A | 2001-11-07 | Huawei Tech Co. LTD | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button   Add

## NON-PATENT LITERATURE DOCUMENTS   Remove

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|

EFS Web 2.0.1

BLUEPRINT 000251

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( **Not for submission under 37 CFR 1.99**) | Application Number | 10582589 |
|---|---|---|
| | Filing Date | 2006-06-12 |
| | First Named Inventor | Norbert Löbig |
| | Art Unit | 3643 |
| | Examiner Name | |
| | Attorney Docket Number | 2003P18829WOUS |

| | 1 | | ☐ |
|---|---|---|---|

| If you wish to add additional non-patent literature document citation information please click the Add button | Add |
|---|---|

**EXAMINER SIGNATURE**

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5] Applicant is to place a check mark here if English language translation is attached.

**BLUEPRINT 000252**

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( **Not for submission under 37 CFR 1.99**) | Application Number | 10582589 |
|---|---|---|
| | Filing Date | 2006-06-12 |
| | First Named Inventor | Norbert Löbig |
| | Art Unit | 3643 |
| | Examiner Name | |
| | Attorney Docket Number | 2003P18829WOUS |

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☐ Fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☐ None

## SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Daniel J. Ryan/ | Date (YYYY-MM-DD) | 2008-04-15 |
|---|---|---|---|
| Name/Print | Daniel J. Ryan | Registration Number | 61232 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

**BLUEPRINT 000253**

## Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent.  Accordingly, pursuant to the requirements of the Act, please be advised that:  (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent.  If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.      The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a).  Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.      A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.      A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.      A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract.  Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.      A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.      A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.      A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906.  Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive.  Such disclosure shall not be used to make determinations about individuals.

8.      A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151.  Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.      A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

**BLUEPRINT 000254**

 IPAS-BUS

14.04.2008

**HIT: 2 OF 2, Selected: 0 OF 0**

© Thomson Scientific Ltd. DWPI

© Thomson Scientific Ltd. DWPI

**Accession Number**
2002-316315

**Title Derwent**
Method and equipment for swapping active with standby switches

**Abstract Derwent**
**Novelty:** A method and equipment for swapping between host and standby switches is disclosed. There are a host and a standby main control boards and a host and a standby network switch boards. Two main controlboards are real-time communicated with each other and they have same data in order to implement hot standby. Their swapping is in mutual monitor and control mode. Two network switch boards are runningsynchronously for hot standby. Its advantages are quick and safe swapping.

**Assignee Derwent + PACO**
HUAWEI TECH CO LTD    HUAW-C

**Inventor Derwent**
QIAN M                      QIAO M
TU Y

**Patent Family Information**
CN1321004-A 2001-11-07   CN1109416-C 2003-05-21

**First Publication Date**   2001-11-07

**Priority Information**
CN000106113 2000-04-25

**Derwent Class**
W02

**Manual Code**
W02-G08          W02-G08A

**International Patent Classification (IPC)**

| IPC Symbol | IPC Rev. | Class Level | IPC Scope |
|---|---|---|---|
| H04B-1/74 | 2006-01-01 | I | C |
| H04B-1/74 | 2006-01-01 | I | A |

**- No drawing available –**

[19]中华人民共和国国家知识产权局

[51]Int. Cl⁷

H04B 1/74

# [12] 发明专利申请公开说明书

[21] 申请号　00106113.5

[43]公开日　2001 年 11 月 7 日

[11]公开号　CN 1321004A

[22]申请日　2000.4.25　[21]申请号　00106113.5
[71]申请人　华为技术有限公司
　　地址　518057 广东省深圳市科技园科发路华为用
　　　　　户服务中心大厦
[72]发明人　涂 尧　乔 明

权利要求书 2 页　说明书 8 页　附图页数 2 页

[54]发明名称　交换机的主备倒换方法及其实现装置
[57]摘要

　　一种用于交换机的主备倒换方法及其实现装置,是对其主控板及交换网板 进行 1 + 1 的冗余备份;其中主控板的主备两板保持实时通信,在备板上保持一 份与主板上同样的数据而实现热备份;主控板的切换是采用主备相互监测与控 制的方式。交换网板的主备两板处于同步运行状态,一旦主用板出现问题时则 由备用板接替工作而实现热备份。采用本发明方法,其中任何一板出现故障时,均能迅速、安全可靠地切换到备用板上,保证交换机的正常运行,并能通过网 管及时上报故障信息。



ISSN1008-4274

知识产权出版社出版

BLUEPRINT 000256

# 权 利 要 求 书

1、一种用于交换机的主备倒换方法，其特征在于：对交换机的主控板及交换网板进行1+1的冗余备分；其中主控板的主备两板之间保持实时通信，在备板上也保持一份与主板上同样的数据作为备份，实现热备份；主控板的切换是采用主备相互监测与控制的方式：主控板的主备两板均发出各自的"心跳"信号，并同时监视对方的"心跳"信号，当一方出现故障时，另一方则将根据自己的状态（是主板还是备板？）决定是否进行切换，并上报网管；当主用板发现在某段时间内备用板的心跳没有了，便认为备用板出现故障，通知网管处理；当备用板发现某段时间内主用板的心跳没有了，便认为主用板出现故障，并启动主备切换，将自己升为主板，同时禁用出故障的原主板；其中交换网板的主备两板处于同步运行状态，通常备用交换网板的数据不输出，一旦主用交换网板出现问题时则由备用交换网板接替工作，从而实现热备份；交换网板是由主控板进行监测与切换控制的：主控板实时对交换网板的状态寄存器进行轮询，一旦发现主用交换网板有问题，则进行切换，并上报网管；主控板和交换网板在各项操作执行后都要进行检查，防止因干扰或其它故障引起的失控，并根据检测的结果决定下一步的操作。

2、如权利要求1所述的用于交换机的主备倒换方法，其特征在于：上述"心跳"信号是为反映电路板是否处于正常工作状态而专门设计的一个以适中频率输出的脉冲信号。

3、如权利要求1所述的用于交换机的主备倒换方法，其特征在于：上述"心跳"信号可以采用由软件控制向硬件的特定寄存器里写入数据而得到的脉冲信号。

4、如权利要求1所述的用于交换机的主备倒换方法，其特征在于：上述用来监测特定的"心跳"脉冲是否在预定的时间间隔内出现的装置，在预定的时间间隔内没有收到CPU发送过来的脉冲，就对CPU进行复位，以避免了CPU装置长期处于故障状态。

1

BLUEPRINT 000257



5、一种用于交换机的实现主备倒换的装置，其特征在于：在交换机的背板的两个相邻槽位上插装有两块相同的、用于主备倒换的主控板，该两板之间的各个控制线通过背板互相连接；在每个主控板中都分别设有一个专门用于传递主用板和备用板之间数据的存储单元，即通信缓冲区，即："邮箱"、一个主备状态寄存器M/S Status Reg用来监测特定的"心跳"脉冲信号是否在预定的时间间隔内出现的装置，即："硬件狗"；还设有三对用于主备切换时的控制线：表示本板处于开还是关的状态信号OE、关闭对方主用板的控制信号Disable OE和复位对方主控板的控制信号。

6、如权利要求5所述的实现主备倒换的装置，其特征在于：上述通信缓冲区，即"邮箱"，可以采用一个双端口静态随机存储器SRAM实现之；工作时，只使用备用主控板中的"邮箱"，主用主控板则通过远端访问与该"邮箱"通信，通过定时检查"邮箱"的中断信号，可以判断对方主控板是不是工作正常。

7、如权利要求5所述的实现主备倒换的装置，其特征在于：上述"邮箱"通信的中断信号、主控板的主备两板之间互相监视的"心跳"信号，以及主控板的复位电路的"喂狗"信号复合为一个信号。

8、如权利要求5所述的实现主备倒换的装置，其特征在于：上述主备状态寄存器M/S Status Reg用于保存本板所处的槽位信息、本板处于开还是关的OE状态信号以及对方主控板处于开还是关的的OE状态信号，系统启动时根据上述状态信号来完成主备竞争

20

2

BLUEPRINT 000258



说　明　书

交换机的主备倒换方法及其实现装置

本发明涉及一种通信技术，确切地说，涉及一种为提高ATM交换机可靠性而使用的主备倒换方法及其实现装置，属于电话自动交换局使用的设备技术领域。

在电信网络中使用的通信设备，必须具备长期运行的工作可靠性，这也是考核设备的一个极为重要的性能指标。使用单一某个设备，通常很难满足规定的可靠性要求。从提高可靠性的角度出发，对关键的核心设备进行冗余备份是提高其工作可靠性的重要手段。通常进行冗余备份时，备份设备的种类与数量越多，则该系统的可靠性越高，但是所花费的代价也越大，所以从整个系统角度出发，要达到最佳性价比，综合各方面的考虑，通常只对关键的设备作1+1的冗余备分。

从整个系统考虑，主备技术主要有冷备份与热备份两种。冷备份的特点是在主用部分工作时，备用部分不工作，处于休眠状态；当主用设备部分出现故障时，备用设备部分才开始工作。其优点是技术简单，成本较低；缺点是：由主到备的过渡时间过长，而且由主到备的切换会影响原有的通路。热备份的特点是主用部分与备用部分保持同步运行，只是备用部分不进行输出而已；在主用部分出现故障时，只要关闭其输出，同时打开备用部分的输出即可。其优点是过渡平滑，不影响原有通路，可靠性高；缺点是技术复杂，成本相对要高些。目前使用的主备倒换的实现技术可以分为：中央控制式、主备相互监测与控制式、主备各自监测与相互控制式等多种方式。但是，采用上述各种主备倒换的技术进行设计的试验结果，发现都不同程度地存在着一些可靠性问题，当出现意外干扰或某些特殊情况时，就会出现控制失误，并且不能自行纠正。ATM交换机作为宽带数据交换机，其工作的可靠性极为重要，所以，如何对ATM交换机实现冗余备份，成为人们关心的一个课题。

本发明的目的是提供一种用于ATM交换机的主备倒换方法及其实现装置，

BLUEPRINT 000259

采用本发明的方法，当其中任何一板出现故障时，均能迅速、安全可靠地切换到备用板上，保证交换机的正常运行，并能通过网管及时上报故障信息；而且，在保障交换机完成各项功能的同时，其硬件结构设计简单，构思巧妙，降低了系统成本，工作可靠性高。

5　　　　本发明的另一目的是提供一种用于各种电话交换机的主备倒换方法及其实现装置。

本发明的主备倒换方法是这样实现的：对交换机的主控板及交换网板进行1+1的冗余备分；其中主控板的主备两板之间保持实时通信，在备板上也保持一份与主板上同样的数据作为备份，实现热备份；主控板的切换是采用主备相

10　互监测与控制的方式：主控板的主备两板均发出各自的"心跳"信号，并同时监视对方的"心跳"信号，当一方出现故障时，另一方则将根据自己的状态（是主板还是备板？）决定是否进行切换，并上报网管；当主用板发现在某段时间内备用板的心跳没有了，便认为备用板出现故障，通知网管处理；当备用板发现某段时间内主用板的心跳没有了，便认为主用板出现故障，并启动主备切换，

15　将自己升为主板，同时禁用出故障的原主板；其中交换网板的主备两板处于同步运行状态，通常备用交换网板的数据不输出，一旦主用交换网板出现问题时，则由备用交换网板接替工作，从而实现热备份；交换网板是由主控板进行监测与切换控制的：主控板实时对交换网板的状态寄存器进行轮询，一旦发现主用交换网板有问题，则进行切换，并上报网管；主控板和交换网板在各项操作执

20　行后都要进行检查，防止因干扰或其它故障引起的失控，并根据检测的结果决定下一步的操作。

上述"心跳"信号是为反映电路板是否处于正常工作状态而专门设计的一个以适中频率输出的脉冲信号。

上述"心跳"信号可以采用由软件控制向硬件的特定寄存器里写入数据而

25　得到的脉冲信号。

上述用来监测特定的"心跳"脉冲是否在预定的时间间隔内出现的装置，在预定的时间间隔内没有收到CPU发送过来的脉冲，就对CPU进行复位，以避

2

BLUEPRINT 000260

00:04:25

免CPU装置长期处于故障状态。

　　本发明的主备倒换装置是这样实现的：在交换机的背板的两个相邻槽位上插装有两块相同的、用于主备倒换的主控板，该两板之间的各个控制线通过背板互相连接；在每个主控板中都分别设有一个专门用于传递主用板和备用板之

5　　间数据的存储单元，即通信缓冲区（又称："邮箱"）、一个主备状态寄存器（M/S Status Reg）和用来监测特定的"心跳"脉冲信号是否在预定的时间间隔内出现的装置（俗称为：硬件狗）；还设有三对用于主备切换时的控制线：表示本板处于开还是关的状态信号OE、关闭对方（主用板）的控制信号（Disable OE）、复位对方主控板的控制信号。

10　　上述通信缓冲区（即："邮箱"）可以采用一个双端口静态随机存储器SRAM实现之；工作时，只使用备用主控板中的"邮箱"，主用主控板则通过远端访问与该"邮箱"通信，通过定时检查"邮箱"的中断信号，可以判断对方主控板是不是工作正常。

　　上述"邮箱"通信的中断信号、主控板的主备两板之间互相监视的"心跳"

15　信号，以及主控板的复位电路的"喂狗"信号复合为一个信号，从而简化设计，提高系统工作的可靠性。

　　上述主备状态寄存器M/S Status Reg用于保存本板所处的槽位信息、本板处于开还是关的OE状态信号以及对方主控板处于开还是关的的OE状态信号，系统启动时根据上述状态信号来完成主备竞争

20　　本发明的特点是：对ATM交换机上的主控板与交换网板采用热备份技术，提高了系统切换的稳定性，可保持交换机的长期稳定工作。为了保证工作无误，对关闭主用板的信号不仅要进行滤波，还对其进行严格的条件限制，以提高主备系统抗干扰的能力。在各项操作执行后均进行检查，并根据检测的结果决定下一步的操作，防止了因干扰或其它故障引起的失控，大大提高系统主备倒换

25　的可靠性。对交换网板的切换还考虑了器件的延迟时间，以便消除和器件的信号冲突，提高系统稳定性。采用本发明的方案，对于热拔插的各种组合状态和各种死机状态，均能安全可靠地进行倒换，不会死锁在错误的状态。此外，本

3

BLUEPRINT 000261



发明将通信用的中断信号、"心跳"信号和系统的单板复位电路的"喂狗"信号结合在一起，在顺利完成各项功能的同时，简化系统设计，降低了系统成本。在软件上，对主备竞争、心跳机制和数据备份等均进行了创新设计。

下面结合附图和实施例对本发明的实现方法和装置作具体的说明：

图1是本发明的硬件系统的结构示意图。

图2是本发明的软件处理过程的示意图。

图3是本发明的主控板上电启动过程的示意图。

图4是本发明的主控板实现主备切换过程的流程示意图。

参见图1所示，图中列出了：本发明是在交换机的背板的两个相邻槽位上插装有两块相同的、用于主备倒换的主用主控板1和备用主控板2，该两个主控板1、2之间的主要连线也是通过背板互相连接的；其中包括有三对用于主备切换时使用的控制线：表示本板处于开启还是关闭的状态信号OE（输出使能）、关闭对方（主用板）的控制信号Disable OE（禁止输出使能）和复位对方主控板的控制信号。在每个主控板1、2中都分别设有一个专门用于传递主用板和备用板之间数据的存储单元，即通信缓冲区11、21（又称："邮箱"，如图中所示）、一个主备状态寄存器12、22（M/S Status Reg）和用来监测特定的"心跳"脉冲信号是否在预定的时间间隔内出现的装置（俗称为：硬件狗，图中未示）。上述通信缓冲区11、21（即："邮箱"）可以采用一个双端口静态随机存储器SRAM实现之；工作时，只使用备用主控板中的"邮箱"，主用主控板则通过远端访问与备用主控板中的"邮箱"通信。当主用主控板将数据送到远端邮箱时，通过中断通知备用主控板，备用主控板再从邮箱中读取数据，不需要定时查询邮箱。同时，该"邮箱"中断信号可以复用作为该主控板的心跳信号，通过定时检查邮箱的中断信号，可以判断对方主控板是不是工作正常。上述主备状态寄存器M/S Status Reg用于保存本板所处的槽位、本板的板选OE状态以及对方主控板的OE状态等信息，系统启动时则根据这些信号完成主备竞争的判断。

两个主控板之间的相互控制是通过Disable_OE信号来进行的。而且，只有

4



备用板能够对主用板的OE状态信号进行关闭操作；同时，备用板能够打开进入工作的前提是主板的OE信号必须已经关闭。本发明通过在可编程逻辑中设计的互锁逻辑实现对两个主用板OE的控制，并对输入信号进行滤波，从而将由意外干扰可能造成的误操作降到最低。两个主备板相互之间的数据通信及心跳监测是通过设在备板上的邮箱来进行，主板上的邮箱不使用。

由于"心跳"信号是在给定时间内出现的脉冲，而"邮箱"的中断信号在正常情况下，也会在一定时间内出现，且其出现与否能很好地反映主控板是否处于正常工作状态，故可以充当心跳信号使用。将"邮箱"的通信中断信号兼做心跳信号可以简化主备倒换的技术实现和软件操作。本发明中采用心跳信号、邮箱通信的中断信号与喂狗信号三者相结合，既简化了技术实现，又提高了主备倒换的可靠性。当主用主控板1将数据送到远端"邮箱"时，通过中断通知备用主控板2，备用主控板2再从邮箱中读取数据，不需要定时查询邮箱。同时邮箱中断信号可以复用作为心跳信号，通过定时检查邮箱的中断，可以判断对方主控板1是不是工作正常。

本发明进行主备倒换的工作原理简述如下：当ATM交换机正常工作时，主备两个主控板1、2都发出各自的心跳信号并同时监视对方的心跳信号。当主用板1发现某段时间内备用板2的心跳没有了，便认为备用板2已经出现故障，就及时通知网管处理；当备用板2发现某段时间内主用板1的心跳没有了，便认为主用板1已经出现故障，于是启动主备切换，将自己升为主板，同时把故障的原主用板1禁止使用。这里，有三个重要的概念需要介绍：

1）心跳信号：即专门为反映电路板是否处于正常工作状态而设计的一个以适中频率输出的脉冲信号。本发明是采用由软件控制向硬件的特定寄存器写入数据而得到的脉冲。其具体的软件控制可参看后面介绍。

2）邮箱：亦即通信缓冲区，是为传递主用板和备用板之间的数据而设立的一种存储单元，本发明采用的是一个双端口静态随机读写存储器SRAM。

3）硬件狗：用来监测特定的脉冲是否在预定的时间间隔内出现的装置。一般应用于CPU的硬件技术中。当硬件狗在预定的时间间隔内没有收到CPU发

5



送过来的脉冲，则对CPU进行复位，可以避免CPU装置长期处于故障状态。该硬件狗技术在许多产品中应用，并经过长期验证，是一种简单而可靠的技术。

本发明的硬件提供通信通道与环境，其数据备份与主备倒换的具体操作则由软件执行。

5  本发明软件的具体流程与实现方式参见图2和图3所示。

首先参见图2：在软件上，整个系统先经历启动时的主备竞争判断，然后进入相互之间的心跳监听阶段。在监听阶段，任何一板出现问题均会被检测到，如是主用板出现故障，则系统进入主备切换过程。在故障板的故障被排除，并重新装入后，系统又进入到相互监听阶段。

10  参见图3所示的主控板上电启动过程的流程框图，系统一开始上电初始化时，并不打开板OE，系统中断也是关闭的；主备竞争完成后，如果本板为主用时，才在硬件初始化中开板OE、系统中断等；应用程序的数据加载是根据本板的主备状态来决定是否加载数据的。如果本板为备用，在最后备用板系统启动后会向主用板发送一个备用在线通知帧，主用板收到该帧后会做一些再同步的工作。再同步的主要目的是将主用板上的当前配置全部备份到刚刚上线的

15  备用板，为了做到这一点，主用的备份板的任务是将每个备份数据的位表根据当前的配置全部重新设置，一次性备份给备用板。

数据备份的目的是保持主备两个主控板上所配置的数据具有高度一致性，这样一旦需要主备切换，备用板升为主用板后，就能保持系统的一致性和连续

20  性，做到平滑切换。数据备份是由备份任务来完成实现的。备份任务有一个定时器定时（数秒一次）检查各个备份控制表的位表，如果某一个位置被置位了，就调用该备份控制表的数元获取函数，将要备份的数据收集起来，然后将这些数据连同备份控制表ID等打包成数据帧，写到位于备用板的远端邮箱，之后写邮箱中断通知备用板。备用板接受到邮箱中断，从邮箱中读取数据，根据随同

25  传过来的控制表ID、位表索引、操作等调用数元设置函数将数据恢复到指定的位置。

6

BLUEPRINT 000264



为了保证主控板从邮箱读取的数据的可靠性，在发送方会将传送数据的循环冗余校验CRC码随同数据一起写入邮箱；接受方受到数据后，进行CRC验证，并将验证结果打包为验证帧回传给发送方；发送方受到回应帧，如果验证结果是错误的，则重传数据帧；如果是正确的，则继续下一次数据收集。

5　　　下面简单介绍一下数据备份的方案： 数据备份的高层软件部分采用增量式的位表方式和函数方式相结合的方法。其中大部分进程都采用增量式的位表方式备份数据，即当该进程的重要数据（将其视作一个数组）发生变化时，就将其索引值记录在一张位表上，到时根据位表决定哪些数据应该备份。有些进程只需要备份一个较大的数据结构中的一部分域，这时就要用到函数方式的数据备份：即由这些进程提供将该数据结构映射为较小结构的函数，以节省空间，

10　加快备份速度。

底层通过邮箱方式进行通讯。采用邮箱方式，可大大提高传送的可靠性与速度，同时简化处理。在主板与备板上各设有一邮箱，平时主板将备份数据存放在备用板的邮箱中；备用板读取邮箱中的数据，并进行处理。

15　　　主备倒换很重要的一点是备用主控板是如何及时发现主用板的故障，本发明采用的机制是所谓的心跳监听：工作的主控板在运行过程中，系统在向任何任务转发消息时，都会产生一次心跳，另一侧的备用主控板则每过一段时间检查心跳并计数，如果心跳数字没有增长，就认为主用板已经出现了故障，则启动主备切换将备用升为主用。为了防止系统长时间处于IDLE状态而导致在相

20　当长时间里没有心跳，备份任务启动一个专用定时器，它每过一段时间超时会导致系统向备份任务转发一次消息，以此保证心跳的不间断。

主用主控板向备用主控板发送心跳信号是通过备份邮箱的中断来实现的，主用板写心跳信号实际上就是向备份邮箱写中断。为了将心跳中断与备份数据的中断区别开来，在邮箱数据区中保留了一个字节单元（WORD）存储中断标

25　记——心跳中断及备份中断。备用主控板收到邮箱中断，首先根据中断标记判断该中断类型，如果是备份中断，则恢复备份数据，同时也将心跳计数加1；如果是心跳中断，则简单地将心跳计数加1。

BLUEPRINT 000265



备用主控板一旦发现主用主控板出现故障，就开始主备切换，其流程如图4所示。参见图4所示的主备切换流程图，当倒换开始后，首先判断备板是否可能切换，如备板不能切换，则将重启系统。如可以进行切换，则备用板将关闭出故障的主用板，并打开自己的输出。然后复位原主用板，同时将自己的状态置为主用板。系统切换后能不能正常、平滑地运行，与切换中各部分的平滑好坏关系极大，为了保证各种资源的分配情况符合实际，本发明的做法是先将动态资源清除，然后根据配置重新分配数据。各部分数据的平滑一般由各自的模块负责，几个主要的平滑函数分别是：槽位信息平滑，硬件平滑，资源平滑，系统平滑。

为了防止意外的干扰信号串入主备倒换的控制信号，导致主用板被错误关闭，本发明不仅对备用板关主用板的控制信号进行了滤波，还对其进行严格的条件限制。只有满足严格条件的信号才能进行操作。此外，还对主用板与备用板采用互锁逻辑进行控制，任何时刻最多只能有一板处于开放状态。同时在软件中对两板操作后的状态进行判断，从而有效地避免了两板在主备竞争中可能出现的同时打开的非法状态，大大提高主备系统抗干扰的能力。

交换网板板的备份相对主控板板来说较为简单，其方法是：交换网板板在主控板的控制下，任何时候只有一块板处于工作状态，另一块处于备用状态。主控板不断地轮询交换网板的工作状态寄存器，当监测到不正确的状态时，若是主用板则切换到备用板并告警；若是备用板，则告警。

本发明已经在申请人研制的ATM交换机上进行试验实施，取得了预期的发明目的，对于热拔插的各种组合状态和各种死机状态，该机都能够安全可靠地进行倒换，不会死锁在错误的状态，可以保证交换机的正常工作。

8

BLUEPRINT 000266



说　明　书　附　图



图　1



图　2

1

BLUEPRINT 000267





开始

主备MPU上电，初始化

主备竞争

主备MPU任务创建及初始化

硬件初始化

加载数据

任务运行

启动写心跳时钟

备板通知主用上线、开始监听主用心跳

结束

图 3

开始

备板是否可以切换？ ——否—→ 报告备板不能切换、系统将重启

是

关闭对方板OE          复位对方 MPU

打开本板OE            复位本板

复位对方              结束

置本板状态为主用

报告切换成功

结束

图 4

2

BLUEPRINT 000268

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 3153838 |
| **Application Number:** | 10582589 |
| **International Application Number:** | |
| **Confirmation Number:** | 2784 |
| **Title of Invention:** | Method for protection switching of geographically separate switching systems |
| **First Named Inventor/Applicant Name:** | Norbert Lobig |
| **Customer Number:** | 22116 |
| **Filer:** | Daniel J. Ryan/Alice McCorkle |
| **Filer Authorized By:** | Daniel J. Ryan |
| **Attorney Docket Number:** | 2003P18829WOUS |
| **Receipt Date:** | 15-APR-2008 |
| **Filing Date:** | 09-JUN-2006 |
| **Time Stamp:** | 12:28:44 |
| **Application Type:** | U.S. National Stage under 35 USC 371 |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Information Disclosure Statement (IDS) Filed | US_IDS_Form__SB_08a.pdf | 786623<br>de043a0dccce8402d7dce8ec1c03d3cbda38f77 | no | 4 |

| Warnings: |
|---|
| Information: |

BLUEPRINT 000269

| 2 | Foreign Reference | ref1.pdf | 710706 | no | 14 |
| | | | 18c4856836156d5aa92521463040a23 64e44d771 | | |

**Warnings:**

**Information:**

| | Total Files Size (in bytes): | 1497329 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(c) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 10/582,589 | 06/09/2006 | Norbert Lobig | 2003P18829WOUS |

**CONFIRMATION NO. 2784**

22116
SIEMENS CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
170 WOOD AVENUE SOUTH
ISELIN, NJ08830

**Title:** Method for protection switching of geographically separate switching systems

**Publication No.** US-2007-0140109-A1
**Publication Date:** 06/21/2007

## NOTICE OF PUBLICATION OF APPLICATION

The above-identified application will be electronically published as a patent application publication pursuant to 37 CFR 1.211, et seq. The patent application publication number and publication date are set forth above.

The publication may be accessed through the USPTO's publically available Searchable Databases via the Internet at www.uspto.gov. The direct link to access the publication is currently http://www.uspto.gov/patft/.

The publication process established by the Office does not provide for mailing a copy of the publication to applicant. A copy of the publication may be obtained from the Office upon payment of the appropriate fee set forth in 37 CFR 1.19(a)(1). Orders for copies of patent application publications are handled by the USPTO's Office of Public Records. The Office of Public Records can be reached by telephone at (703) 308-9726 or (800) 972-6382, by facsimile at (703) 305-8759, by mail addressed to the United States Patent and Trademark Office, Office of Public Records, Alexandria, VA 22313-1450 or via the Internet.

In addition, information on the status of the application, including the mailing date of Office actions and the dates of receipt of correspondence filed in the Office, may also be accessed via the Internet through the Patent Electronic Business Center at www.uspto.gov using the public side of the Patent Application Information and Retrieval (PAIR) system. The direct link to access this status information is currently http://pair.uspto.gov/. Prior to publication, such status information is confidential and may only be obtained by applicant using the private side of PAIR.

Further assistance in electronically accessing the publication, or about PAIR, is available by calling the Patent Electronic Business Center at 703-305-3028.

_____

Pre-Grant Publication Division, 703-605-4283

BLUEPRINT 000271



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | DRAWINGS | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|---|
| 10/582,589 | 06/09/2006 | 3643 | 900 | 2003P18829WOUS | 1 | 17 | 1 |

**CONFIRMATION NO. 2784**

22116
SIEMENS CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
170 WOOD AVENUE SOUTH
ISELIN, NJ08830

**FILING RECEIPT**

Date Mailed: 03/02/2007

Receipt is acknowledged of this regular Patent Application. It will be considered in its order and you will be notified as to the results of the examination. Be sure to provide the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION when inquiring about this application. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please mail to the Commissioner for Patents P.O. Box 1450 Alexandria Va 22313-1450. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections (if appropriate).**

**Applicant(s)**

Norbert Lobig, Darmstadt, GERMANY;
Jurgen Tegeler, Penzberg, GERMANY;

**Power of Attorney:** The patent practitioners associated with Customer Number 22116

**Domestic Priority data as claimed by applicant**

This application is a 371 of PCT/EP04/51925 08/26/2004

**Foreign Applications**

GERMANY 10358344.0 12/12/2003

**If Required, Foreign Filing License Granted:** 02/10/2007

The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US10/582,589**

**Projected Publication Date:** 05/24/2007

**Non-Publication Request:** No

**Early Publication Request:** No

**Title**

Method for protection switching of geographically separate switching systems

**Preliminary Class**

BLUEPRINT 000272

452

## PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4158).

---

## LICENSE FOR FOREIGN FILING UNDER

### Title 35, United States Code, Section 184

### Title 37, Code of Federal Regulations, 5.11 & 5.15

**GRANTED**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to

**BLUEPRINT 000273**

espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

## NOT GRANTED

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| U.S. APPLICATION NUMBER NO. | FIRST NAMED APPLICANT | ATTY. DOCKET NO. |
|---|---|---|
| 10/582,589 | Norbert Lobig | 2003P18829WOUS |

| INTERNATIONAL APPLICATION NO. | |
|---|---|
| PCT/EP04/51925 | |
| I.A. FILING DATE | PRIORITY DATE |
| 08/26/2004 | 12/12/2003 |

22116
SIEMENS CORPORATION
INTELLECTUAL PROPERTY DEPARTMENT
170 WOOD AVENUE SOUTH
ISELIN, NJ 08830

**CONFIRMATION NO. 2784**
**371 ACCEPTANCE LETTER**

*OC000000022462579*

Date Mailed: 03/02/2007

## NOTICE OF ACCEPTANCE OF APPLICATION UNDER 35 U.S.C 371 AND 37 CFR 1.495

The applicant is hereby advised that the United States Patent and Trademark Office in its capacity as a Designated / Elected Office (37 CFR 1.495), has determined that the above identified international application has met the requirements of 35 U.S.C. 371, and is ACCEPTED for national patentability examination in the United States Patent and Trademark Office.

The United States Application Number assigned to the application is shown above and the relevant dates are:

<u>06/09/2006</u>
DATE OF RECEIPT OF 35 U.S.C. 371(c)(1), (c)(2) and (c)(4) REQUIREMENTS

<u>06/12/2006</u>
DATE OF COMPLETION OF ALL 35 U.S.C. 371 REQUIREMENTS

A Filing Receipt (PTO-103X) will be issued for the present application in due course. **THE DATE APPEARING ON THE FILING RECEIPT AS THE " FILING DATE" IS THE DATE ON WHICH THE LAST OF THE 35 U.S.C. 371 (c)(1), (c)(2) and (c)(4) REQUIREMENTS HAS BEEN RECEIVED IN THE OFFICE. THIS DATE IS SHOWN ABOVE.** *The filing date of the above identified application is the international filing date of the international application (Article 11(3) and 35 U.S.C. 363).* Once the Filing Receipt has been received, send all correspondence to the Group Art Unit designated thereon.

The following items have been received:

- Copy of the International Application filed on 06/09/2006
- Copy of the International Search Report filed on 06/09/2006
- Preliminary Amendments filed on 06/09/2006
- Information Disclosure Statements filed on 06/09/2006
- Oath or Declaration filed on 06/09/2006
- U.S. Basic National Fees filed on 06/09/2006
- Substitute Specification filed on 06/09/2006
- Assignment filed on 06/09/2006
- Priority Documents filed on 06/09/2006
- Power of Attorney filed on 06/09/2006

Applicant is reminded that any communications to the United States Patent and Trademark Office must be mailed to the address given in the heading and include the U.S. application no. shown above (37 CFR 1.5)

CHRISTINE S WASHINGTON
Telephone: (703) 308-9140 EXT 228

PART 3 - OFFICE COPY

FORM PCT/DO/EO/903 (371 Acceptance Notice)

BLUEPRINT 000276



Europäisches Patentamt

European Patent Office

Office européen des brevets



⑪ Publication number: **0 412 799 A2**

## EUROPEAN PATENT APPLICATION

㉑ Application number: 90308733.6

㉒ Date of filing: 08.08.90

�51 Int. Cl.⁵: **H04M 3/50**, H04Q 11/04

㉚ Priority: 10.08.89 US 393270

㊸ Date of publication of application:
13.02.91 Bulletin 91/07

㊻ Designated Contracting States:
AT BE CH DE DK ES FR GB GR IT LI LU NL SE

㉛ Applicant: **BOSTON TECHNOLOGY**
**1 Kendall Square**
**Cambridge, Massachusetts 02139(US)**

㉜ Inventor: **Jones, Scott A.**
**170 Gore Street**
**Cambridge, Massachusetts 02139(US)**
Inventor: **Picard, Donald F.**
**661 Fellsway**
**Medford, Massachusetts 02155(US)**

㉗ Representative: **Skone James, Robert Edmund**
**et al**
**GILL JENNINGS & EVERY 53-64 Chancery**
**Lane**
**London WC2A 1HN(GB)**

�554 Telephone communication system.

㊿ The present invention provides a distributed architecture that includes multiple voice processing units (16-24). A voice processing unit (16) is designated as a home voice processing unit for a subscriber's messages. An incoming call or access by a subscriber from a central office (30) is preferentially switched to the home VPU (16) by a digital switching system (14) under the control of a master control unit (10). If the master control unit 10 determines that all lines to the home voice processing unit (16) are busy or the voice processing unit is otherwise unavailable, the master control unit causes the digital switching system (14) to switch the call to another or remote voice processing unit. The remote voice processing unit then handles the calls by either locally storing a message or retrieving a message from the home voice processing unit storage over an internal massage bus. If a message is stored remotely and the home voice processing unit is processing the subscriber request, the home voice processing unit can access the remote message over an internal message bus or the master control unit can switch the call routing through the digital switching system to the remote voice processing unit for processing of the remote message and return the digital switching system routing to the home voice processing unit when finished with the remote message. Each voice processing unit (16-24) stores both remote and home messages locally on local disc storage units. The master control unit (10) stores subscriber related information such as the home voice processing unit for each subscriber and the location of each message for that subscriber. Communication between the master control unit and the voice processing units is over an internal network. A hot standby master control unit (12) is provided to take control of the system in the event that the primary master control unit fails.

EP 0 412 799 A2

BLUEPRINT 000277

EP 0 412 799 A2



FIG. 1

BLUEPRINT 000278

## TELEPHONE COMMUNICATION SYSTEM

The present invention is directed to a telephone communication system used for handling information such as messages, typically voice mail messages, and, more particularly, is directed to a system that provides a tightly coupled distributed architecture that allows substantially increased efficiency of equipment utilization, increased subscriber capability, modular expansion capability and low access blockage for subscribers and non-subscribers.

Typical voice mail systems are designed for operation in conjunction with a private business exchange (PBX). The typical systems include one or more separate call processing computers dedicated to serving a predetermined set of PBX lines and subscribers. Each processor stores the subscriber information for the subscribers assigned to that processor. The processors store messages in a common storage accessed over dedicated storage buses. Each call processor acts independently and competes for access to the common storage. Because each call processor serves a predetermined set of lines, when a message originator, whether a subscriber or non-subscriber, calls a subscriber and wishes to leave a voice message, if the lines dedicated to the subscriber are busy or if the call processing computer is unavailable for any other reason, the message originator is not allowed to leave a message. A processor does not have access to the subscriber information stored in another processor, thereby preventing other processors from handling the call. In like manner, if a subscriber wants to obtain his messages and the limited number of lines to the subscriber's dedicated call processing computer are busy or the processor is unavailable, the subscriber cannot get his messages. A prior art system as described above is typified by the system described in U.S. Patent 4,371,752.

In accordance with one aspect of the present invention, a message communication system comprises at least first and second message processing means for processing a message by storing and/or playing the message; and switching and control means for selecting one of the message processing means to process the message and routing the message to and/or from the message processing means.

In accordance with a second aspect of the present invention, a message processing method using a switching system and at least first and second message processing units connected to the switching system, comprises the steps of:

a) selecting one of the message processing units for processing a message;

b) controlling the switching system (14) to route the message to the selected message processing unit; and

c) processing the call by the selected message processing unit storing and/or playing the message.

The present invention allows calls to be processed as long as any message processing unit is available.

The present invention allows any message processing unit to handle any incoming line and any subscriber. In some examples a message can be temporarily stored in different positions of the system to improve performance. The invention may be arranged to allow the system to store and retrieve any message no matter where stored in the system. A message may be permanently stored only once.

The present invention enables subscriber information to be stored in a manner allowing any message processing unit to have access to that information to process the message and can prevent storage access bottlenecks.

The invention can be scaled to very large sizes to handle information traffic for cities, states national and world subscriber sets.

The present invention can provide a distributed architecture that prevents line blockage and prevents storage blockage.

The system can handle both voice and data traffic.

The present invention can provide maximum availability of message processing units by freeing a voice processing unit to handle another call while the voice processing unit storing the message serves the subscriber with respect to that message. For example, the invention can increase the equipment utilization efficiency by algorithmically distributing calls to processing units and can allow access to any message through any voice port.

The present invention can dynamically locate stored messages by algorithmically distributing messages among call processing units.

In one example a voice processing unit (VPU) is designated as a home voice processing unit for a subscriber's message. An incoming call or an access by a subscriber from a central office can be switched to the home VPU by a digital switching system (DSS) under the control of a master control unit (MCU). If the master control unit determines that all lines to the home voice processing unit are busy or the home voice processing unit is otherwise unavailable, the master control unit causes the digital switching system to switch the call to another or remote voice processing unit. The remote

BLUEPRINT 000279

3                          EP 0 412 799 A2                          4

voice processing unit then handles the call by either locally storing a message or retrieving a message from the home voice processing unit storage or elsewhere in the system over an internal network. If a message is stored remotely and the home voice processing unit is processing a subscriber request, the home voice processing unit can access the remote message over the internal network or the master control unit can switch the call routing through the digital switching system to the remote voice processing unit for processing of the remote message by the remote processing unit. Once the remote message is processed the master control unit can return the digital switching system routing to the home voice processing unit or to another voice processing unit allowing the home voice processing unit or the other processing unit to continue processing messages stored in the home unit or in any other voice processing unit. Each voice processing unit stores both remote and home messages locally on local disc storage units. The master control unit can store subscriber related information such as the identification of the home voice processing unit for each subscriber and the location of each message for that subscriber. Communication between the master control unit and the voice processing units, and among the voice processing units is over the internal network. If out-dialing of the message is necessary, such as when a pager needs to be activated, the master control unit connects the voice processing unit storing the message, whether the home or remote unit, to the central office through the digital switch and the unit places the desired call. A hot standby master control unit is provided to take control of the system in the event that the primary master control unit fails.

These together with other objects and advantages which will be subsequently apparent, reside in the details of the construction and operation as more fully hereinafter described and claimed, reference being had to the accompanying drawings forming a part hereof, wherein like numerals refer to like parts throughout.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 illustrates the components of a system in accordance with the present invention;
FIG. 2 illustrates in more detail the connection between the central office and the master control unit;
FIG. 3 depicts the connection of the voice processing units to the digital switching system;
FIG. 4 shows the components of each voice processing unit;

FIG. 5 shows the components of each master control unit;
FIG. 6 illustrates the processes executed and the flow of voice messages and data;
FIG. 7 illustrates the directory structure of files associated with a subscriber;
FIG. 8 depicts how messages are stored; and
FIG. 9 shows a doubly linked list used to output messages to the subscriber.

## DESCRIPTION OF THE PREFERRED EMBODIMENTS

The present invention is specifically designed for use with a telephone company central office or for a very large corporate user, however, an exchange such as private business exchange can take advantage of the high availability characteristics of the present invention in situations where high voice traffic exists, such as telephone shopping. The distributed architecture allows the system to be configured presently for up to 1536 voice channels, approximately 100,000 mailboxes and over 7,000 hours of voice storage. The architecture allows the present invention to simultaneously run multiple applications while keeping the underlying system totally transparent to the end user. The caller and/or subscriber can send, reply to or redirect messages at will irrespective of which processing unit stores particular messages or which processing unit is handling the call. The various computer programs executed within the distributed architecture are preferably written in the "C" programming language or Intel 386 assembly language and an appendix of the programs executed by the various processors within the distributed architecture is included herewith. Each processor in the distributed architecture is preferably using an operating system such as Xenix or Unix System V which allows multiple real time tasks.

The system 6 of the present invention, as illustrated in FIG. 1, includes both primary 10 and standby 12 master control units (MCU) which control switching by a digital switching system (DSS) 14. The MCU 10 coordinates the routing of calls, based on conventional Simplified Message Desk Interface (SMDI) information packets from a central office 30, through the DSS 14 to voice processing units 16-24. Up to 64 voice processing units can be provided in the system where each voice processing unit has a T1 termination for up to 24 voice ports 26 and is capable of storing up to 110 hours of voice storage for approximately 2,200 mailboxes.

Assignment of an incoming call by the MCU 10 to a VPU occurs over an internal bus or network 28 that includes both a data bus and a voice bus. This bus 28 rather than being a traditional bus can be a

4

network of any topology such as a star or token ring. Control data and messages between the MCU 10 and VPUs or between the VPUs is routed over the data bus of the internal bus 28 while the voice messages are routed between the VPUs over the voice bus of the internal data bus 28. It is preferred that the internal bus 28 be a standard bus such as is provided by an Ethernet. The voice and data logical buses can be implemented as a single physical bus over the Ethernet or as separate Ethernets when interprocessor voice or data communication is high.

It is preferred that the digital switching system 14 be connected to a central office 30 through a multi-line hunt group (MLHG) 32. It is also preferred that a digital central office be used so that digital voice samples are passed between the central office 30 and the DSS 14. However, if the central office is an older switch such as an AT&T 1A-ESS, a channel bank 34 can optionally be provided in the optional telephone network interface circuitry 8 for converting incoming analog signals to digital packets. Communication between the MCU 10 and the central office 30 is optionally via conventional serial modems 36 and 38 preferably using the SMDI communication format, however, other formats such as SMSI can be used.

During operation when a subscriber or non-subscriber at a calling station 40 calls a subscriber at a called station 42, the call is switched normally through the central office 30 whereby a ringing signal is sent to the called station 42 and a ring back tone is returned to the calling station 40. After a predetermined number of rings (for example 5) or immediately if the line is busy, the call is forwarded to the multi-line hunt group 32 by the central office 30. When the central office 30 determines that a line is available, the central office 30 causes the group 32 to ring one of the ports on the DSS 14. If a line is available to the DSS 14, normally a message packet, preferably in SMDI format, is sent from the message desk of the central office 30 to MCU 10 optionally through modems 36 and 38. The packet contains the message desk identification number, the trunk ID indicating which port of the DSS will receive the call, the called number and the calling number. In the present invention, although other options are possible, the called number acts as the mailbox address and of course, a translation can occur between the telephone number and a mailbox address. The central office 30, after transmitting the SMDI packet, places the call on the designated port of the DSS 14. DSS 14, when it detects a call, informs the MCU 10 of a call arrival indicating on which port the call has arrived. The MCU 10, if a packet arrives prior to a call at the DSS 14, waits for a predetermined time, for example 12 seconds, and if the call does not arrive

at the DSS 14, discards the packet. If a call arrives at the DSS 14 without the packet arriving within 6 seconds, a non-typical situation, the call is assigned to the first available VPU and the DSS 14 is switched accordingly. The VPU makes the request for the mailbox number, receives the number from the caller and provides the number to the MCU 10 in a phoney SMDI packet. If a matching SMDI packet and call port on the DSS 14 arrive, or after a telephone number has been entered, then the MCU 10 accesses the mailbox database and determines which VPU 16-24 is the home VPU 16 and, if the home VPU 16 is available. The MCU 10 instructs the DSS 14 over a link 44 to route the call to the home VPU 16. A conventional T1 channel (time slot) to channel (time slot) connection command is provided to the DSS 14 from the MCU 10 to effect the routing desired.

In a situation where, for example, a cellular telephone switch is being serviced and in-band signalling (DTMF, MF or others) is required, the central office 30 and DSS 14 have a dedicated connection through to a VPU awaiting the in-band signals. When the in-band signals have been received designating the called number, switching of the call to the home VPU, as described above when an SMDI packet is not received and must be entered manually by the caller, is performed.

After the call is switched, the home VPU 16 obtains the relevant subscriber information (including a greeting storage location) from the MCU 10 and then can play a system greeting or a personal greeting recorded by the mailbox owner back through the DSS 14, channel bank 30 and central office 30 to the calling station 40. The home voice processing unit 16 then plays a beep signal to the caller indicating that the caller can begin recording a message. Recording stops when the caller hangs up, presses a touch tone key or is silent for a message time out period. The caller can then review, record or send a message or select send options such as marking the message urgent or confidential. After the caller sends the message the VPU 16 stores the message as a file in the VPU 16 and communicates the location of the message back to the MCU 10 which stores the location of the message in the subscriber's message list mailbox file located in the MCU 10. The MCU 10 then disconnects the routing in DSS 14 and sends any necessary message waiting information to the central office 30.

The above discussion assumed that the home VPU was available, had adequate storage for storing the message and had available call processing ports. When these conditions are satisfied, there is a strong preference, no matter the type of routing algorithm used, for selecting the "home" VPU. If one of the above factors is not correct the call can

BLUEPRINT 000281

7                    EP 0 412 799 A2                    8

be routed to a remote VPU 24. This routing to the remote VPU 24, called call switching, also depends on the current switching load on the DSS 14. If the switching load on the DSS 14 is high, for example 99% of capacity, call switching could be prevented. It is possible to route or switch the call to the least busy VPU or the first VPU available on a list with a predetermined order of VPU selections.

As another alternative a more complicated routing determination can be dynamically made using an algorithm which compares all VPUs. Prior to selecting the VPU to handle the call, the MCU 10 can execute a call routing algorithm which determines whether the home VPU 16 or a remote VPU 24 should be, selected. First the MCU 10 executes a call placement equation, as set forth below, for each VPU 16-24 that has available ports and available storage to determine which VPU should receive the call:

P(I) = W1*H(I) + W2*RS(I) + W3*PA(I)

where I is the index specifying the VPU, W1-W3 are weighting factors, N is a binary indicator taking the values of 1 or 0 indicating whether the VPU having the index is the home VPU 16, RS is a variable that indicates the remaining voice storage capability of the VPU and PA is the number of ports available on the VPU. RS and PA are normalized variables having values between 0.0 and 1.0 while the weights are selected to produce a placement value P between 0.0 and 1.0. The placement values P for the VPUs 16-24 are ranked with the highest ranked VPU being the VPU selected to handle the call. The weighting factors are also selected to treat the home VPU preferentially, if it is available, has sufficient storage for the message and has an available port. For example, if the weighting factor W1 is set so that the first term, W1*H(I), in the equation is only slightly less than the sum of the remaining terms in the equation, whenever the home VPU has available storage and has an available port, the home VPU will receive the highest call placement value.

If the selection algorithm determines that a call should be routed to the remote VPU 24, at the beginning of the call, because the subscriber information structure indicates the greeting is stored on VPU 16, the remote VPU 24 obtains the personal greeting of the subscriber from the home VPU 16 over the internal bus 28 and then plays that personal greeting to the calling station 40 through the DSS 14. The remote VPU 24 would then record the caller's message locally in the remote VPU 24 providing the same review and re-record features previously mentioned. When the call is finished the remote VPU 24 would inform the MCU 10 that the subscriber has a message stored on a remote VPU 24. The MCU 10 would place the location of the message in the subscriber's message list file.

The system has the capability of informing a subscriber that he has new messages by communicating to the central office 30 using a standard Message Waiting Indication (MWI) packet over SMDI. The central office should produce a stutter dial tone the next time the subscriber picks up the phone at the called station 42 or light a light on the called station 42. The subscriber desiring to obtain his messages would then call their own telephone number (which would result in forwarding to the voice mail system) or dial a local access number in the central office 30 for the voice mail system 6. If the caller dials their own number, the MCU 10 could perform the routing algorithm previously mentioned to determine which VPU should handle the call. If a system access number is used the subscriber is routed directly to an appropriate VPU which requests the user enter the mailbox number (their own telephone number) and the MCU 10 once again can perform the call routing algorithm.

If the VPU selected is the home VPU 16, it will play the locally stored personal greeting of the subscriber to the subscriber. If the VPU selected is a remote VPU 24, the remote obtains the greeting from the home VPU 16 as previously described and plays it to the subscriber. If the home VPU 16 does not respond to the request for the greeting message, the system greeting is played to the subscriber. This generally indicates to the subscriber that all messages are not available because the home VPU is down. However, because the greeting and log-in procedures take time during which the home VPU could become available and if the system has the alternate call switching capability, the subscriber should continue until the system indicates all messages are not available.

When the subscriber presses the appropriate log-in digit at the calling station, whether the subscriber is at the previously called station 42 or at another location, the subscriber is prompted to enter an appropriate passcode. The subscriber is then led through a series of typical prompts to listen to messages, send messages, etc. If the subscriber wishes to receive his messages, the system will play the messages to the subscriber no matter where the messages are stored.

If the home VPU 16 is selected by the MCU 10 and messages are to be played to the subscriber, the home VPU 16 obtains and examines the list of messages from the MCU 10. If all the messages are on the home VPU 16, the home VPU 16 plays the messages to the subscriber through the DSS 14 and the central office 30. If upon examining the list, as the messages are sent to the subscriber, if at least one message is indicated as being stored on the remote VPU 24, the remote VPU 24 obtains the message over the bus 28.

6

BLUEPRINT 000282

As an alternative the remote VPU 24 can send a message to the MCU 10 indicating that a remote message needs to be processed. The MCU 10, based on the availability of the remote VPU 24 and the load on the home VPU 16 can indicate to the home VPU 16 that the home VPU 16 or the remote VPU 24 should process the message. In this alternative the MCU 10 can also communicate back to the home VPU indicating whether the home VPU should obtain the message over bus 28 or whether the processing for this message should be switched to the remote VPU 24. The first option, in which the home VPU 16 continues processing, operates in a manner similar to the way that the home personal greeting was played to a non-subscriber by a remote VPU 24. In this situation the home VPU requests over the internal bus 28 that the remote VPU 24 send the remote message to the home VPU 16. The home VPU 16 stores the message locally and then plays that message to the subscriber. This first option would normally be chosen when the remote has all 24 ports busy or is ranked very low in the selection list computed, using the call placement algorithm at the time the remote message is encountered. If the second option in the alternate system is selected by the MCU 10 and processing is to be switched, the state of the home VPU 16 during the subscriber's call is transferred over the bus 28 to the remote VPU 24. At the same time the MCU instructs the DSS to route the call to the remote 24. The remote VPU 24 then continues call processing by providing the message to the subscriber through the reconfigured DSS 14 and the central office 30.

When the remote message processing is completed, if the subscriber wishes to continue call processing and if it is available, control can be transferred back to the home VPU 16 by sending the state of the remote VPU 16, as to the subscriber's call progress, back to the home VPU 16 over the bus 28 and the MCU 10 switches the DSS 14 back to the original connection arrangement. If the home VPU 16 is not available, the messages are obtained over the bus 28 and provided to the subscriber by the remote VPU 24 until the home VPU 16 becomes available.

In a situation where a remote VPU 24 is selected for the subscriber call processing, the selection could have been made because the home VPU 16 was unavailable. When all of the messages for the subscriber are stored on the home VPU, the remote VPU 24 and MCU 10, in call switching, will attempt to transfer control to the home VPU 16 for each message. During this operation the remote VPU 24, after receiving the message list from the MCU 10, upon examining the first message will indicate to the MCU 10 that a transfer is requested. If the MCU 10 responds with a transfer command, a transfer as previously discussed will occur. If the MCU 10 responds indicating that the remote VPU 24 should process the message, the message is obtained from the home VPU 16 over the bus 28. By having the remote VPU attempt a transfer for each message if the home VPU 16 becomes available, in accordance with the call routing calculations previously discussed, the remote VPU 24 will transfer call processing to the home VPU 16.

If the remote VPU 24 is examining the list of messages and encounters a message stored in its own storage the remote VPU 24 will play the message to the subscriber as previously discussed. If the remote VPU 24 encounters a message storage record indicating that a message is stored on another remote VPU 20, the remote VPU 24 will attempt to transfer to the other remote VPU 20 on which the message is stored.

The present invention has the capability of immediately sending the message to the subscriber if this feature is selected by the subscriber. This can apply to all messages or to some subset such as urgent ones. In this situation, the voice processing unit whether it is the remote processing unit 24 or the home processing unit 16 sends a message to the MCU 10 indicating that out-dialing must be effected. The MCU 10 examines the state of the DSS 14 to determine which lines to the central office 30 are available, examines the status of the VPU storing the message to determine whether a port is available on the VPU storing the message to be sent and examines the status of the other VPUs. The MCU selects an available line (channel) through the DSS 14 and sends that selection to the VPU, either remote 24 or home 16 depending on where the message is stored. The VPU examines the selected line to determine whether a call has arrived from the central office 30 using conventional "glare" detection techniques in which the VPU listens for a dial tone on the line to determine if a dial tone is available. If "glare"' is detected (for example, no dial tone) the VPU indicates such to the MCU 10 and the MCU 10 selects another line in the DSS 14 and passes the selection information to the VPU. When an available outgoing line is detected by the VPU, the VPU proceeds to dial the number indicated in the subscriber's database for the urgent message. When an off-hook condition is detected at the number dialed, the VPU, as in the previous process, requests that the subscriber enter an appropriate passcode before the message is played. If the correct passcode is entered, the VPU allows the subscriber to log-in and then the VPU plays the out-dial message through the DSS 14 and the central office 30 if requested.

During this process, the MCU 10 selects the VPU which will place the out-dialed call taking into consideration where the out-dialed message is

BLUEPRINT 000283

stored. If the VPU storing the message is available and has sufficient ports, it is selected, otherwise a remote VPU is selected. A remote VPU either obtains the message from the storing VPU over the bus 28 or switches the VPU to the storing VPU once the connection is established using the same procedures discussed previously. This out-dial process will also access devices other than telephones, such as pagers, for message delivery. The processes that are executed by the MCU and VPUs during the above discussed operations will be discussed in more detail with respect to FIGS. 6-9.

FIG. 2 illustrates in more detail the components that allow communication between the MCU 10 and a central office 30. Messages from the central office 30 are received by a conventional 829 channel interface available from Comfab of Addison, Illinois as Model DST4829BJ. This channel interface 100 is connected to a conventional 202 data set modem available from Halmark of Billerica, Mass as model RM16M20255. The modem 38 is connected to a transfer switch 48 available from Data Probe of Englewood, New Jersey as Model KAB232R. The transfer switch 48 will be activated by the backup MCU 12 to transfer message traffic to the backup MCU 12 whenever the backup MCU 12 detects that the primary MCU 10 is malfunctioning. The method of determining whether a transfer should occur will be discussed in more detail hereinafter. The transfer switch 48 is connected to the primary 10 and backup 12 MCUs by conventional serial port interfaces 102.

FIG. 3 illustrates in more detail the connection arrangement between the VPUs and the digital switch 14. A suitable digital switching system with a 1536 by 1536 channel capacity is available from Excel, Inc. of Sagamore Beach, Mass.

Each VPU includes the components as illustrated in FIG. 4. Each VPU is essentially an IBM AT type computer with special communications cards mounted on the backplane. The CPU 200 is based on the Intel 80386 processor and an appropriate unit is available from Sigma Design of Fremont, California as Model No. CPA3820BACX. The CPU 200 stores temporary data structures and messages, as well as the VPU control programs that are executing, in a memory unit 202 configured for 8 megabytes of random access memory. A suitable memory unit 202 is available from Sigma Design of Fremont, California as Model CMA380K00N while the memory chips for the unit can be obtained from Centon of Wilmington, Mass. The CPU 200 has direct access to the memory 202 via a conventional 32 channel bus. Messages are stored on two hard disk drives 204 and 206. The hard disk drives, each having a 760 megabyte storage capability, can store the same messages

and other information using a technique conventionally called mirror image storage. This operation is controlled by the disk controller 208. The hard drives 204 and 206 are available from Anthem of Wilmington, Mass. as Maxtor Model No. XT8760E while the disk controller is available from DPT of Maitland, Florida as Model PM301/75. A floppy disk drive 210, which is preferably a Fujitsu Model M2553K03A is used for loading the system initially and for any maintenance modifications that need to be performed. The MCU 10 and other VPUs are connected to the VPU of FIG. 4 through a conventional Ethernet internal communications link 212 which is available from Excelan of Nashaua, New Hampshire as Model No. 9900615-01. This internal communication link 212 can be either two physical Ethernets or a single Ethernet with two logical buses thereon. If two physical Ethernets are used, two internal communication link units 212 must be provided. The communication between the CPU of the VPU and the DSS 14 is through digital ports 214 to a conventional T1 interface 216 and thereafter to the DSS 14, and this interface 216 is available from Dialogic of Parsippany, New Jersey as Model No. T1DT1124. The port line cards 214 are also available from Dialogic as Model No. D41B. The port line cards perform a conventional digitizing technique known as ADPCM (Adaptive Delta Pulse Code Modulation) sampling at a rate of approximately 6,000 8-bit samples per second. The digital compression performed using this method allows the CPU 200 to store only four bits of every 8 bit sample. This results in a storage requirement of only 3K bytes per second thereby increasing the capacity of the system. The line cards also have the internal capability of producing a beep, detecting a call and monitoring call progress, generating DTMF, detecting DTMF, generating MF, detecting MF, monitoring on and off hook conditions and going on-hook and off-hook. However, the application process interfaces to the line cards using linked library routines that make system calls to voice line card driver routines. Each line card has two 512 byte buffers that are alternately loaded and retrieved in ping pong fashion during call processing. The line card automatically takes care of filling and unloading the buffers over the line. The multi-IO unit 216 provides an interface for a video display whenever maintenance of the VPU is necessary.

Each of the master control units 10 and 12 are essentially IBM AT based machines as previously discussed with respect to the VPUs of FIG. 4. This system includes a computer 300, memory 302 with at least 4 megabytes of random access memory, hard drives 304 and 306, floppy drive 310 controlled by disk controller 308 and an internal communication link 312 for the internal bus 28. The

BLUEPRINT 000284

13                      EP 0 412 799 A2                      14

same component manufacturers and model numbers of the VPU are applicable to the corresponding components of the MCU. Each MCU additionally contains a conventional modem 314 which allows the system to be accessed by a dial-up access method for maintenance purposes. An appropriate modem is available from Western Microtechnology of Burlington, Mass. as U.S. Robotics Model No. 1-0021-00. The serial link provides serial connection to the digital switch 14, central office 30 and transfer switch 48. The serial link unit 316 is available from Arnet of Nashville, Tennessee as Model No. SP84BKUNITSW.

During call processing the processes illustrated in FIG. 6 are executed by the various processing units previously discussed. The processes illustrated in FIG. 6 are represented using descriptive names and program acronyms. For example the master control process 400 has the acronym MOMD. The acronyms refer to the corresponding "C" programming language processes or assembler processes.

When SMDI information from the central office arrives over one of the eight RS232-1200 baud central office lines, the central office interface process 402 examines the message and places an appropriate message in the message buffer for the master control process 400. At the same time, a call arrival (service request) packet arrives from the DSS 14 through DIP 404 to MCP 400. The MCP 400 coordinates the two packets (call arrival and SMDI) through the referenced channel in each packet. If MCP 400 receives an SMDI packet without receiving a call arrival packet within 12 seconds, it discards the SMDI packet. If MCP 400 gets a call arrival packet without an SMDI packet within 6 seconds, MCP 400 places the call on the least busy VPU without SMDI information.

The master control process 400, as previously discussed, determines how to route the call through the switch 14 and transmits that information to the DSS interface process 402 which provides an appropriate channel assignment to the DSS 14. This channel assignment is entered on a list in the MCU and includes port assignments for the VPUs. Based on the selection of the voice processing unit the master control process 400 provides a copy of the SMDI packet and the call routing information to a corresponding VPU interface process 406.

Each interface process described herein essentially translates an information packet from one protocol to another protocol allowing processes with different message formats to interact. Each interface process also calls appropriate driver processes through library processes 401. The driver routines are conventional routines that can be obtained from the equipment manufacturer or pro-

duced by one of ordinary skill in the art. The VPU interface process 406 for each one of the VPUs is an individually spawned process of the master control process. This process is a connection oriented process or virtual link process rather than a packet oriented process. In a virtual link process, the process will terminate if the connection to the designated VPU fails. This process is automatically supported by the TCP/IP protocol executed by the processes provided by the net card manufacturers. If an interface process terminates, MCP 400 is informed by the operating system and changes the status of the corresponding VPU from available to unavailable. The MCP 400 then periodically tries to restart the interface process as long as the system configuration information indicates the VPU should be online and active. When the interface process successfully executes, the VPU is back on line and the status is changed to available. An appropriate connection protocol and process is available from Excelan.

The VPU interface process 406 translates buffer messages from the operating system format (Xenix) to the format of the Ethernet internal bus 28. The information is transmitted to the appropriate VPU 16 over the bus 28 to an MCU interface process 410 in the appropriate VPU. The routing of the messages to the appropriate VPU or MCU process is automatically handled by the TCP/IP protocol using, for example device or process addresses. The MCU interface process 410 translates the message into the operating system message format of the VPU and provides it to the VPU control process 412. An application process 414, when it detects an incoming call (a ring), requests that the VCP 412 provide a call information packet including the incoming port and the SMDI packet. When the AP 414 detects a ringing call, it asks VCP 412 if there is any SMDI packet waiting for a VPU port. If there is, VCP 412 forwards the packet. If not, AP 414 will wait for up to 5 seconds for a packet to arrive. If none arrives, it is handled the same as if no SMDI packet arrived from the central office 30. The VPU control process 412 then provides the message to the application process 414. The application process 414 can be a voice mail process or some other process used for message processing. The application process 414 then controls the communication process with the subscriber or caller over the communication ports 214 through the DSS 14 and central office 30 using card driver and other library processes 413. In a situation where the application process 414 is to store a message the application process through VPC 412, MIP 410 add VIP 406 requests from the MCP 400 the subscriber information (a user information structure) which defines the characteristics of the subscribers mail box (greeting length,

9

BLUEPRINT 000285

15                    EP 0 412 799 A2                    16

message length, options etc). The master control process 400 maintains a directory structure of such files as illustrated in FIG. 7 and which will be discussed in more detail later.

Once the user information structure is obtained by MCP 400, it is transferred through the VIP 406, the MIP 410, the VCP 412 to the appropriate application process 414 and stored in a local cache. Several information structures can be stored in the cache at the same time. By storing the user information structure in the local VPU cache, requests for information from the user information structure can be processed locally without accessing the internal bus. The cache for user information is a read only cache. Any requests for update are immediately written back. However, the updated information is kept in the cache. Up to five user information structure entries are cached and additional entries needed are not permitted. The cache is emptied at the end of the call. Any request that cannot be serviced by the cache is sent to the MCU.

The application process 414, once the user information structure arrives, plays the appropriate greeting stored on the hard disk for the subscriber as a greeting file identified by the telephone number. The application process 414 then records and stores any message, as a message file on the hard disk. The application 414 asks VCP 412 for a post office entry in which to store voice data. AP 414 uses this file for message storage and later adds it to the message list for the subscriber.

A message may be terminated due to several conditions: the caller hangs up, the caller pauses for a predetermined length of time, for example 8 seconds, the message has exceeded the message limit, or a DTMF is detected. If a DTMF signal has been received at the end of a message, call processing then continues allowing the caller to review the message mark it as urgent, etc. Once the message is complete and marked, if necessary, the application process 414 sends a location storage message to the MCP 400 which creates a message list in a format as illustrated in FIG. 8. When the line finally goes on hook, the application process 414 notifies MCP 400 that the call is finished. MCP 400 accesses the channel assignment list and issues a disconnect command to the DSS 14 for that assignment. The application process 414 also indicates whether the message waiting indicator should be turned on or if outdialing is necessary. If the indicator should be turned on, the MCP 404 prepares an appropriate MWI packet and provides it to the CIP 402 which provides the packet to the central office 30.

The message file for the user, as illustrated in Fig. 8, includes message records which identify which VPU the message is located on, the file

name for the message and whether the message is a new message and whether this is the end of a segmented message. When a subscriber accesses the system, the application process 414 obtains the subscriber information from the master control process 400, verifies the passcode and presents the options for message retrieval. Whenever the subscriber logs into the system, the message waiting indication is turned off. Also, any pending outdial requests to the subscriber are detected. The application 414 then requests from MCP 400 the list of messages as illustrated in FIG. 8. The application process 414 will then create a doubly linked list as illustrated in FIG. 9. The doubly linked list is used by the application process to index through the messages as the user desires.

In the example illustrated in FIGS. 8 and 9 two messages have been linked together by a previous subscriber and used to create a single message #1. Such a situation occurs when a first subscriber leaves a message for the current subscriber and appends a message from a third subscriber thereto. The subscriber, when playing messages, can select the messages by message number, by urgency etc. Assuming that the subscriber wants to sequentially pass through the messages illustrated in FIGS. 8 and 9, the application process 414 would first obtain the message indicated by the first message record 700 from the local hard disk and play the message to the subscriber. When the end of the locally stored message 700 is encountered VAP 414 would first check to determine if the remote voice data is stored in its local cache. If it is, the message is played. If it is not available locally, AP 414 would connect to VIP 424 over the internal bus 28. This connection is a request for remote voice data and part of the request is which voice data file is needed. Voice data is sent over the connection in 8k byte segments. At the same time, if there is room in the local cache, the remote voice data is cached on the local drive. As the AP 414 is receiving the data, it is played to the caller. The transfer of data is continued until either the message is played to completion or the message is terminated due to DTMF being received. If the message is terminated before it is complete, the message is removed from the local cache. Entries remain in the local cache as long as they are accessed within a predetermined amount of time, for example 24 hours. If the MPU 64 is not available, VTP 424 will not respond to the message transfer request and the application process plays a message to the subscriber that the message is not currently available. When message 703 is encountered application process 414 provides the third message 703 to the subscriber off the local hard drive.

At the end of each message the user is given

BLUEPRINT 000286

17 EP 0 412 799 A2 18

the option of deleting the message. If the sub-
scriber wants the message deleted, the application
process 414, after call disconnection, frees up local
storage by deleting any message files to be de-
leted from the local directory, sends a delete mes-
sage through MCP 400 to the VCP 412 storing any
remote messages to be deleted and sends a mes-
sage to MCP 400 specifying the remaining mes-
sages that need to be removed from the message
list. MCP 400 proceeds to remove the messages
from the list. When the subscriber finally goes on
hook, the application communicates this to the
master control process 400. The MCP 400 through
DIP 400 instructs the DSS 14 to disconnect the call
routing.

Any message stored in the system can cause
outdial notification to be performed and depends
on the configuration parameters for the subscriber.
If outdial notification needs to be performed, the
application 414 issues an outdial request through
the appropriate processes to the outdial process
426. ODP 426 maintains a list of pending outdial
requests and when they need to be performed.
When the time arrives for making an outdial, the
MCP can schedule the request to be performed by
the VPU which contains the original message. MCP
400 could issue a request of DSS 14 to connect an
outgoing line to the appropriate VPU port. MCP
400 would forward the outdial request through VCP
412 to AP 414 to service the request. The MCP
400 also requests that the VPU storing the mes-
sage start the application process 414 correspond-
ing to the VPU port designated. This process will
perform the outdialing. The application process 414
will examine the port for a dial tone, if a dial tone
does not exist the application process will go on
hook, the outdial will be aborted and ODP 426 will
be informed and the application process 414 will
handle the incoming call. The ODP 426 will then
reissue the request. When a dial tone is detected,
the application will dial the number specified in the
outdial file. If the dialed station does not reply
within a certain length of time, for example four
rings it reaches a busy line, the attempt is termi-
nated and rescheduled. If the dialed station ans-
wers and if the outdial message is to a pager
system, the appropriate pager tones are played. If
a human answers, a greeting message is played
indicating a message is awaiting delivery and ask-
ing for the passcode. If the correct passcode is
given the message is played as previously de-
scribed. The pending requests are deleted as soon
as the subscriber enters the passcode as pre-
viously discussed.

If the application 414 performed a pager type
message sending operation, the message is main-
tained on the outdial process message list until the
subscriber calls in and gets the message. If the

message remains on the list longer than a certain
length of time, for example fifteen minutes, the
pager will be beeped again. This will continue until
the pager has been beeped a predetermined num-
ber of times.

Whenever a caller inputs a message into the
system that should be distributed to a limited set of
the subscribers (a group message), application pro-
cess 414, in addition to sending the location of the
message to the master control process 400 to
create an appropriate mailbox message list entry,
causes the master control process 400 to activate
the distribution process 428. The distribution pro-
cess 428, proceeds to access the group of des-
ignated mailboxes in the system and create a mes-
sage entry for each subscriber referencing the lo-
cation of the group message. Appropriate message
waiting indicator messages are also sent to the
central office 30. When a subscriber which should
receive the distribution message accesses the sys-
tem, the MCP 400 provides the appropriate list to
the application process 414.

When a message is to be sent to all subscrib-
ers, it is called a broadcast message. When a
broadcast message is created the message is list-
ed in a single system wide broadcast mailbox
based on a menu selection by a subscriber. This
type of message does not create a message wait-
ing message indicator for the central office 30.
When a subscriber logs into the system, the ap-
plication process 414 checks the broadcast mail-
box. If a broadcast message exists it is added to
the subscribers message list during the log-in pro-
cess by the voice application.

The master control process 430 in the hot
standby MCU 12 executes all of the processes that
the master control process 400 in the primary MCU
10 executes, so that the master control process
430 is ready to take over processing when the
MCU 10 fails. This is accomplished by the master
control process 400 sending all requests from pro-
cesses to the master control process 430 through
the master control interface process 432. The pro-
cess 430 then performs appropriate processing
with the corresponding interface processes inac-
tivated. During operation, the poll process 436 pe-
riodically sends poll requests over the virtual link to
the MCU 10. The MCP 400 determines whether
each VPU is operating by determining whether a
request from the VPU is received every two min-
utes. The master control process 430 in the hot
standby MCU 12 also periodically checks on the
operating state of the primary master control unit
10. This is performed by the master control pro-
cess 430 requesting that the master control pro-
cess 400 respond to a poll request every thirty
seconds. If the master control process 400 does
not respond within a predetermined time period, for

BLUEPRINT 000287

example, 30 seconds, the master control process 430 requests that the VPUs 16-24 confirm that the primary MCU 10 is malfunctioning. The master control unit 12 places a broadcast message on the internal bus 28 using a message protocol, such as UDP available from Excelan. The message is processed by the master control unit check process 434 of each VPU. The master control unit check process 434 requests that the VCP 412 poll the MCP and if a reply is not received with 10 seconds the virtual link is considered broken. As previously discussed, the MCU interface process is a connect oriented process rather than a message oriented process and if the connection between the corresponding VPU interface process 406 and the MCU interface process 410 has failed this polling request will recognize this condition. The process 434 responds to the broadcast request of the master control process 430, based on the response to the VCP 412 poll, indicating whether the connection between the VPU and MCU 10 is active. If the master control process 430 receives one indication from any VPU that the primary MCU 10 is functioning properly, the master control process 430 in the hot standby MCU 12 will not take over operation and will try to reestablish a virtual connection to the MCU 10. If the primary MCU 10 has failed each of the MIP processes 410 in the VPUs have also failed. When MCUP 434 asks VCP 412 to test the link, if MIP 410 has terminated because of a failed link, MIP 410 will restart and place a message on the bus 28 every ten seconds requesting that the active MCU respond indicating that it is in control. The other VPUs perform the same operation. The hot standby master control process 430 when taking over the operation of the failed MCU activates its VPU interface processes 406-408 which respond to the requests by the MIPs 410 indicating that the hot standby 12 has taken control. The process 430 also activates the standby CIP 402 process. The activation of this process causes switch 48 to switch to send data to the MCU 10. DIP 404 is also started. The hot standby 12 then becomes the primary. When the MCU 10 comes back on line, it determines that the hot standby unit 11 is active and controlling, and converts itself into a hot standby unit.

During power up initialization, the MCUs each load the system configuration table designating whether each MCU is a primary and also indicating how many VPUs are configured in the system. The primary 10 and standby 12 MCU's immediately begin to try and establish a link virtual between the standby master control process 430 and MIP 432 and MCP 400. The attempt to establish the link will continue for a predetermined time, for example 5 minutes. The VPU's also start up but do not know which MCU is the primary. As a result, VCP 412

and MIP 410 begin broadcasting messages on the bus 28 requesting connection to the primary MCU 10. If the primary MCU 10 does not respond to the standby MCU 12 within the predetermined time period previously mentioned, the MCU 12 will start its interface processes and respond to the broadcast messages of the VPUs, thereby taking over as the primary. If the configured primary MCU 10 later comes on line it queries the other MCU and determines that it is running as primary and then configures itself as the list standby.

As previously discussed the telephone number of the subscriber is used as the mailbox address for that subscriber. Because the Xenix file handling utilities search directory files sequentially, a directory structure, such as illustrated in FIG. 7, is needed to increase the speed of file location. The master directory 500 has listed therein exchange directories 502 and 504 for each exchange authorized in the system. In a telephone number, excluding the area code, the first three digits of the telephone number are the exchange number. Each exchange directory includes plural high order subscriber directories 506 and 508. The next two digits in the telephone number after the exchange are used to select a high order directory within the high order directory list of the exchange directory. The final two digits are used within the high order directory to select among plural low order subscriber directories 510 and 512. The low order subscriber directory lists files for each subscriber in the system corresponding to the low order digits, the last two digits, in the telephone number. For example, the lower order subscriber directory lists a user information structure file 514 which stores the information necessary to process a call for a subscriber, a message file 516 which lists the locations of the messages for the user and a bill data file 518 which lists the name and address of the subscriber. If for example the user's telephone number was 555-1122 the 555 exchange directory would be selected from the list in the master directory, the 11 high order subscriber directory would be selected from the exchange directory list and the 22 low order subscriber directory would be selected within the 11 high order directory list. The user information structure file 514 for the subscriber or the message list file 516 for the subscriber would be selected as appropriate.

The mailbox process 418 services requests for creation, deletion and reinitialization of subscribers. This process creates or removes the subscriber directories and asks for mail box data from MCP 414. Requests for the services provided by this process typically come from an administration program, however, the subscriber, through the application process 414 can request this service.

If the master control process 400 determines,

BLUEPRINT 000288

during call processing, that process control should be transferred, call switching can be performed. A way in which call switching can be performed is to have the master control process execute the MCU save-resume process 420 which sends a packet over the data bus 28 which causes the VPU save and resume process 422 to be executed. The VPU save-resume process 402 can save the state of the application process 414 and transfer it to VPU 24. The save-resume process 402 executing on VPU 16 transfers all of the current state to VPU 24. This state includes all pertinent data structures such as the doubly linked list in Fig. 9 and the stack from the application process 414 which contains among other things the thread of execution and values of parameters which are passed between subroutines in the application process 414. The master control process 400 causes the appropriate connections to be made in the digital switch 14. This allows the application process in the VPU 16 to handle another call or application while the other VPU 24 continues call processing where the VPU 16 left off. The caller is completely unaware that the call has been shifted from one call processing unit to another.

## Claims

1. A message communication system, comprising at least first and second message processing means (16-24) for processing a message by storing and/or playing the message; and switching and control means (10,14) for selecting one of the message processing means to process the message and routing the message to and/or from the message processing means.

2. A system according to claim 1, wherein the switching and control means comprises switching means (14) for routing the message to one of the processing means (16-24); and routing means (10) for controlling the routing by the switching means.

3. A system according to claim 2, further comprising backup routing means (12) for controlling routing when the routing means (10) fails.

4. A system according to claim 2 or claim 3, wherein the first processing means can send a stored message, the first processing means indicating to the routing means (10) that a stored message needs to be sent, the routing means (19) controlling the switching means (14) to route the stored message and the first processing means sending the stored message through the switching means (14).

5. A system according to any of claims 1 to 4, wherein the first processing means stores the message, the control means (10) causing the second processing means to process the message when the first processing means is unavailable by obtaining the message from the first processing means.

6. A system according to claim 5, wherein the first processing means suspends operation while the second processing means processes the message.

7. A system according to claim 5, wherein the first processing means processes a second message while the second processing means processes the message.

8. A system according to claim 5, wherein a message processing state is transferred from the first processing means to the second processing means.

9. A system according to any of the preceding claims, wherein when the first processing means starts message processing and the second processing means stores the message, the control means (10) causes the switching means (14) to change the routing from the first processing means to the second processing means and causes message processing to be transferred from the first to the second processing means.

10. A system according to any of the preceding claims, wherein the first processing means (16) is designated a home processing means for the message and the control means (10) controls routing responsive to which processing means is the home processing means, availability of the home and second processing means, available message storage on the home and second processing means and availability of message ports to the home and second processing means.

11. A system as recited in claim 10, wherein the control means (10) routes in accordance with

$$P(I) = W1^*H(I) + W2^*RS(I) + W3^*PA(I)$$

where I is an index specifying one of the processing means, W1-W3 are weights, H is an indicator indicating whether the one of the processing means is the home processing means, RS is available storage on the one of the processing means, PA is a number of the message ports unoccupied on the one of the processing means and P is a message placement value, and the one of the processing means with the highest message placement value processes the message through the switching means (14).

12. A system according to claim 11, wherein the weights W1-W3 are set to select the home processing means (16) when the home processing means is available, has at least one unoccupied message port and has sufficient storage for the message.

13. A system according to any of the preceding claims, wherein each processing means (16-24) can process more than one message simultaneously.

14. A system according to any of the preceding claims, further comprising an internal network (28)

BLUEPRINT 000289

Case 1:20-cv-20403-MGC   Document 12-3   Entered on FLSD Docket 03/18/2020   Page 291 of 436

connected to the first and second processing means (16-24) and the control means (10,12), the network carrying the message between the first and second processing means and data between the processing means and the control means.

15. A system according to any of the preceding claims, wherein the message is stored locally in one of the processing means (16,24)

16. A system according to any of the preceding claims, wherein the message is a voice message.

17. A system according to any of the preceding claims, wherein the second message processing means includes a message cache for receiving and storing the message from the first processing means.

18. A system according to claim 17, wherein when a broadcast message is stored in the first processing means and a user accesses the second processing means, the second processing means obtains the broadcast message from the first processing means, stores the broadcast message in the cache and provides the message to the user.

19. A system according to any of the preceding claims, wherein the system serves at least two users, each user having a message box, the control means storing user message box information and sending the message box information to the one of the processing means processing the message.

20. A system according to claim 19, wherein the system processes at least first and second messages stored in the processing means and the control means includes a list of message storage locations for each user indicating which of the processing means stores the first and second messages.

21. A system according to claim 20, wherein when the message is to go to each of two users, the processing means which receives the message indicates to the control means (10) an identity of the users, and the control means adds a location of the message to the message box information for each of the two users.

22. A system according to any of the preceding claims, wherein the system is coupled to a telephone switching system and the first processing means sends a telephone number of a location to which a stored message is to be sent to the telephone switching system.

23. A system according to claim 20, wherein when the first processing means is unavailable, the second processing means obtains the stored message from the first processing means, and the routing means (10) controls the switching means (14) to route the stored message from the second processing means to the location.

24. A voice message communication system connected to a central office switching system, said communication system comprising a home voice processing computer, having voice ports, a home message cache and local message storage, processing voice messages and sending voice messages to and receiving voice messages from the central office switching system in accordance with message box information, said home processing computer specified as the home for a users message processing, sending and receiving; a remote processing computer, having voice ports, a remote message cache and local message storage, processing voice messages, sending voice messages to and receiving voice messages from the central office switching system in accordance with the message box information; a digital switching system, connected to the home voice processing computer, the remote processing computer and the central office switching system, for routing messages between the central office switching system and said processing computers; a local area network having a data path and having a message path connecting said home voice processing computer and said remote voice processing computer; a master control computer, connected to said digital switching system and to said home and remote voice processing computers via said data path, storing a message box having the message box information for each user, the message box information listing messages for each user, each list entry indicating which of the processing computers stores each users messages where either processing computer can store a users messages, and the master control unit computer controlling processing by and routing of messages to and from said processing computers through said digital switching system in accordance with $P(I) = W1*H(I) + W2*RS(I) + W3*PA(I)$, where I is an index specifying one of said processing computers, W1 - W3 are weights, H is an indicator indicating whether the one of the processing computers is the home processing computer, RS is an available amount of the local storage for the one of the processing computers, PA is a number of unoccupied voice ports on the one of the processing computers, and P is a message placement value, the one of the processing computers with the highest placement value being selected for processing, sending and/or receiving the voice messages, the weights being set to route messages for the user to said home processing computer when the home processing computer is available, has at least one unoccupied voice port and has sufficient local storage for the messages, the control computer routing a users messages to the remote computer when the home computer is not selected, when one of the processing computers stores one of the messages and the other one of the processing computers is selected for processing the one of the messages, the message is transferred over the message path and

BLUEPRINT 000290

stored in the cache for processing by the selected processing computer if the one of said processing computers is unavailable, message processing being transferred to the one of the processing computers from the other one of the processing computers along with rerouting of the message routing by said digital switching system if the one of the processing computers is available, the master control computer transferring the message box information to the one of the processing computers processing, sending or receiving the messages from the user.

25. A message processing method using a switching system and at least first and second message processing units (16-24) connected to the switching system (14), comprising the steps of:

    a) selecting one of the message processing units for processing a message;

    b) controlling the switching system (14) to route the message to the selected message processing unit; and

    c) processing the call by the selected message processing unit storing and/or playing the message.

26. A method according to claim 25, wherein when the first message processing unit stores the message and the first message processing unit is unavailable step (c) includes the second processing unit processing the message by obtaining the message from the first processing unit.

27. A method according to claim 26, wherein during step (c) the first processing unit suspends operation while the second processing unit processes the message.

28. A method according to claim 26, wherein during step (c) the first processing unit processes a second message while the second processing unit processes the message.

29. A system according to claim 26, wherein during step (c) a message processing state is transferred from the first processing unit to the second processing unit.

30. A method according to any of claims 26 to 29, wherein the second message processing unit includes a message cache for receiving and storing the message from the first processing unit and step (c) includes storing the obtained message in the cache.

31. A method according to any of claims 25 to 30, wherein step (c) includes transferring message processing from the first to the second processing unit when the first message processing unit starts message processing and the second message processing unit stores the message.

32. A method according to any of claims 25 to 31, wherein step (b) includes controlling routing responsive to which processing means is a home processing unit, availability of each of the process-

ing units, available message storage on the processing units and availability of message ports to the processing units.

33. A system according to claim 32, wherein routing is controlled in accordance with

$$P(I) = W1*H(I) + W2*RS(I) + W3*PA(I)$$

where I is an index specifying one of the processing units, W1 - W3 are weights, H is an indicator indicating whether the one of the processing units is the home processing unit, RS is available storage on the one of the processing units, PA is a number of the message ports unoccupied on the one of the processing units and P is a message placement value, and the one of the processing units with the highest message placement value processes the message though the switching system.

34. A system according to claim 33, wherein the weights W1-W3 are set to select the home processing unit when the home processing unit is available, has at least one unoccupied message port and has sufficient storage for the message.

35. A method according to any of claims 25 to 34, wherein a network connecting the first and second processing units carries the message between the processing units.

36. A method according to any of claims 25 to 35, wherein the message is a voice message.

37. A method according to any of claims 25 to 36, wherein step (c) includes sending message box information to the selected one of the processing units processing the message.

38. A method according to any of claims 25 to 37, wherein step (c) includes processing messages responsive to a list of message storage locations for each user indicating which of said processing units store the messages.

39. A method according to any of claims 25 to 38, wherein step (c) includes sending a stored message through the switching system.

40. A method according to claim 39, wherein step (c) includes sending a telephone number of a location to which the stored message is to be sent to the switching system.

41. A method according to claim 40, wherein in step (c) when the first processing unit is unavailable the second processing unit obtains the stored message from the first processing unit, the switching system routes the stored message from the second processing unit to the location.

42. A data structure for a message processing system including at least first and second message processing units and a switching system for switching message routing to the units, the data structure comprising a linked list of message location records each record including a storage location indicator indicating which message processing unit stores the message and for controlling switching by

BLUEPRINT 000291

27                    EP 0 412 799 A2                    28

the switching system and interunit message transfer by the message processing units.

43. A data structure according to claim 42, further comprising telephone number storage for storing a telephone number of an external location to which a message can be sent.

44. A data structure according to claim 42 or claim 43, further comprising a message box for each user storing locations of messages for that user.

45. A data structure according to any of claims 42 to 44, further comprising a cache accessible by all users and for storing a broadcast message.

5

10

15

20

25

30

35

40

45

50

55

16

BLUEPRINT 000292

EP 0 412 799 A2



FIG. 1

BLUEPRINT 000293

EP 0 412 799 A2

# FIG. 2



BLUEPRINT 000294

EP 0 412 799 A2

# FIG. 3



BLUEPRINT 000295

EP 0 412 799 A2



FIG. 4

BLUEPRINT 000296

EP 0 412 799 A2



FIG. 5

BLUEPRINT 000297

EP 0 412 799 A2



FIG. 6

BLUEPRINT 000298

EP 0 412 799 A2



FIG. 7

BLUEPRINT 000299

EP 0 412 799 A2



FIG. 8

FIG. 9

BLUEPRINT 000300

PTO-1390 (Rev. 02-2005)
Approved for use through 3/31/2007. OMB 0651-0021
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| TRANSMITTAL LETTER TO THE UNITED STATES DESIGNATED/ELECTED OFFICE (DO/EO/US) CONCERNING A FILING UNDER 35 U.S.C. 371 | ATTORNEY'S DOCKET NUMBER 2003P18829WOUS |
|---|---|
| | U.S. APPLICATION NO. (If Known, see 37 CFR1.5) 10/582,669 |

| INTERNATIONAL APPLICATION NO. PCT/EP2004/051925 | INTERNATIONAL FILING DATE AUGUST 26, 2004 | PRIORITY DATE CLAIMED DECEMBER 12, 2003 |
|---|---|---|

TITLE OF INVENTION
**METHOD FOR PROTECTION SWITCHING OF GEOGRAPHICALLY SEPARATE SWITCHING SYSTEMS**

APPLICANT(S) FOR DO/EO/US
**NORBERT LÖBIG, JÜRGEN TEGELER**

Applicant herewith submits to the United States Designated/Elected Office (DO/EO/US) the following items and other information:

1. [X] This is a **FIRST** submission of items concerning a filing under 35 U.S.C. 371.
2. [ ] This is a **SECOND** or **SUBSEQUENT** submission of items concerning a submission under 35 U.S.C. 371.
3. [ ] This is an express request to begin national examination procedures (35 U.S.C. 371(f)). The submission must include items (5), (6), (9) and (21) indicated below.
4. [ ] The US has been elected (Article 31).
5. [X] A copy of the International Application as filed (35 U.S.C. 371(c)(2))
   a. [X] is attached hereto (required only if not communicated by the International Bureau).
   b. [ ] has been communicated by the International Bureau.
   c. [ ] is not required, as the application was filed in the United States Receiving Office (RO/US).
6. [X] An English language translation of the International Application as filed (35 U.S.C. 371 (c)(2)).
   a. [X] is attached hereto.
   b. [ ] has been previously submitted under 35 U.S.C. 154(d)(4).
7. [ ] Amendments to the claims of the International Application under PCT Article 19 (35 U.S.C. 371(c)(3))
   a. [ ] are attached hereto (required only if not communicated by the International Bureau).
   b. [ ] have been communicated by the International Bureau.
   c. [ ] have not been made; however, the time limit for making such amendments has NOT expired.
   d. [ ] have not been made and will not be made.
8. [ ] An English language translation of the amendments to the claims under PCT Article 19 (35 U.S.C. 371(c)(3)).
9. [X] An oath or declaration of the inventor(s) (35 U.S.C. 371 (c)(4)).
10. [ ] An English language translation of the annexes of the International Preliminary Examination Report under PCT Article 36 (35 U.S.C. 371(c)(5)).

Items 11 to 20 below concern document(s) or information included:

11. [X] An Information Disclosure Statement under 37 CFR 1.97 and 1.98.
12. [X] An assignment document for recording. A separate cover sheet in compliance with 37 CFR 3.28 and 3.31 is included.
13. [X] A preliminary amendment.
14. [ ] An Application Data Sheet under 37 CFR 1.76.
15. [X] A substitute specification.
16. [ ] A power of attorney and/or change of address letter.
17. [ ] A computer-readable form of the sequence listing in accordance with PCT Rule 13ter.2 and 37 CFR 1.821 – 1.825.
18. [ ] A second copy of the published International Application 35 U.S.C. 154(d)(4).
19. [ ] A second copy of the English language translation of the international application under 35 U.S.C. 154(d)(4).
20. [X] Other items or information: (a) RETURN RECEIPT POSTCARD; (b) A POWER OF ATTORNEY IS INCLUDED IN DECLARATION; (c) MARKED UP VERSION OF SUBSTITUTE SPECIFICATION; (d) COVER PAGE OF PCT APPLICATION PCT/EP2004/051925; (e) INTERNATIONAL SEARCH REPORT; (f) WRITTEN OPINION OF THE INTERNATIONAL SEARCHING AUTHORITY IN GERMAN AND ENGLISH.

This collection of information is required by 37 CFR 1.414 and 1.491-1.492. The information is required to obtain or retain a benefit by the public, which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 15 minutes to complete, Including gathering information, preparing, and submitting the completed form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Mail Stop PCT, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

BLUEPRINT 000301

**TRANSMITTAL LETTER TO THE UNITED STATES**

PTO-1390 (Rev. 02-2005)
Approved for use through 3/31/2007. OMB 0651-0021
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| U.S. APPLICATION NO. (if known, see 37 CFR 1.5) | INTERNATIONAL APPLICATION NO. | ATTORNEY'S DOCKET NUMBER | |
|---|---|---|---|
| 10/582 589 | PCT/EP2004/051925 | 2003P18829WOUS | |

| The following fees are submitted: | | CALCULATIONS | PTO USE ONLY |
|---|---|---|---|
| 21. [X] Basic national fee .............................................................. $ 300 | | $ 300.00 | |
| 22. [X] Examination fee<br>If International preliminary examination report prepared by USPTO and all claims satisfy provisions of<br>PCT Article 33(1)-(4) ............................................................. $ 100<br>All other situations ................................................................ $ 200 | | $ 200.00 | |
| 23. [X] Search fee<br>Search fee (37 CFR 1.445(a)(2)) has been paid on the international application to the USPTO as an<br>International Searching Authority............................................... $ 100<br>International Search Report prepared and provided to the Office....................... $ 400<br>All other situations ............................................................... $ 500 | | $ 400.00 | |
| **TOTAL OF 21, 22 AND 23 =** | | $ | |

| [ ] Additional fee for specification and drawings filed in paper over 100 sheets (excluding<br>sequence listing or computer program listing filed in an electronic medium).<br>The fee is $250 for each additional 50 sheets of paper or fraction thereof. | | | | |
|---|---|---|---|---|
| Total Sheets | Extra sheets | Number of each additional 50 or fraction<br>thereof (round up to a whole number) | RATE | |
| - 100 = | /50 = | | X   $250 | |

| Surcharge of $130.00 for furnishing the oath or declaration later than 30 months from the earliest<br>claimed priority date (37 CFR 1.492(h)). | | | $ | |
|---|---|---|---|---|
| CLAIMS | NUMBER FILED | NUMBER EXTRA | RATE | $ |
| Total Claims | 17   - 20 = | | x  $ 50 | $ |
| Independent claims | 1   - 3 = | | x  $200 | $ |
| MULTIPLE DEPENDENT CLAIMS(S) (if applicable) | | | +  $ 360 | $ |
| **TOTAL OF ABOVE CALCULATIONS  =** | | | | |

| [ ] Applicant claims small entity status. See 37 CFR 1.27. Fees above are reduced by ½. | | |
|---|---|---|
| **SUBTOTAL  =** | $ | 900.00 |
| Processing fee of $130.00 for furnishing the English translation later than 30 months from the earliest<br>claimed priority date (37 CFR 1.492(i)). | + | $ |
| **TOTAL NATIONAL FEE =** | | $ |
| Fee for recording the enclosed assignment (37 CFR 1.21(h)). The assignment must be accompanied<br>by an appropriate cover sheet (37 CFR 3.28, 3.31).  $40.00 per property | + | $ |
| **TOTAL FEES ENCLOSED  =** | | $   900.00 |

| | Amount to be refunded: | $ |
|---|---|---|
| | Amount to be charged: | $ |

a. [ ] A check in the amount of $ _____ to cover the above fees is enclosed.

b. [X] Please charge my Deposit Account No. _____ 19-2179 _____ in the amount of $ _____ 900.00 _____ to cover the above fees.
A duplicate copy of this sheet is enclosed.

c. [X] The Commissioner is hereby authorized to charge any additional fees which may be required, or credit any overpayment to Deposit
Account No. _____ 19-2179 _____. A duplicate copy of this sheet is enclosed.

d. [ ] Fees are to be charged to a credit card. **WARNING: Information on this form may become public. Credit card information should not
be included on this form.** Provide credit card information and authorization on PTO-2038.

NOTE: Where an appropriate time limit under 37 CFR 1.495 has not been met, a petition to revive (37 CFR 1.137(a) or (b)) must be filed
and granted to restore the International Application to pending status.

SEND ALL CORRESPONDENCE TO:
Siemens Corporation
Intellectual Property Department
170 Wood Avenue South
Iselin, NJ 08830
732-321-3026

_____
SIGNATURE

| JOHN P. MUSONE | JUNE 9, 2006 |
|---|---|
| NAME | DATE |
| 407-736-6449 | |
| 44,961 | |
| REGISTRATION NUMBER | |

BLUEPRINT 000302

PTO-1390 (Rev. 02-2005)
Approved for use through 3/31/2007. OMB 0651-0021
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| TRANSMITTAL LETTER TO THE UNITED STATES DESIGNATED/ELECTED OFFICE (DO/EO/US) CONCERNING A FILING UNDER 35 U.S.C. 371 | ATTORNEY'S DOCKET NUMBER |
|---|---|
| | 2003P18829WOUS |
| | U.S. APPLICATION NO. (If Known, see 37 CFR1.5) |
| | 10/582,869 |

| INTERNATIONAL APPLICATION NO. | INTERNATIONAL FILING DATE | PRIORITY DATE CLAIMED |
|---|---|---|
| PCT/EP2004/051925 | AUGUST 26, 2004 | DECEMBER 12, 2003 |

TITLE OF INVENTION

**METHOD FOR PROTECTION SWITCHING OF GEOGRAPHICALLY SEPARATE SWITCHING SYSTEMS**

APPLICANT(S) FOR DO/EO/US

**NORBERT LÖBIG, JÜRGEN TEGELER**

Applicant herewith submits to the United States Designated/Elected Office (DO/EO/US) the following items and other information:

1. [X] This is a **FIRST** submission of items concerning a filing under 35 U.S.C. 371.

2. [ ] This is a **SECOND** or **SUBSEQUENT** submission of items concerning a submission under 35 U.S.C. 371.

3. [ ] This is an express request to begin national examination procedures (35 U.S.C. 371(f)). The submission must include items (5), (6), (9) and (21) indicated below.

4. [ ] The US has been elected (Article 31).

5. [X] A copy of the International Application as filed (35 U.S.C. 371(c)(2))

    a. [X] is attached hereto (required only if not communicated by the International Bureau).

    b. [ ] has been communicated by the International Bureau.

    c. [ ] is not required, as the application was filed in the United States Receiving Office (RO/US).

6. [X] An English language translation of the International Application as filed (35 U.S.C. 371 (c)(2)).

    a. [X] is attached hereto.

    b. [ ] has been previously submitted under 35 U.S.C. 154(d)(4).

7. [ ] Amendments to the claims of the International Application under PCT Article 19 (35 U.S.C. 371(c)(3))

    a. [ ] are attached hereto (required only if not communicated by the International Bureau).

    b. [ ] have been communicated by the International Bureau.

    c. [ ] have not been made; however, the time limit for making such amendments has NOT expired.

    d. [ ] have not been made and will not be made.

8. [ ] An English language translation of the amendments to the claims under PCT Article 19 (35 U.S.C. 371(c)(3)).

9. [X] An oath or declaration of the inventor(s) (35 U.S.C. 371 (c)(4)).

10. [ ] An English language translation of the annexes of the International Preliminary Examination Report under PCT Article 36 (35 U.S.C. 371(c)(5)).

Items 11 to 20 below concern document(s) or information included:

11. [X] An Information Disclosure Statement under 37 CFR 1.97 and 1.98.

12. [X] An assignment document for recording. A separate cover sheet in compliance with 37 CFR 3.28 and 3.31 is included.

13. [X] A preliminary amendment.

14. [ ] An Application Data Sheet under 37 CFR 1.76.

15. [X] A substitute specification.

16. [ ] A power of attorney and/or change of address letter.

17. [ ] A computer-readable form of the sequence listing in accordance with PCT Rule 13ter.2 and 37 CFR 1.821 – 1.825.

18. [ ] A second copy of the published International Application 35 U.S.C. 154(d)(4).

19. [ ] A second copy of the English language translation of the international application under 35 U.S.C. 154(d)(4).

20. [X] Other items or information: (a) RETURN RECEIPT POSTCARD; (b) A POWER OF ATTORNEY IS INCLUDED IN DECLARATION; (c) MARKED UP VERSION OF SUBSTITUTE SPECIFICATION; (d) COVER PAGE OF PCT APPLICATION PCT/EP2004/051925; (e) INTERNATIONAL SEARCH REPORT; (f) WRITTEN OPINION OF THE INTERNATIONAL SEARCHING AUTHORITY IN GERMAN AND ENGLISH.

This collection of information is required by 37 CFR 1.414 and 1.491-1.492. The information is required to obtain or retain a benefit by the public, which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 15 minutes to complete, Including gathering information, preparing, and submitting the completed form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Mail Stop PCT, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

BLUEPRINT 000303

PTO-1390 (Rev. 02-2005)
Approved for use through 3/31/2007. OMB 0651-0021
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| U.S. APPLICATION NO. (if known, see 37 CFR 1.5) 10/582 289 | INTERNATIONAL APPLICATION NO. PCT/EP2004/051925 | ATTORNEY'S DOCKET NUMBER 2003P18829WOUS | |
|---|---|---|---|
| The following fees are submitted: | | CALCULATIONS | PTO USE ONLY |

| | | CALCULATIONS | PTO USE ONLY |
|---|---|---|---|
| 21. [X] Basic national fee.............................................................. $ 300 | | $ 300.00 | |
| 22. [X] Examination fee<br>If International preliminary examination report prepared by USPTO and all claims satisfy provisions of<br>PCT Article 33(1)-(4) ..................................................... $ 100<br>All other situations................................................................ $ 200 | | $ 200.00 | |
| 23. [X] Search fee<br>Search fee (37 CFR 1.445(a)(2)) has been paid on the international application to the USPTO as an<br>International Searching Authority............................................. $ 100<br>International Search Report prepared and provided to the Office................... $ 400<br>All other situations................................................................ $ 500 | | $ 400.00 | |

| TOTAL OF 21, 22 AND 23 = | $ |
|---|---|

[ ] Additional fee for specification and drawings filed in paper over 100 sheets (excluding
sequence listing or computer program listing filed in an electronic medium).
The fee is $250 for each additional 50 sheets of paper or fraction thereof.

| Total Sheets | Extra sheets | Number of each additional 50 or fraction thereof (round up to a whole number) | RATE | |
|---|---|---|---|---|
| - 100 = | /50 = | | X $250 | |

Surcharge of $130.00 for furnishing the oath or declaration later than 30 months from the earliest
priority date (37 CFR 1.492(h)).                    $

| CLAIMS | NUMBER FILED | NUMBER EXTRA | RATE | |
|---|---|---|---|---|
| Total Claims | 17 - 20 = | | x $ 50 | $ |
| Independent claims | 1 - 3 = | | x $200 | $ |
| MULTIPLE DEPENDENT CLAIMS(S) (if applicable) | | | + $ 360 | $ |
| TOTAL OF ABOVE CALCULATIONS = | | | | |

[ ] Applicant claims small entity status. See 37 CFR 1.27. Fees above are reduced by ½.

| SUBTOTAL = | $ 900.00 |
|---|---|

Processing fee of $130.00 for furnishing the English translation later than 30 months from the earliest
claimed priority date (37 CFR 1.492(i)).                    +

| TOTAL NATIONAL FEE = | $ |
|---|---|

Fee for recording the enclosed assignment (37 CFR 1.21(h)). The assignment must be accompanied
by an appropriate cover sheet (37 CFR 3.28, 3.31). $40.00 per property                    +

| TOTAL FEES ENCLOSED = | $ 900.00 |
|---|---|

| | Amount to be refunded: | $ |
|---|---|---|
| | Amount to be charged: | $ |

a. [ ] A check in the amount of $ _____ to cover the above fees is enclosed.
b. [X] Please charge my Deposit Account No. ___19-2179___ in the amount of $ ___900.00___ to cover the above fees.
   A duplicate copy of this sheet is enclosed.
c. [X] The Commissioner is hereby authorized to charge any additional fees which may be required, or credit any overpayment to Deposit
   Account No. ___19-2179___. A duplicate copy of this sheet is enclosed.
d. [ ] Fees are to be charged to a credit card. **WARNING: Information on this form may become public. Credit card information should not
   be included on this form.** Provide credit card information and authorization on PTO-2038.

NOTE: Where an appropriate time limit under 37 CFR 1.495 has not been met, a petition to revive (37 CFR 1.137(a) or (b)) must be filed
and granted to restore the International Application to pending status.

SEND ALL CORRESPONDENCE TO:
Siemens Corporation
Intellectual Property Department
170 Wood Avenue South
Iselin, NJ 08830
732-321-3026

_____
SIGNATURE

JOHN P. MUSONE                    JUNE 9, 2006
NAME                                             DATE
407-736-6449

44,961
REGISTRATION NUMBER

BLUEPRINT 000304

10/582589

AP3 Rec'd PCT/PTO 09 JUN 2005

PCT/EP2004/051925 / 2003P18829WOUS

1

Description


Method for protection switching of geographically separate
switching systems

5

Contemporary switching systems (switches) possess a high
degree of internal operational reliability owing to the
redundant provision of important internal components. This
means that a very high level of availability of the switching-
10   oriented functions is achieved in normal operation. If,
however, external influencing factors occur on a massive scale
(e.g. fire, natural disasters, terrorist attacks, consequences
of war, etc.), the precautionary measures taken to increase
operational reliability are generally of little use, since the
15   original and replacement components of the switching system
are located at the same place and so in a disaster scenario of
said kind there is a high probability that both components
have been destroyed or rendered incapable of operation.


20   A 1:1 redundancy has been proposed as a solution. Accordingly
it is provided to assign each switching system requiring
protection an identical clone as a redundancy partner having
identical hardware, software and database. The clone is in the
powered-up state, but is nonetheless not active in terms of
25   switching functions. Both switching systems are controlled by
a realtime-capable monitor, ranked at a higher level in the
network hierarchy, which controls the switchover operations.


The object underlying the invention is to specify a method for
30   protection switching of switching systems which ensures an
efficient switchover of a failed switching system to a
redundancy partner in the event of a fault.

BLUEPRINT 000305

PCT/EP2004/051925 / 2003P18829WOUS

2

Proceeding from the features claimed in the preamble of claim 1, this object is achieved by the features claimed in the characterizing part.

5      According to the invention a protocol is proposed which is executed between a higher-level realtime-capable monitor and the active switching system on the one side, and the hot-standby switching system on the other side. The protocol is based on the standard IP protocols BOOTP / DHCP which are

10     usually supported by every IP implementation. This solution can therefore be implemented in any switching system with IP-based interfaces with minimal implementation overhead. The solution is comprehensively deployable and cost-effective, because essentially only the outlay for the monitor is

15     incurred. Furthermore, it is extremely robust thanks to the use of simple, standardized IP protocols. Control errors due to temporary outages in the IP core network are rectified automatically after the outage has been terminated. A dual monitor failure likewise represents no problem in this

20     variant.

A significant advantage of the invention is to be seen in the fast that in the course of the switchover operation from an active switching system to a hot-standby switching system no

25     network management and no form of central control unit to support the switchover operations are required in the participating switching systems. To that extent it is irrelevant whether the switching system has a central control unit or not. This means that the invention is also applicable

30     to routers, which - in contrast to the traditional switching system - generally have no central control unit of said kind.

The invention is explained in more detail below with reference to a schematically represented exemplary embodiment. According

BLUEPRINT 000306

PCT/EP2004/051925 / 2003P18829WOUS

3

to the invention it is provided to assign each switching system requiring protection (e.g. $S_1$) an identical clone as a redundancy partner (e.g. $S_{1b}$) with identical hardware, software and database. The clone is in the powered-up state, but is
5   nonetheless not active in terms of switching functions ("hot standby" operating state). In this way a highly available 1:1 redundancy of switching systems distributed over a plurality of locations is defined.

10   The two switching systems (switching system $S_1$ and the clone or redundancy partner $S_{1b}$) are controlled by a network management system NM. The control is implemented in such a way that the current status of the database and the software of the two switching systems $S_1$, $S_{1b}$ is kept identical. This is achieved
15   in that every operation-oriented command, every configuration command and every software update including patches is delivered in identical fashion to both partners. In this way a physically remote clone identical to a switch that is in operation is defined with identical database and identical
20   software revision level.

The database basically contains all semi-permanent and permanent data. In this context permanent data is understood to mean the data which is stored as code in tables and which
25   can only be changed by means of a patch or software update. Semi-permanent data refers to the data which enters the system e.g. via the user interface and which is stored there for a relatively long period in the form of the input. Except for the configuration statuses of the system, this data is
30   generally not modified by the system itself. The database does not contain the transient data accompanying a call, which data the switching system stores only temporarily and which generally has no significance beyond the duration of a call, or status information which consists of transient

BLUEPRINT 000307

PCT/EP2004/051925 / 2003P18829WOUS

4

overlays/supplements to configuratively predetermined basic
states. (For example, although a port could be active in the
basic state, it may not be accessible at the present time due
to a transient (transitory) fault).

5

In addition, the switching systems $S_1$, $S_{1b}$ both have at least
one active, packet-oriented interface to the common network
management system NM. According to the present exemplary
embodiment these are to be the two interfaces $IF_1$. In this case

10   the two interfaces $IF_1$ assume an active operating state
("act"). However, whereas in the case of switching system S1
all the remaining packet-oriented interfaces $IF_2...IF_n$ are also
active, in the case of switching system $S_{1b}$, in contrast, the
remaining interfaces are in the operating state "idle". The

15   state "idle" means that the interfaces permit no exchange of
messages, but can be activated from an external point, i.e. by
a higher-level, realtime-capable monitor located outside of
switching system $S_1$ and switching system $S_{1b}$. The monitor can
be implemented in hardware or software and in the event of a

20   fault switches over in real time to the clone. Real time, in
this case, means a time span of 1 to 2 seconds. According to
the present exemplary embodiment the monitor is embodied as
control device SC and duplicated for security reasons (local
redundancy).

25

The interfaces $I_n$ are packet-based and so represent
communication interfaces to packet-based peripheral devices
(such as e.g. IAD, MG, SIP proxy devices), remote packet-based
switches, packet-based media servers. They are controlled

30   indirectly by the monitor which is embodied as a control
device SC (Switch Controller). This means that the control
device SC can activate and deactivate the interfaces $IF_n$ and
therefore switch back and forth at will between the operating
states "act" and "idle".

BLUEPRINT 000308

PCT/EP2004/051925 / 2003P18829WOUS

5

The configuration according to the figure is to be regarded as
a default configuration. This means that switching system $S_1$ is
active in terms of switching functions, while switching system
5   $S_{1b}$ is in a "hot standby" operating state. This state is
characterized by an up-to-date database and full activity of
all components except for the packet-based interfaces (and
possibly the processing of switching-oriented events). The
(geographically redundant) switching system $S_{1b}$ can therefore
10   be switched over quickly (in real time) by the control device
SC into the active state in terms of switching-oriented
functions by activation of the interfaces $IF_2..IF_n$. The
interface $IF_1$ is also active on the hot standby switching
system, because it describes the interface to the network
15   management, which interface must always be active.

It is to be regarded as a significant aspect that the two
geographically redundant switching systems $S_1$, $S_{1b}$ as well as
the network management NM and the duplicated control device SC
20   must each be clearly separated geographically.

The control device SC transmits the current operating state of
the switching systems $S_1$ and $S_{1b}$ (act/hot-standby, status of
the interfaces) as well as its own operating state to the
25   network management NM s. The functions of the control device
SC can optionally be performed partially or in full by the
network management NM. For security reasons the network
management NM should have the functionality to be able also to
effect the above described switchovers manually. Optionally,
30   the automatic switchover can be blocked so that the switchover
can only be performed manually.

The switching systems $S_1$ and $S_{1b}$ can also perform their own
regular checks to determine whether their packet-based

BLUEPRINT 000309

PCT/EP2004/051925 / 2003P18829WOUS

6

interfaces are active. If this is not the case for the
interfaces $IF_2..IF_n$, it can be concluded that they are in the
"hot standby" state and certain alarms which are produced as a
result of the non-availability of the interfaces $IF_2..IF_n$ can
5    be selectively blocked. The transition of a switch from "hot
standby" to "active" can also be detected in this way. This
enables targeted measures to be taken if necessary at the
start of the switching operations.

10   The packet addresses (IP addresses) of the interfaces $I_{2..n}$ of
switching system $S_1$ and their respective partner interfaces of
switching system $S_{1b}$ can be identical, but do not have to be.
If they are identical, the switchover is noticed only by the
front-end router. For the partner application in the network,
15   on the other hand, it is completely transparent. This is a new
application and generalization of the IP failover function. If
the protocol which serves an interface permits a switchover of
the communication partner to a different packet address, as is
the case, for example, with the H.248 protocol (a media
20   gateway can independently establish a new connection to
another media gateway controller with a different IP address),
the IP addresses can also be different.

In an embodiment of the invention it is provided to use the
25   central computer of a further switching system as the control
device SC. As a result there then exists a control device with
maximum availability.

In a development of the invention consideration is given to
30   the establishment of a direct communication interface between
switching system $S_1$ and switching system $S_{1b}$. This can be used
for updating the database e.g. with regard to SCI (Subscriber
Controlled Input) and charge data as well as for exchanging
transient data of individual connections or important further

BLUEPRINT 000310

PCT/EP2004/051925 / 2003P18829WOUS

7

transient data (e.g. H.248 Association Handle). In this way
the disruptions to operation can be minimized from the
subscriber and operator perspective. The semi-permanent and
transient data can then be transferred from the respective

5   active switching system into the redundant hot-standby
switching system in a cyclical time frame (update). The update
of the SCI data has the advantage that the cyclical restore on
the hot-standby system is avoided and SCI data in the hot-
standby system is always up-to-date. As a result of the update

10   of stack-relevant data, such as the H.248 Association Handle,
the takeover by a standby system can be hidden from the
peripherals and the downtimes can be reduced even more
considerably.


15   Essentially, the IP addresses of all network components must
be known in the network. The allocation of the IP addresses is
controlled when the entire IP network device is powered up.
For this purpose there is provided in the network a server
(BOOTP server) which communicates via a BOOTP protocol with

20   the clients that are to be powered up. At startup the network
components (client), such as, for example, the switching
systems $S_1$, $S_{1b}$, request the IP addresses from the BOOTP server
with the aid of the BOOTP protocol. Once these IP addresses
have been received, the respective component's own MAC address

25   (network-wide hardware address) and own IP address are thus
known in all network components. Since this assignment is not
yet known in the network, this information is communicated by
the network components to other network components (client,
router) in the course of a broadcast message. A separate

30   protocol (ARP protocol, Address Resolution Protocol) is used
for this purpose.


According to the invention a protocol, referred to in the
following as the HSCB protocol (HSCB: Hot-Standby Control

**BLUEPRINT 000311**

PCT/EP2004/051925 / 2003P18829WOUS

8

Protocol), is proposed for monitoring and for switching over
from an active switching system to a redundantly arranged
switching system. Said HSCB protocol is executed between the
control device SC and the switching system $S_1$ as well as

5   between the control device SC and the switching system $S_{1b}$. It
is essential that the protocol is able to bring the switching
system $S_1$ into an active ("act") or a "hot standby" operating
state after startup (recovery). In addition the switching
system in the active (and optionally also the system in the

10  "hot standby") operating state has to be monitored and the
necessary switchovers have to be initiated in the event of a
fault (active switching system goes to hot-standby/hot-standby
switching system goes to active). Optionally, it can be
explicitly communicated to switching systems $S_1$ and $S_{1b}$ whether

15  they are in the active or hot-standby state.


The following rules are specified in the HSCB protocol between
the control device SC and the switching system $S_1$ or, as the
case may be, $S_{1b}$:

20

If a packet-based interface of a switching system is in the
operating state "IDLE", it sends IP address requests ("BOOTP
request") to the control device SC at regular intervals. In
this case it is not necessary for the control device SC to

25  answer these BOOTP requests of the interfaces of the switching
system: this is done only for the address requests from the
switching system that is identified as active to the control
device SC. In the case of a positive response from the control
device SC, the packet-based interface is placed into the

30  active operating state ("act"). If there is no (or a negative)
response from the control device SC, the packet-based
interfaces that are in the inactive operating state remain in
the inactive operating state ("IDLE"). After the booting
sequence all the packet-based interfaces are in the inactive

BLUEPRINT 000312

PCT/EP2004/051925 / 2003P18829WOUS

9

operating state ("IDLE"). An interface in the active operating
state does not need to send any address requests ("IP
Request") to the control device SC.

5    The control device SC, for its part, sends monitoring messages
     at regular intervals to the packet-based interfaces, which
     must respond to these messages only if they are active. By
     means of a special message the control device SC can bring a
     packet-based interface from the active operating state into
10   the inactive operating state ("IDLE").

     The startup of the network configuration is described below.
     After startup, all the interfaces of switching systems $S_1$ and
     $S_{1b}$ are always in the inactive operating state "IDLE". The
15   control device SC is now to be the BOOTP server for switching
     systems $S_1$ and $S_{1b}$. This means that at startup time the IP
     interfaces of switching system $S_1$ and/or switching system $S_{1b}$
     fetch their IP addresses via BOOTP request from the control
     device SC. The control device SC is aware of the existence of
20   both switching systems as well as of the operating state
     (act/hot-standby) still to be assumed by these. The control
     device SC implicitly communicates to the two switching systems
     $S_1$, $S_{1b}$ the operating state that they have to assume after
     startup. On the one hand this is effected for the switching
25   system $S_{1b}$ that is to be defined as hot-standby in that the
     control device SC does not respond to the BOOTP requests of
     the interfaces $IF_2...IF_n$. Consequently, these interfaces have
     no IP addresses and remain in the inactive operating state
     ("IDLE"). However, they continue sending BOOTP requests at
30   regular intervals to the control device SC, which in the
     normal state continues not to respond to these requests. On
     the other hand this is effected for the switching system $S_1$
     that is to be defined as active in that the control device SC
     responds to all BOOTP requests (through communication of the

BLUEPRINT 000313

10

IP address), as a result of which all interfaces are activated. DHCP requests can also be taken instead of BOOTP requests.

5    The system consisting of active switching system and clone thus assumes the state provided (in the control device SC), which is defined as the fault-free normal state. In this state the cyclical BOOTP requests of the interfaces of the clone continue not to be answered, as a result of which these also

10   continue not to have their IP addresses. The active interfaces of switching system $S_1$ send no BOOTP requests. In this normal state the control device SC now sends monitoring messages cyclically to the interfaces of the active switching system, which messages have to be answered by the active interfaces.

15   If this is the case, it can be assumed that the active switching system also continues to be in a fault-free operating state, as a result of which the active operating state is maintained. Since the cyclical BOOTP requests from the clone also continue to arrive (and also continue not to be

20   answered), it can likewise be assumed that the clone too is in a fault-free operating state (still "IDLE", as previously). The control device SC has therefore stored the knowledge of the functional integrity of the active switching system and also of the clone. This knowledge is always kept at the latest

25   level by means of the acknowledgement of the cyclical monitoring messages and the cyclical BOOTP requests of the clone.

In the scenario described below let a serious failure of

30   switching system $S_1$ be assumed. Owing to the geographical redundancy there is a high probability that the clone (switching system $S_{1b}$), like the control device SC, is also unaffected. The failure of switching system $S_1$ is identified by

BLUEPRINT 000314

PCT/EP2004/051925 / 2003P18829WOUS

11

the control device SC, which also controls the corresponding
switchover operations to switching system $S_{1b}$:

The failure of switching system S1 is detected by the control
5    device SC due to the fact that the monitoring messages are no
longer acknowledged. However, a predefinable number of
interfaces (configurable, optionally also all) should apply as
the failure criterion, and not simply a loss of communication
with all the interfaces. Thus, if no acknowledgements for this
10   predefinable number of interfaces of switching system $S_1$ arrive
at the control device SC for a relatively long period (e.g. 1
min.), it is concluded that a serious failure of switching
system S1 has occurred. This criterion is sufficient to
initiate a switchover from switching system $S_1$ to switching
15   system $S_{1b}$.

In this case the control device SC initially places still
active interfaces of switching system $S_1$ into the inactive
operating state ("IDLE") with the aid of a special message.
20   This message is embodied such that the interfaces of switching
system $S_1$ are prompted to release their IP addresses. To be on
the safe side, the message is supplied to all the interfaces
of switching system $S_1$ (i.e. also to those that have failed)
and cyclically repeated until the BOOTP requests from the now
25   inactive interfaces arrive at the control device SC. Switching
system $S_1$ is therefore in the inactive operating state.

The BOOTP requests still cyclically arriving as previously
from $S_{1b}$ are now answered by the control device SC in that the
30   interfaces of the hitherto inactive clone are notified of
their IP addresses. As a result switching system $S_{1b}$ assumes an
active operating state. Switching system $S_{1b}$ is thus ready for
switching operation and can take over the functions of
switching system S1.

BLUEPRINT 000315

PCT/EP2004/051925 / 2003P18829WOUS

12

The advantage of this approach lies in the avoidance of the "split brain" scenario. The interfaces of switching system $S_1$ are to remain in the inactive operating state even after the recovery of switching system $S_1$. Switching system $S_1$ is therefore deactivated in terms of switching functions until the next switchover. In order to keep the time interval of inconsistent interface states in switching system $S_{1b}$ as short as possible, the requests could be triggered in switching system $S_{1b}$.

Several failure scenarios are discussed below:

For the solution according to the invention, a total failure of the control device SC (dual failure of the two halves) represents no problem, in particular since such a case is extremely unlikely. In this embodiment variant this does not disrupt normal switching operation. Only the automatic switchover function of the control device SC is no longer present. Should a switchover become necessary during this time, it can be performed manually by the network management NM.

Similarly, a disruption to the communication between switching system $S_1$ and control device SC can be intercepted. In this case there is a very small probability that the "split brain" scenario can occur. This means that the two switching systems $S_1$, $S_{1b}$ simultaneously assume an active operating state and both also use the same IP addresses.

In order to rule out this complete scenario it is proposed to introduce a mutual monitoring for act / stb between switching system $S_1$ and switching system $S_{1b}$. The monitoring can use the same mechanisms as described above. Thus, for example, a

BLUEPRINT 000316

PCT/EP2004/051925 / 2003P18829WOUS

13

dedicated IP interface of switching system $S_{1b}$ (hot standby) can send BOOTP requests to its partner interfaces in switching system $S_1$ at regular intervals and monitor whether its partner interface is active. If switching system $S_{1b}$ is now to go from
5    hot-standby to active, a check can first be carried out to determine whether the partner interface has failed (i.e. is no longer sending any responses). If it is still active (which must not be the case if the switchover has been performed correctly and would lead to the "split brain"), the switchover
10   stb -> act in switching system $S_{1b}$ is prevented - and consequently also the "split brain". In this case there is a high probability that switching system $S_1$ is still active.

If a "split brain" scenario should still nonetheless occur at
15   some point, there is still a simple possibility of correction from the network management NM side. According to this, one of the two switching systems is once again placed into the stb operating state and if necessary executes a recovery

PCT/EP2004/051925 / 2003P18829WOUS

14

Claims

1. A method for protection switching of geographically
separate switching systems which are disposed in pairs in a
5   1:1 redundancy arrangement, with one switching system ($S_1$)
being in an active operating state ("act") and the remaining
redundant switching system ($S_{1b}$) being in a hot-standby
operating state ("idle"),
characterized in that
10  a communication is controlled in each case between the
switching system ($S_1$) in the active operating state as well as
the associated redundant switching system in the hot-standby
operating state and a higher-level monitor (SC) in accordance
with the operating state of the two switching systems, and
15  in the event of a loss of communication to the switching
system ($S_1$) in the active operating state, said switching
system is deactivated in real time by the higher-level monitor
(SC) and the switching system ($S_{1b}$) in the hot-standby
operating state is activated.

20

2. The method as claimed in claim 1,
characterized in that
the operating state of a switching system is defined and/or
controlled by a predefinable number of packet-based
25  interfaces.

3. The method as claimed in claim 1, 2,
characterized in that
packet-based interfaces of a switching system defined as hot-
30  standby assume an inactive operating state ("IDLE") and send
IP address requests ("BOOTP request") at regular intervals to
the monitor (SC), which does not respond to these messages
during fault-free operation.

BLUEPRINT 000318

PCT/EP2004/051925 / 2003P18829WOUS

15

4. The method as claimed in claims 1 to 3,
characterized in that
packet-based interfaces of a switching system defined as
active assume an active operating state ("act"), with regular
5    IP address requests ("BOOTP request") to the monitor (SC)
being suppressed.

5. The method as claimed in one of the preceding claims,
characterized in that
10   only in the case of a positive response from the monitor (SC)
is a hitherto inactive, packet-based interface placed into the
active operating state ("act").

6. The method as claimed in one of the preceding claims,
15   characterized in that
monitoring messages are sent by the higher-level monitor (SC)
to the interfaces in the active operating state, said messages
being acknowledged by these interfaces.

20   7. The method as claimed in one of the preceding claims,
characterized in that
if the acknowledgement of the monitoring messages from the
higher-level monitor (SC) fails to arrive it is concluded that
there is a fault and in this case the packet-based interfaces
25   of the hitherto active switching system are placed into an
inactive operating state in a controlled manner by means of a
special message.

8. The method as claimed in one of the preceding claims,
30   characterized in that
if the acknowledgement of the monitoring messages from the
higher-level monitor (SC) fails to arrive it is concluded that
there is a fault and in this case the cyclical IP address

**BLUEPRINT 000319**

PCT/EP2004/051925 / 2003P18829WOUS

16

requests of the inactive interfaces are answered by the positive response.

9. The method as claimed in one of the preceding claims, characterized in that
the positive response from the monitor (SC) contains the IP address of the requesting packet-based interface.

10. The method as claimed in one of the preceding claims, characterized in that
after the fault situation has been rectified, a previously active switching system remains defined as the hot-standby switching system until a new fault situation forces the switchover.

BLUEPRINT 000320

**(12) NACH DEM VERTRAG ÜBER DIE INTERNATIONALE ZUSAMMENARBEIT AUF DEM GEBIET DES PATENTWESENS (PCT) VERÖFFENTLICHTE INTERNATIONALE ANMELDUNG**

**(19) Weltorganisation für geistiges Eigentum**
Internationales Büro



**(43) Internationales Veröffentlichungsdatum**
**23. Juni 2005 (23.06.2005)** **PCT**

**(10) Internationale Veröffentlichungsnummer**
**WO 2005/057853 A1**

**(51) Internationale Patentklassifikation[7]:** H04L 12/24

**(21) Internationales Aktenzeichen:** PCT/EP2004/051925

**(22) Internationales Anmeldedatum:**
26. August 2004 (26.08.2004)

**(25) Einreichungssprache:** Deutsch

**(26) Veröffentlichungssprache:** Deutsch

**(30) Angaben zur Priorität:**
10358344.0    12. Dezember 2003 (12.12.2003)    DE

**(71) Anmelder** *(für alle Bestimmungsstaaten mit Ausnahme von US)*: SIEMENS AKTIENGESELLSCHAFT [DE/DE]; Wittelsbacherplatz 2, 80333 München (DE).

**(72) Erfinder; und**

**(75) Erfinder/Anmelder** *(nur für US)*: LÖBIG, Norbert [DE/DE]; Im Erlich 79, 64291 Darmstadt (DE). TEGELER, Jürgen [DE/DE]; Auf der Leiten 2, 82377 Penzberg (DE).

**(74) Gemeinsamer Vertreter:** SIEMENS AKTIENGE-SELLSCHAFT; Postfach 22 16 34, 80506 München (DE).

**(81) Bestimmungsstaaten** *(soweit nicht anders angegeben, für jede verfügbare nationale Schutzrechtsart)*: AE, AG, AL, AM, AT, AU, AZ, BA, BB, BG, BR, BW, BY, BZ, CA, CH, CN, CO, CR, CU, CZ, DE, DK, DM, DZ, EC, EE, EG, ES, FI, GB, GD, GE, GH, GM, HR, HU, ID, IL, IN, IS, JP, KE, KG, KP, KR, KZ, LC, LK, LR, LS, LT, LU, LV, MA, MD,

*[Fortsetzung auf der nächsten Seite]*

**(54) Title:** METHOD FOR SUBSTITUTE SWITCHING OF SPATIALLY SEPARATED SWITCHING SYSTEMS

**(54) Bezeichnung:** VERFAHREN ZUM ERSATZSCHALTEN VON RÄUMLICH GETRENNTEN VERMITTLUNGSSYSTE-MEN



**(57) Abstract:** According to prior art, contemporary switching systems are provided with a high degree of internal operational security by redundant provision of important internal components but when large-scale external effects occur (such as natural disasters, terrorist attacks, war) the above-mentioned measures are generally of little use because original and replacement components of the switching system are located in the same place. As a result, when a disaster occurs it is highly probable that both components will be destroyed. According to the invention, a protocol is provided, said protocol being executed with a redundancy of 1:1. As a result, an identical clone, with identical hardware, identical software and an identical data base, is allocated to each switching system to be protected, as a redundancy partner. Switching is carried out in a quick, secure and automatic manner by a superordinate, real-time enabled monitor which establishes communication with the switching systems which are arranged in pairs. In the event of communication loss with respect to the active communication system, real-time switching to the redundant switching system is carried out.

**(57) Zusammenfassung:** Beim Stand der Technik besteht das Problem, dass zeitgemässe Vermittlungssysteme durch redundantes Bereitstellen wichtiger interner Komponenten zwar über ein hohes Mass an interner Betriebssicherheit verfügen. Treten jedoch massive äussere Ein- wirkungen auf (z. B. Erdbeben, Terroranschläge, kriegerische

*[Fortsetzung auf der nächsten Seite]*

WO 2005/057853 A1

BLUEPRINT 000321

## WO 2005/057853 A1

MG, MK, MN, MW, MX, MZ, NA, NI, NO, NZ, OM, PG, PH, PL, PT, RO, RU, SC, SD, SE, SG, SK, SL, SY, TJ, TM, TN, TR, TT, TZ, UA, UG, US, UZ, VC, VN, YU, ZA, ZM, ZW.

(84) **Bestimmungsstaaten** *(soweit nicht anders angegeben, für jede verfügbare regionale Schutzrechtsart):* ARIPO (BW, GH, GM, KE, LS, MW, MZ, NA, SD, SL, SZ, TZ, UG, ZM, ZW), eurasisches (AM, AZ, BY, KG, KZ, MD, RU, TJ, TM), europäisches (AT, BE, BG, CH, CY, CZ, DE, DK, EE, ES, FI, FR, GB, GR, HU, IE, IT, LU, MC, NL, PL, PT,

RO, SE, SI, SK, TR), OAPI (BF, BJ, CF, CG, CI, CM, GA, GN, GQ, GW, ML, MR, NE, SN, TD, TG).

**Veröffentlicht:**
— *mit internationalem Recherchenbericht*

*Zur Erklärung der Zweibuchstaben-Codes und der anderen Abkürzungen wird auf die Erklärungen ("Guidance Notes on Codes and Abbreviations") am Anfang jeder regulären Ausgabe der PCT-Gazette verwiesen.*

---

Einwirkungen etc.), so nutzen die getroffenen Vorkehrungen in der Regel wenig, weil Original- und Ersatzkomponenten des Vermittlungssystems sich am gleichen Ort befinden und damit in einem solchen Katastrophenfall mit hoher Wahrscheinlichkeit beide Komponenten zerstört sind. Erfindungsgemäss ist ein Protokoll vorgesehen, das auf einer 1:1 Redundanz zum Ablauf gelangt. Demgemäss wird jedem zu schützenden Vermittlungssystem ein identischer Klon als Redundanzpartner mit identischer Hardware, Software und Datenbasis zugeordnet. Die Umschaltung erfolgt schnell, sicher und automatisch durch einen übergeordneten, realzeitfähigen Monitor, der eine Kommunikation zu den paarweise angeordneten Vermittlungssystemen aufbaut. Bei Kommunikationsverlust zu dem aktiven Vermittlungssystem wird auf das redundante Vermittlungssystem in Realzeit umgeschaltet.

BLUEPRINT 000322

WO 2005/057853                                                PCT/EP2004/051925

1/1



BLUEPRINT 000323

# Declaration and Power of Attorney For Patent Application
## *Erklärung Für Patentanmeldungen Mit Vollmacht*
### German Language Declaration

Als nachstehend benannter Erfinder erkläre ich hiermit an Eides statt:

As a below named inventor, I hereby declare that:

dass mein Wohnsitz, meine Postanschrift, und meine Staatsangehörigkeit den im Nachstehenden nach meinem Namen aufgeführten Angaben entsprechen, dass ich, nach bestem Wissen der ursprüngliche, erste und alleinige Erfinder (falls nachstehend nur ein Name angegeben ist) oder ein ursprünglicher, erster und Miterfinder (falls nachstehend mehrere Namen aufgeführt sind) des Gegenstandes bin, für den dieser Antrag gestellt wird und für den ein Patent für die Erfindung mit dem Titel beantragt wird:

My residence, post office address and citizenship are as stated below next to my name,

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled

Verfahren zum Ersatzschalten von räumlich getrennten Vermittlungssystemen

Method for Protection Switching of Geographically Separate Switching Systems

deren Beschreibung hier beigefügt ist, es sei denn (in diesem Falle Zutreffendes bitte ankreuzen), diese Erfindung

the specification of which is attached hereto unless the following box is checked:

☐     wurde angemeldet am

unter der US-Anmeldenummer oder unter der Internationalen Anmeldenummer im Rahmen des

Vertrags über die Zusammenarbeit auf dem Gebiet

des Patentwesens (PCT)

_ und am

_____ abgeändert (falls zutreffend).

☐     was filed on

as United States Application Number or PCT International Application Number

_ and was amended on

_____ (if applicable).

Ich bestätige hiermit, dass ich den Inhalt der obigen Patentanmeldung einschließlich der Ansprüche, die eventuell durch einen Zusatzantrag wie oben erwähnt abgeändert wurde, durchgesehen und verstanden habe.

I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by any amendment referred to above.

Ich erkenne meine Pflicht zur Offenbarung jeglicher Informationen an, die zur Prüfung der Patentfähigkeit in Einklang mit Titel 37, Code of Federal Regulations, § 1.56 von Belang sind.

I acknowledge the duty to disclose information which is material to patentability as defined in Title 37, Code of Federal Regulations, § 1.56.

Ich beanspruche hiermit ausländische Prioritätsvorteile gemäß Title 35, United States Code, § US-Code, § 119 (a)-(d), bzw. § 365(b) aller unten aufgeführten Auslandsanmeldungen für Patente oder Erfinderurkunden, oder § 365(a) aller PCT internationalen Anmeldungen, welche wenigstens ein Land außer den Vereinigten Staaten von Amerika benennen, und habe nachstehend durch ankreuzen sämtliche Auslandsanmeldungen für Patente bzw. Erfinderurkunden oder PCT internationale Anmeldungen angegeben, deren Anmeldetag dem der Anmeldung, für welche Priorität beansprucht wird, vorangeht.

I hereby claim foreign priority under Title 35, 119(a)-(d) or § 365(b) of any foreign application(s) for patent or inventor's certificate, or § 365(a) of any PCT International application which designated at least one country other than the United States, listed below and have also identified below, by checking the box, any foreign application for patent or inventor's certificate, or PCT International application having a filing date before that of the application on which priority is claimed.

IDNR: 1620 / 14.03.2006

Page 1

Form PTO/SB/103 (8-96)

Patent and Trademark Office-U.S. DEPARTMENT OF COMMERCE

BLUEPRINT 000324

## German Language Declaration

Prior foreign applications
Priorität beansprucht

Priority Claimed

| 10358344.0 | DE | 12.12.2003 | ☒ Yes Ja | ☐ No Nein |
| (Number) (Nummer) | (Country) (Land) | (Day Month Year Filed) (Tag Monat Jahr eingereicht) | | |
| (Number) (Nummer) | (Country) (Land) | (Day Month Year Filed) (Tag Monat Jahr eingereicht) | ☐ Yes Ja | ☐ No Nein |
| (Number) (Nummer) | (Country) (Land) | (Day Month Year Filed) (Tag Monat Jahr eingereicht) | ☐ Yes Ja | ☐ No Nein |
| (Number) (Nummer) | (Country) (Land) | (Day Month Year Filed) (Tag Monat Jahr eingereicht) | ☐ Yes Ja | ☐ No Nein |

Ich beanspruche hiermit die mir unter Title 35, US-Code, § 120 zustehenden Vorteile aller unten aufgeführten US-Patentanmeldungen bzw. § 365(c) aller PCT internationalen Anmeldungen, welche die Vereinigten Staaten von Amerika benennen, und erkenne, insofern der Gegenstand eines jeden früheren Anspruchs dieser Patentanmeldung nicht in einer US-Patentanmeldung, bzw. PCT internationalen Anmeldung in in einer gemäß dem ersten Absatz von Title 35, US-Code, § 112 vorgeschriebenen Art und Weise offenbart wurde, meine Pflicht zur Offenbarung jeglicher Informationen an, die zur Prüfung der Patentfähigkeit in Einklang mit Title 37, Code of Federal Regulations, § 1.56 von Belang sind und die im Zeitraum zwischen dem Anmeldetag der früheren Patentanmeldung und dem nationalen oder im Rahmen des Vertrags über die Zusammenarbeit auf dem Gebiet des Patentwesen (PCT) gültigen internationalen Anmeldetags bekannt geworden sind.

I hereby claim the benefit under Title 35, United States Code, § 120 of any United States application(s), or § 365(c) of any PCT International application designating the United States, listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States or PCT International application in the manner provided by the first paragraph of Title 35, United States Code, § 112, I acknowledge the duty to disclose information which is material to patentability as defined in Title 37, Code of Federal Regulations, § 1.56 which became available between the filing date of the prior application and the national or PCT International filing date of this application.

| (Application Serial No.) (Anmeldeseriennummer) | (Filing Date D, M, Y) (Anmeldedatum T, M, J) | (Status) (patentiert, anhängig, aufgegeben) | (Status) (patented, pending, abandoned) |
| (Application Serial No.) (Anmeldeseriennummer) | (Filing Date D,M,Y) (Anmeldedatum T, M; J) | (Status) (patentiert, anhängig, aufgeben) | (Status) (patented, pending, abandoned) |

Ich erkläre hiermit, dass alle in der vorliegenden Erklärung von mir gemachten Angaben nach bestem Wissen und Gewissen der Wahrheit entsprechen, und ferner dass ich diese eidesstattliche Erklärung in Kenntnis dessen ablege, dass wissentlich und vorsätzlich falsche Angaben oder dergleichen gemäß § 1001, Title 18 des US-Code strafbar sind und mit Geldstrafe und/oder Gefängnis bestraft werden können und dass derartige wissentlich und vorsätzlich falsche Angaben die Rechtswirksamkeit der vorliegenden Patentanmeldung oder eines aufgrund deren erteilten Patentes gefährden können.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

Page 2 of 4

Patent and Trademark Office-U.S. DEPARTMENT OF COMMERCE

BLUEPRINT 000325

## German Language Declaration

| VERTRETUNGSVOLMACHT: Als benannter Erfinder beauftrage ich hiermit den (die) nachstehend aufgeführten Patentanwalt (Patentanwälte) und/oder Vertreter mit der Verfolgung der vorliegenden Patentanmeldung sowie mit der Abwicklung aller damit verbundenen Angelegenheiten vor dem US-Patent- und Markenamt: *(Name(n) und Registrationsnummer(n) auflisten)* | POWER OF ATTORNEY: As a named inventor, I hereby appoint the following attorney(s) and/or agent(s) to prosecute this application and transact all business in the Patent and Trademark Office connected therewith:

**Practitioners associated with Customer No. 22116** |
|---|---|
| | Send Correspondence to:

**Customer No. 22116** |
| Telefongespräche bitte richten an: *(Name und Telefonnummer)* | Direct Telephone Calls to: *(name and telephone number)*

**Elsa Keller, Legal Adminstrator (732) 321 - 3026** |

| Voller Name des einzigen oder ursprünglichen Erfinders: | Full name of sole or first inventor: |
|---|---|
| Dr. Norbert Löbig | Dr. Norbert Löbig |
| Unterschrift des Erfinders      *Norbt Löbi*      Datum   21.04.06 | Inventor's signature      Date |
| Wohnsitz | Residence |
| Darmstadt, GERMANY | Darmstadt, GERMANY |
| Staatsangehörigkeit | Citizenship |
| DE      (GERMAN) | DE (GERMAN) |
| Postanschrift | Post Office Address |
| Im Erlich 79 | Im Erlich 79 |
| 64291 Darmstadt GERMANY | 64291 Darmstadt GERMANY |
| Voller Name des zweiten Miterfinders (falls zutreffend): | Full name of second joint inventor, if any: |
| Jürgen Tegeler | Jürgen Tegeler |
| Unterschrift des Erfinders      Datum | Inventor's signature      Date      *see page 4* |
| Wohnsitz | Residence |
| Penzberg, GERMANY | Penzberg, GERMANY |
| Staatsangehörigkeit | Citizenship |
| DE      (GERMAN) | DE      (GERMAN) |
| Postanschrift | Post Office Address |
| Auf der Leiten 2 | Auf der Leiten 2 |
| 82377 Penzberg GERMANY | 82377 Penzberg GERMANY |

*(Bitte entsprechende Informationen und Unterschriften im Falle von dritten und weiteren Miterfindern angeben).*      *(Supply similar information and signature for third and subsequent joint inventors).*

Page 3 *of 4*

Form PTO/SB/103 (8-96)      Patent and Trademark Office-U.S. Department of COMMERCE

BLUEPRINT 000326

## German Language Declaration

VERTRETUNGSVOLMACHT: Als benannter Erfinder beauftrage ich hiermit den (die) nachstehend aufgeführten Patentanwalt (Patentanwälte) und/oder Vertreter mit der Verfolgung der vorliegenden Patentanmeldung sowie mit der Abwicklung aller damit verbundenen Angelegenheiten vor dem US-Patent- und Markenamt: *(Name(n) und Registrationsnummer(n) auflisten)*

POWER OF ATTORNEY: As a named inventor, I hereby appoint the following attorney(s) and/or agent(s) to prosecute this application and transact all business in the Patent and Trademark Office connected therewith:

**Practitioners associated with
Customer No. 22116**

---

Send Correspondence to:

**Customer No. 22116**

---

Telefongespräche bitte richten an: *(Name und Telefonnummer)*

Direct Telephone Calls to: *(name and telephone number)*

**Elsa Keller, Legal Adminstrator
(732) 321 - 3026**

---

| Voller Name des einzigen oder ursprünglichen Erfinders: | Full name of sole or first inventor: |
|---|---|
| Dr. Norbert Löbig | Dr. Norbert Löbig |
| Unterschrift des Erfinders          Datum | Inventor's signature          Date |
|  | *see page 3* |
| Wohnsitz | Residence |
| Darmstadt, GERMANY | Darmstadt, GERMANY |
| Staatsangehörigkeit | Citizenship |
| DE   (GERMAN) | DE   (GERMAN) |
| Postanschrift | Post Office Address |
| Im Erlich 79 | Im Erlich 79 |
| 64291 Darmstadt GERMANY | 64291 Darmstadt GERMANY |
| Voller Name des zweiten Miterfinders (falls zutreffend): | Full name of second joint inventor, if any: |
| Jürgen Tegeler | Jürgen Tegeler |
| Unterschrift des Erfinders          Datum | Inventor's signature          Date |
| *Jürgen Tegeler*   4.5.2006 |  |
| Wohnsitz | Residence |
| Penzberg, GERMANY | Penzberg, GERMANY |
| Staatsangehörigkeit | Citizenship |
| DE   (GERMAN) | DE   (GERMAN) |
| Postanschrift | Post Office Address |
| Auf der Leiten 2 | Auf der Leiten 2 |
| 82377 Penzberg GERMANY | 82377 Penzberg GERMANY |

*(Bitte entsprechende Informationen und Unterschriften im Falle von dritten und weiteren Miterfindern angeben).*

*(Supply similar information and signature for third and subsequent joint inventors).*

Page 4 of 4

Form PTO/SB/103 (8-96)

Patent and Trademark Office-U.S. Department of COMMERCE

BLUEPRINT 000327

PATENT APPLICATION SERIAL NO. _____

## U.S. DEPARTMENT OF COMMERCE
## PATENT AND TRADEMARK OFFICE
## FEE RECORD SHEET

```
06/16/2006 MKAYPAGH 00000086 192179   10582589

01 FC:1631        300.00 DA
02 FC:1642        400.00 DA
03 FC:1633        200.00 DA
```

PTO-1556
(5/87)

*U.S. Government Printing Office: 2002 — 489-267/69113*

BLUEPRINT 000328

10/582989

AP3 Rec'd PCT/PTO 09 JUN 2005

# SIEMENS

PATENT<br>Attorney Docket No. 2003P18829WOUS

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

| | | |
|---|---|---|
| Inventor: | Norbert Löbig et al. | ) |
| | | ) |
| Serial No.: | Not Yet Assigned | ) |
| | | ) |
| Filed: | Herewith | ) |

Group Art Unit:    Not Yet Assigned

Examiner:    Not Yet Assigned

Title:    METHOD FOR PROTECTION SWITCHING OF GEOGRAPHICALLY
SEPARATE SWITCHING SYSTEMS

**Commissioner For Patents**
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

<u>PRELIMINARY AMENDMENT</u>

Prior to the examination of the above-identified application, please amend the application as follows.

**Serial No. Not Yet Assigned**
**Atty. Doc. No. 2003P18829WOUS**

Amendments to the Specification:

In the English translation document, please delete the term --Description-- at page 1 line 1 before the title.

In the English translation document, please add the section heading and paragraph at page 1 line 6, after the title, as follows:

--CROSS REFERENCE TO RELATED APPLICATIONS

This application is the US National Stage of International Application No. PCT/EP2004/051925, filed August 26, 2004 and claims the benefit thereof.  The International Application claims the benefits of German application No. 10358344.0 DE filed December 12, 2003, both of the applications are incorporated by reference herein in their entirety.--

In the English translation document, please add the section heading and paragraph at page 1 line 6, after the newly added CROSS REFERENCE TO RELATED APPLICATIONS section, as follows:

--FIELD OF INVENTION

The present invention relates to a method for protection switching of geographically separate switching systems.--

In the English translation document, please add the section heading at page 1 line 6, after the newly added FIELD OF INVENTION section, as follows:

--BACKGROUND OF THE INVENTION--

In the English translation document, please add the section heading at page 1 line 20, as follows:

--SUMMARY OF INVENTION--

In the English translation document, please amend the paragraph at page 1 lines 29-32, as follows:

BLUEPRINT 000330

Serial No. Not Yet Assigned
Atty. Doc. No. 2003P18829WOUS

~~The~~ An object underlying the invention is to specify a method for protection switching of switching systems which ensures an efficient switchover of a failed switching system to a redundancy partner in the event of a fault.

In the English translation document, please delete the paragraph at page 2 lines 1-3.

In the English translation document, please amend the paragraph at page 2 lines 22-31, as follows:

A significant advantage of the invention is to be seen in the ~~fast~~ fact that in the course of the switchover operation from an active switching system to a hot-standby switching system no network management and no form of central control unit to support the switchover operations are required in the participating switching systems. To that extent it is irrelevant whether the switching system has a central control unit or not. This means that the invention is also applicable to routers, which - in contrast to the traditional switching system – generally have no central control unit of said kind.

In the English translation document, please add the section heading at page 2 line 33, as follows:

--BRIEF DESCRIPTION OF THE DRAWING--

In the English translation document, please add the section heading at page 3 line 10, as follows:

--DETAILED DESCRIPTION OF INVENTION--

BLUEPRINT 000331

**Serial No. Not Yet Assigned**
**Atty. Doc. No. 2003P18829WOUS**

<u>Amendments to the Claims:</u>

Please amend the claims as shown. Applicants reserve the right to pursue any cancelled claims at a later date.

1.-10.   (canceled)

11.      (new) A method for protection switching of geographically separate switching systems arranged in pairs, comprising:

providing a first switching system in an active operating state;

providing a redundant switching system as a pair to the first switching system, the redundant switching system in a hot-standby operating state;

providing a monitor that communicates with the first and the redundant switching systems;

controlling the communication between the first switching system and the monitor in accordance with the active operating state;

controlling the communication between the first switching system and the monitor in accordance with the hot-standby operating state;

when a loss of the communication to the first switching system occurs:

deactivating the first switching system by the monitor, and

activating the redundant switching system to be in the active operating state by the monitor within 2 seconds.

12.      (new) The method as claimed in claim 11, wherein an operating state selected from the group consisting of active and hot-standby has a pre-definable number of packet-based interfaces.

13.      (new) The method as claimed in claim 11, further comprising periodically sending IP requests to the monitor by packet-based interfaces of the switching system in the hot-standby operating state, the interfaces in an inactive state.

14.      (new) The method as claimed in claim 13, wherein the monitor does not respond the requests.

**BLUEPRINT 000332**

Serial No. Not Yet Assigned
Atty. Doc. No. 2003P18829WOUS

15.      (new) The method as claimed in claim 13, further comprising changing the packet based interface from the inactive state to an active state in response to receiving an IP response.

16.      (new) The method as claimed in claim 15, wherein the response from the monitor contains an IP address of the requesting packet-based interface.

17.      (new) The method as claimed in claim 13, further comprising suppressing sending IP requests to the monitor by packet-based interfaces of the switching system in the active operating state, the interfaces in an active operating state.

18.      (new) The method as claimed in claim 13, further comprising:
receiving a monitoring message from the monitor by the interfaces in the active state; and acknowledging the message by the interface.

19.      (new) The method as claimed in claim 18, further comprising:
determining by the monitor a fault condition when an acknowledgement is not received from the interface in the active state; and
sending a IP response to the switching system in the hot-standby operating state.

20.      (new) The method as claimed in claim 19, further comprising changing the packet based interface from the inactive state to an active state in response to receiving an IP response.

21.      (new) The method as claimed in claim 20, wherein the response from the monitor contains an IP address of the requesting packet-based interface.

22.      (new) The method as claimed in claim 18, further comprising changing the packet based interface from the inactive state to an active state in response to receiving an IP response.

23.      (new) The method as claimed in claim 18, further comprising changing the operating state from hot-standby to active in response to receiving an IP response.

BLUEPRINT 000333

Serial No. Not Yet Assigned
Atty. Doc. No. 2003P18829WOUS

24.     (new) The method as claimed in claim 18, wherein the response from the monitor contains an IP address of the requesting packet-based interface.

25.     (new) The method as claimed in claim 19, further comprising changing the operating state of the switching system having the communication loss to a hot-standby operation state.

26.     (new) The method as claimed in claim 18,

wherein the operating state of the switching system having the communication loss changes to a hot-standby operation state and remains defined as the hot-standby switching system until a new fault situation forces a new switchover.

27.     (new) The method as claimed in claim 18, further comprising:

determining by the monitor a fault condition when an acknowledgement is not received from the interface in the active state; and

sending a message to the switching system in the hot-standby operating state a message indicating to change over to the active operating state.

BLUEPRINT 000334

**Serial No. Not Yet Assigned**
**Atty. Doc. No. 2003P18829WOUS**

<u>Amendments to the Abstract:</u>

      In the English translation document, please add the abstract at page 17 line 1, as follows:

--ABSTRACT

A protocol is provided being executed with a redundancy of 1:1.  As a result, an identical clone, with identical hardware, identical software and an identical data base, is allocated to each switching system to be protected, as a redundancy partner.  Switching is carried out in a quick, secure and automatic manner by a superordinate, real-time enabled monitor which establishes communication with the switching systems which are arranged in pairs.  In the event of communication loss with respect to the active communication system, real-time switching to the redundant switching system is carried out.--

BLUEPRINT 000335

**Serial No. Not Yet Assigned**
**Atty. Doc. No. 2003P18829WOUS**

<u>REMARKS</u>

Claims 1-10 have been canceled. New claims 11-27 have been added. Thus, claims 11-27 are presented for examination. Applicants respectfully request allowance of the present application in view of the foregoing amendments.

The amendments are not made for purposes of patentability.

A marked up copy and a clean copy of the Substitute Specification incorporating the changes to the specification in the present Preliminary Amendment are provided with this application. No new matter has been added by way of the Substitute Specification.

Conclusion

The commissioner is hereby authorized to charge any appropriate fees due in connection with this paper, including the fees specified in 37 C.F.R. §§ 1.16(c), 1.17(a)(1) and 1.20(d), or credit any overpayments to Deposit Account No. 19-2179.

Respectfully submitted,

Dated:____6/9/06____                    By:_____

                                        John P. Musone
                                        Registration No. 44,961
                                        (407) 736-6449

Siemens Corporation
Intellectual Property Department
170 Wood Avenue South
Iselin, New Jersey 08830

BLUEPRINT 000336

Attorney Docket No. 2003P18829WOUS

AP3 Rec'd PCT/PTO 09 JUN 2006

# METHOD FOR PROTECTION SWITCHING OF GEOGRAPHICALLY SEPARATE SWITCHING SYSTEMS

## CROSS REFERENCE TO RELATED APPLICATIONS

[0001]   This application is the US National Stage of International Application No. PCT/EP2004/051925, filed August 26, 2004 and claims the benefit thereof.  The International Application claims the benefits of German application No. 10358344.0 DE filed December 12, 2003, both of the applications are incorporated by reference herein in their entirety.

## FIELD OF INVENTION

[0002]   The present invention relates to a method for protection switching of geographically separate switching systems.

## BACKGROUND OF INVENTION

[0003]   Contemporary switching systems (switches) possess a high degree of internal operational reliability owing to the redundant provision of important internal components. This means that a very high level of availability of the switching-oriented functions is achieved in normal operation. If, however, external influencing factors occur on a massive scale (e.g. fire, natural disasters, terrorist attacks, consequences of war, etc.), the precautionary measures taken to increase operational reliability are generally of little use, since the original and replacement components of the switching system are located at the same place and so in a disaster scenario of said kind there is a high probability that both components have been destroyed or rendered incapable of operation.

## SUMMARY OF INVENTION

[0004]   A 1:1 redundancy has been proposed as a solution. Accordingly it is provided to assign each switching system requiring protection an identical clone as a redundancy partner having identical hardware, software and database. The clone is in the powered-up

BLUEPRINT 000337

Attorney Docket No. 2003P18829WOUS

state, but is nonetheless not active in terms of switching functions. Both switching systems are controlled by a realtime-capable monitor, ranked at a higher level in the network hierarchy, which controls the switchover operations.

[0005]    An object underlying the invention is to specify a method for protection switching of switching systems which ensures an efficient switchover of a failed switching system to a redundancy partner in the event of a fault.

[0006]    According to the invention a protocol is proposed which is executed between a higher-level realtime-capable monitor and the active switching system on the one side, and the hot-standby switching system on the other side. The protocol is based on the standard IP protocols BOOTP / DHCP which are usually supported by every IP implementation. This solution can therefore be implemented in any switching system with IP-based interfaces with minimal implementation overhead. The solution is comprehensively deployable and cost-effective, because essentially only the outlay for the monitor is incurred. Furthermore, it is extremely robust thanks to the use of simple, standardized IP protocols. Control errors due to temporary outages in the IP core network are rectified automatically after the outage has been terminated. A dual monitor failure likewise represents no problem in this variant.

[0007]    A significant advantage of the invention is to be seen in the fact that in the course of the switchover operation from an active switching system to a hot-standby switching system no network management and no form of central control unit to support the switchover operations are required in the participating switching systems. To that extent it is irrelevant whether the switching system has a central control unit or not. This means that the invention is also applicable to routers, which - in contrast to the traditional switching system – generally have no central control unit of said kind.

BRIEF DESCRIPTION OF THE DRAWING

[0008]    The invention is explained in more detail below with reference to a schematically represented exemplary embodiment. According to the invention it is

BLUEPRINT 000338

Attorney Docket No. 2003P18829WOUS

provided to assign each switching system requiring protection (e.g. $S_1$) an identical clone as a redundancy partner (e.g. $S_{1b}$) with identical hardware, software and database. The clone is in the powered-up state, but is nonetheless not active in terms of switching functions ("hot standby" operating state). In this way a highly available 1:1 redundancy of switching systems distributed over a plurality of locations is defined.

## DETAILED DESCRIPTION OF INVENTION

[0009]     The two switching systems (switching system $S_1$ and the clone or redundancy partner $S_{1b}$) are controlled by a network management system NM. The control is implemented in such a way that the current status of the database and the software of the two switching systems $S_1$, $S_{1b}$ is kept identical. This is achieved in that every operation-oriented command, every configuration command and every software update including patches is delivered in identical fashion to both partners. In this way a physically remote clone identical to a switch that is in operation is defined with identical database and identical software revision level.

[0010]     The database basically contains all semi-permanent and permanent data. In this context permanent data is understood to mean the data which is stored as code in tables and which can only be changed by means of a patch or software update. Semi-permanent data refers to the data which enters the system e.g. via the user interface and which is stored there for a relatively long period in the form of the input. Except for the configuration statuses of the system, this data is generally not modified by the system itself. The database does not contain the transient data accompanying a call, which data the switching system stores only temporarily and which generally has no significance beyond the duration of a call, or status information which consists of transient overlays/supplements to configuratively predetermined basic states. (For example, although a port could be active in the basic state, it may not be accessible at the present time due to a transient (transitory) fault).

[0011]     In addition, the switching systems $S_1$, $S_{1b}$ both have at least one active, packet-oriented interface to the common network management system NM. According to the

BLUEPRINT 000339

Attorney Docket No. 2003P18829WOUS

present exemplary embodiment these are to be the two interfaces $IF_1$. In this case the two interfaces $IF_1$ assume an active operating state ("act"). However, whereas in the case of switching system S1 all the remaining packet-oriented interfaces $IF_2...IF_n$ are also active, in the case of switching system $S_{1b}$, in contrast, the remaining interfaces are in the operating state "idle". The state "idle" means that the interfaces permit no exchange of messages, but can be activated from an external point, i.e. by a higher-level, realtime-capable monitor located outside of switching system $S_1$ and switching system $S_{1b}$. The monitor can be implemented in hardware or software and in the event of a fault switches over in real time to the clone. Real time, in this case, means a time span of 1 to 2 seconds. According to the present exemplary embodiment the monitor is embodied as control device SC and duplicated for security reasons (local redundancy).

[0012]    The interfaces $I_n$ are packet-based and so represent communication interfaces to packet-based peripheral devices (such as e.g. IAD, MG, SIP proxy devices), remote packet-based switches, packet-based media servers. They are controlled indirectly by the monitor which is embodied as a control device SC (Switch Controller). This means that the control device SC can activate and deactivate the interfaces $IF_n$ and therefore switch back and forth at will between the operating states "act" and "idle".

[0013]    The configuration according to the figure is to be regarded as a default configuration. This means that switching system $S_1$ is active in terms of switching functions, while switching system $S_{1b}$ is in a "hot standby" operating state. This state is characterized by an up-to-date database and full activity of all components except for the packet-based interfaces (and possibly the processing of switching-oriented events). The (geographically redundant) switching system $S_{1b}$ can therefore be switched over quickly (in real time) by the control device SC into the active state in terms of switching-oriented functions by activation of the interfaces $IF_2..IF_n$. The interface $IF_1$ is also active on the hot standby switching system, because it describes the interface to the network management, which interface must always be active.

[0014]    It is to be regarded as a significant aspect that the two geographically

BLUEPRINT 000340

Attorney Docket No. 2003P18829WOUS

redundant switching systems $S_1$, $S_{1b}$ as well as the network management NM and the duplicated control device SC must each be clearly separated geographically.

[0015]     The control device SC transmits the current operating state of the switching systems $S_1$ and $S_{1b}$ (act/hot-standby, status of the interfaces) as well as its own operating state to the network management NM s. The functions of the control device SC can optionally be performed partially or in full by the network management NM. For security reasons the network management NM should have the functionality to be able also to effect the above described switchovers manually. Optionally, the automatic switchover can be blocked so that the switchover can only be performed manually.

[0016]     The switching systems $S_1$ and $S_{1b}$ can also perform their own regular checks to determine whether their packet-based interfaces are active. If this is not the case for the interfaces $IF_2..IF_n$, it can be concluded that they are in the "hot standby" state and certain alarms which are produced as a result of the non-availability of the interfaces $IF_2..IF_n$ can be selectively blocked. The transition of a switch from "hot standby" to "active" can also be detected in this way. This enables targeted measures to be taken if necessary at the start of the switching operations.

[0017]     The packet addresses (IP addresses) of the interfaces $I_{2..n}$ of switching system $S_1$ and their respective partner interfaces of switching system $S_{1b}$ can be identical, but do not have to be. If they are identical, the switchover is noticed only by the front-end router. For the partner application in the network, on the other hand, it is completely transparent. This is a new application and generalization of the IP failover function. If the protocol which serves an interface permits a switchover of the communication partner to a different packet address, as is the case, for example, with the H.248 protocol (a media gateway can independently establish a new connection to another media gateway controller with a different IP address), the IP addresses can also be different.

[0018]     In an embodiment of the invention it is provided to use the central computer of a further switching system as the control device SC. As a result there then exists a control device with maximum availability.

BLUEPRINT 000341

Attorney Docket No. 2003P18829WOUS

**[0019]**    In a development of the invention consideration is given to the establishment of a direct communication interface between switching system $S_1$ and switching system $S_{1b}$. This can be used for updating the database e.g. with regard to SCI (Subscriber Controlled Input) and charge data as well as for exchanging transient data of individual connections or important further transient data (e.g. H.248 Association Handle). In this way the disruptions to operation can be minimized from the subscriber and operator perspective. The semi-permanent and transient data can then be transferred from the respective active switching system into the redundant hot-standby switching system in a cyclical time frame (update). The update of the SCI data has the advantage that the cyclical restore on the hot-standby system is avoided and SCI data in the hot-standby system is always up-to-date. As a result of the update of stack-relevant data, such as the H.248 Association Handle, the takeover by a standby system can be hidden from the peripherals and the downtimes can be reduced even more considerably.

**[0020]**    Essentially, the IP addresses of all network components must be known in the network. The allocation of the IP addresses is controlled when the entire IP network device is powered up. For this purpose there is provided in the network a server (BOOTP server) which communicates via a BOOTP protocol with the clients that are to be powered up. At startup the network components (client), such as, for example, the switching systems $S_1$, $S_{1b}$, request the IP addresses from the BOOTP server with the aid of the BOOTP protocol. Once these IP addresses have been received, the respective component's own MAC address (network-wide hardware address) and own IP address are thus known in all network components. Since this assignment is not yet known in the network, this information is communicated by the network components to other network components (client, router) in the course of a broadcast message. A separate protocol (ARP protocol, Address Resolution Protocol) is used for this purpose.

**[0021]**    According to the invention a protocol, referred to in the following as the HSCB protocol (HSCB: Hot-Standby Control Protocol), is proposed for monitoring and for switching over from an active switching system to a redundantly arranged switching system. Said HSCB protocol is executed between the control device SC and the switching

BLUEPRINT 000342

system $S_1$ as well as between the control device SC and the switching system $S_{1b}$. It is essential that the protocol is able to bring the switching system $S_1$ into an active ("act") or a "hot standby" operating state after startup (recovery). In addition the switching system in the active (and optionally also the system in the "hot standby") operating state has to be monitored and the necessary switchovers have to be initiated in the event of a fault (active switching system goes to hot-standby/hot-standby switching system goes to active). Optionally, it can be explicitly communicated to switching systems $S_1$ and $S_{1b}$ whether they are in the active or hot-standby state.

[0022]     The following rules are specified in the HSCB protocol between the control device SC and the switching system $S_1$ or, as the case may be, $S_{1b}$:

[0023]     If a packet-based interface of a switching system is in the operating state "IDLE", it sends IP address requests ("BOOTP request") to the control device SC at regular intervals. In this case it is not necessary for the control device SC to answer these BOOTP requests of the interfaces of the switching system: this is done only for the address requests from the switching system that is identified as active to the control device SC. In the case of a positive response from the control device SC, the packet-based interface is placed into the active operating state ("act"). If there is no (or a negative) response from the control device SC, the packet-based interfaces that are in the inactive operating state remain in the inactive operating state ("IDLE"). After the booting sequence all the packet-based interfaces are in the inactive operating state ("IDLE"). An interface in the active operating state does not need to send any address requests ("IP Request") to the control device SC.

[0024]     The control device SC, for its part, sends monitoring messages at regular intervals to the packet-based interfaces, which must respond to these messages only if they are active. By means of a special message the control device SC can bring a packet-based interface from the active operating state into the inactive operating state ("IDLE").

[0025]     The startup of the network configuration is described below. After startup, all the interfaces of switching systems $S_1$ and $S_{1b}$ are always in the inactive operating state

BLUEPRINT 000343

Attorney Docket No. 2003P18829WOUS

"IDLE". The control device SC is now to be the BOOTP server for switching systems $S_1$ and $S_{1b}$. This means that at startup time the IP interfaces of switching system $S_1$ and/or switching system $S_{1b}$ fetch their IP addresses via BOOTP request from the control device SC. The control device SC is aware of the existence of both switching systems as well as of the operating state (act/hot-standby) still to be assumed by these. The control device SC implicitly communicates to the two switching systems $S_1$, $S_{1b}$ the operating state that they have to assume after startup. On the one hand this is effected for the switching system $S_{1b}$ that is to be defined as hot-standby in that the control device SC does not respond to the BOOTP requests of the interfaces $IF_2...IF_n$. Consequently, these interfaces have no IP addresses and remain in the inactive operating state ("IDLE"). However, they continue sending BOOTP requests at regular intervals to the control device SC, which in the normal state continues not to respond to these requests. On the other hand this is effected for the switching system $S_1$ that is to be defined as active in that the control device SC responds to all BOOTP requests (through communication of the IP address), as a result of which all interfaces are activated. DHCP requests can also be taken instead of BOOTP requests.

[0026]     The system consisting of active switching system and clone thus assumes the state provided (in the control device SC), which is defined as the fault-free normal state. In this state the cyclical BOOTP requests of the interfaces of the clone continue not to be answered, as a result of which these also continue not to have their IP addresses. The active interfaces of switching system $S_1$ send no BOOTP requests. In this normal state the control device SC now sends monitoring messages cyclically to the interfaces of the active switching system, which messages have to be answered by the active interfaces. If this is the case, it can be assumed that the active switching system also continues to be in a fault-free operating state, as a result of which the active operating state is maintained. Since the cyclical BOOTP requests from the clone also continue to arrive (and also continue not to be answered), it can likewise be assumed that the clone too is in a fault-free operating state (still "IDLE", as previously). The control device SC has therefore stored the knowledge of the functional integrity of the active switching system and also of the clone. This knowledge is always kept at the latest level by means of the

BLUEPRINT 000344

acknowledgement of the cyclical monitoring messages and the cyclical BOOTP requests of the clone.

[0027]    In the scenario described below let a serious failure of switching system $S_1$ be assumed. Owing to the geographical redundancy there is a high probability that the clone (switching system $S_{1b}$), like the control device SC, is also unaffected. The failure of switching system $S_1$ is identified by the control device SC, which also controls the corresponding switchover operations to switching system $S_{1b}$:

[0028]    The failure of switching system S1 is detected by the control device SC due to the fact that the monitoring messages are no longer acknowledged. However, a predefinable number of interfaces (configurable, optionally also all) should apply as the failure criterion, and not simply a loss of communication with all the interfaces. Thus, if no acknowledgements for this predefinable number of interfaces of switching system $S_1$ arrive at the control device SC for a relatively long period (e.g. 1 min.), it is concluded that a serious failure of switching system S1 has occurred. This criterion is sufficient to initiate a switchover from switching system $S_1$ to switching system $S_{1b}$.

[0029]    In this case the control device SC initially places still active interfaces of switching system $S_1$ into the inactive operating state ("IDLE") with the aid of a special message. This message is embodied such that the interfaces of switching system $S_1$ are prompted to release their IP addresses. To be on the safe side, the message is supplied to all the interfaces of switching system $S_1$ (i.e. also to those that have failed) and cyclically repeated until the BOOTP requests from the now inactive interfaces arrive at the control device SC. Switching system $S_1$ is therefore in the inactive operating state.

[0030]    The BOOTP requests still cyclically arriving as previously from $S_{1b}$ are now answered by the control device SC in that the interfaces of the hitherto inactive clone are notified of their IP addresses. As a result switching system $S_{1b}$ assumes an active operating state. Switching system $S_{1b}$ is thus ready for switching operation and can take over the functions of switching system S1.

BLUEPRINT 000345

Attorney Docket No. 2003P18829WOUS

[0031]     The advantage of this approach lies in the avoidance of the "split brain" scenario. The interfaces of switching system $S_1$ are to remain in the inactive operating state even after the recovery of switching system $S_1$. Switching system $S_1$ is therefore deactivated in terms of switching functions until the next switchover. In order to keep the time interval of inconsistent interface states in switching system $S_{1b}$ as short as possible, the requests could be triggered in switching system $S_{1b}$.

[0032]     Several failure scenarios are discussed below:

[0033]     For the solution according to the invention, a total failure of the control device SC (dual failure of the two halves) represents no problem, in particular since such a case is extremely unlikely. In this embodiment variant this does not disrupt normal switching operation. Only the automatic switchover function of the control device SC is no longer present. Should a switchover become necessary during this time, it can be performed manually by the network management NM.

[0034]     Similarly, a disruption to the communication between switching system $S_1$ and control device SC can be intercepted. In this case there is a very small probability that the "split brain" scenario can occur. This means that the two switching systems $S_1$, $S_{1b}$ simultaneously assume an active operating state and both also use the same IP addresses.

[0035]     In order to rule out this complete scenario it is proposed to introduce a mutual monitoring for act / stb between switching system $S_1$ and switching system $S_{1b}$. The monitoring can use the same mechanisms as described above. Thus, for example, a dedicated IP interface of switching system $S_{1b}$ (hot standby) can send BOOTP requests to its partner interfaces in switching system $S_1$ at regular intervals and monitor whether its partner interface is active. If switching system $S_{1b}$ is now to go from hot-standby to active, a check can first be carried out to determine whether the partner interface has failed (i.e. is no longer sending any responses). If it is still active (which must not be the case if the switchover has been performed correctly and would lead to the "split brain"), the switchover stb -> act in switching system $S_{1b}$ is prevented - and consequently also the "split brain". In this case there is a high probability that switching system $S_1$ is still

**BLUEPRINT 000346**

Attorney Docket No. 2003P18829WOUS

active.

**[0036]**     If a "split brain" scenario should still nonetheless occur at some point, there is still a simple possibility of correction from the network management NM side. According to this, one of the two switching systems is once again placed into the stb operating state and if necessary executes a recovery

BLUEPRINT 000347

10/582 ~~~

Attorney Docket No. 2003P18829WOUS

AP3 Rec'd PCT/PTO 19 JUN 2006

[0001]Description

# METHOD FOR PROTECTION SWITCHING OF GEOGRAPHICALLY SEPARATE SWITCHING SYSTEMS

## CROSS REFERENCE TO RELATED APPLICATIONS

[0001]    This application is the US National Stage of International Application No. PCT/EP2004/051925, filed August 26, 2004 and claims the benefit thereof.  The International Application claims the benefits of German application No. 10358344.0 DE filed December 12, 2003, both of the applications are incorporated by reference herein in their entirety.

## FIELD OF INVENTION

[0002]    The present invention relates to a method for protection switching of geographically separate switching systems.

## BACKGROUND OF INVENTION

[0002][0003]  Contemporary switching systems (switches) possess a high degree of internal operational reliability owing to the redundant provision of important internal components. This means that a very high level of availability of the switching-oriented functions is achieved in normal operation. If, however, external influencing factors occur on a massive scale (e.g. fire, natural disasters, terrorist attacks, consequences of war, etc.), the precautionary measures taken to increase operational reliability are generally of little use, since the original and replacement components of the switching system are located at the same place and so in a disaster scenario of said kind there is a high probability that both components have been destroyed or rendered incapable of operation.

## SUMMARY OF INVENTION

[0003][0004]  A 1:1 redundancy has been proposed as a solution. Accordingly it is

BLUEPRINT 000348

Attorney Docket No. 2003P18829WOUS

provided to assign each switching system requiring protection an identical clone as a redundancy partner having identical hardware, software and database. The clone is in the powered-up state, but is nonetheless not active in terms of switching functions. Both switching systems are controlled by a realtime-capable monitor, ranked at a higher level in the network hierarchy, which controls the switchover operations.

[0004][0005]   The An object underlying the invention is to specify a method for protection switching of switching systems which ensures an efficient switchover of a failed switching system to a redundancy partner in the event of a fault.

[0005]Proceeding from the features claimed in the preamble of claim 1, this object is achieved by the features claimed in the characterizing part.

[0006]   According to the invention a protocol is proposed which is executed between a higher-level realtime-capable monitor and the active switching system on the one side, and the hot-standby switching system on the other side. The protocol is based on the standard IP protocols BOOTP / DHCP which are usually supported by every IP implementation. This solution can therefore be implemented in any switching system with IP-based interfaces with minimal implementation overhead. The solution is comprehensively deployable and cost-effective, because essentially only the outlay for the monitor is incurred. Furthermore, it is extremely robust thanks to the use of simple, standardized IP protocols. Control errors due to temporary outages in the IP core network are rectified automatically after the outage has been terminated. A dual monitor failure likewise represents no problem in this variant.

[0007]   A significant advantage of the invention is to be seen in the fast fact that in the course of the switchover operation from an active switching system to a hot-standby switching system no network management and no form of central control unit to support the switchover operations are required in the participating switching systems. To that extent it is irrelevant whether the switching system has a central control unit or not. This means that the invention is also applicable to routers, which - in contrast to the traditional switching system – generally have no central control unit of said kind.

BLUEPRINT 000349

## BRIEF DESCRIPTION OF THE DRAWING

[0008]     The invention is explained in more detail below with reference to a
schematically represented exemplary embodiment. According to the invention it is
provided to assign each switching system requiring protection (e.g. $S_1$) an identical clone
as a redundancy partner (e.g. $S_{1b}$) with identical hardware, software and database. The
clone is in the powered-up state, but is nonetheless not active in terms of switching
functions ("hot standby" operating state). In this way a highly available 1:1 redundancy
of switching systems distributed over a plurality of locations is defined.

## DETAILED DESCRIPTION OF INVENTION

[0009]     The two switching systems (switching system $S_1$ and the clone or redundancy
partner $S_{1b}$) are controlled by a network management system NM. The control is
implemented in such a way that the current status of the database and the software of the
two switching systems $S_1$, $S_{1b}$ is kept identical. This is achieved in that every operation-
oriented command, every configuration command and every software update including
patches is delivered in identical fashion to both partners. In this way a physically remote
clone identical to a switch that is in operation is defined with identical database and
identical software revision level.

[0010]     The database basically contains all semi-permanent and permanent data. In this
context permanent data is understood to mean the data which is stored as code in tables
and which can only be changed by means of a patch or software update. Semi-permanent
data refers to the data which enters the system e.g. via the user interface and which is
stored there for a relatively long period in the form of the input. Except for the
configuration statuses of the system, this data is generally not modified by the system
itself. The database does not contain the transient data accompanying a call, which data
the switching system stores only temporarily and which generally has no significance
beyond the duration of a call, or status information which consists of transient
overlays/supplements to configuratively predetermined basic states. (For example,
although a port could be active in the basic state, it may not be accessible at the present

BLUEPRINT 000350

Attorney Docket No. 2003P18829WOUS

time due to a transient (transitory) fault).

[0011]    In addition, the switching systems $S_1$, $S_{1b}$ both have at least one active, packet-oriented interface to the common network management system NM. According to the present exemplary embodiment these are to be the two interfaces $IF_1$. In this case the two interfaces $IF_1$ assume an active operating state ("act"). However, whereas in the case of switching system S1 all the remaining packet-oriented interfaces $IF_2...IF_n$ are also active, in the case of switching system $S_{1b}$, in contrast, the remaining interfaces are in the operating state "idle". The state "idle" means that the interfaces permit no exchange of messages, but can be activated from an external point, i.e. by a higher-level, realtime-capable monitor located outside of switching system $S_1$ and switching system $S_{1b}$. The monitor can be implemented in hardware or software and in the event of a fault switches over in real time to the clone. Real time, in this case, means a time span of 1 to 2 seconds. According to the present exemplary embodiment the monitor is embodied as control device SC and duplicated for security reasons (local redundancy).

[0012]    The interfaces $I_n$ are packet-based and so represent communication interfaces to packet-based peripheral devices (such as e.g. IAD, MG, SIP proxy devices), remote packet-based switches, packet-based media servers. They are controlled indirectly by the monitor which is embodied as a control device SC (Switch Controller). This means that the control device SC can activate and deactivate the interfaces $IF_n$ and therefore switch back and forth at will between the operating states "act" and "idle".

[0013]    The configuration according to the figure is to be regarded as a default configuration. This means that switching system $S_1$ is active in terms of switching functions, while switching system $S_{1b}$ is in a "hot standby" operating state. This state is characterized by an up-to-date database and full activity of all components except for the packet-based interfaces (and possibly the processing of switching-oriented events). The (geographically redundant) switching system $S_{1b}$ can therefore be switched over quickly (in real time) by the control device SC into the active state in terms of switching-oriented functions by activation of the interfaces $IF_2..IF_n$. The interface $IF_1$ is also active on the hot

BLUEPRINT 000351

Attorney Docket No. 2003P18829WOUS

standby switching system, because it describes the interface to the network management, which interface must always be active.

[0014]    It is to be regarded as a significant aspect that the two geographically redundant switching systems $S_1$, $S_{1b}$ as well as the network management NM and the duplicated control device SC must each be clearly separated geographically.

[0015]    The control device SC transmits the current operating state of the switching systems $S_1$ and $S_{1b}$ (act/hot-standby, status of the interfaces) as well as its own operating state to the network management NM s. The functions of the control device SC can optionally be performed partially or in full by the network management NM. For security reasons the network management NM should have the functionality to be able also to effect the above described switchovers manually. Optionally, the automatic switchover can be blocked so that the switchover can only be performed manually.

[0016]    The switching systems $S_1$ and $S_{1b}$ can also perform their own regular checks to determine whether their packet-based interfaces are active. If this is not the case for the interfaces $IF_2..IF_n$, it can be concluded that they are in the "hot standby" state and certain alarms which are produced as a result of the non-availability of the interfaces $IF_2..IF_n$ can be selectively blocked. The transition of a switch from "hot standby" to "active" can also be detected in this way. This enables targeted measures to be taken if necessary at the start of the switching operations.

[0017]    The packet addresses (IP addresses) of the interfaces $I_{2..n}$ of switching system $S_1$ and their respective partner interfaces of switching system $S_{1b}$ can be identical, but do not have to be. If they are identical, the switchover is noticed only by the front-end router. For the partner application in the network, on the other hand, it is completely transparent. This is a new application and generalization of the IP failover function. If the protocol which serves an interface permits a switchover of the communication partner to a different packet address, as is the case, for example, with the H.248 protocol (a media gateway can independently establish a new connection to another media gateway controller with a different IP address), the IP addresses can also be different.

BLUEPRINT 000352

[0018]    In an embodiment of the invention it is provided to use the central computer of a further switching system as the control device SC. As a result there then exists a control device with maximum availability.

[0019]    In a development of the invention consideration is given to the establishment of a direct communication interface between switching system $S_1$ and switching system $S_{1b}$. This can be used for updating the database e.g. with regard to SCI (Subscriber Controlled Input) and charge data as well as for exchanging transient data of individual connections or important further transient data (e.g. H.248 Association Handle). In this way the disruptions to operation can be minimized from the subscriber and operator perspective. The semi-permanent and transient data can then be transferred from the respective active switching system into the redundant hot-standby switching system in a cyclical time frame (update). The update of the SCI data has the advantage that the cyclical restore on the hot-standby system is avoided and SCI data in the hot-standby system is always up-to-date. As a result of the update of stack-relevant data, such as the H.248 Association Handle, the takeover by a standby system can be hidden from the peripherals and the downtimes can be reduced even more considerably.

[0020]    Essentially, the IP addresses of all network components must be known in the network. The allocation of the IP addresses is controlled when the entire IP network device is powered up. For this purpose there is provided in the network a server (BOOTP server) which communicates via a BOOTP protocol with the clients that are to be powered up. At startup the network components (client), such as, for example, the switching systems $S_1$, $S_{1b}$, request the IP addresses from the BOOTP server with the aid of the BOOTP protocol. Once these IP addresses have been received, the respective component's own MAC address (network-wide hardware address) and own IP address are thus known in all network components. Since this assignment is not yet known in the network, this information is communicated by the network components to other network components (client, router) in the course of a broadcast message. A separate protocol (ARP protocol, Address Resolution Protocol) is used for this purpose.

BLUEPRINT 000353

Attorney Docket No. 2003P18829WOUS

[0021]     According to the invention a protocol, referred to in the following as the HSCB protocol (HSCB: Hot-Standby Control Protocol), is proposed for monitoring and for switching over from an active switching system to a redundantly arranged switching system. Said HSCB protocol is executed between the control device SC and the switching system $S_1$ as well as between the control device SC and the switching system $S_{1b}$. It is essential that the protocol is able to bring the switching system $S_1$ into an active ("act") or a "hot standby" operating state after startup (recovery). In addition the switching system in the active (and optionally also the system in the "hot standby") operating state has to be monitored and the necessary switchovers have to be initiated in the event of a fault (active switching system goes to hot-standby/hot-standby switching system goes to active). Optionally, it can be explicitly communicated to switching systems $S_1$ and $S_{1b}$ whether they are in the active or hot-standby state.

[0022]     The following rules are specified in the HSCB protocol between the control device SC and the switching system $S_1$ or, as the case may be, $S_{1b}$:

[0023]     If a packet-based interface of a switching system is in the operating state "IDLE", it sends IP address requests ("BOOTP request") to the control device SC at regular intervals. In this case it is not necessary for the control device SC to answer these BOOTP requests of the interfaces of the switching system: this is done only for the address requests from the switching system that is identified as active to the control device SC. In the case of a positive response from the control device SC, the packet-based interface is placed into the active operating state ("act"). If there is no (or a negative) response from the control device SC, the packet-based interfaces that are in the inactive operating state remain in the inactive operating state ("IDLE"). After the booting sequence all the packet-based interfaces are in the inactive operating state ("IDLE"). An interface in the active operating state does not need to send any address requests ("IP Request") to the control device SC.

[0024]     The control device SC, for its part, sends monitoring messages at regular intervals to the packet-based interfaces, which must respond to these messages only if

BLUEPRINT 000354

Attorney Docket No. 2003P18829WOUS

they are active. By means of a special message the control device SC can bring a packet-based interface from the active operating state into the inactive operating state ("IDLE").

[0025]    The startup of the network configuration is described below. After startup, all the interfaces of switching systems $S_1$ and $S_{1b}$ are always in the inactive operating state "IDLE". The control device SC is now to be the BOOTP server for switching systems $S_1$ and $S_{1b}$. This means that at startup time the IP interfaces of switching system $S_1$ and/or switching system $S_{1b}$ fetch their IP addresses via BOOTP request from the control device SC. The control device SC is aware of the existence of both switching systems as well as of the operating state (act/hot-standby) still to be assumed by these. The control device SC implicitly communicates to the two switching systems $S_1$, $S_{1b}$ the operating state that they have to assume after startup. On the one hand this is effected for the switching system $S_{1b}$ that is to be defined as hot-standby in that the control device SC does not respond to the BOOTP requests of the interfaces $IF_2...IF_n$. Consequently, these interfaces have no IP addresses and remain in the inactive operating state ("IDLE"). However, they continue sending BOOTP requests at regular intervals to the control device SC, which in the normal state continues not to respond to these requests. On the other hand this is effected for the switching system $S_1$ that is to be defined as active in that the control device SC responds to all BOOTP requests (through communication of the IP address), as a result of which all interfaces are activated. DHCP requests can also be taken instead of BOOTP requests.

[0026]    The system consisting of active switching system and clone thus assumes the state provided (in the control device SC), which is defined as the fault-free normal state. In this state the cyclical BOOTP requests of the interfaces of the clone continue not to be answered, as a result of which these also continue not to have their IP addresses. The active interfaces of switching system $S_1$ send no BOOTP requests. In this normal state the control device SC now sends monitoring messages cyclically to the interfaces of the active switching system, which messages have to be answered by the active interfaces. If this is the case, it can be assumed that the active switching system also continues to be in a fault-free operating state, as a result of which the active operating state is maintained.

BLUEPRINT 000355

Attorney Docket No. 2003P18829WOUS

Since the cyclical BOOTP requests from the clone also continue to arrive (and also continue not to be answered), it can likewise be assumed that the clone too is in a fault-free operating state (still "IDLE", as previously). The control device SC has therefore stored the knowledge of the functional integrity of the active switching system and also of the clone. This knowledge is always kept at the latest level by means of the acknowledgement of the cyclical monitoring messages and the cyclical BOOTP requests of the clone.

[0027]    In the scenario described below let a serious failure of switching system $S_1$ be assumed. Owing to the geographical redundancy there is a high probability that the clone (switching system $S_{1b}$), like the control device SC, is also unaffected. The failure of switching system $S_1$ is identified by the control device SC, which also controls the corresponding switchover operations to switching system $S_{1b}$:

[0028]    The failure of switching system S1 is detected by the control device SC due to the fact that the monitoring messages are no longer acknowledged. However, a predefinable number of interfaces (configurable, optionally also all) should apply as the failure criterion, and not simply a loss of communication with all the interfaces. Thus, if no acknowledgements for this predefinable number of interfaces of switching system $S_1$ arrive at the control device SC for a relatively long period (e.g. 1 min.), it is concluded that a serious failure of switching system S1 has occurred. This criterion is sufficient to initiate a switchover from switching system $S_1$ to switching system $S_{1b}$.

[0029]    In this case the control device SC initially places still active interfaces of switching system $S_1$ into the inactive operating state ("IDLE") with the aid of a special message. This message is embodied such that the interfaces of switching system $S_1$ are prompted to release their IP addresses. To be on the safe side, the message is supplied to all the interfaces of switching system $S_1$ (i.e. also to those that have failed) and cyclically repeated until the BOOTP requests from the now inactive interfaces arrive at the control device SC. Switching system $S_1$ is therefore in the inactive operating state.

[0030]    The BOOTP requests still cyclically arriving as previously from $S_{1b}$ are now

BLUEPRINT 000356

answered by the control device SC in that the interfaces of the hitherto inactive clone are notified of their IP addresses. As a result switching system $S_{1b}$ assumes an active operating state. Switching system $S_{1b}$ is thus ready for switching operation and can take over the functions of switching system S1.

[0031]    The advantage of this approach lies in the avoidance of the "split brain" scenario. The interfaces of switching system $S_1$ are to remain in the inactive operating state even after the recovery of switching system $S_1$. Switching system $S_1$ is therefore deactivated in terms of switching functions until the next switchover. In order to keep the time interval of inconsistent interface states in switching system $S_{1b}$ as short as possible, the requests could be triggered in switching system $S_{1b}$.

[0032]    Several failure scenarios are discussed below:

[0033]    For the solution according to the invention, a total failure of the control device SC (dual failure of the two halves) represents no problem, in particular since such a case is extremely unlikely. In this embodiment variant this does not disrupt normal switching operation. Only the automatic switchover function of the control device SC is no longer present. Should a switchover become necessary during this time, it can be performed manually by the network management NM.

[0034]    Similarly, a disruption to the communication between switching system $S_1$ and control device SC can be intercepted. In this case there is a very small probability that the "split brain" scenario can occur. This means that the two switching systems $S_1$, $S_{1b}$ simultaneously assume an active operating state and both also use the same IP addresses.

[0035]    In order to rule out this complete scenario it is proposed to introduce a mutual monitoring for act / stb between switching system $S_1$ and switching system $S_{1b}$. The monitoring can use the same mechanisms as described above. Thus, for example, a dedicated IP interface of switching system $S_{1b}$ (hot standby) can send BOOTP requests to its partner interfaces in switching system $S_1$ at regular intervals and monitor whether its

BLUEPRINT 000357

Attorney Docket No. 2003P18829WOUS

partner interface is active. If switching system $S_{1b}$ is now to go from hot-standby to active, a check can first be carried out to determine whether the partner interface has failed (i.e. is no longer sending any responses). If it is still active (which must not be the case if the switchover has been performed correctly and would lead to the "split brain"), the switchover stb -> act in switching system $S_{1b}$ is prevented - and consequently also the "split brain". In this case there is a high probability that switching system $S_1$ is still active.

[0036]    If a "split brain" scenario should still nonetheless occur at some point, there is still a simple possibility of correction from the network management NM side. According to this, one of the two switching systems is once again placed into the stb operating state and if necessary executes a recovery

BLUEPRINT 000358

10/582589

AP3 REC'D PCT/PTO 09 JUN 2003

PTO/SB/08a (05-03)
Approved for use through 04/30/2003. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449A/PTO | Complete if Known | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(use as many sheets as necessary)* | Application Number | Not Yet Assigned |
| | Filing Date | June 9, 2006 |
| | First Named Inventor | Norbert Löbig |
| | Art Unit | Not Yet Assigned |
| | Examiner Name | Not Yet Assigned |
| Sheet | 1 | of | 1 | Attorney Docket Number | 2003P18829WOUS |

### U.S. PATENT DOCUMENTS

| Examiner Initials * | Cite No.[1] | Document Number Number - Kind Code[2] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 1 | US- 2003/0033030 A1 | 02-13-2003 | Naismith et al. | |
| | 2 | US- 6,108,300 | 08-22-2000 | Coile et al. | |
| | 3 | US- 5,473,599 | 12-05-1995 | Li et al. | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document Country Code[3] - Number[4] - Kind Code[5] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | 4 | EP 0 412 799 A2 | 02-13-1991 | BOSTON TECHNOLOGY | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional). 2 See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. 3 Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). 4 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 5 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible. 6 Applicant is to place a check mark here if English language Translation is attached.
This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

BLUEPRINT 000359

WO 2005/057853                                                          PCT/EP2004/051925

Beschreibung

Verfahren zum Ersatzschalten von räumlich getrennten Vermitt-
lungssystemen

5

Zeitgemäße Vermittlungssysteme (Switch) verfügen durch redun-
dantes Bereitstellen wichtiger interner Komponenten über ein
hohes Mass an interner Betriebssicherheit. Damit wird im
Normalbetrieb eine sehr hohe Verfügbarkeit der vermittlungs-
10     technischen Funktionen erreicht. Treten jedoch massive äußere
Einwirkungen auf (z.B. Feuer, Naturkatastrophen, Terroran-
schläge, kriegerische Einwirkungen etc.), so nutzen die ge-
troffenen Vorkehrungen zur Erhöhung der Betriebssicherheit in
der Regel wenig, weil Original- und Ersatzkomponenten des
15     Vermittlungssystems sich am gleichen Ort befinden und damit
in einem solchen Katastrophenfall mit hoher Wahrscheinlich-
keit beide Komponenten zerstört bzw. funktionsunfähig gewor-
den sind.

20     Als Lösung ist eine 1:1 Redundanz vorgeschlagen worden. Dem-
gemäss ist vorgesehen, jedem zu schützenden Vermittlungssys-
tem einen identischen Klon als Redundanzpartner mit identi-
scher Hardware, Software und Datenbasis zuzuordnen. Der Klon
befindet sich im hochgefahrenen Zustand, ist aber trotzdem
25     vermittlungstechnisch nicht aktiv. Beide Vermittlungssysteme
werden von einem im Netz übergeordneten, realzeitfähigen Mo-
nitor gesteuert, der die Umschaltevorgänge steuert.

Der Erfindung liegt die Aufgabe zugrunde, ein Verfahren zum
30     Ersatzschalten von Vermittlungssystemen anzugeben, das im
Fehlerfall ein effizientes Umschalten eines ausgefallenen
Vermittlungssystems auf einen Redundanzpartner sicherstellt.

Diese Aufgabe wird ausgehend von den im Oberbegriff von Pa-
35     tentanspruch 1 angegebenen Merkmalen durch die im kennzeich-
nenden Teil beanspruchten Merkmale gelöst.

BLUEPRINT 000360

2

Erfindungsgemäß wird ein Protokoll vorgeschlagen, das zwi-
schen einem übergeordneten realzeitfähigen Monitor und dem
aktiven Vermittlungssystem einerseits sowie dem hot-standby
Vermittlungssystem andererseits zum Ablauf gelangt. Das Pro-
5   tokoll basiert auf den Standard IP Protokollen BOOTP / DHCP,
die in der Regel von jeder IP Implementierung unterstützt
werden. Damit ist diese Lösung in jedem Vermittlungssystem
mit IP basierten Schnittstellen mit minimalem Implementie-
rungsaufwand realisierbar. Die Lösung ist umfassend einsetz-
10  bar und wirtschaftlich, weil im wesentlichen nur der Aufwand
für den Monitor anfällt. Ferner ist sie durch Nutzung einfa-
cher, standardisierter IP Protokolle extrem robust. Fehl-
steuerungen aufgrund von temporären Ausfällen im IP core Netz
beheben sich automatisch, nachdem der Ausfall beendet ist.
15  Ein Doppelausfall des Monitors stellt in dieser Variante e-
benso kein Problem dar.

Ein wesentlicher Vorteil der Erfindung ist darin zu sehen,
dass beim Umschaltevorgang von einem aktiven Vermittlungssys-
20  tem auf ein hot-standby Vermittlungssystem in den beteiligten
Vermittlungssystemen kein Netzwerkmanagement und keinerlei
zentrale Steuereinheit benötigt wird, die die Umschaltevor-
gänge unterstützt. Insofern ist es irrelevant, ob das Ver-
mittlungssystem eine zentrale Steuereinheit aufweist oder
25  nicht. Damit ist die Erfindung auch auf Router anwendbar, die
– im Gegensatz zum klassischen Vermittlungssystem – in der
Regel keine derartige zentrale Steuereinheit aufweisen.

Die Erfindung wird im folgenden anhand eines figürlich darge-
30  stellten Ausführungsbeispiels näher erläutert. Demgemäss ist
vorgesehen, jedem zu schützenden Vermittlungssystem (z. B.
$S_1$) einen identischen Klon als Redundanzpartner (z. B. $S_{1b}$)
mit identischer Hardware, Software und Datenbasis zuzuordnen.
Der Klon befindet sich im hochgefahrenen Zustand, ist aber
35  trotzdem vermittlungstechnisch nicht aktiv (Betriebszustand
"hot-standby"). Damit ist eine hochverfügbare, über mehrere

BLUEPRINT 000361

3

Lokationen verteilte 1:1 Redundanz von Vermittlungssystemen definiert.

Die beiden Vermittlungssysteme (Vermittlungssystem $S_1$ und der
5    Klon oder Redundanzpartner $S_{1b}$) werden von einem Netzwerkma-
nagementsystem NM gesteuert. Die Steuerung erfolgt derart,
dass der aktuelle Stand von Datenbasis und Software beider
Vermittlungssysteme $S_1$, $S_{1b}$ identisch gehalten wird. Dies wird
erreicht, indem jedes betriebstechnische Kommando, jedes Kon-
10   figurationskommando und jedes Software-Update inklusive Pat-
ches identisch an beide Partner ausgebracht wird. Damit wird
ein räumlich abgesetzter, identischer Klon zu einem in Be-
trieb befindlichen Switch mit identischer Datenbasis und i-
dentischem Softwarestand definiert.

15

Die Datenbasis beinhaltet grundsätzlich alle semipermanenten
und permanenten Daten. Hierbei werden unter permanenten Daten
die Daten verstanden, die als Code in Tabellen abgelegt sind
und die sich nur per Patch oder Software-Update ändern las-
20   sen. Unter smipermanenten Daten werden die Daten verstanden,
die z. B. über die Bedienerschnittstelle in das System gelan-
gen und die für längere Zeit dort in der Form der Eingabe ge-
speichert sind. Mit Ausnahme der Konfigurationszustände des
Systems werden diese Daten i.a. vom System nicht selbst ver-
25   ändert. Nicht in der Datenbasis enthalten sind die einen Ruf
begleitenden transienten Daten, die das Vermittlungssystem
nur kurzzeitig speichert und die über die Dauer eines Calls
hinaus i.a. keine Bedeutung haben oder Zustandsinformationen,
die transiente Überlagerungen/ Ergänzungen von konfigurativ
30   vorgegebenen Grundzuständen sind (So könnte ein Port zwar im
Grundzustand aktiv sein, aber wegen einer transienten (vorü-
bergehenden) Störung momentan nicht zugreifbar sein).

Im weiteren verfügen die Vermittlungssysteme $S_1$, $S_{1b}$ beide ü-
35   ber mindestens ein aktives, paketorientiertes Interface zum
gemeinsamen Netzwerkmanagementsystem NM. Dies sollen gemäss
vorliegendem Ausführungsbeispiel die beiden Interface $IF_1$

BLUEPRINT 000362

sein. Die beiden Interfaces $IF_1$ nehmen dabei einen aktiven
Betriebzustand ("act") ein. Während aber beim Vermittlungs-
system $S_1$ auch alle verbleibenden paketorientierten Inter-
faces $IF_2...IF_n$ aktiv sind, sind beim Vermittlungssystem $S_{1b}$

5   hingegen die verbleibenden Interfaces im Betriebzustand "id-
le". Der Zustand "idle" bedeutet, dass die Interfaces keinen
Nachrichtenaustausch erlauben, aber von außen, d.h. durch ei-
ne außerhalb von Vermittlungssystem $S_1$ und Vermittlungssystem
$S_{1b}$ gelegenen, übergeordneten realzeitfähigen Monitor akti-

10   viert werden können. Der Monitor kann in Hardware oder Soft-
ware realisiert sein, und schaltet im Fehlerfall in Realzeit
auf den Klon um. Realzeit bedeutet hier eine Zeitspanne von 1
bis 2 Sekunden. Gemäss vorliegendem Ausführungsbeispiel ist
der Monitor als Steuereinrichtung SC und aus Sicherheitsgrün-

15   den gedoppelt (lokale Redundanz) ausgebildet.

Die Interfaces $I_n$ sind paketbasiert und stellen somit Kommu-
nikationsschnittstellen zu paketbasierten Peripherieeinrich-
tungen (wie z. B. IAD, MG, SIP Proxy-Einrichtungen), fernen

20   paketbasierten Switches, paketbasierten Media Servern dar.
Sie werden mittelbar vom Monitor gesteuert, der als Steuer-
einrichtung SC (Switch Controller) ausgebildet ist. Dies be-
deutet, dass die Steuereinrichtung SC die Interfaces $IF_n$ ak-
tivieren und deaktivieren, und somit beliebig zwischen den

25   Betriebszuständen "act" und "idle" hin- und herschalten kann.

Die Konfiguration gemäss der Figur soll als Default Konfigu-
ration gelten. Dies bedeutet, dass Vermittlungssystem $S_1$ ver-
mittlungstechnisch aktiv ist, während sich Vermittlungssystem

30   $S_{1b}$ in einem Betriebzustand "hot-standby" befindet. Dieser
Zustand ist durch eine aktuelle Datenbasis und volle Aktivi-
tät aller Komponenten bis auf die paketbasierten Interfaces
(und eventuell die Bearbeitung vermittlungstechnischer Anrei-
ze) geprägt. Das (geographisch redundante) Vermittlungssystem

35   $S_{1b}$ kann somit von der Steuereinrichtung SC durch Aktivierung
der Interfaces $IF_2..IF_n$ schnell (Realzeit) in den vermitt-
lungstechnisch aktiven Zustand überführt werden. Das Inter-

**BLUEPRINT 000363**

5

face $IF_1$ ist auch auf dem hot standby Vermittlungssystem ak-
tiv, weil es die Schnittstelle zum Network Management
beschreibt, die immer aktiv sein muss.

5    Als wesentlicher Aspekt ist anzusehen, dass die beiden geo-
graphisch redundanten Vermittlungssysteme $S_1$, $S_{1b}$ sowie das
Netzwerkmanagement NM und die gedoppelte Steuereinrichtung SC
jeweils räumlich deutlich getrennt sein müssen.

10   Die Steuereinrichtung SC übermittelt dem Netzwerkmanagement
NM regelmäßig den aktuellen Betriebszustand der Vermittlungs-
systeme $S_1$ und $S_{1b}$ (act/ hot-standby, Zustand der Interfaces)
sowie den eigenen Betriebszustand. Die Funktionen der Steuer-
einrichtung SC können optional teilweise oder auch komplett
15   vom Netzwerkmanagement NM durchgeführt werden. Aus Sicher-
heitsgründen sollte das Netzwerkmanagement NM die Funktion
haben, die oben beschriebenen Umschaltungen auch manuell her-
beiführen zu können. Optional kann die automatische Umschal-
tung blockiert werden, so dass die Umschaltung nur manuell
20   durchgeführt werden kann.

Die Vermittlungssysteme $S_1$ und $S_{1b}$ können regelmäßig auch
selbst überprüfen, ob ihre paketbasierten Interfaces aktiv
sind. Ist dies für die Interfaces $IF_2..IF_n$ nicht der Fall,
25   kann man auf den Zustand "hot-standby" schließen und gezielt
gewisse Alarme, die sich aus der Nicht-Verfügbarkeit der In-
terfaces $IF_2..IF_n$ ergeben, blockieren. Weiterhin kann auf
diese Weise auch der Übergang eines Switches von "hot-
standby" auf "aktiv" erkannt werden. Dies ermöglicht, ggf.
30   gezielte Maßnahmen beim Start des Vermittlungsverkehrs zu er-
greifen.

Die Paket-Adressen (IP Adressen) der Interfaces $I_{2..n}$ des Ver-
mittlungssystems $S_1$ und ihrer jeweiligen Partner Interfaces
35   von Vermittlungssystem $S_{1b}$ können identisch sein, müssen es
aber nicht. Wenn sie identisch sind, wird das Umschalten nur
vom vorgeschalteten Router bemerkt. Für die Partner-

BLUEPRINT 000364

6

Applikation im Netz ist es dagegen völlig transparent. Dies
ist eine neue Anwendung und Verallgemeinerung der IP Failover
Funktion. Falls das Protokoll, das ein Interface bedient, ein
Umschalten des Kommunikationspartners auf eine andere Paket-
5     Adresse erlaubt, wie dies z.B. beim H.248 Protokoll der Fall
ist (ein Media Gateway kann selbständig eine neue Verbindung
zu einem anderen Media Gateway Controller mit anderer IP Ad-
resse herstellen), können die IP Adressen auch unterschied-
lich sein.

10

In einer Ausgestaltung der Erfindung wird vorgesehen, als
Steuereinrichtung SC den Zentralrechner eines weiteren Ver-
mittlungssystems zu verwenden. Damit existiert dann eine
Steuereinrichtung mit höchster Verfügbarkeit.

15

In einer Weiterbildung der Erfindung kommt die Etablierung
einer unmittelbaren Kommunikationsschnittstelle zwischen Ver-
mittlungssystem $S_1$ und Vermittlungssystem $S_{1b}$ in Betracht.
Diese kann zum Update der Datenbasis z. B. im Hinblick auf
20    SCI -(Subscriber Controlled Input) und Gebühren-Daten genutzt
werden sowie auch zum Austausch transienter Daten von einzel-
nen Verbindungen oder wesentlichen weiteren transienten Daten
(z. B. H.248 Association Handle). Damit sind die Störungen
des Betriebs aus Teilnehmer- und  Betreibersicht minimierbar.
25    Die semipermanenten und transienten Daten können dann von dem
jeweiligen aktiven Vermittlungssystem in das redundante hot-
standby Vermittlungssystem in einem zyklischen Zeitraster
(Update) übertragen werden. Das Update der SCI-Daten hat den
Vorteil, dass das zyklische Restore auf dem hot-standby-
30    System vermieden wird und jederzeit Aktualität bzgl. SCI Da-
ten im hot-standby System herrscht. Durch das Update Stack-
relevanter Daten, wie dem H.248 association handle, kann der
Peripherie die Übernahme durch ein Ersatzsystem verborgen
werden, und es können die Ausfallzeiten noch stärker redu-
35    ziert werden.

BLUEPRINT 000365

Grundsätzlich müssen im Netz die IP-Adressen aller Netzkompo-
nenten bekannt sein. Die Zuteilung der IP-Adressen wird beim
Hochfahren der gesamten IP-Netzeinrichtung gesteuert. Hierzu
ist ein Server (BOOTP Server) im Netz vorgesehen, der mit den
5   hochzufahrenden Clients über ein BOOTP Protokoll kommuni-
ziert. Die Netzkomponenten (Client), wie z. B. die Vermitt-
lungssysteme $S_1$, $S_{1b}$ fordern beim Hochlauf mit Hilfe des BOOTP
Protokolls beim BOOTP Server die IP-Adressen an. Mit dem Er-
halt dieser IP-Adressen sind damit in allen Netzkomponenten
10  die eigene MAC-Adresse (Netzweite Hardware Adresse) und die
eigene IP-Adresse bekannt. Da diese Zuordnung im Netz noch
nicht bekannt ist, wird von den Netzkomponenten diese Infor-
mation im Zuge einer Broadcast Nachricht anderen Netzkompo-
nenten (Client, Router) mitgeteilt. Hierzu wird ein eigenes
15  Protokoll (ARP Protokoll, Adress Resolution Protokoll) ver-
wendet.

Zur Überwachung und Umschaltung von einem aktiven Vermitt-
lungssystem auf ein redundant angeordnetes Vermittlungssystem
20  wird erfindungsgemäß ein Protokoll, im folgenden mit Proto-
koll HSCB (Hot-Standby Control Protokoll) bezeichnet, vorge-
schlagen. Diese Protokoll HSCB kommt zwischen der Steuerein-
richtung SC und dem Vermittlungssystem $S_1$ sowie zwischen der
Steuereinrichtung SC und dem Vermittlungssystem $S_{1b}$ zum Ab-
25  lauf. Grundsätzlich muss das Protokoll in der Lage sein, das
Vermittlungssystem $S_1$ nach dem Hochfahren (Recovery) in einen
aktiven ("act") oder einen "hot-standby" Betriebszustand zu
bringen. Ferner ist das im aktiven (und optional auch das im
"hot-standby") Betriebszustand befindliche Vermittlungssystem
30  zu überwachen und im Fehlerfall die erforderlichen Umschal-
tungen herbeizuführen (aktives Vermittlungssystem geht nach
hot-standby / hot-standby Vermittlungssystem geht nach ak-
tiv). Optional kann Vermittlungssystem $S_1$ und $S_{1b}$ explizit
mitgeteilt werden, ob sie activ bzw. hot-standby sind.

35

BLUEPRINT 000366

WO 2005/057853                                                    PCT/EP2004/051925

8

Folgende Regeln werden im Protokoll HSCB zwischen der Steuer-
einrichtung SC und dem Vermittlungssystem $S_1$ bzw. $S_{1b}$ festge-
legt:

5   Wenn ein paketbasiertes Interface eines Vermittlungssystems
sich im Betriebszustand "IDLE" befindet, schickt es regelmä-
ßig IP Adressanforderungen ("BOOTP Request") an die Steuer-
einrichtung SC. Hierbei ist es nicht notwendig, dass die
Steuereinrichtung SC diese BOOTP Requests der Interfaces vom
10  Vermittlungssystem beantwortet, dies wird nur für die Adress-
anforderungen des Vermittlungssystems vorgenommen, das bei
der Steuereinrichtung SC als aktiv gekennzeichnet ist. Im
Falle einer positiven Rückantwort von der Steuereinrichtung
SC wird das paketbasierte Interface in den aktiven Betriebs-
15  zustand ("act") versetzt. Im Falle keiner (oder negativen)
Rückantwort von der Steuereinrichtung SC bleiben die im inak-
tiven Betriebzustand befindlichen paketbasierten Interfaces
im inaktiven Betriebzustand ("IDLE"). Nach dem Booten befin-
den sich alle paketbasierten Interfaces im inaktiven Be-
20  triebszustand ("IDLE"). Ein im aktiven Betriebszustand sich
befindendes Interface braucht keine Adressanforderungen ("IP-
Request") an die Steuereinrichtung SC zu senden.

Die Steuereinrichtung SC schickt ihrerseits regelmäßig Über-
25  wachungsnachrichten an die paketbasierten Interfaces, die
diese nur beantworten müssen, wenn sie aktiv sind. Mittels
einer besonderen Nachricht kann die Steuereinrichtung SC ein
paketbasiertes Interface vom aktiven Betriebszustand in den
inaktiven Betriebszustand ("IDLE") bringen.

30
Im folgenden wird der Hochlauf der Netzkonfiguration be-
schrieben. Grundsätzlich sind nach dem Hochlauf alle Inter-
faces von Vermittlungssystem $S_1$ und $S_{1b}$ im inaktiven Betriebs-
zustand "IDLE". Die Steuereinrichtung SC soll nun BOOTP Ser-
35  ver für Vermittlungssystem $S_1$ und $S_{1b}$ sein. Dies bedeutet,
dass beim Hochlauf die IP Interfaces von Vermittlungssystem
$S_1$ bzw. Vermittlungssystem $S_{1b}$ sich ihre IP Adressen via BOOTP

BLUEPRINT 000367

9

Request von der Steuereinrichtung SC abholen. Die Steuerein-
richtung SC hat Kenntnis von der Existenz beider Vermitt-
lungssysteme sowie von dem von diesen noch einzunehmenden Be-
triebszustand (act/ hot-standby). Die Steuereinrichtung SC
5   teilt den beiden Vermittlungssystem $S_1$, $S_{1b}$ den Betriebzustand
implizit mit, den sie nach dem Hochlauf einzunehmen haben.
Zum einen erfolgt dies für das als hot-standby zu definieren-
de Vermittlungssystem $S_{1b}$, indem die Steuereinrichtung SC die
BOOTP Requests der Interfaces $IF_2...IF_n$ nicht beantwortet.
10  Damit haben diese Interfaces keine IP Adressen und bleiben im
inaktiven Betriebszustand ("IDLE"). Sie schicken aber weiter-
hin regelmäßig BOOTP Requests an die Steuereinrichtung SC,
die diese im Normalzustand weiterhin nicht beantwortet. Zum
anderen erfolgt dies für das als aktiv zu definierende Ver-
15  mittlungssystem $S_1$, indem die Steuereinrichtung SC alle BOOTP
Requests (durch Mitteilung der IP Adresse) beantwortet, womit
alle Interfaces aktiviert werden. Statt BOOTP Request können
auch DHCP Request genommen werden.

20  Das System aus aktivem Vermittlungssystem und Klon nimmt da-
mit den (in der Steuereinrichtung SC) vorgesehenen Zustand
ein, der als fehlerfreier Normalzustand definiert ist. In
diesem Zustand werden die zyklischen BOOTP Requests der In-
terfaces des Klons weiterhin nicht beantwortet, womit diesen
25  auch weiterhin ihre IP Adressen fehlen. Die aktiven Inter-
faces von Vermittlungssystem $S_1$ senden keine BOOTP Requests.
In diesem Normalzustand sendet nun die Steuereinrichtung SC
zyklisch Überwachungsnachrichten an die Interfaces des akti-
ven Vermittlungssystems, die von den aktiven Interfaces be-
30  antwortet werden müssen. Ist dies der Fall, kann davon ausge-
gangen werden, dass das aktive Vermittlungssystem sich auch
weiterhin in einem fehlerfreien Betriebszustand befindet, wo-
mit der aktive Betriebszustand beibehalten wird. Da die zyk-
lischen BOOTP Requests vom Klon ebenfalls weiterhin eintref-
35  fen (und auch weiterhin nicht beantwortet werden), kann eben-
falls davon ausgegangen werden, dass auch der Klon sich in
einem fehlerfreien Betriebszustand befindet (nach wie vor

BLUEPRINT 000368

"IDLE"). Die Steuereinrichtung SC hat somit das Wissen um die
Funktionsfähigkeit des aktiven Vermittlungssystems und auch
des Klons gespeichert. Dieses Wissen wird mit der Quittierung
der zyklischen Überwachungsnachrichten und den zyklischen
5    BOOTP Requests des Klons stets auf aktuellem Niveau gehalten.

Im folgenden sei nun von einem schwerwiegenden Ausfall des
Vermittlungssystem $S_1$ ausgegangen. Aufgrund der geographi-
schen Redundanz ist mit hoher Wahrscheinlichkeit der Klon
10   (Vermittlungssystem $S_{1b}$) ebenso nicht betroffen wie die Steu-
ereinrichtung SC. Das Feststellen des Ausfalls von Vermitt-
lungssystem $S_1$ sowie das Steuern der entsprechenden Umschal-
tevorgänge auf Vermittlungssystem $S_{1b}$ wird von der Steuerein-
richtung SC vorgenommen:

15

Der Ausfall von Vermittlungssystem $S_1$ wird von der Steuerein-
richtung SC festgestellt, indem die Überwachungsnachrichten
nicht mehr quittiert werden. Als Kriterium des Ausfalls soll
aber nicht nur ein Kommunikationsverlust mit allen Interfaces
20   gelten, sondern bereits mit einer vorgebbaren Anzahl (konfi-
gurierbar, optional auch alle). Kommen also für diese vorgeb-
bare Anzahl von Interfaces von Vermittlungssystem $S_1$ für län-
gere Zeit (z.B. 1 Min.) keine Quittungen bei Steuereinrich-
tung SC an, so wird auf einen schwerwiegenden Ausfall von
25   Vermittlungssystem $S_1$ geschlossen. Dieses Kriterium ist hin-
reichend, um ein Umschalten (Switchover) von Vermittlungssys-
tem $S_1$ nach Vermittlungssystem $S_{1b}$ zu veranlassen.

In diesem Fall bringt zunächst die Steuereinrichtung SC noch
30   aktive Interfaces von Vermittlungssystem $S_1$ mit Hilfe einer
besonderen Nachricht in den inaktiven Betriebszustand
("IDLE"). Dies Nachricht ist derart ausgebildet, dass die In-
terfaces von Vermittlungssystem $S_1$ dazu veranlasst werden,
Ihre IP Adressen freizugeben. Die Nachricht wird sicherheits-
35   halber allen Interfaces von Vermittlungssystem $S_1$ (also auch
den ausgefallenen) zugeführt und zyklisch solange wiederholt,
bis die BOOTP Requests von den nun inaktiven Interfaces bei

BLUEPRINT 000369

der Steuereinrichtung SC eintreffen. Vermittlungssystem $S_1$
ist damit im inaktiven Betriebszustand.

Die nach wie vor zyklisch eintreffenden BOOTP Requests von
5    S1b werden nun von der Steuereinrichtung SC beantortet, indem
den Interfaces des bislang inaktiven Klons ihre IP Adressen
mitgeteilt werden. Damit nimmt Vermittlungssystem $S_{1b}$ einen
aktiven Betriebzustand ein. Vermittlungssystem $S_{1b}$ ist damit
vermittlungsbereit und kann die Funktionen von Vermittlungs-
10   system $S_1$ übernehmen.

Der Vorteil dieser Vorgehensweise liegt in der Vermeidung des
split brain Szenarios. Die Interfaces von Vermittlungssystem
$S_1$ sollen auch nach Recovery von Vermittlungssystem $S_1$ im in-
15   aktiven Betriebszustand bleiben.  Vermittlungssystem $S_1$ ist
damit bis zum nächsten Umschalten vermittlungtechnisch deak-
tiviert. Um das Zeitintervall inkonsistenter Interface Zu-
stände in Vermittlungssystem $S_{1b}$ möglichst kurz zu halten,
könnte man in Vermittlungssystem $S_{1b}$ die Requests triggern.
20

Im folgenden werden einige Ausfallszenarien diskutiert:

Für die Lösung gemäss der Erfindung stellt ein Totalausfall
der Steuereinrichtung SC (Doppel-Ausfall der beiden Hälften)
25   kein Problem dar, zumal ein solcher Fall extrem unwahrschein-
lich ist. Dies stört in dieser Ausführungsvariante den norma-
len Vermittlungsbetrieb nicht. Nur die automatische Umschal-
tefunktion der Steuereinrichtung SC ist nicht mehr vorhanden.
Sollte während dieser Zeit ein Umschalten erforderlich wer-
30   den, kann es manuell vom Netzwerkmanagement NM durchgeführt
werden.

Ebenso kann eine gestörte Kommunikation zwischen Vermitt-
lungssystem $S_1$ und und Steuereinrichtung SC abgefangen wer-
35   den. In diesem Fall kann mit sehr geringer Wahrscheinlichkeit
das "split brain" Szenario auftreten. Dies bedeutet, dass die
beiden Vermittlungssysteme $S_1$, $S_{1b}$ zugleich einen aktiven Be-

BLUEPRINT 000370

triebszustand einnehmen und beide auch dieselben IP Adressen
verwenden.

Um dieses gänzlich Szenario auszuschließen wird vorgeschla-
5    gen, eine gegenseitige Überwachung auf act / stb zwischen
Vermittlungssystem $S_1$ und Vermittlungssystem $S_{1b}$ einführen.
Die Überwachung kann dieselben Mechanismen verwenden, die o-
ben beschrieben sind. So kann beispielsweise ein dediziertes
IP Interface von Vermittlungssystem $S_{1b}$ (hot-standby) regel-
10   mässig BOOTP Requests an sein Partner Interfaces in Vermitt-
lungssystem $S_1$ schicken und überwachen, ob sein Partner In-
terface aktiv ist. Soll nun Vermittlungssystem $S_{1b}$ von hot-
standby nach activ gehen, kann vorher geprüft werden, ob das
Partner Interface ausgefallen ist (d.h. keine responses mehr
15   schickt). Ist es weiterhin aktiv (was beim korrekten Switcho-
ver nicht der Fall sein darf und zum "split brain" führen
würde), wird das Umschalten stb -> act in Vermittlungssystem
$S_{1b}$ verhindert — und damit auch das "split brain". Vermitt-
lungssystem $S_1$ ist in diesem Fall mit hoher Wahrscheinlich-
20   keit noch aktiv.

Sollte ein "split brain" Szenario doch einmal auftreten, be-
steht immer noch eine einfache Korrekturmöglichkeit vom Netz-
werkmanagement NM aus. Demnach wird eines der beiden Vermitt-
25   lungssysteme wieder in den stb Betriebszustand gebracht und
durchläuft gegebenenfalls ein Wiederhochlauf (Recovery).

BLUEPRINT 000371

13

Patentansprüche

1. Verfahren zum Ersatzschalten von räumlich getrennten Vermittlungssystemen, die in einer 1:1 Redundanz paarweise
5    angeordnet sind, wobei das eine Vermittlungssystem ($S_1$) sich in einem aktiven Betriebszustand ("act") und das verbleibende redundante Vermittlungssystem ($S_{1b}$) sich in einem hot-standby Betriebszustand ("idle") befindet, dadurch gekennzeichnet,
10   dass jeweils zwischen dem im aktiven Betriebszustand befindlichen Vermittlungssystem ($S_1$) sowie dem hierzu redundanten, im hot-standby Betriebszustand befindlichen Vermittlungssystem und einem übergeordneten Monitor (SC) nach Maßgabe des Betriebszustandes der beiden Vermittlungssysteme
15   eine Kommunikation gesteuert wird, und dass bei Kommunikationsverlust zu dem im aktiven Betriebszustand befindlichen Vermittlungssystem ($S_1$) vom übergeordneten Monitor (SC) in Realzeit dieses deaktiviert und das im hot-standby Betriebszustand befindliche Vermittlungssystem ($S_{1b}$)
20   aktiviert wird.

2. Verfahren nach Anspruch 1, dadurch gekennzeichnet, dass der Betriebszustand eines Vermittlungssystems durch eine
25   vorgebbare Anzahl von paketbasierten Interfaces definiert und/ oder gesteuert wird.

3. Verfahren nach Anspruch 1, 2, dadurch gekennzeichnet,
30   dass paketbasierte Interfaces eines als hot-standby definierten Vermittlungssystems einen inaktiven Betriebszustand ("IDLE") einnehmen und regelmäßig IP Adressanforderungen ("BOOTP Request") an den Monitor (SC) senden, der diese im fehlerfreien Betrieb nicht beantwortet.

35

BLUEPRINT 000372

14

4. Verfahren nach Anspruch 1 bis 3,
dadurch gekennzeichnet,
dass paketbasierte Interfaces eines als aktiv definierten
Vermittlungssystems einen aktiven Betriebszustand ("act")
5   einnehmen wobei regelmäßige IP Adressanforderungen ("BOOTP
Request") an den Monitor (SC) unterbleiben.

5. Verfahren nach einem der vorstehenden Ansprüche,
dadurch gekennzeichnet,
10   dass lediglich im Falle einer positiven Rückantwort vom Moni-
tor (SC) ein bis dahin inaktives, paketbasiertes Interface in
den aktiven Betriebszustand ("act") versetzt wird.

6. Verfahren nach einem der vorstehenden Ansprüche,
15   dadurch gekennzeichnet,
dass vom übergeordneten Monitor (SC) Überwachungsnachrichten
an die im aktiven Betriebszustand befindlichen Interfaces ge-
sendet werden, die von diesen quittiert werden.

20   7. Verfahren nach einem der vorstehenden Ansprüche,
dadurch gekennzeichnet,
dass bei Ausbleiben der Quittung auf die Überwachungsnach-
richten von dem übergeordneten Monitor (SC) auf einen Fehler
geschlossen wird, und in diesem Fall mittels einer besonderen
25   Nachricht die paketbasierte Interfaceces des bislang aktiven
Vermittlungssystems in einen inaktiven Betriebszustand ge-
steuert werden.

8. Verfahren nach einem der vorstehenden Ansprüche,
30   dadurch gekennzeichnet,
dass bei Ausbleiben der Quittung auf die Überwachungsnach-
richten von dem übergeordneten Monitor (SC) auf einen Fehler
geschlossen wird, und in diesem Fall die zyklischen IP Ad-
ressanforderungen der inaktiven Interfaces durch die positive
35   Rückantwort beantwortet werden.

BLUEPRINT 000373

9. Verfahren nach einem der vorstehenden Ansprüche,
dadurch gekennzeichnet,
dass die positive Rückantwort vom Monitor (SC) die IP Adresse
des anfordernden paketbasierten Interfaces enthält.

5

10. Verfahren nach einem der vorstehenden Ansprüche,
dadurch gekennzeichnet,
dass ein vormals aktives Vermittlungssystem nach Beseitigung
des Fehlerfalles solange als hot-standby Vermittlungssystem
10  definiert bleibt, bis ein neuer Fehlerfall die Umschaltung
erzwingt.

BLUEPRINT 000374

WO 2005/057853                                          PCT/EP2004/051925

1/1



| WRITTEN OPINION OF THE INTERNATIONAL SEARCHING AUTHORITY (SUPPLEMENTARY SHEET) | International application No. |
|---|---|
| | PCT/EP2004/051925 |

10/582589

ᵗAP3 Rec'd PCT/PTO 0 9 JUN 2005

## Re Box No. III

Non-establishment of opinion with regard to novelty, inventive step and industrial applicability

1.    The independent claim 1 relates to a switching system which "is deactivated in real time by the higher-level monitor and the switching system in the hot-standby operating state is activated".

The expression "in real time" is regarded as a relative term, for which reason this is unclear as defined in Article 6 PCT (see also PCT Guidelines 5.34).

2.    The formulation "[this switching system] is deactivated in real time" is also vague and leaves the person skilled in the art unclear as to the precise extent of protection (Article 6 PCT). It is not clear in **which** time a deactivation of the switching system takes place.

3.    Claim 1 does not meet the requirements of Article 6 PCT, because the subject matter of the application for protection is not clearly defined. An attempt is made in the claim to define the subject matter by the result that is to be achieved; however, this merely specifies the object to be achieved, without offering the technical measures necessary to achieve this result (see PCT Guidelines 5.35).

In order to correct this defect, it appears necessary to include the technical features necessary to achieve this result in the claim.

4.    Because of the above cited defects it is not possible to establish an opinion with regard to novelty and inventive step (Article 33(2) and (3) PCT) at this time.

In the dependent claims no subject matter is defined which, together with the subject matter of the independent claim, would remove the above objections with regard to clarity. For this reason it is likewise not possible to establish an opinion with regard to novelty and inventive step (Article 33(2) and (3) PCT) for the dependent claims 2-10.

5.    The search was carried out on the basis of the exemplary embodiment in the description.

BLUEPRINT 000376

## VERTRAG ÜBER DIE INTERNATIONALE ZUSAMMENARBEIT AUF DEM GEBIET DES PATENTWESENS

Absender: INTERNATIONALE RECHERCHENBEHÖRDE

Hr. Grabe

# PCT

An

SIEMENS AKTIENGESELLSCHAFT
Postfach 22 16 34 CT IPO AM Mch P
D-80506 München
GERMANY

rec. NOV 17 2004

IP
time limit 12. 10. 05

MITTEILUNG ÜBER DIE ÜBERMITTLUNG DES INTERNATIONALEN RECHERCHENBERICHTS UND DES SCHRIFTLICHEN BESCHEIDS DER INTERNATIONALEN RECHERCHENBEHÖRDE ODER DER ERKLÄRUNG

(Regel 44.1 PCT)

| | |
|---|---|
| | Absendedatum *(Tag/Monat/Jahr)* 17/11/2004 |
| Aktenzeichen des Anmelders oder Anwalts 2003P18829WO | WEITERES VORGEHEN    siehe Punkte 1 und 4 unten |
| Internationales Aktenzeichen PCT/EP2004/051925 | Internationales Anmeldedatum *(Tag/Monat/Jahr)* 26/08/2004 |
| Anmelder SIEMENS AKTIENGESELLSCHAFT | |

1. [x] Dem Anmelder wird mitgeteilt, daß der internationale Recherchenbericht und der schriftliche Bescheid der Internationalen Recherchenbehörde erstellt wurden und ihm hiermit übermittelt werden.
   Einreichung von Änderungen und einer Erklärung nach Artikel 19:
   Der Anmelder kann auf eigenen Wunsch die Ansprüche der internationalen Anmeldung ändern (siehe Regel 46):
   **Bis wann sind Änderungen einzureichen?**
   Die Frist zur Einreichung solcher Änderungen beträgt üblicherweise zwei Monate ab der Übermittlung des internationalen Recherchenberichts.
   **Wo sind Änderungen einzureichen?**
   Unmittelbar beim Internationalen Büro der WIPO, 34, chemin des Colombettes, CH-1211 Genf 20,Telefaxnr.: (41–22) 740.14.35
   **Nähere Hinweise sind den Anmerkungen auf dem Beiblatt zu entnehmen.**

2. [ ] Dem Anmelder wird mitgeteilt, daß kein internationaler Recherchenbericht erstellt wird und daß ihm hiermit die Erklärung nach Artikel 17 (2) a) sowie der schriftliche Bescheid der Internationalen Recherchenbehörde übermittelt werden.

3. [ ] Hinsichtlich des Widerspruchs gegen die Entrichtung einer zusätzlichen Gebühr (zusätzlicher Gebühren) nach Regel 40.2 wird dem Anmelder mitgeteilt, daß
   [ ] der Widerspruch und die Entscheidung hierüber zusammen mit seinem Antrag auf Übermittlung des Wortlauts sowohl des Widerspruchs als auch der Entscheidung hierüber an die Bestimmungsämter dem Internationalen Büro übermittelt worden sind.
   [ ] noch keine Entscheidung über den Widerspruch vorliegt; der Anmelder wird benachrichtigt, sobald eine Entscheidung getroffen wurde.

4. **Zur Erinnerung:**
   Kurz nach Ablauf von **18 Monaten** seit dem Prioritätsdatum wird die internationale Anmeldung vom Internationalen Büro veröf-fentlicht. Will der Anmelder die Veröffentlichung verhindern oder auf einen späteren Zeitpunkt verschieben, so muß gemäß Re-gel 90bis.1 bzw. 90bis.3 vor Abschluß der technischen Vorbereitungen für die internationale Veröffentlichung eine Erklärung über die Zurücknahme der internationalen Anmeldung oder des Prioritätsanspruchs beim Internationalen Büro eingehen.
   Der Anmelder kann beim Internationalen Büro eine informelle Stellungnahme zum schriftlichen Bescheid der Internationalen Recherchenbehörde einreichen. Das Internationale Büro sendet allen Bestimmungsämtern eine Kopie dieser Stellungnahme, sofern nicht ein internationaler vorläufiger Prüfungsbericht erstellt worden ist bzw. gerade erstellt wird. Eine solche Stellungnahme würde auch der Öffentlichkeit zugänglich gemacht, allerdings erst nach Ablauf von 30 Monaten seit dem Prioritätsdatum.
   In bezug auf einige Bestimmungsämter ist innerhalb von **19 Monaten** seit dem Prioritätsdatum ein Antrag auf internationale vorläufige Prüfung einzureichen, wenn der Anmelder den Eintritt in die nationale Phase bereits nach Ablauf erst **30 Monaten** nach dem Prioritätsdatum (in manchen Ämtern sogar noch später) vornehmen möchte; ansonsten muß der Anmelder innerhalb von **20 Monaten** seit dem Prioritätsdatum die für den Eintritt in die nationale Phase vor diesen Bestimmungsämtern vorgeschriebenen Handlungen vornehmen.
   Bei anderen Bestimmungsämtern gilt die Frist von **30 Monaten** (oder eine etwaige längere Frist) auch dann, wenn innerhalb von **19 Monaten** kein solcher Antrag eingereicht wird.
   Siehe Anhang zu Formblatt PCT/IB/301. Genaue Angaben zu den jeweils geltenden Fristen in den einzelnen Ämtern enthält der *PCT–Leitfaden für Anmelder*, Band II, Nationale Kapitel sowie die Website der WIPO.

| Name und Postanschrift der Internationalen Recherchenbehörde | Bevollmächtigter Bediensteter |
|---|---|
| Europäisches Patentamt, P.B. 5818 Patentlaan 2 NL–2280 HV Rijswijk Tel. (+31–70) 340–2040 Fax: (+31–70) 340–3016 | Ursula Riepert |

Formblatt PCT/ISA/220 (Januar 2004)

*(Siehe Anmerkungen auf Beiblatt)*

**BLUEPRINT 000377**

## ANMERKUNGEN ZU FORMBLATT PCT/ISA/220

Diese Anmerkungen sollen grundlegende Hinweise zur Einreichung von Änderungen gemäß Artikel 19 geben. Diesen Anmerkungen liegen die Erfordernisse des Vertrags über die internationale Zusammenarbeit auf dem Gebiet des Patentwesens (PCT), der Ausführungsordnung und der Verwaltungsrichtlinien zu diesem Vertrag zugrunde. Bei Abweichungen zwischen diesen Anmerkungen und obengenannten Texten sind letztere maßgebend. Nähere Einzelheiten sind dem PCT-Leitfaden für Anmelder, einer Veröffentlichung der WIPO, zu entnehmen.

Die in diesen Anmerkungen verwendeten Begriffe "Artikel", "Regel" und "Abschnitt" beziehen sich jeweils auf die Bestimmungen des PCT-Vertrags, der PCT-Ausführungsordnung bzw. der PCT-Verwaltungsrichtlinien.

## HINWEISE ZU ÄNDERUNGEN GEMÄSS ARTIKEL 19

Nach Erhalt des internationalen Recherchenberichts hat der Anmelder die Möglichkeit, einmal die Ansprüche der internationalen Anmeldung zu ändern. Es ist jedoch zu betonen, daß, da alle Teile der internationalen Anmeldung (Ansprüche, Beschreibung und Zeichnungen) während des internationalen vorläufigen Prüfungsverfahrens geändert werden können, normalerweise keine Notwendigkeit besteht, Änderungen der Ansprüche nach Artikel 19 einzureichen, außer wenn der Anmelder z.B. zum Zwecke eines vorläufigen Schutzes die Veröffentlichung dieser Ansprüche wünscht oder ein anderer Grund für eine Änderung der Ansprüche vor ihrer internationalen Veröffentlichung vorliegt. Weiterhin ist zu beachten, daß ein vorläufiger Schutz nur in einigen Staaten erhältlich ist.

**Welche Teile der internationalen Anmeldung können geändert werden?**

Im Rahmen von Artikel 19 können nur die Ansprüche geändert werden.

In der internationalen Phase können die Ansprüche auch nach Artikel 34 vor der mit der internationalen vorläufigen Prüfung beauftragten Behörde geändert (oder nochmals geändert) werden. Die Beschreibung und die Zeichnungen können nur nach Artikel 34 vor der mit der internationalen vorläufigen Prüfung beauftragten Behörde geändert werden.

Beim Eintritt in die nationale Phase können alle Teile der internationalen Anmeldung nach Artikel 28 oder gegebenenfalls Artikel 41 geändert werden.

**Bis wann sind Änderungen einzureichen?**

Innerhalb von zwei Monaten ab der Übermittlung des internationalen Recherchenberichts oder innerhalb von sechzehn Monaten ab dem Prioritätsdatum, je nachdem, welche Frist später abläuft. Die Änderungen gelten jedoch als rechtzeitig eingereicht, wenn sie dem internationalen Büro nach Ablauf der maßgebenden Frist, aber noch vor Abschluß der technischen Vorbereitungen für die internationale Veröffentlichung (Regel 46.1) zugehen.

**Wo sind die Änderungen nicht einzureichen?**

Die Änderungen können nur beim internationalen Büro, nicht aber beim Anmeldeamt oder der internationalen Recherchenbehörde eingereicht werden (Regel 46.2).

Falls ein Antrag auf internationale vorläufige Prüfung eingereicht wurde/wird, siehe unten.

**In welcher Form können Änderungen erfolgen?**

Eine Änderung kann erfolgen durch Streichung eines oder mehrerer ganzer Ansprüche, durch Hinzufügung eines oder mehrerer neuer Ansprüche oder durch Änderung des Wortlauts eines oder mehrerer Ansprüche in der eingereichten Fassung.

Für jedes Anspruchsblatt, das sich aufgrund einer oder mehrerer Änderungen von dem ursprünglich eingereichten Blatt unterscheidet, ist ein Ersatzblatt einzureichen.

Alle Ansprüche, die auf einem Ersatzblatt erscheinen, sind mit arabischen Ziffern zu numerieren. Wird ein Anspruch gestrichen, so brauchen die anderen Ansprüche nicht neu numeriert zu werden. Im Fall einer Neunumerierung sind die Ansprüche fortlaufend zu numerieren (Verwaltungsrichtlinien, Abschnitt 205 b)).

**Die Änderungen sind in der Sprache abzufassen, in der die internationale Anmeldung veröffentlicht wird.**

**Welche Unterlagen sind den Änderungen beizufügen?**

Begleitschreiben (Abschnitt 205 b)):

Die Änderungen sind mit einem Begleitschreiben einzureichen.

Das Begleitschreiben wird nicht zusammen mit der internationalen Anmeldung und den geänderten Ansprüchen veröffentlicht. Es ist nicht zu verwechseln mit der "Erklärung nach Artikel 19(1)" (siehe unten, "Erklärung nach Artikel 19 (1)").

**Das Begleitschreiben ist nach Wahl des Anmelders in englischer oder französischer Sprache abzufassen. Bei englischsprachigen internationalen Anmeldungen ist das Begleitschreiben aber ebenfalls in englischer, bei französischsprachigen internationalen Anmeldungen in französischer Sprache abzufassen.**

Anmerkungen zu Formblatt PCT/ISA/220 (Blatt 1) (Januar 1994)

BNSDOCID: <XS____ISA220NODEP4_I_>

## ANMERKUNGEN ZU FORMBLATT PCT/ISA/220 (Fortsetzung)

Im Begleitschreiben sind die Unterschiede zwischen den Ansprüchen in der eingereichten Fassung und den geänderten Ansprüchen anzugeben. So ist insbesondere zu jedem Anspruch in der internationalen Anmeldung anzugeben (gleichlautende Angaben zu verschiedenen Ansprüchen können zusammengefaßt werden), ob

    i)    der Anspruch unverändert ist;

    ii)    der Anspruch gestrichen worden ist;

    iii)    der Anspruch neu ist;

    iv)    der Anspruch einen oder mehrere Ansprüche in der eingereichten Fassung ersetzt;

    v)    der Anspruch auf die Teilung eines Anspruchs in der eingereichten Fassung zurückzuführen ist.

Im folgenden sind Beispiele angegeben, wie Änderungen im Begleitschreiben zu erläutern sind:

1.    [Wenn anstelle von ursprünglich 48 Ansprüchen nach der Änderung einiger Ansprüche 51 Ansprüche existieren]:
"Die Ansprüche 1 bis 29, 31, 32, 34, 35, 37 bis 48 werden durch geänderte Ansprüche gleicher Numerierung ersetzt; Ansprüche 30, 33 und 36 unverändert; neue Ansprüche 49 bis 51 hinzugefügt."

2.    [Wenn anstelle von ursprünglich 15 Ansprüchen nach der Änderung aller Ansprüche 11 Ansprüche existieren]:
"Geänderte Ansprüche 1 bis 11 treten an die Stelle der Ansprüche 1 bis 15."

3.    [Wenn ursprünglich 14 Ansprüche existierten und die Änderungen darin bestehen, daß einige Ansprüche gestrichen werden und neue Ansprüche hinzugefügt werden]:
Ansprüche 1 bis 6 und 14 unverändert; Ansprüche 7 bis 13 gestrichen; neue Ansprüche 15, 16 und 17 hinzugefügt."Oder" Ansprüche 7 bis 13 gestrichen; neue Ansprüche 15, 16 und 17 hinzugefügt; alle übrigen Ansprüche unverändert."

4.    [Wenn verschiedene Arten von Änderungen durchgeführt werden]:
"Ansprüche 1-10 unverändert; Ansprüche 11 bis 13, 18 und 19 gestrichen; Ansprüche 14, 15 und 16 durch geänderten Anspruch 14 ersetzt; Anspruch 17 in geänderte Ansprüche 15, 16 und 17 unterteilt; neue Ansprüche 20 und 21 hinzugefügt."

**"Erklärung nach Artikel 19(1)" (Regel 46.4)**

Den Änderungen kann eine Erklärung beigefügt werden, mit der die Änderungen erläutert und ihre Auswirkungen auf die Beschreibung und die Zeichnungen dargelegt werden (die nicht nach Artikel 19 (1) geändert werden können).

Die Erklärung wird zusammen mit der internationalen Anmeldung und den geänderten Ansprüchen veröffentlicht.

Sie ist in der Sprache abzufassen, in der die internationalen Anmeldung veröffentlicht wird.

Sie muß kurz gehalten sein und darf, wenn in englischer Sprache abgefaßt oder ins Englische übersetzt, nicht mehr als 500 Wörter umfassen

Die Erklärung ist nicht zu verwechseln mit dem Begleitschreiben, das auf die Unterschiede zwischen den Ansprüchen in der eingereichten Fassung und den geänderten Ansprüchen hinweist, und ersetzt letzteres nicht. Sie ist auf einem gesonderten Blatt einzureichen und in der Überschrift als solche zu kennzeichnen, vorzugsweise mit den Worten "Erklärung nach Artikel 19 (1)".

Die Erklärung darf keine herabsetzenden Äußerungen über den internationalen Recherchenbericht oder die Bedeutung von in dem Bericht angeführten Veröffentlichungen enthalten. Sie darf auf im internationalen Recherchenbericht angeführte Veröffentlichungen, die sich auf einen bestimmten Anspruch beziehen, nur im Zusammenhang mit einer Änderung dieses Anspruchs Bezug nehmen.

**Auswirkungen eines bereits gestellten Antrags auf internationalevorläufige Prüfung**

Ist zum Zeitpunkt der Einreichung von Änderungen nach Artikel 19 bereits ein Antrag auf internationale vorläufige Prüfung gestellt worden, so sollte der Anmelder in seinem Interesse gleichzeitig mit der Einreichung der Änderungen beim Internation alen Büro auch eine Kopie der Änderungen bei der mit der internationalen vorläufigen Prüfung beauftragen Behörde einreichen (siehe Regel 62.2 a), erster Satz).

**Auswirkungen von Änderungen hinsichtlich der Übersetzung derinternationalen Anmeldung beim Eintritt in die nationale Phase**

Der Anmelder wird darauf hingewiesen, daß bei Eintritt in die nationale Phase möglicherweise anstatt oder zusätzlich zu der Übersetzung der Ansprüche in der eingereichten Fassung eine Übersetzung der nach Artikel 19 geänderten Ansprüche an die bestimmten/ausgewählten Ämter zu übermitteln ist.

Nähere Einzelheiten über die Erfordernisse jedes bestimmten/ausgewählten Amts sind Band II des PCT-Leitfadens für Anmelder zu entnehmen.

BNSDOCID: <XS____ISA220NODEP4_I_>

**BLUEPRINT 000379**

PATENT COOPERATION TREATY

# PCT

## INTERNATIONALER RECHERCHENBERICHT

(Artikel 18 sowie Regeln 43 und 44 PCT)

| Aktenzeichen des Anmelders oder Anwalts 2003P18829WO | WEITERES VORGEHEN | siehe Formblatt PCT/ISA/220 sowie, soweit zutreffend, nachstehender Punkt 5 | |
|---|---|---|---|
| Internationales Aktenzeichen PCT/EP2004/051925 | Internationales Anmeldedatum *(Tag/Monat/Jahr)* 26/08/2004 | (Frühestes) Prioritätsdatum *(Tag/Monat/Jahr)* 12/12/2003 | |
| Anmelder SIEMENS AKTIENGESELLSCHAFT | | | |

Dieser internationale Recherchenbericht wurde von der Internationalen Recherchenbehörde erstellt und wird dem Anmelder gemäß Artikel 18 übermittelt. Eine Kopie wird dem Internationalen Büro übermittelt.

Dieser internationale Recherchenbericht umfaßt insgesamt ____4____ Blätter.

[X] Darüber hinaus liegt ihm jeweils eine Kopie der in diesem Bericht genannten Unterlagen zum Stand der Technik bei.

1. **Grundlage des Berichts**
   a. Hinsichtlich der **Sprache** ist die internationale Recherche auf der Grundlage der internationalen Anmeldung in der Sprache durchgeführt worden, in der sie eingereicht wurde, sofern unter diesem Punkt nichts anderes angegeben ist.

   [ ] Die internationale Recherche ist auf der Grundlage einer bei der Behörde eingereichten Übersetzung der internationalen Anmeldung (Regel 23.1 b)) durchgeführt worden.

   b. [ ] Hinsichtlich der in der internationalen Anmeldung offenbarten **Nucleotid– und/oder Aminosäuresequenz** siehe Feld Nr. 1.

2. [ ] **Bestimmte Ansprüche haben sich als nicht recherchierbar erwiesen** (siehe Feld II).

3. [ ] **Mangelnde Einheitlichkeit der Erfindung** (siehe Feld III).

4. Hinsichtlich der **Bezeichnung der Erfindung**
   [X] wird der vom Anmelder eingereichte Wortlaut genehmigt.
   [ ] wurde der Wortlaut von der Behörde wie folgt festgesetzt:

5. Hinsichtlich der **Zusammenfassung**
   [X] wird der vom Anmelder eingereichte Wortlaut genehmigt.
   [ ] wurde der Wortlaut nach Regel 38.2b) in der im Feld Nr. IV angegebenen Fassung von der Behörde festgesetzt. Der Anmelder kann der Behörde innerhalb eines Monats nach dem Datum der Absendung dieses internationalen Recherchenberichts eine Stellungnahme vorlegen.

6. Hinsichtlich der **Zeichnungen**
   a. ist folgende Abbildung der **Zeichnungen** mit der Zusammenfassung zu veröffentlichen: Abb. Nr. 1 _____
   [X] wie vom Anmelder vorgeschlagen
   [ ] wie von der Behörde ausgewählt, weil der Anmelder selbst keine Abbildung vorgeschlagen hat.
   [ ] wie von der Behörde ausgewählt, weil diese Abbildung die Erfindung besser kennzeichnet.
   b. [ ] wird keine der Abbildungen mit der Zusammenfassung veröffentlicht.

Formblatt PCT/ISA/210 (Blatt 1) (Januar 2004)

BLUEPRINT 000380

## INTERNATIONALER RECHERCHENBERICHT

| | Internationales Aktenzeichen |
|---|---|
| | PCT/EP2004/051925 |

### A. KLASSIFIZIERUNG DES ANMELDUNGSGEGENSTANDES

IPK 7   H04L12/24

Nach der Internationalen Patentklassifikation (IPK) oder nach der nationalen Klassifikation und der IPK

### B. RECHERCHIERTE GEBIETE

Recherchierter Mindestprüfstoff  (Klassifikationssystem und Klassifikationssymbole )

IPK 7   H04L   H04Q   G06F   H04B

Recherchierte aber nicht zum Mindestprüfstoff gehörende Veröffentlichungen, soweit diese unter die recherchierten Gebiete fallen

Während der internationalen Recherche konsultierte elektronische Datenbank (Name der Datenbank  und evtl. verwendete Suchbegriffe)

EPO-Internal, WPI Data, COMPENDEX, INSPEC

### C. ALS WESENTLICH ANGESEHENE UNTERLAGEN

| Kategorie* | Bezeichnung der Veröffentlichung, soweit erforderlich unter Angabe der in Betracht kommenden Teile | Betr. Anspruch Nr. |
|---|---|---|
| X | US 6 108 300 A (JORDAN JAMES A  ET AL) 22. August 2000 (2000-08-22) Zusammenfassung Abbildungen 1,2 Spalte 1, Zeile 20 – Zeile 39 Spalte 2, Zeile 39 – Spalte 3, Zeile 17 ───── | 1 |
| A | US 2003/033030 A1 (METCALF ORLANDO P  ET AL) 13. Februar 2003 (2003-02-13) Zusammenfassung Absatz '0043! – Absatz '0053! –/– | 1-10 |

| X | Weitere Veröffentlichungen sind der Fortsetzung von Feld C zu entnehmen | X | Siehe Anhang Patentfamilie |
|---|---|---|---|

\* Besondere Kategorien von angegebenen Veröffentlichungen    :
"A" Veröffentlichung, die den allgemeinen Stand  der Technik definiert, aber nicht als besonders bedeutsam anzusehen ist
"E" älteres Dokument, das jedoch erst am oder  nach dem internationalen Anmeldedatum veröffentlicht worden ist
"L" Veröffentlichung, die geeignet ist, einen  Prioritätsanspruch zweifelhaft er- scheinen zu lassen, oder durch die das  Veröffentlichungsdatum einer anderen im Recherchenbericht genannten Veröffentlichung belegt werden soll oder die aus einem anderen besonderen Grund angegeben ist (wie ausgeführt)
"O" Veröffentlichung, die sich auf eine mündliche  Offenbarung, eine Benutzung, eine Ausstellung oder andere Maßnahmen bezieht
"P" Veröffentlichung, die vor dem internationalen  Anmeldedatum, aber nach dem beanspruchten Prioritätsdatum veröffentlicht worden ist

"T" Spätere Veröffentlichung, die nach dem internationalen Anmeldedatum oder dem Prioritätsdatum veröffentlicht worden  ist und mit der Anmeldung nicht kollidiert, sondern nur zum  Verständnis des der Erfindung zugrundeliegenden Prinzips oder der ihr zugrundeliegenden Theorie angegeben ist
"X" Veröffentlichung von besonderer Bedeutung; die beanspruchte Erfindung kann allein aufgrund dieser Veröffentlichung  nicht als neu oder auf erfinderischer Tätigkeit beruhend betrachtet werden
"Y" Veröffentlichung von besonderer Bedeutung; die beanspruchte Erfindung kann nicht als auf erfinderischer Tätigkeit beruhend betrachtet werden, wenn die Veröffentlichung mit einer oder mehreren anderen Veröffentlichungen dieser Kategorie in Verbindung gebracht wird und diese Verbindung für einen Fachmann naheliegend ist
"&" Veröffentlichung, die Mitglied derselben Patentfamilie ist

| Datum des Abschlusses der internationalen Recherche | Absendedatum des internationalen Recherchenberichts |
|---|---|
| 8. November 2004 | 17/11/2004 |

| Name und Postanschrift der internationalen Recherchenbehörde | Bevollmächtigter Bediensteter |
|---|---|
| Europäisches Patentamt, P.B. 5818 Patentlaan 2 NL – 2280 HV Rijswijk Tel. (+31–70) 340–2040, Tx. 31 651 epo nl, Fax: (+31–70) 340–3016 | Bub, A |

Formblatt PCT/ISA/210 (Blatt 2) (Januar 2004)

3

BLUEPRINT 000381

**INTERNATIONALER RECHERCHENBERICHT**

| | Internationales Aktenzeichen |
|---|---|
| | PCT/EP2004/051925 |

**C.(Fortsetzung)   ALS WESENTLICH ANGESEHENE UNTERLAGEN**

| Kategorie* | Bezeichnung der Veröffentlichung, soweit erforderlich unter Angabe der in Betracht kommenden Teile | Betr. Anspruch Nr. |
|---|---|---|
| A | US 5 473 599 A (COLE BRUCE A  ET AL) 5. Dezember 1995 (1995-12-05) Zusammenfassung Abbildungen 3,7 Ansprüche 1,2,4-6 Spalte 2, Zeile 16 – Zeile 43 Spalte 2, Zeile 65 Spalte 9, Zeile 43 – Spalte 10, Zeile 11 Spalte 13, Zeile 30 – Spalte 15, Zeile 20 ----- | 1-10 |
| A | EP 0 412 799 A (BOSTON TECH INC) 13. Februar 1991 (1991-02-13) Zusammenfassung Spalte 2, Zeile 44 – Spalte 3, Zeile 44 Spalte 11, Zeile 14 – Zeile 33 Spalte 18, Zeile 35 – Spalte 19, Zeile 47 ----- | 1-10 |

3

Formblatt PCT/ISA/210 (Fortsetzung von Blatt 2) (Januar 2004)

BLUEPRINT 060382

## INTERNATIONALER RECHERCHENBERICHT

Angaben zu Veröffentlichungen, die zur selben Patentfamilie gehören

Internationales Aktenzeichen

PCT/EP2004/051925

| Im Recherchenbericht angeführtes Patentdokument | | Datum der Veröffentlichung | Mitglied(er) der Patentfamilie | | Datum der Veröffentlichung |
|---|---|---|---|---|---|
| US 6108300 | A | 22-08-2000 | US | 6061349 A | 09-05-2000 |
| | | | US | 6104717 A | 15-08-2000 |
| | | | US | 6445704 B1 | 03-09-2002 |
| | | | US | 6324177 B1 | 27-11-2001 |
| | | | US | 6366558 B1 | 02-04-2002 |
| | | | US | 5989060 A | 23-11-1999 |
| | | | US | 6298063 B1 | 02-10-2001 |
| US 2003033030 | A1 | 13-02-2003 | WO | 03075541 A1 | 12-09-2003 |
| US 5473599 | A | 05-12-1995 | AU | 2359995 A | 16-11-1995 |
| | | | WO | 9529544 A1 | 02-11-1995 |
| EP 0412799 | A | 13-02-1991 | US | 5029199 A | 02-07-1991 |
| | | | AT | 135867 T | 15-04-1996 |
| | | | AU | 626237 B2 | 23-07-1992 |
| | | | AU | 6084590 A | 14-02-1991 |
| | | | CA | 2022954 A1 | 11-02-1991 |
| | | | DE | 69026004 D1 | 25-04-1996 |
| | | | DE | 69026004 T2 | 28-11-1996 |
| | | | DK | 412799 T3 | 05-08-1996 |
| | | | EP | 0412799 A2 | 13-02-1991 |
| | | | ES | 2088976 T3 | 01-10-1996 |
| | | | JP | 3149949 A | 26-06-1991 |
| | | | JP | 3162360 B2 | 25-04-2001 |
| | | | NZ | 234821 A | 25-11-1993 |

Formblatt PCT/ISA/210 (Anhang Patentfamilie) (Januar 2004)

BLUEPRINT 000383

# VERTRAG ÜBER DIE INTERNATIONALE ZUSAMMENARBEIT AUF DEM GEBIET DES PATENTWESENS

Hr. Grabe

Absender:  INTERNATIONALE RECHERCHENBEHÖRDE

An:

**PCT**

siehe Formular PCT/ISA/220

PCT IPG AM Mch P

rec. NOV 1 7 2004

IP *12. 10. 05*
time limit

**SCHRIFTLICHER BESCHEID DER INTERNATIONALEN RECHERCHENBEHÖRDE**
(Regel 43*bis*.1 PCT)

Absendedatum *(Tag/Monat/Jahr)*, siehe Formular PCT/ISA/210 (Blatt 2)

| Aktenzeichen des Anmelders oder Anwalts siehe Formular PCT/ISA/220 *2003P18829WO* | **WEITERES VORGEHEN** siehe Punkt 2 unten |
|---|---|

| Internationales Aktenzeichen PCT/EP2004/051925 | Internationales Anmeldedatum *(Tag/Monat/Jahr)* 26.08.2004 | Prioritätsdatum *(Tag/Monat/Jahr)* 12.12.2003 |
|---|---|---|

| Internationale Patentklassifikation (IPK) oder nationale Klassifikation und IPK H04L12/24 |
|---|

| Anmelder SIEMENS AKTIENGESELLSCHAFT |
|---|

1. Dieser Bescheid enthält Angaben zu folgenden Punkten:

   ☒ Feld Nr. I      Grundlage des Bescheids

   ☒ Feld Nr. II     Priorität

   ☒ Feld Nr. III    Keine Erstellung eines Gutachtens über Neuheit, erfinderische Tätigkeit und gewerbliche Anwendbarkeit

   ☐ Feld Nr. IV     Mangelnde Einheitlichkeit der Erfindung

   ☐ Feld Nr. V      Begründete Feststellung nach Regel 43*bis*.1 (a)(i) hinsichtlich der Neuheit, der erfinderischen Tätigkeit und der gewerblichen Anwendbarkeit; Unterlagen und Erklärungen zur Stützung dieser Feststellung

   ☐ Feld Nr. VI     Bestimmte angeführte Unterlagen

   ☐ Feld Nr. VII    Bestimmte Mängel der internationalen Anmeldung

   ☐ Feld Nr. VIII   Bestimmte Bemerkungen zur internationalen Anmeldung

2. **WEITERES VORGEHEN**

   Wird ein Antrag auf internationale vorläufige Prüfung gestellt, so gilt dieser Bescheid als schriftlicher Bescheid der mit der internationalen vorläufigen Prüfung beauftragten Behörde ("IPEA"); dies trifft nicht zu, wenn der Anmelder eine andere Behörde als diese als IPEA wählt und die gewählte IPEA dem Internationalen Büro nach Regel 66.1bis b) mitgeteilt hat, daß schriftliche Bescheide dieser Internationalen Recherchenbehörde nicht anerkannt werden.

   Wenn dieser Bescheid wie oben vorgesehen als schriftlicher Bescheid der IPEA gilt, so wird der Anmelder aufgefordert, bei der IPEA vor Ablauf von 3 Monaten ab dem Tag, an dem das Formblatt PCT/ISA/220 abgesandt wurde oder vor Ablauf von 22 Monaten ab dem Prioritätsdatum, je nachdem, welche Frist später abläuft, eine schriftliche Stellungnahme und, wo dies angebracht ist, Änderungen einzureichen.

   Weitere Optionen siehe Formblatt PCT/ISA/220.

3. Nähere Einzelheiten siehe die Anmerkungen zu Formblatt PCT/ISA/220.

| Name und Postanschrift der mit der internationalen Recherchenbehörde | Bevollmächtigter Bediensteter |
|---|---|
| Europäisches Patentamt D-80298 München Tel. +49 89 2399 - 0 Tx: 523656 epmu d Fax: +49 89 2399 - 4465 | Bub, A Tel. +49 89 2399-7209 |

Formblatt PCT/ISA/237 (Deckblatt) (Januar 2004)

**BLUEPRINT 000384**

**SCHRIFTLICHER BESCHEID DER
INTERNATIONALEN RECHERCHEBEHÖRDE**

Internationales Aktenzeichen
PCT/EP2004/051925

---

| Feld Nr. I   Grundlage des Bescheids |
| --- |

1. Hinsichtlich der **Sprache** ist der Bescheid auf der Grundlage der internationalen Anmeldung in der Sprache erstellt worden, in der sie eingereicht wurde, sofern unter diesem Punkt nichts anderes angegeben ist.

   ☐   Der Bescheid ist auf der Grundlage einer Übersetzung aus der Originalsprache in die folgende Sprache erstellt worden, bei der es sich um die Sprache der Übersetzung handelt, die für die Zwecke der internationalen Recherche eingereicht worden ist (gemäß Regeln 12.3 und 23.1 b)).

2. Hinsichtlich der **Nucleotid- und/oder Aminosäuresequenz**, die in der internationalen Anmeldung offenbart wurde und für die beanspruchte Erfindung erforderlich ist, ist der Bescheid auf folgender Grundlage erstellt worden:

   a. Art des Materials

       ☐   Sequenzprotokoll

       ☐   Tabelle(n) zum Sequenzprotokoll

   b. Form des Materials

       ☐   in schriftlicher Form

       ☐   in computerlesbarer Form

   c. Zeitpunkt der Einreichung

       ☐   in der eingereichten internationalen Anmeldung enthalten

       ☐   zusammen mit der internationalen Anmeldung in computerlesbarer Form eingereicht

       ☐   bei der Behörde nachträglich für die Zwecke der Recherche eingereicht

3. ☐   Wurden mehr als eine Version oder Kopie eines Sequenzprotokolls und/oder einer dazugehörigen Tabelle eingereicht, so sind zusätzlich die erforderlichen Erklärungen, daß die Information in den nachgereichten oder zusätzlichen Kopien mit der Information in der Anmeldung in der eingereichten Fassung übereinstimmt bzw. nicht über sie hinausgeht, vorgelegt worden.

4. Zusätzliche Bemerkungen:

**BLUEPRINT 000385**

**SCHRIFTLICHER BESCHEID DER
INTERNATIONALEN RECHERCHEBEHÖRDE**

Internationales Aktenzeichen
PCT/EP2004/051925

| Feld Nr. II   Priorität |
|---|

1. ☒   Das folgende Dokument ist noch nicht eingereicht worden:

    ☒   Abschrift der früheren Anmeldung, deren Priorität beansprucht worden ist (Regel 43*bis*.1 und 66.7(a)).

    ☐   Übersetzung der früheren Anmeldung, deren Priorität beansprucht worden ist (Regel 43*bis*.1 und 66.7(b)).

    Daher war es nicht möglich, die Gültigkeit des Prioritätsanspruchs zu prüfen. Der Bescheid wurde trotzdem in der Annahme erstellt, daß das beanspruchte Prioritätsdatum das maßgebliche Datum ist.

2. ☐   Dieser Bescheid ist ohne Berücksichtigung der beanspruchten Priorität erstellt worden, da sich der Prioritätsanspruch als ungültig erwiesen hat (Regeln 43*bis*.1 und 64.1). Für die Zwecke dieses Bescheids gilt daher das vorstehend genannte internationale Anmeldedatum als das maßgebliche Datum.

3. Etwaige zusätzliche Bemerkungen:

BLUEPRINT 000386

**SCHRIFTLICHER BESCHEID DER
INTERNATIONALEN RECHERCHEBEHÖRDE**

Internationales Aktenzeichen
PCT/EP2004/051925

---

**Feld Nr. III    Keine Erstellung eines Gutachtens über Neuheit, erfinderische Tätigkeit und gewerbliche Anwendbarkeit**

Folgende Teile der Anmeldung wurden nicht daraufhin geprüft, ob die beanspruchte Erfindung als neu, auf erfinderischer Tätigkeit beruhend (nicht offensichtlich) und gewerblich anwendbar anzusehen ist:

☐ die gesamte internationale Anmeldung,

☒ Ansprüche Nr. 1-10

Begründung:

☐ Die gesamte internationale Anmeldung, bzw. die obengenannten Ansprüche Nr.    beziehen sich auf den nachstehenden Gegenstand, für den keine internationale vorläufige Prüfung durchgeführt werden braucht *(genaue Angaben)*:

☒ Die Beschreibung, die Ansprüche oder die Zeichnungen *(machen Sie bitte nachstehend genaue Angaben)* oder die obengenannten Ansprüche Nr.   1-10  sind so unklar, daß kein sinnvolles Gutachten erstellt werden konnte *(genaue Angaben)*:

**siehe Beiblatt**

☐ Die Ansprüche bzw. die obengenannten Ansprüche Nr. sind so unzureichend durch die Beschreibung gestützt, daß kein sinnvolles Gutachten erstellt werden konnte.

☐ für die gesamte Anmeldung oder für die obengenannten Ansprüche Nr. wurde kein internationaler Recherchenbericht erstellt.

☐ Das Nucleotid- und/oder Aminosäuresequenzprotokoll entspricht nicht dem in Anhang C zu den Verwaltungsvorschriften vorgeschriebenen Standard, weil

die schriftliche Form              ☐ nicht eingereicht wurde.

                                   ☐ nicht dem Standard entspricht.

die computerlesbare Form           ☐ nicht eingereicht wurde.

                                   ☐ nicht dem Standard entspricht.

☐ Die Tabellen zum Nucleotid- und/oder Aminosäuresequenzprotokoll, sofern sie nur in computerlesbarer Form vorliegen, entsprechen nicht den in Anhang C-*bis* zu den Verwaltungsvorschriften vorgeschriebenen technischen Anforderungen.

☐ Siehe Beiblatt für weitere Angaben.

**BLUEPRINT 000387**

**SCHRIFTLICHER BESCHEID**
**DER INTERNATIONALEN**
**RECHERCHEBEHÖRDE (BEIBLATT)**

Internationales Aktenzeichen

PCT/EP2004/051925

### Zu Punkt III
### Keine Erstellung eines Gutachtens über Neuheit, erfinderische Tätigkeit und gewerbliche Anwendbarkeit

1. Der unabhängige Anspruch 1 bezieht sich auf ein Vermittlungssystem, welches "vom übergeordneten Monitor in Realzeit dieses deaktiviert und das im hot-standby Betriebszustand befindliche Vermittlungssystem aktiviert wird."

Der Ausdruck "in Realzeit" wird als relativer Begriff angesehen, weshalb dieser unklar ist im Sinne des Artikels 6 PCT (siehe auch PCT Richtlinien 5.34)

2. Weiterhin ist die Formulierung "in Realzeit dieses [Vermittlungssystem] deaktiviert" vage, und läßt den Fachmann über den genauen Schutzbereich im unklaren (Artikel 6 PCT). Es ist nicht klar, in **welcher** Zeit eine Deaktivierung des Vermittlungssystems erfolgt.

3. Der Anspruch 1 entspricht nicht den Erfordernissen des Artikels 6 PCT, weil der Gegenstand des Schutzbegehrens nicht klar definiert ist. In dem Anspruch wird versucht, den Gegenstand durch das zu erreichende Ergebnis zu definieren; damit wird aber lediglich die zu lösende Aufgabe angegeben, ohne die für die Erzielung dieses Ergebnisses notwendigen technischen Merkmale zu bieten. (siehe PCT Richtlinien 5.35).

Zur Beseitigung dieses Mangels erscheint es erforderlich, die für die Erzielung dieses Ergebnisses notwendigen technischen Merkmale in den Anspruch aufzunehmen.

4. Wegen den oben ausgeführten Mängeln ist es nicht möglich, zu diesem Zeitpunkt ein Gutachten hinsichtlich Neuheit und erfinderischer Tätigkeit (Artikel 33(2) und (3) PCT) zu erstellen.

In den abhängigen Ansprüchen ist kein Gegenstand definiert, der zusammen mit dem Gegenstand des unabhängigen Anspruches die obigen Klarheitseinwände ausräumen würde. Deshalb kann für die abhängigen Ansprüche 2-10 ebenfalls kein Gutachten hinsichtlich Neuheit und erfinderischer Tätigkeit (Artikel 33(2) und (3) PCT) erstellt werden.

5. Die Recherche wurde anhand des Ausführungsbeispiels in der Beschreibung

BLUEPRINT 000388

**SCHRIFTLICHER BESCHEID**
**DER INTERNATIONALEN**
**RECHERCHEBEHÖRDE (BEIBLATT)**

Internationales Aktenzeichen

PCT/EP2004/051925

durchgeführt.

BLUEPRINT 000389

Beschreibung

Verfahren zum Ersatzschalten von räumlich getrennten Vermitt-
lungssystemen

5

Zeitgemäße Vermittlungssysteme (Switch) verfügen durch redun-
dantes Bereitstellen wichtiger interner Komponenten über ein
hohes Mass an interner Betriebssicherheit. Damit wird im
Normalbetrieb eine sehr hohe Verfügbarkeit der vermittlungs-
10   technischen Funktionen erreicht. Treten jedoch massive äußere
Einwirkungen auf (z.B. Feuer, Naturkatastrophen, Terroran-
schläge, kriegerische Einwirkungen etc.), so nutzen die ge-
troffenen Vorkehrungen zur Erhöhung der Betriebssicherheit in
der Regel wenig, weil Original- und Ersatzkomponenten des
15   Vermittlungssystems sich am gleichen Ort befinden und damit
in einem solchen Katastrophenfall mit hoher Wahrscheinlich-
keit beide Komponenten zerstört bzw. funktionsunfähig gewor-
den sind.


20   Als Lösung ist eine 1:1 Redundanz vorgeschlagen worden. Dem-
gemäss ist vorgesehen, jedem zu schützenden Vermittlungssys-
tem einen identischen Klon als Redundanzpartner mit identi-
scher Hardware, Software und Datenbasis zuzuordnen. Der Klon
befindet sich im hochgefahrenen Zustand, ist aber trotzdem
25   vermittlungstechnisch nicht aktiv. Beide Vermittlungssysteme
werden von einem im Netz übergeordneten, realzeitfähigen Mo-
nitor gesteuert, der die Umschaltevorgänge steuert.


Der Erfindung liegt die Aufgabe zugrunde, ein Verfahren zum
30   Ersatzschalten von Vermittlungssystemen anzugeben, das im
Fehlerfall ein effizientes Umschalten eines ausgefallenen
Vermittlungssystems auf einen Redundanzpartner sicherstellt.


Diese Aufgabe wird ausgehend von den im Oberbegriff von Pa-
35   tentanspruch 1 angegebenen Merkmalen durch die im kennzeich-
nenden Teil beanspruchten Merkmale gelöst.

BLUEPRINT 000390

Erfindungsgemäß wird ein Protokoll vorgeschlagen, das zwi-
schen einem übergeordneten realzeitfähigen Monitor und dem
aktiven Vermittlungssystem einerseits sowie dem hot-standby
Vermittlungssystem andererseits zum Ablauf gelangt. Das Pro-
5    tokoll basiert auf den Standard IP Protokollen BOOTP / DHCP,
die in der Regel von jeder IP Implementierung unterstützt
werden. Damit ist diese Lösung in jedem Vermittlungssystem
mit IP basierten Schnittstellen mit minimalem Implementie-
rungsaufwand realisierbar. Die Lösung ist umfassend einsetz-
10   bar und wirtschaftlich, weil im wesentlichen nur der Aufwand
für den Monitor anfällt. Ferner ist sie durch Nutzung einfa-
cher, standardisierter IP Protokolle extrem robust. Fehl-
steuerungen aufgrund von temporären Ausfällen im IP core Netz
beheben sich automatisch, nachdem der Ausfall beendet ist.
15   Ein Doppelausfall des Monitors stellt in dieser Variante e-
benso kein Problem dar.

Ein wesentlicher Vorteil der Erfindung ist darin zu sehen,
dass beim Umschaltevorgang von einem aktiven Vermittlungssys-
20   tem auf ein hot-standby Vermittlungssystem in den beteiligten
Vermittlungssystemen kein Netzwerkmanagement und keinerlei
zentrale Steuereinheit benötigt wird, die die Umschaltevor-
gänge unterstützt. Insofern ist es irrelevant, ob das Ver-
mittlungssystem eine zentrale Steuereinheit aufweist oder
25   nicht. Damit ist die Erfindung auch auf Router anwendbar, die
- im Gegensatz zum klassischen Vermittlungssystem - in der
Regel keine derartige zentrale Steuereinheit aufweisen.

Die Erfindung wird im folgenden anhand eines figürlich darge-
30   stellten Ausführungsbeispiels näher erläutert. Demgemäss ist
vorgesehen, jedem zu schützenden Vermittlungssystem (z. B.
$S_1$) einen identischen Klon als Redundanzpartner (z. B. $S_{1b}$)
mit identischer Hardware, Software und Datenbasis zuzuordnen.
Der Klon befindet sich im hochgefahrenen Zustand, ist aber
35   trotzdem vermittlungstechnisch nicht aktiv (Betriebszustand
"hot-standby"). Damit ist eine hochverfügbare, über mehrere

BLUEPRINT 000391

Lokationen verteilte 1:1 Redundanz von Vermittlungssystemen
definiert.

Die beiden Vermittlungssysteme (Vermittlungssystem $S_1$ und der
5    Klon oder Redundanzpartner $S_{1b}$) werden von einem Netzwerkma-
nagementsystem NM gesteuert. Die Steuerung erfolgt derart,
dass der aktuelle Stand von Datenbasis und Software beider
Vermittlungssysteme $S_1$, $S_{1b}$ identisch gehalten wird. Dies wird
erreicht, indem jedes betriebstechnische Kommando, jedes Kon-
10   figurationskommando und jedes Software-Update inklusive Pat-
ches identisch an beide Partner ausgebracht wird. Damit wird
ein räumlich abgesetzter, identischen Klon zu einem in Be-
trieb befindlichen Switch mit identischer Datenbasis und i-
dentischem Softwarestand definiert.

15

Die Datenbasis beinhaltet grundsätzlich alle semipermanenten
und permanenten Daten. Hierbei werden unter permanenten Daten
die Daten verstanden, die als Code in Tabellen abgelegt sind
und die sich nur per Patch oder Software-Update ändern las-
20   sen. Unter smipermanenten Daten werden die Daten verstanden,
die z. B. über die Bedienerschnittstelle in das System gelan-
gen und die für längere Zeit dort in der Form der Eingabe ge-
speichert sind. Mit Ausnahme der Konfigurationszustände des
Systems werden diese Daten i.a. vom System nicht selbst ver-
25   ändert. Nicht in der Datenbasis enthalten sind die einen Ruf
begleitenden transienten Daten, die das Vermittlungssystem
nur kurzzeitig speichert und die über die Dauer eines Calls
hinaus i.a. keine Bedeutung haben oder Zustandsinformationen,
die transiente Überlagerungen/ Ergänzungen von konfigurativ
30   vorgegebenen Grundzuständen sind (So könnte ein Port zwar im
Grundzustand aktiv sein, aber wegen einer transienten (vorü-
bergehenden) Störung momentan nicht zugreifbar sein).

Im weiteren verfügen die Vermittlungssysteme $S_1$, $S_{1b}$ beide ü-
35   ber mindestens ein aktives, paketorientiertes Interface zum
gemeinsamen Netzwerkmanagementsystem NM. Dies sollen gemäss
vorliegendem Ausführungsbeispiel die beiden Interface $IF_1$

4

sein. Die beiden Interfaces $IF_1$ nehmen dabei einen aktiven
Betriebzustand ("act") ein. Während aber beim Vermittlungs-
system $S_1$ auch alle verbleibenden paketorientierten Inter-
faces $IF_2...IF_n$ aktiv sind, sind beim Vermittlungssystem $S_{1b}$
5   hingegen die verbleibenden Interfaces im Betriebzustand "id-
le". Der Zustand "idle" bedeutet, dass die Interfaces keinen
Nachrichtenaustausch erlauben, aber von außen, d.h. durch ei-
ne außerhalb von Vermittlungssystem $S_1$ und Vermittlungssystem
$S_{1b}$ gelegenen, übergeordneten realzeitfähigen Monitor akti-
10  viert werden können. Der Monitor kann in Hardware oder Soft-
ware realisiert sein, und schaltet im Fehlerfall in Realzeit
auf den Klon um. Realzeit bedeutet hier eine Zeitspanne von 1
bis 2 Sekunden. Gemäss vorliegendem Ausführungsbeispiel ist
der Monitor als Steuereinrichtung SC und aus Sicherheitsgrün-
15  den gedoppelt (lokale Redundanz) ausgebildet.

Die Interfaces $I_n$ sind paketbasiert und stellen somit Kommu-
nikationsschnittstellen zu paketbasierten Peripherieeinrich-
tungen (wie z. B. IAD, MG, SIP Proxy-Einrichtungen), fernen
20  paketbasierten Switches, paketbasierten Media Servern dar.
Sie werden  mittelbar vom Monitor gesteuert, der als Steuer-
einrichtung SC (Switch Controller) ausgebildet ist. Dies be-
deutet, dass die Steuereinrichtung SC die Interfaces $IF_n$ ak-
tivieren und deaktivieren, und somit beliebig zwischen den
25  Betriebszuständen "act" und "idle" hin- und herschalten kann.

Die Konfiguration gemäss der Figur soll als Default Konfigu-
ration gelten. Dies bedeutet, dass Vermittlungssystem $S_1$ ver-
mittlungstechnisch aktiv ist, während sich Vermittlungssystem
30  $S_{1b}$ in einem Betriebszustand "hot-standby" befindet. Dieser
Zustand ist durch eine aktuelle Datenbasis und volle Aktivi-
tät aller Komponenten bis auf die paketbasierten Interfaces
(und eventuell die Bearbeitung vermittlungstechnischer Anrei-
ze) geprägt. Das (geographisch redundante) Vermittlungssystem
35  $S_{1b}$ kann somit von der Steuereinrichtung SC durch Aktivierung
der Interfaces $IF_2..IF_n$ schnell (Realzeit) in den vermitt-
lungstechnisch aktiven Zustand überführt werden. Das Inter-

BLUEPRINT 000393

face $IF_1$ ist auch auf dem hot standby Vermittlungssystem ak-
tiv, weil es die Schnittstelle zum Network Management
beschreibt, die immer aktiv sein muss.

5   Als wesentlicher Aspekt ist anzusehen, dass die beiden geo-
graphisch redundanten Vermittlungssysteme $S_1$, $S_{1b}$ sowie das
Netzwerkmanagement NM und die gedoppelte Steuereinrichtung SC
jeweils räumlich deutlich getrennt sein müssen.

10  Die Steuereinrichtung SC übermittelt dem Netzwerkmanagement
NM regelmäßig den aktuellen Betriebszustand der Vermittlungs-
systeme $S_1$ und $S_{1b}$ (act/ hot-standby, Zustand der Interfaces)
sowie den eigenen Betriebszustand. Die Funktionen der Steuer-
einrichtung SC können optional teilweise oder auch komplett
15  vom Netzwerkmanagement NM durchgeführt werden. Aus Sicher-
heitsgründen sollte das Netzwerkmanagement NM die Funktion
haben, die oben beschriebenen Umschaltungen auch manuell her-
beiführen zu können. Optional kann die automatische Umschal-
tung blockiert werden, so dass die Umschaltung nur manuell
20  durchgeführt werden kann.

Die Vermittlungssysteme $S_1$ und $S_{1b}$ können regelmäßig auch
selbst überprüfen, ob ihre paketbasierten Interfaces aktiv
sind. Ist dies für die Interfaces $IF_2..IF_n$ nicht der Fall,
25  kann man auf den Zustand "hot-standby" schließen und gezielt
gewisse Alarme, die sich aus der Nicht-Verfügbarkeit der In-
terfaces $IF_2..IF_n$ ergeben, blockieren. Weiterhin kann auf
diese Weise auch der Übergang eines Switches von "hot-
standby" auf "aktiv" erkannt werden. Dies ermöglicht, ggf.
30  gezielte Maßnahmen beim Start des Vermittlungsverkehrs zu er-
greifen.

Die Paket-Adressen (IP Adressen) der Interfaces $I_{2..n}$ des Ver-
mittlungssystems $S_1$ und ihrer jeweiligen Partner Interfaces
35  von Vermittlungssystem $S_{1b}$ können identisch sein, müssen es
aber nicht. Wenn sie identisch sind, wird das Umschalten nur
vom vorgeschalteten Router bemerkt. Für die Partner-

6

Applikation im Netz ist es dagegen völlig transparent. Dies ist eine neue Anwendung und Verallgemeinerung der IP Failover Funktion. Falls das Protokoll, das ein Interface bedient, ein Umschalten des Kommunikationspartners auf eine andere Paket-
5    Adresse erlaubt, wie dies z.B. beim H.248 Protokoll der Fall ist (ein Media Gateway kann selbständig eine neue Verbindung zu einem anderen Media Gateway Controller mit anderer IP Adresse herstellen), können die IP Adressen auch unterschiedlich sein.

10

In einer Ausgestaltung der Erfindung wird vorgesehen, als Steuereinrichtung SC den Zentralrechner eines weiteren Vermittlungssystems zu verwenden. Damit existiert dann eine Steuereinrichtung mit höchster Verfügbarkeit.

15

In einer Weiterbildung der Erfindung kommt die Etablierung einer unmittelbaren Kommunikationsschnittstelle zwischen Vermittlungssystem $S_1$ und Vermittlungssystem $S_{1b}$ in Betracht. Diese kann zum Update der Datenbasis z. B. im Hinblick auf
20   SCI - (Subscriber Controlled Input) und Gebühren-Daten genutzt werden sowie auch zum Austausch transienter Daten von einzelnen Verbindungen oder wesentlichen weiteren transienten Daten (z. B. H.248 Association Handle). Damit sind die Störungen des Betriebs aus Teilnehmer- und Betreibersicht minimierbar.
25   Die semipermanenten und transienten Daten können dann von dem jeweiligen aktiven Vermittlungssystem in das redundante hot-standby Vermittlungssystem in einem zyklischen Zeitraster (Update) übertragen werden. Das Update der SCI-Daten hat den Vorteil, dass das zyklische Restore auf dem hot-standby-
30   System vermieden wird und jederzeit Aktualität bzgl. SCI Daten im hot-standby System herrscht. Durch das Update Stack-relevanter Daten, wie dem H.248 association handle, kann der Peripherie die Übernahme durch ein Ersatzsystem verborgen werden, und es können die Ausfallzeiten noch stärker reduziert werden.
35   ziert werden.

BLUEPRINT 000395

Grundsätzlich müssen im Netz die IP-Adressen aller Netzkompo-
nenten bekannt sein. Die Zuteilung der IP-Adressen wird beim
Hochfahren der gesamten IP-Netzeinrichtung gesteuert. Hierzu
ist ein Server (BOOTP Server) im Netz vorgesehen, der mit den
5    hochzufahrenden Clients über ein BOOTP Protokoll kommuni-
ziert. Die Netzkomponenten (Client), wie z. B. die Vermitt-
lungssysteme $S_1$, $S_{1b}$ fordern beim Hochlauf mit Hilfe des BOOTP
Protokolls beim BOOTP Server die IP-Adressen an. Mit dem Er-
halt dieser IP-Adressen sind damit in allen Netzkomponenten
10   die eigene MAC-Adresse (Netzweite Hardware Adresse) und die
eigene IP-Adresse bekannt. Da diese Zuordnung im Netz noch
nicht bekannt ist, wird von den Netzkomponenten diese Infor-
mation im Zuge einer Broadcast Nachricht anderen Netzkompo-
nenten (Client, Router) mitgeteilt. Hierzu wird ein eigenes
15   Protokoll (ARP Protokoll, Adress Resolution Protokoll) ver-
wendet.

Zur Überwachung und Umschaltung von einem aktiven Vermitt-
lungssystem auf ein redundant angeordnetes Vermittlungssystem
20   wird erfindungsgemäß ein Protokoll, im folgenden mit Proto-
koll HSCB (Hot-Standby Control Protokoll) bezeichnet, vorge-
schlagen. Diese Protokoll HSCB kommt zwischen der Steuerein-
richtung SC und dem Vermittlungssystem $S_1$ sowie zwischen der
Steuereinrichtung SC und dem Vermittlungssystem $S_{1b}$ zum Ab-
25   lauf. Grundsätzlich muss das Protokoll in der Lage sein, das
Vermittlungssystem $S_1$ nach dem Hochfahren (Recovery) in einen
aktiven ("act") oder einen "hot-standby" Betriebszustand zu
bringen. Ferner ist das im aktiven (und optional auch das im
"hot-standby") Betriebszustand befindliche Vermittlungssystem
30   zu überwachen und im Fehlerfall die erforderlichen Umschal-
tungen herbeizuführen (aktives Vermittlungssystem geht nach
hot-standby / hot-standby Vermittlungssystem geht nach ak-
tiv). Optional kann Vermittlungssystem $S_1$ und $S_{1b}$ explizit
mitgeteilt werden, ob sie activ bzw. hot-standby sind.

35

BLUEPRINT 000396

Folgende Regeln werden im Protokoll HSCB zwischen der Steuer-
einrichtung SC und dem Vermittlungssystem $S_1$ bzw. $S_{1b}$ festge-
legt:

5   Wenn ein paketbasiertes Interface eines Vermittlungssystems
sich im Betriebszustand "IDLE" befindet, schickt es regelmä-
ßig IP Adressanforderungen ("BOOTP Request") an die Steuer-
einrichtung SC. Hierbei ist es nicht notwendig, dass die
Steuereinrichtung SC diese BOOTP Requests der Interfaces vom
10  Vermittlungssystem beantwortet, dies wird nur für die Adress-
anforderungen des Vermittlungssystems vorgenommen, das bei
der Steuereinrichtung SC als aktiv gekennzeichnet ist. Im
Falle einer positiven Rückantwort von der Steuereinrichtung
SC wird das paketbasierte Interface in den aktiven Betriebs-
15  zustand ("act") versetzt. Im Falle keiner (oder negativen)
Rückantwort von der Steuereinrichtung SC bleiben die im inak-
tiven Betriebzustand befindlichen paketbasierten Interfaces
im inaktiven Betriebszustand ("IDLE"). Nach dem Booten befin-
den sich alle paketbasierten Interfaces im inaktiven Be-
20  triebszustand ("IDLE"). Ein im aktiven Betriebszustand sich
befindendes Interface braucht keine Adressanforderungen ("IP-
Request") an die Steuereinrichtung SC zu senden.

Die Steuereinrichtung SC schickt ihrerseits regelmäßig Über-
25  wachungsnachrichten an die paketbasierten Interfaces, die
diese nur beantworten müssen, wenn sie aktiv sind. Mittels
einer besonderen Nachricht kann die Steuereinrichtung SC ein
paketbasiertes Interface vom aktiven Betriebszustand in den
inaktiven Betriebszustand ("IDLE") bringen.

30

Im folgenden wird der Hochlauf der Netzkonfiguration be-
schrieben. Grundsätzlich sind nach dem Hochlauf alle Inter-
faces von Vermittlungssystem $S_1$ und $S_{1b}$ im inaktiven Betriebs-
zustand "IDLE". Die Steuereinrichtung SC soll nun BOOTP Ser-
35  ver für Vermittlungssystem $S_1$ und $S_{1b}$ sein. Dies bedeutet,
dass beim Hochlauf die IP Interfaces von Vermittlungssystem
$S_1$ bzw. Vermittlungssystem $S_{1b}$ sich ihre IP Adressen via BOOTP

BLUEPRINT 000397

Request von der Steuereinrichtung SC abholen. Die Steuerein-
richtung SC hat Kenntnis von der Existenz beider Vermitt-
lungssysteme sowie von dem von diesen noch einzunehmenden Be-
triebszustand (act/ hot-standby). Die Steuereinrichtung SC

5   teilt den beiden Vermittlungssystem $S_1$, $S_{1b}$ den Betriebszustand
implizit mit, den sie nach dem Hochlauf einzunehmen haben.
Zum einen erfolgt dies für das als hot-standby zu definieren-
de Vermittlungssystem $S_{1b}$, indem die Steuereinrichtung SC die
BOOTP Requests der Interfaces $IF_2...IF_n$ nicht beantwortet.

10  Damit haben diese Interfaces keine IP Adressen und bleiben im
inaktiven Betriebszustand ("IDLE"). Sie schicken aber weiter-
hin regelmäßig BOOTP Requests an die Steuereinrichtung SC,
die diese im Normalzustand weiterhin nicht beantwortet. Zum
anderen erfolgt dies für das als aktiv zu definierende Ver-

15  mittlungssystem $S_1$, indem die Steuereinrichtung SC alle BOOTP
Requests (durch Mitteilung der IP Adresse) beantwortet, womit
alle Interfaces aktiviert werden. Statt BOOTP Request können
auch DHCP Request genommen werden.


20  Das System aus aktivem Vermittlungssystem und Klon nimmt da-
mit den (in der Steuereinrichtung SC) vorgesehenen Zustand
ein, der als fehlerfreier Normalzustand definiert ist. In
diesem Zustand werden die zyklischen BOOTP Requests der In-
terfaces des Klons weiterhin nicht beantwortet, womit diesen

25  auch weiterhin ihre IP Adressen fehlen. Die aktiven Inter-
faces von Vermittlungssystem $S_1$ senden keine BOOTP Requests.
In diesem Normalzustand sendet nun die Steuereinrichtung SC
zyklisch Überwachungsnachrichten an die Interfaces des akti-
ven Vermittlungssystems, die von den aktiven Interfaces be-

30  antwortet werden müssen. Ist dies der Fall, kann davon ausge-
gangen werden, dass das aktive Vermittlungssystem sich auch
weiterhin in einem fehlerfreien Betriebszustand befindet, wo-
mit der aktive Betriebszustand beibehalten wird. Da die zyk-
lischen BOOTP Requests vom Klon ebenfalls weiterhin eintref-

35  fen (und auch weiterhin nicht beantwortet werden), kann eben-
falls davon ausgegangen werden, dass auch der Klon sich in
einem fehlerfreien Betriebszustand befindet (nach wie vor

BLUEPRINT 000398

"IDLE"). Die Steuereinrichtung SC hat somit das Wissen um die Funktionsfähigkeit des aktiven Vermittlungssystems und auch des Klons gespeichert. Dieses Wissen wird mit der Quittierung der zyklischen Überwachungsnachrichten und den zyklischen

5   BOOTP Requests des Klons stets auf aktuellem Niveau gehalten.

Im folgenden sei nun von einem schwerwiegenden Ausfall des Vermittlungssystem $S_1$ ausgegangen. Aufgrund der geographischen Redundanz ist mit hoher Wahrscheinlichkeit der Klon

10  (Vermittlungssystem $S_{1b}$) ebenso nicht betroffen wie die Steuereinrichtung SC. Das Feststellen des Ausfalls von Vermittlungssystem $S_1$ sowie das Steuern der entsprechenden Umschaltevorgänge auf Vermittlungssystem $S_{1b}$ wird von der Steuereinrichtung SC vorgenommen:

15

Der Ausfall von Vermittlungssystem $S_1$ wird von der Steuereinrichtung SC festgestellt, indem die Überwachungsnachrichten nicht mehr quittiert werden. Als Kriterium des Ausfalls soll aber nicht nur ein Kommunikationsverlust mit allen Interfaces

20  gelten, sondern bereits mit einer vorgebbaren Anzahl (konfigurierbar, optional auch alle). Kommen also für diese vorgebbare Anzahl von Interfaces von Vermittlungssystem $S_1$ für längere Zeit (z.B. 1 Min.) keine Quittungen bei Steuereinrichtung SC an, so wird auf einen schwerwiegenden Ausfall von

25  Vermittlungssystem $S_1$ geschlossen. Dieses Kriterium ist hinreichend, um ein Umschalten (Switchover) von Vermittlungssystem $S_1$ nach Vermittlungssystem $S_{1b}$ zu veranlassen.

In diesem Fall bringt zunächst die Steuereinrichtung SC noch

30  aktive Interfaces von Vermittlungssystem $S_1$ mit Hilfe einer besonderen Nachricht in den inaktiven Betriebszustand ("IDLE"). Dies Nachricht ist derart ausgebildet, dass die Interfaces von Vermittlungssystem $S_1$ dazu veranlasst werden, Ihre IP Adressen freizugeben. Die Nachricht wird sicherheits-

35  halber allen Interfaces von Vermittlungssystem $S_1$ (also auch den ausgefallenen) zugeführt und zyklisch solange wiederholt, bis die BOOTP Requests von den nun inaktiven Interfaces bei

BLUEPRINT 000399

der Steuereinrichtung SC eintreffen. Vermittlungssystem $S_1$ ist damit im inaktiven Betriebszustand.

Die nach wie vor zyklisch eintreffenden BOOTP Requests von
5   S1b werden nun von der Steuereinrichtung SC beantortet, indem den Interfaces des bislang inaktiven Klons ihre IP Adressen mitgeteilt werden. Damit nimmt Vermittlungssystem $S_{1b}$ einen aktiven Betriebzustand ein. Vermittlungssystem $S_{1b}$ ist damit vermittlungsbereit und kann die Funktionen von Vermittlungs-
10   system $S_1$ übernehmen.

Der Vorteil dieser Vorgehensweise liegt in der Vermeidung des split brain Szenarios. Die Interfaces von Vermittlungssystem $S_1$ sollen auch nach Recovery von Vermittlungssystem $S_1$ im in-
15   aktiven Betriebszustand bleiben. Vermittlungssystem $S_1$ ist damit bis zum nächsten Umschalten vermittlungstechnisch deak-tiviert. Um das Zeitintervall inkonsistenter Interface Zu-stände in Vermittlungssystem $S_{1b}$ möglichst kurz zu halten, könnte man in Vermittlungssystem $S_{1b}$ die Requests triggern.
20

Im folgenden werden einige Ausfallszenarien diskutiert:

Für die Lösung gemäss der Erfindung stellt ein Totalausfall der Steuereinrichtung SC (Doppel-Ausfall der beiden Hälften)
25   kein Problem dar, zumal ein solcher Fall extrem unwahrschein-lich ist. Dies stört in dieser Ausführungsvariante den norma-len Vermittlungsbetrieb nicht. Nur die automatische Umschal-tefunktion der Steuereinrichtung SC ist nicht mehr vorhanden. Sollte während dieser Zeit ein Umschalten erforderlich wer-
30   den, kann es manuell vom Netzwerkmanagement NM durchgeführt werden.

Ebenso kann eine gestörte Kommunikation zwischen Vermitt-lungssystem $S_1$ und und Steuereinrichtung SC abgefangen wer-
35   den. In diesem Fall kann mit sehr geringer Wahrscheinlichkeit das "split brain" Szenario auftreten. Dies bedeutet, dass die beiden Vermittlungssysteme $S_1$, $S_{1b}$ zugleich einen aktiven Be-

BLUEPRINT 000400

triebszustand einnehmen und beide auch dieselben IP Adressen verwenden.

Um dieses gänzlich Szenario auszuschließen wird vorgeschla-
5  gen, eine gegenseitige Überwachung auf act / stb zwischen Vermittlungssystem $S_1$ und Vermittlungssystem $S_{1b}$ einführen. Die Überwachung kann dieselben Mechanismen verwenden, die o-ben beschrieben sind. So kann beispielsweise ein dediziertes IP Interface von Vermittlungssystem $S_{1b}$ (hot-standby) regel-
10  mässig BOOTP Requests an sein Partner Interfaces in Vermitt-lungssystem $S_1$ schicken und überwachen, ob sein Partner In-terface aktiv ist. Soll nun Vermittlungssystem $S_{1b}$ von hot-standby nach activ gehen, kann vorher geprüft werden, ob das Partner Interface ausgefallen ist (d.h. keine responses mehr
15  schickt). Ist es weiterhin aktiv (was beim korrekten Switcho-ver nicht der Fall sein darf und zum "split brain" führen würde), wird das Umschalten stb -> act in Vermittlungssystem $S_{1b}$ verhindert – und damit auch das "split brain". Vermitt-lungssystem $S_1$ ist in diesem Fall mit hoher Wahrscheinlich-
20  keit noch aktiv.

Sollte ein "split brain" Szenario doch einmal auftreten, be-steht immer noch eine einfache Korrekturmöglichkeit vom Netz-werkmanagement NM aus. Demnach wird eines der beiden Vermitt-
25  lungssysteme wieder in den stb Betriebszustand gebracht und durchläuft gegebenenfalls ein Wiederhochlauf (Recovery).

Case 1:20-cv-20403-MGC   Document 12-3   Entered on FLSD Docket 03/18/2020   Page 403 of 436

Patentansprüche

1. Verfahren zum Ersatzschalten von räumlich getrennten Ver-
   mittlungssystemen, die in einer 1:1 Redundanz paarweise
5  angeordnet sind, wobei das eine Vermittlungssystem ($S_1$) sich
   in einem aktiven Betriebszustand ("act") und das verbleibende
   redundante Vermittlungssystem ($S_{1b}$) sich in einem hot-standby
   Betriebszustand ("idle") befindet,
   dadurch gekennzeichnet,
10 dass jeweils zwischen dem im aktiven Betriebszustand
   befindlichen Vermittlungssystem ($S_1$) sowie dem hierzu
   redundanten, im hot-standby Betriebszustand befindlichen
   Vermittlungssystem und einem übergeordneten Monitor (SC) nach
   Maßgabe des Betriebszustandes der beiden Vermittlungssysteme
15 eine Kommunikation gesteuert wird, und
   dass bei Kommunikationsverlust zu dem im aktiven Betriebszu-
   stand befindlichen Vermittlungssystem ($S_1$) vom übergeordneten
   Monitor (SC) in Realzeit dieses deaktiviert und das im hot-
   standby Betriebszustand befindliche Vermittlungssystem ($S_{1b}$)
20 aktiviert wird.

2. Verfahren nach Anspruch 1,
   dadurch gekennzeichnet,
   dass der Betriebszustand eines Vermittlungssystems durch eine
25 vorgebbare Anzahl von paketbasierten Interfaces definiert
   und/ oder gesteuert wird.

3. Verfahren nach Anspruch 1, 2,
   dadurch gekennzeichnet,
30 dass paketbasierte Interfaces eines als hot-standby definier-
   ten Vermittlungssystems einen inaktiven Betriebszustand
   ("IDLE") einnehmen und regelmäßig IP Adressanforderungen
   ("BOOTP Request") an den Monitor (SC) senden, der diese im
   fehlerfreien Betrieb nicht beantwortet.

35

BLUEPRINT 000402

WO 2005/057853                                                         PCT/EP2004/051925

14

4. Verfahren nach Anspruch 1 bis 3,
dadurch gekennzeichnet,
dass paketbasierte Interfaces eines als aktiv definierten
Vermittlungssystems einen aktiven Betriebszustand ("act")
5    einnehmen wobei regelmäßige IP Adressanforderungen ("BOOTP
Request") an den Monitor (SC) unterbleiben.

5. Verfahren nach einem der vorstehenden Ansprüche,
dadurch gekennzeichnet,
10   dass lediglich im Falle einer positiven Rückantwort vom Moni-
tor (SC) ein bis dahin inaktives, paketbasiertes Interface in
den aktiven Betriebszustand ("act") versetzt wird.

6. Verfahren nach einem der vorstehenden Ansprüche,
15   dadurch gekennzeichnet,
dass vom übergeordneten Monitor (SC) Überwachungsnachrichten
an die im aktiven Betriebzustand befindlichen Interfaces ge-
sendet werden, die von diesen quittiert werden.

20   7. Verfahren nach einem der vorstehenden Ansprüche,
dadurch gekennzeichnet,
dass bei Ausbleiben der Quittung auf die Überwachungsnach-
richten von dem übergeordneten Monitor (SC) auf einen Fehler
geschlossen wird, und in diesem Fall mittels einer besonderen
25   Nachricht die paketbasierte Interfacees des bislang aktiven
Vermittlungssystems in einen inaktiven Betriebszustand ge-
steuert werden.

8. Verfahren nach einem der vorstehenden Ansprüche,
30   dadurch gekennzeichnet,
dass bei Ausbleiben der Quittung auf die Überwachungsnach-
richten von dem übergeordneten Monitor (SC) auf einen Fehler
geschlossen wird, und in diesem Fall die zyklischen IP Ad-
ressanforderungen der inaktiven Interfaces durch die positive
35   Rückantwort beantwortet werden.

BLUEPRINT 000403

WO 2005/057853 PCT/EP2004/051925

15

9. Verfahren nach einem der vorstehenden Ansprüche,
dadurch gekennzeichnet,
dass die positive Rückantwort vom Monitor (SC) die IP Adresse
des anfordernden paketbasierten Interfaces enthält.

5

10. Verfahren nach einem der vorstehenden Ansprüche,
dadurch gekennzeichnet,
dass ein vormals aktives Vermittlungssystem nach Beseitigung
des Fehlerfalles solange als hot-standby Vermittlungssystem
10  definiert bleibt, bis ein neuer Fehlerfall die Umschaltung
erzwingt.

BLUEPRINT 000404

WO 2005/057853                                                      PCT/EP2004/051925

1/1



International Application No

PCT/EP2004/051925

| A. CLASSIFICATION OF SUBJECT MATTER |
|---|
| IPC 7   H04L12/24 |

According to International Patent Classification (IPC) or to both national classification and IPC

| B. FIELDS SEARCHED |
|---|
| Minimum documentation searched (classification system followed by classification symbols) |
| IPC 7   H04L  H04Q  G06F  H04B |

Documentation searched other than minimum documentation to the extent that such documents are included in the fields searched

Electronic data base consulted during the international search (name of data base and, where practical, search terms used)

EPO-Internal, WPI Data, COMPENDEX, INSPEC

| C. DOCUMENTS CONSIDERED TO BE RELEVANT | | |
|---|---|---|
| Category ° | Citation of document, with indication, where appropriate, of the relevant passages | Relevant to claim No. |
| X | US 6 108 300 A (JORDAN JAMES A  ET AL) 22 August 2000 (2000-08-22) abstract figures 1,2 column 1, line 20 – line 39 column 2, line 39 – column 3, line 17 ————— | 1 |
| A | US 2003/033030 A1 (METCALF ORLANDO P  ET AL) 13 February 2003 (2003-02-13) abstract paragraph '0043! – paragraph '0053! -/-- | 1-10 |

[X] Further documents are listed in the continuation of box C.    [X] Patent family members are listed in annex.

° Special categories of cited documents :

"A" document defining the general state of the art which is not considered to be of particular relevance

"E" earlier document but published on or after the international filing date

"L" document which may throw doubts on priority claim(s) or which is cited to establish the publication date of another citation or other special reason (as specified)

"O" document referring to an oral disclosure, use, exhibition or other means

"P" document published prior to the international filing date but later than the priority date claimed

"T" later document published after the international filing date or priority date and not in conflict with the application but cited to understand the principle or theory underlying the invention

"X" document of particular relevance; the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone

"Y" document of particular relevance; the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents, such combination being obvious to a person skilled in the art.

"&" document member of the same patent family

| Date of the actual completion of the international search | Date of mailing of the international search report |
|---|---|
| 8 November 2004 | 17/11/2004 |

| Name and mailing address of the ISA | Authorized officer |
|---|---|
| European Patent Office, P.B. 5818 Patentlaan 2 NL – 2280 HV Rijswijk TeL (+31–70) 340–2040, Tx. 31 651 epo nl, Fax (+31–70) 340–3016 | Bub, A |

Form PCT/ISA/210 (second sheet) (January 2004)

3

INTERNATIONAL SEARCH REPORT

International Application No

PCT/EP2004/051925

| C.(Continuation) DOCUMENTS CONSIDERED TO BE RELEVANT | | |
|---|---|---|
| Category ° | Citation of document, with indication, where appropriate, of the relevant passages | Relevant to claim No. |
| A | US 5 473 599 A (COLE BRUCE A  ET AL)<br>5 December 1995 (1995-12-05)<br>abstract<br>figures 3,7<br>claims 1,2,4-6<br>column 2, line 16 - line 43<br>column 2, line 65<br>column 9, line 43 - column 10, line 11<br>column 13, line 30 - column 15, line 20<br>----- | 1-10 |
| A | EP 0 412 799 A (BOSTON TECH INC)<br>13 February 1991 (1991-02-13)<br>abstract<br>column 2, line 44 - column 3, line 44<br>column 11, line 14 - line 33<br>column 18, line 35 - column 19, line 47<br>----- | 1-10 |

3

BLUEPRINT000407

INTERNATIONAL SEARCH REPORT

Information on patent family members

International Application No

PCT/EP2004/051925

| Patent document cited in search report | | Publication date | Patent family member(s) | | Publication date |
|---|---|---|---|---|---|
| US 6108300 | A | 22-08-2000 | US | 6061349 A | 09-05-2000 |
| | | | US | 6104717 A | 15-08-2000 |
| | | | US | 6445704 B1 | 03-09-2002 |
| | | | US | 6324177 B1 | 27-11-2001 |
| | | | US | 6366558 B1 | 02-04-2002 |
| | | | US | 5989060 A | 23-11-1999 |
| | | | US | 6298063 B1 | 02-10-2001 |
| US 2003033030 | A1 | 13-02-2003 | WO | 03075541 A1 | 12-09-2003 |
| US 5473599 | A | 05-12-1995 | AU | 2359995 A | 16-11-1995 |
| | | | WO | 9529544 A1 | 02-11-1995 |
| EP 0412799 | A | 13-02-1991 | US | 5029199 A | 02-07-1991 |
| | | | AT | 135867 T | 15-04-1996 |
| | | | AU | 626237 B2 | 23-07-1992 |
| | | | AU | 6084590 A | 14-02-1991 |
| | | | CA | 2022954 A1 | 11-02-1991 |
| | | | DE | 69026004 D1 | 25-04-1996 |
| | | | DE | 69026004 T2 | 28-11-1996 |
| | | | DK | 412799 T3 | 05-08-1996 |
| | | | EP | 0412799 A2 | 13-02-1991 |
| | | | ES | 2088976 T3 | 01-10-1996 |
| | | | JP | 3149949 A | 26-06-1991 |
| | | | JP | 3162360 B2 | 25-04-2001 |
| | | | NZ | 234821 A | 25-11-1993 |

Form PCT/ISA/210 (patent family annex) (January 2004)

BLUEPRINT 000408

Internationales Aktenzeichen

PCT/EP2004/051925

| A. KLASSIFIZIERUNG DES ANMELDUNGSGEGENSTANDES |
|---|
| IPK 7   H04L12/24 |

Nach der Internationalen Patentklassifikation (IPK) oder nach der nationalen Klassifikation und der IPK

| B. RECHERCHIERTE GEBIETE |
|---|
| Recherchierter Mindestprüfstoff (Klassifikationssystem und Klassifikationssymbole ) |
| IPK 7   H04L   H04Q   G06F   H04B |

Recherchierte aber nicht zum Mindestprüfstoff gehörende Veröffentlichungen, soweit diese unter die recherchierten Gebiete fallen

Während der internationalen Recherche konsultierte elektronische Datenbank (Name der Datenbank und evtl. verwendete Suchbegriffe)

EPO-Internal, WPI Data, COMPENDEX, INSPEC

| C. ALS WESENTLICH ANGESEHENE UNTERLAGEN | | |
|---|---|---|
| Kategorie° | Bezeichnung der Veröffentlichung, soweit erforderlich unter Angabe der in Betracht kommenden Teile | Betr. Anspruch Nr. |
| X | US 6 108 300 A (JORDAN JAMES A  ET AL) 22. August 2000 (2000-08-22) Zusammenfassung Abbildungen 1,2 Spalte 1, Zeile 20 – Zeile 39 Spalte 2, Zeile 39 – Spalte 3, Zeile 17 ───── | 1 |
| A | US 2003/033030 A1 (METCALF ORLANDO P  ET AL) 13. Februar 2003 (2003-02-13) Zusammenfassung Absatz '0043! – Absatz '0053! ─────  -/-- | 1-10 |

| X | Weitere Veröffentlichungen sind der Fortsetzung von Feld C zu entnehmen | X | Siehe Anhang Patentfamilie |
|---|---|---|---|

° Besondere Kategorien von angegebenen Veröffentlichungen   :

"A" Veröffentlichung, die den allgemeinen Stand der Technik definiert, aber nicht als besonders bedeutsam anzusehen ist

"E" älteres Dokument, das jedoch erst am oder nach dem internationalen Anmeldedatum veröffentlicht worden ist

"L" Veröffentlichung, die geeignet ist, einen Prioritätsanspruch zweifelhaft er- scheinen zu lassen, oder durch die das Veröffentlichungsdatum einer anderen im Recherchenbericht genannten Veröffentlichung belegt werden soll oder die aus einem anderen besonderen Grund angegeben ist (wie ausgeführt)

"O" Veröffentlichung, die sich auf eine mündliche Offenbarung, eine Benutzung, eine Ausstellung oder andere Maßnahmen bezieht

"P" Veröffentlichung, die vor dem internationalen Anmeldedatum, aber nach dem beanspruchten Prioritätsdatum veröffentlicht worden ist

"T" Spätere Veröffentlichung, die nach dem internationalen Anmeldedatum oder dem Prioritätsdatum veröffentlicht worden ist und mit der Anmeldung nicht kollidiert, sondern nur zum Verständnis des der Erfindung zugrundeliegenden Prinzips oder der ihr zugrundeliegenden Theorie angegeben ist

"X" Veröffentlichung von besonderer Bedeutung; die beanspruchte Erfindung kann allein aufgrund dieser Veröffentlichung nicht als neu oder auf erfinderischer Tätigkeit beruhend betrachtet werden

"Y" Veröffentlichung von besonderer Bedeutung; die beanspruchte Erfindung kann nicht als auf erfinderischer Tätigkeit beruhend betrachtet werden, wenn die Veröffentlichung mit einer oder mehreren anderen Veröffentlichungen dieser Kategorie in Verbindung gebracht wird und diese Verbindung für einen Fachmann naheliegend ist

"&" Veröffentlichung, die Mitglied derselben Patentfamilie ist

| Datum des Abschlusses der internationalen Recherche | Absendedatum des internationalen Recherchenberichts |
|---|---|
| 8. November 2004 | 17/11/2004 |

| Name und Postanschrift der internationalen Recherchenbehörde | Bevollmächtigter Bediensteter |
|---|---|
| Europäisches Patentamt, P.B. 5818 Patentlaan 2 NL – 2280 HV Rijswijk Tel. (+31–70) 340–2040, Tx. 31 651 epo nl, Fax (+31–70) 340–3016 | Bub, A |

Formblatt PCT/ISA/210 (Blatt 2) (Januar 2004)

3

BLUEPRINT 000409

Internationales Aktenzeichen

PCT/EP2004/051925

| C.(Fortsetzung)  ALS WESENTLICH ANGESEHENE UNTERLAGEN | | |
|---|---|---|
| Kategorie° | Bezeichnung der Veröffentlichung, soweit erforderlich unter Angabe der in Betracht kommenden Teile | Betr. Anspruch Nr. |
| A | US 5 473 599 A (COLE BRUCE A  ET AL)<br>5. Dezember 1995 (1995-12-05)<br>Zusammenfassung<br>Abbildungen 3,7<br>Ansprüche 1,2,4-6<br>Spalte 2, Zeile 16 - Zeile 43<br>Spalte 2, Zeile 65<br>Spalte 9, Zeile 43 - Spalte 10, Zeile 11<br>Spalte 13, Zeile 30 - Spalte 15, Zeile 20<br>-----  | 1-10 |
| A | EP 0 412 799 A (BOSTON TECH INC)<br>13. Februar 1991 (1991-02-13)<br>Zusammenfassung<br>Spalte 2, Zeile 44 - Spalte 3, Zeile 44<br>Spalte 11, Zeile 14 - Zeile 33<br>Spalte 18, Zeile 35 - Spalte 19, Zeile 47<br>-----  | 1-10 |

3

Formblatt PCT/ISA/210 (Fortsetzung von Blatt 2) (Januar 2004)

BLUEPRINT 000410

INTERNATIONALER RECHERCHENBERICHT

Angaben zu Veröffentlichungen, die zur selben Patentfamilie gehören

Internationales Aktenzeichen

PCT/EP2004/051925

| Im Recherchenbericht angeführtes Patentdokument | | Datum der Veröffentlichung | Mitglied(er) der Patentfamilie | | Datum der Veröffentlichung |
|---|---|---|---|---|---|
| US 6108300 | A | 22-08-2000 | US 6061349 | A | 09-05-2000 |
| | | | US 6104717 | A | 15-08-2000 |
| | | | US 6445704 | B1 | 03-09-2002 |
| | | | US 6324177 | B1 | 27-11-2001 |
| | | | US 6366558 | B1 | 02-04-2002 |
| | | | US 5989060 | A | 23-11-1999 |
| | | | US 6298063 | B1 | 02-10-2001 |
| US 2003033030 | A1 | 13-02-2003 | WO 03075541 | A1 | 12-09-2003 |
| US 5473599 | A | 05-12-1995 | AU 2359995 | A | 16-11-1995 |
| | | | WO 9529544 | A1 | 02-11-1995 |
| EP 0412799 | A | 13-02-1991 | US 5029199 | A | 02-07-1991 |
| | | | AT 135867 | T | 15-04-1996 |
| | | | AU 626237 | B2 | 23-07-1992 |
| | | | AU 6084590 | A | 14-02-1991 |
| | | | CA 2022954 | A1 | 11-02-1991 |
| | | | DE 69026004 | D1 | 25-04-1996 |
| | | | DE 69026004 | T2 | 28-11-1996 |
| | | | DK 412799 | T3 | 05-08-1996 |
| | | | EP 0412799 | A2 | 13-02-1991 |
| | | | ES 2088976 | T3 | 01-10-1996 |
| | | | JP 3149949 | A | 26-06-1991 |
| | | | JP 3162360 | B2 | 25-04-2001 |
| | | | NZ 234821 | A | 25-11-1993 |

Formblatt PCT/ISA/210 (Anhang Patentfamilie) (Januar 2004)

BLUEPRINT 000411

PCT/EP2004/0 ... 9 25

# BUNDESREPUBLIK  DEUTSCHLAND

**PRIORITY
DOCUMENT**
SUBMITTED OR TRANSMITTED IN
COMPLIANCE WITH RULE 17.1(a) OR (b)



REC'D **2 0 OCT 2004**

WIPO                          PCT

## Prioritätsbescheinigung über die Einreichung
### einer Patentanmeldung

| | |
|---|---|
| **Aktenzeichen:** | 103 58 344.0 |
| **Anmeldetag:** | 12. Dezember 2003 |
| **Anmelder/Inhaber:** | Siemens Aktiengesellschaft, 80333 München/DE |
| **Bezeichnung:** | Verfahren zum Ersatzschalten von räumlich getrennten Vermittlungssystemen |
| **IPC:** | H 04 L 29/14 |

**Die angehefteten Stücke sind eine richtige und genaue Wiedergabe der ursprünglichen Unterlagen dieser Patentanmeldung.**



München, den 1. Oktober 2004
**Deutsches Patent- und Markenamt**
**Der Präsident**
Im Auftrag

**Remus**

BEST AVAILABLE COPY

A 9161
03/00
EDV-L

BLUEPRINT 000412

Beschreibung

Verfahren zum Ersatzschalten von räumlich getrennten Vermittlungssystemen

5

Zeitgemäße Vermittlungssysteme (Switch) verfügen durch redundantes Bereitstellen wichtiger interner Komponenten über ein hohes Mass an interner Betriebssicherheit. Damit wird im Normalbetrieb eine sehr hohe Verfügbarkeit der vermittlungstechnischen Funktionen erreicht. Treten jedoch massive äußere Einwirkungen auf (z.B. Feuer, Naturkatastrophen, Terroranschläge, kriegerische Einwirkungen etc.), so nutzen die getroffenen Vorkehrungen zur Erhöhung der Betriebssicherheit in der Regel wenig, weil Original- und Ersatzkomponenten des Vermittlungssystems sich am gleichen Ort befinden und damit in einem solchen Katastrophenfall mit hoher Wahrscheinlichkeit beide Komponenten zerstört bzw. funktionsunfähig geworden sind.

20  Als Lösung ist eine 1:1 Redundanz vorgeschlagen worden. Demgemäss ist vorgesehen, jedem zu schützenden Vermittlungssystem einen identischen Klon als Redundanzpartner mit identischer Hardware, Software und Datenbasis zuzuordnen. Der Klon befindet sich im hochgefahrenen Zustand, ist aber trotzdem vermittlungstechnisch nicht aktiv. Beide Vermittlungssysteme werden von einem im Netz übergeordneten, realzeitfähigen Monitor gesteuert, der die Umschaltevorgänge steuert.

30  Der Erfindung liegt die Aufgabe zugrunde, ein Verfahren zum Ersatzschalten von Vermittlungssystemen anzugeben, das im Fehlerfall ein effizientes Umschalten eines ausgefallenen Vermittlungssystems auf einen Redundanzpartner sicherstellt.

Diese Aufgabe wird ausgehend von den im Oberbegriff von Patentanspruch 1 angegebenen Merkmalen durch die im kennzeichnenden Teil beanspruchten Merkmale gelöst.

1

200318829

Erfindungsgemäß wird ein Protokoll vorgeschlagen, das zwischen einem übergeordneten realzeitfähigen Monitor und dem aktiven Vermittlungssystem einerseits sowie dem hot-standby Vermittlungssystem andererseits zum Ablauf gelangt. Das Pro-
5    tokoll basiert auf den Standard IP Protokollen BOOTP / DHCP, die in der Regel von jeder IP Implementierung unterstützt werden. Damit ist diese Lösung in jedem Vermittlungssystem mit IP basierten Schnittstellen mit minimalem Implementierungsaufwand realisierbar. Die Lösung ist umfassend einsetz-
10   bar und wirtschaftlich, weil im wesentlichen nur der Aufwand für den Monitor anfällt. Ferner ist sie durch Nutzung einfacher, standardisierter IP Protokolle extrem robust. Fehlsteuerungen aufgrund von temporären Ausfällen im IP core Netz beheben sich automatisch, nachdem der Ausfall beendet ist.
15   Ein Doppelausfall des Monitors stellt in dieser Variante ebenso kein Problem dar.

Ein wesentlicher Vorteil der Erfindung ist darin zu sehen, dass beim Umschaltevorgang von einem aktiven Vermittlungssys-
20   tem auf ein hot-standby Vermittlungssystem in den beteiligten Vermittlungssystemen kein Netzwerkmanagement und keinerlei zentrale Steuereinheit benötigt wird, die die Umschaltevorgänge unterstützt. Insofern ist es irrelevant, ob das Vermittlungssystem eine zentrale Steuereinheit aufweist oder
25   nicht. Damit ist die Erfindung auch auf Router anwendbar, die – im Gegensatz zum klassischen Vermittlungssystem – in der Regel keine derartige zentrale Steuereinheit aufweisen.

Die Erfindung wird im folgenden anhand eines figürlich darge-
30   stellten Ausführungsbeispiels näher erläutert. Demgemäss ist vorgesehen, jedem zu schützenden Vermittlungssystem (z. B. $S_1$) einen identischen Klon als Redundanzpartner (z. B. $S_{1b}$) mit identischer Hardware, Software und Datenbasis zuzuordnen. Der Klon befindet sich im hochgefahrenen Zustand, ist aber
35   trotzdem vermittlungstechnisch nicht aktiv (Betriebszustand "hot-standby"). Damit ist eine hochverfügbare, über mehrere

2

Lokationen verteilte 1:1 Redundanz von Vermittlungssystemen definiert.

Die beiden Vermittlungssysteme (Vermittlungssystem $S_1$ und der

5    Klon oder Redundanzpartner $S_{1b}$) werden von einem Netzwerkmanagementsystem NM gesteuert. Die Steuerung erfolgt derart, dass der aktuelle Stand von Datenbasis und Software beider Vermittlungssysteme $S_1$, $S_{1b}$ identisch gehalten wird. Dies wird erreicht, indem jedes betriebstechnische Kommando, jedes Kon-

10   figurationskommando und jedes Software-Update inklusive Patches identisch an beide Partner ausgebracht wird. Damit wird ein räumlich abgesetzter, identischen Klon zu einem in Betrieb befindlichen Switch mit identischer Datenbasis und identischem Softwarestand definiert.

15   Die Datenbasis beinhaltet grundsätzlich alle semipermanenten und permanenten Daten. Hierbei werden unter permanenten Daten die Daten verstanden, die als Code in Tabellen abgelegt sind und die sich nur per Patch oder Software-Update ändern las-

20   sen. Unter smipermanenten Daten werden die Daten verstanden, die z. B. über die Bedienerschnittstelle in das System gelangen und die für längere Zeit dort in der Form der Eingabe gespeichert sind. Mit Ausnahme der Konfigurationszustände des Systems werden diese Daten i.a. vom System nicht selbst ver-

25   ändert. Nicht in der Datenbasis enthalten sind die einen Ruf begleitenden transienten Daten, die das Vermittlungssystem nur kurzzeitig speichert und die über die Dauer eines Calls hinaus i.a. keine Bedeutung haben oder Zustandsinformationen, die transiente Überlagerungen/ Ergänzungen von konfigurativ

30   vorgegebenen Grundzuständen sind (So könnte ein Port zwar im Grundzustand aktiv sein, aber wegen einer transienten (vorübergehenden) Störung momentan nicht zugreifbar sein).

Im weiteren verfügen die Vermittlungssysteme $S_1$, $S_{1b}$ beide ü-

35   ber mindestens ein aktives, paketorientiertes Interface zum gemeinsamen Netzwerkmanagementsystem NM. Dies sollen gemäss vorliegendem Ausführungsbeispiel die beiden Interface $IF_1$

3

BLUEPRINT 000415

200318829

sein. Die beiden Interfaces $IF_1$ nehmen dabei einen aktiven
Betriebzustand ("act") ein. Während aber beim Vermittlungs-
system $S_1$ auch alle verbleibenden paketorientierten Inter-
faces $IF_2...IF_n$ aktiv sind, sind beim Vermittlungssystem $S_{1b}$
5   hingegen die verbleibenden Interfaces im Betriebzustand "id-
le". Der Zustand "idle" bedeutet, dass die Interfaces keinen
Nachrichtenaustausch erlauben, aber von außen, d.h. durch ei-
ne außerhalb von Vermittlungssystem $S_1$ und Vermittlungssystem
$S_{1b}$ gelegenen, übergeordneten realzeitfähigen Monitor akti-
10   viert werden können. Der Monitor kann in Hardware oder Soft-
ware realisiert sein, und schaltet im Fehlerfall in Realzeit
auf den Klon um. Realzeit bedeutet hier eine Zeitspanne von 1
bis 2 Sekunden. Gemäss vorliegendem Ausführungsbeispiel ist
der Monitor als Steuereinrichtung SC und aus Sicherheitsgrün-
15   den gedoppelt (lokale Redundanz) ausgebildet.

Die Interfaces $I_n$ sind paketbasiert und stellen somit Kommu-
nikationsschnittstellen zu paketbasierten Peripherieeinricht-
tungen (wie z. B. IAD, MG, SIP Proxy-Einrichtungen), fernen
20   paketbasierten Switches, paketbasierten Media Servern dar.
Sie werden mittelbar vom Monitor gesteuert, der als Steuer-
einrichtung SC (Switch Controller) ausgebildet ist. Dies be-
deutet, dass die Steuereinrichtung SC die Interfaces $IF_n$ ak-
tivieren und deaktivieren, und somit beliebig zwischen den
25   Betriebszuständen "act" und "idle" hin- und herschalten kann.

Die Konfiguration gemäss der Figur soll als Default Konfigu-
ration gelten. Dies bedeutet, dass Vermittlungssystem $S_1$ ver-
mittlungstechnisch aktiv ist, während sich Vermittlungssystem
30   $S_{1b}$ in einem Betriebszustand "hot-standby" befindet. Dieser
Zustand ist durch eine aktuelle Datenbasis und volle Aktivi-
tät aller Komponenten bis auf die paketbasierten Interfaces
(und eventuell die Bearbeitung vermittlungstechnischer Anrei-
ze) geprägt. Das (geographisch redundante) Vermittlungssystem
35   $S_{1b}$ kann somit von der Steuereinrichtung SC durch Aktivierung
der Interfaces $IF_2..IF_n$ schnell (Realzeit) in den vermitt-
lungstechnisch aktiven Zustand überführt werden. Das Inter-

4

BLUEPRINT 000416

face IF$_1$ ist auch auf dem hot standby Vermittlungssystem ak-
tiv, weil es die Schnittstelle zum Network Management
beschreibt, die immer aktiv sein muss.

5   Als wesentlicher Aspekt ist anzusehen, dass die beiden geo-
graphisch redundanten Vermittlungssysteme S$_1$, S$_{1b}$ sowie das
Netzwerkmanagement NM und die gedoppelte Steuereinrichtung SC
jeweils räumlich deutlich getrennt sein müssen.

10  Die Steuereinrichtung SC übermittelt dem Netzwerkmanagement
NM regelmäßig den aktuellen Betriebszustand der Vermittlungs-
systeme S$_1$ und S$_{1b}$ (act/ hot-standby, Zustand der Interfaces)
sowie den eigenen Betriebszustand. Die Funktionen der Steuer-
einrichtung SC können optional teilweise oder auch komplett
15  vom Netzwerkmanagement NM durchgeführt werden. Aus Sicher-
heitsgründen sollte das Netzwerkmanagement NM die Funktion
haben, die oben beschriebenen Umschaltungen auch manuell her-
beiführen zu können. Optional kann die automatische Umschal-
tung blockiert werden, so dass die Umschaltung nur manuell
20  durchgeführt werden kann.

Die Vermittlungssysteme S$_1$ und S$_{1b}$ können regelmäßig auch
selbst überprüfen, ob ihre paketbasierten Interfaces aktiv
sind. Ist dies für die Interfaces IF$_2$..IF$_n$ nicht der Fall,
25  kann man auf den Zustand "hot-standby" schließen und gezielt
gewisse Alarme, die sich aus der Nicht-Verfügbarkeit der In-
terfaces IF$_2$..IF$_n$ ergeben, blockieren. Weiterhin kann auf
diese Weise auch der Übergang eines Switches von "hot-
standby" auf "aktiv" erkannt werden. Dies ermöglicht, ggf.
30  gezielte Maßnahmen beim Start des Vermittlungsverkehrs zu er-
greifen.

Die Paket-Adressen (IP Adressen) der Interfaces I$_{2..n}$ des Ver-
mittlungssystems S$_1$ und ihrer jeweiligen Partner Interfaces
von Vermittlungssystem S$_{1b}$ können identisch sein, müssen es
35  aber nicht. Wenn sie identisch sind, wird das Umschalten nur
vom vorgeschalteten Router bemerkt. Für die Partner-

5

Applikation im Netz ist es dagegen völlig transparent. Dies
ist eine neue Anwendung und Verallgemeinerung der IP Failover
Funktion. Falls das Protokoll, das ein Interface bedient, ein
Umschalten des Kommunikationspartners auf eine andere Paket-
5   Adresse erlaubt, wie dies z.B. beim H.248 Protokoll der Fall
ist (ein Media Gateway kann selbständig eine neue Verbindung
zu einem anderen Media Gateway Controller mit anderer IP Ad-
resse herstellen), können die IP Adressen auch unterschied-
lich sein.

10

In einer Ausgestaltung der Erfindung wird vorgesehen, als
Steuereinrichtung SC den Zentralrechner eines weiteren Ver-
mittlungssystems zu verwenden. Damit existiert dann eine
Steuereinrichtung mit höchster Verfügbarkeit.

15

In einer Weiterbildung der Erfindung kommt die Etablierung
einer unmittelbaren Kommunikationsschnittstelle zwischen Ver-
mittlungssystem $S_1$ und Vermittlungssystem $S_{1b}$ in Betracht.
Diese kann zum Update der Datenbasis z. B. im Hinblick auf
20   SCI -(Subscriber Controlled Input) und Gebühren-Daten genutzt
werden sowie auch zum Austausch transienter Daten von einzel-
nen Verbindungen oder wesentlichen weiteren transienten Daten
(z. B. H.248 Association Handle). Damit sind die Störungen
des Betriebs aus Teilnehmer- und  Betreibersicht minimierbar.
25   Die semipermanenten und transienten Daten können dann von dem
jeweiligen aktiven Vermittlungssystem in das redundante hot-
standby Vermittlungssystem in einem zyklischen Zeitraster
(Update) übertragen werden. Das Update der SCI-Daten hat den
Vorteil, dass das zyklische Restore auf dem hot-standby-
30   System vermieden wird und jederzeit Aktualität bzgl. SCI Da-
ten im hot-standby System herrscht. Durch das Update Stack-
relevanter Daten, wie dem H.248 association handle, kann der
Peripherie die Übernahme durch ein Ersatzsystem verborgen
werden, und es können die Ausfallzeiten noch stärker redu-
35   ziert werden.

6

BLUEPRINT 000418

Grundsätzlich müssen im Netz die IP-Adressen aller Netzkompo-
nenten bekannt sein. Die Zuteilung der IP-Adressen wird beim
Hochfahren der gesamten IP-Netzeinrichtung gesteuert. Hierzu
ist ein Server (BOOTP Server) im Netz vorgesehen, der mit den
5   hochzufahrenden Clients über ein BOOTP Protokoll kommuni-
ziert. Die Netzkomponenten (Client), wie z. B. die Vermitt-
lungssysteme $S_1$, $S_{1b}$ fordern beim Hochlauf mit Hilfe des BOOTP
Protokolls beim BOOTP Server die IP-Adressen an. Mit dem Er-
halt dieser IP-Adressen sind damit in allen Netzkomponenten
10   die eigene MAC-Adresse (Netzweite Hardware Adresse) und die
eigene IP-Adresse bekannt. Da diese Zuordnung im Netz noch
nicht bekannt ist, wird von den Netzkomponenten diese Infor-
mation im Zuge einer Broadcast Nachricht anderen Netzkompo-
nenten (Client, Router) mitgeteilt. Hierzu wird ein eigenes
15   Protokoll (ARP Protokoll, Adress Resolution Protokoll) ver-
wendet.

Zur Überwachung und Umschaltung von einem aktiven Vermitt-
lungssystem auf ein redundant angeordnetes Vermittlungssystem
20   wird erfindungsgemäß ein Protokoll, im folgenden mit Proto-
koll HSCB (Hot-Standby Control Protokoll) bezeichnet, vorge-
schlagen. Diese Protokoll HSCB kommt zwischen der Steuerein-
richtung SC und dem Vermittlungssystem $S_1$ sowie zwischen der
Steuereinrichtung SC und dem Vermittlungssystem $S_{1b}$ zum Ab-
25   lauf. Grundsätzlich muss das Protokoll in der Lage sein, das
Vermittlungssystem $S_1$ nach dem Hochfahren (Recovery) in einen
aktiven ("act") oder einen "hot-standby" Betriebszustand zu
bringen. Ferner ist das im aktiven (und optional auch das im
"hot-standby") Betriebszustand befindliche Vermittlungssystem
30   zu überwachen und im Fehlerfall die erforderlichen Umschal-
tungen herbeizuführen (aktives Vermittlungssystem geht nach
hot-standby / hot-standby Vermittlungssystem geht nach ak-
tiv). Optional kann Vermittlungssystem $S_1$ und $S_{1b}$ explizit
mitgeteilt werden, ob sie activ bzw. hot-standby sind.

35

7

BLUEPRINT 000419

200318829

Folgende Regeln werden im Protokoll HSCB zwischen der Steuer-
einrichtung SC und dem Vermittlungssystem $S_1$ bzw. $S_{1b}$ festge-
legt:

5   Wenn ein paketbasiertes Interface eines Vermittlungssystems
sich im Betriebszustand "IDLE" befindet, schickt es regelmä-
ßig IP Adressanforderungen ("BOOTP Request") an die Steuer-
einrichtung SC. Hierbei ist es nicht notwendig, dass die
Steuereinrichtung SC diese BOOTP Requests der Interfaces vom
10  Vermittlungssystem beantwortet, dies wird nur für die Adress-
anforderungen des Vermittlungssystems vorgenommen, das bei
der Steuereinrichtung SC als aktiv gekennzeichnet ist. Im
Falle einer positiven Rückantwort von der Steuereinrichtung
SC wird das paketbasierte Interface in den aktiven Betriebs-
15  zustand ("act") versetzt. Im Falle keiner (oder negativen)
Rückantwort von der Steuereinrichtung SC bleiben die im inak-
tiven Betriebzustand befindlichen paketbasierten Interfaces
im inaktiven Betriebszustand ("IDLE"). Nach dem Booten befin-
den sich alle paketbasierten Interfaces im inaktiven Be-
20  triebzustand ("IDLE"). Ein im aktiven Betriebszustand sich
befindendes Interface braucht keine Adressanforderungen ("IP-
Request") an die Steuereinrichtung SC zu senden.

Die Steuereinrichtung SC schickt ihrerseits regelmäßig Über-
25  wachungsnachrichten an die paketbasierten Interfaces, die
diese nur beantworten müssen, wenn sie aktiv sind. Mittels
einer besonderen Nachricht kann die Steuereinrichtung SC ein
paketbasiertes Interface vom aktiven Betriebszustand in den
inaktiven Betriebszustand ("IDLE") bringen.

30

Im folgenden wird der Hochlauf der Netzkonfiguration be-
schrieben. Grundsätzlich sind nach dem Hochlauf alle Inter-
faces von Vermittlungssystem $S_1$ und $S_{1b}$ im inaktiven Betriebs-
zustand "IDLE". Die Steuereinrichtung SC soll nun BOOTP Ser-
35  ver für Vermittlungssystem $S_1$ und $S_{1b}$ sein. Dies bedeutet,
dass beim Hochlauf die IP Interfaces von Vermittlungssystem
$S_1$ bzw. Vermittlungssystem $S_{1b}$ sich ihre IP Adressen via BOOTP

8

BLUEPRINT 000420

Request von der Steuereinrichtung SC abholen. Die Steuerein-
richtung SC hat Kenntnis von der Existenz beider Vermitt-
lungssysteme sowie von dem von diesen noch einzunehmenden Be-
triebszustand (act/ hot-standby). Die Steuereinrichtung SC

5   teilt den beiden Vermittlungssystem $S_1$, $S_{1b}$ den Betriebszustand
implizit mit, den sie nach dem Hochlauf einzunehmen haben.
Zum einen erfolgt dies für das als hot-standby zu definieren-
de Vermittlungssystem $S_{1b}$, indem die Steuereinrichtung SC die
BOOTP Requests der Interfaces $IF_2...IF_n$ nicht beantwortet.

10  Damit haben diese Interfaces keine IP Adressen und bleiben im
inaktiven Betriebszustand ("IDLE"). Sie schicken aber weiter-
hin regelmäßig BOOTP Requests an die Steuereinrichtung SC,
die diese im Normalzustand weiterhin nicht beantwortet. Zum
anderen erfolgt dies für das als aktiv zu definierende Ver-

15  mittlungssystem $S_1$, indem die Steuereinrichtung SC alle BOOTP
Requests (durch Mitteilung der IP Adresse) beantwortet, womit
alle Interfaces aktiviert werden. Statt BOOTP Request können
auch DHCP Request genommen werden.


20  Das System aus aktivem Vermittlungssystem und Klon nimmt da-
mit den (in der Steuereinrichtung SC) vorgesehenen Zustand
ein, der als fehlerfreier Normalzustand definiert ist. In
diesem Zustand werden die zyklischen BOOTP Requests der In-
terfaces des Klons weiterhin nicht beantwortet, womit diesen

25  auch weiterhin ihre IP Adressen fehlen. Die aktiven Inter-
faces von Vermittlungssystem $S_1$ senden keine BOOTP Requests.
In diesem Normalzustand sendet nun die Steuereinrichtung SC
zyklisch Überwachungsnachrichten an die Interfaces des akti-
ven Vermittlungssystems, die von den aktiven Interfaces be-

30  antwortet werden müssen. Ist dies der Fall, kann davon ausge-
gangen werden, dass das aktive Vermittlungssystem sich auch
weiterhin in einem fehlerfreien Betriebszustand befindet, wo-
mit der aktive Betriebszustand beibehalten wird. Da die zyk-
lischen BOOTP Requests vom Klon ebenfalls weiterhin eintref-

35  fen (und auch weiterhin nicht beantwortet werden), kann eben-
falls davon ausgegangen werden, dass auch der Klon sich in
einem fehlerfreien Betriebszustand befindet (nach wie vor

9

BLUEPRINT 000421

"IDLE"). Die Steuereinrichtung SC hat somit das Wissen um die
Funktionsfähigkeit des aktiven Vermittlungssystems und auch
des Klons gespeichert. Dieses Wissen wird mit der Quittierung
der zyklischen Überwachungsnachrichten und den zyklischen
5    BOOTP Requests des Klons stets auf aktuellem Niveau gehalten.

Im folgenden sei nun von einem schwerwiegenden Ausfall des
Vermittlungssystem $S_1$ ausgegangen. Aufgrund der geographi-
schen Redundanz ist mit hoher Wahrscheinlichkeit der Klon
10   (Vermittlungssystem $S_{1b}$) ebenso nicht betroffen wie die Steu-
ereinrichtung SC. Das Feststellen des Ausfalls von Vermitt-
lungssystem $S_1$ sowie das Steuern der entsprechenden Umschal-
tevorgänge auf Vermittlungssystem $S_{1b}$ wird von der Steuerein-
richtung SC vorgenommen:
15

Der Ausfall von Vermittlungssystem $S_1$ wird von der Steuerein-
richtung SC festgestellt, indem die Überwachungsnachrichten
nicht mehr quittiert werden. Als Kriterium des Ausfalls soll
aber nicht nur ein Kommunikationsverlust mit allen Interfaces
20   gelten, sondern bereits mit einer vorgebbaren Anzahl (konfi-
gurierbar, optional auch alle). Kommen also für diese vorgeb-
bare Anzahl von Interfaces von Vermittlungssystem $S_1$ für län-
gere Zeit (z.B. 1 Min.) keine Quittungen bei Steuereinrich-
tung SC an, so wird auf einen schwerwiegenden Ausfall von
25   Vermittlungssystem $S_1$ geschlossen. Dieses Kriterium ist hin-
reichend, um ein Umschalten (Switchover) von Vermittlungssys-
tem $S_1$ nach Vermittlungssystem $S_{1b}$ zu veranlassen.

In diesem Fall bringt zunächst die Steuereinrichtung SC noch
30   aktive Interfaces von Vermittlungssystem $S_1$ mit Hilfe einer
besonderen Nachricht in den inaktiven Betriebszustand
("IDLE"). Dies Nachricht ist derart ausgebildet, dass die In-
terfaces von Vermittlungssystem $S_1$ dazu veranlasst werden,
Ihre IP Adressen freizugeben. Die Nachricht wird sicherheits-
35   halber allen Interfaces von Vermittlungssystem $S_1$ (also auch
den ausgefallenen) zugeführt und zyklisch solange wiederholt,
bis die BOOTP Requests von den nun inaktiven Interfaces bei

10

BLUEPRINT 000422

der Steuereinrichtung SC eintreffen. Vermittlungssystem $S_1$ ist damit im inaktiven Betriebszustand.

5    Die nach wie vor zyklisch eintreffenden BOOTP Requests von $S1b$ werden nun von der Steuereinrichtung SC beantortet, indem den Interfaces des bislang inaktiven Klons ihre IP Adressen mitgeteilt werden. Damit nimmt Vermittlungssystem $S_{1b}$ einen aktiven Betriebzustand ein. Vermittlungssystem $S_{1b}$ ist damit vermittlungsbereit und kann die Funktionen von Vermittlungs-

10   system $S_1$ übernehmen.

Der Vorteil dieser Vorgehensweise liegt in der Vermeidung des split brain Szenarios. Die Interfaces von Vermittlungssystem $S_1$ sollen auch nach Recovery von Vermittlungssystem $S_1$ im in-

15   aktiven Betriebszustand bleiben.   Vermittlungssystem $S_1$ ist damit bis zum nächsten Umschalten vermittlungstechnisch deaktiviert. Um das Zeitintervall inkonsistenter Interface Zustände in Vermittlungssystem $S_{1b}$ möglichst kurz zu halten, könnte man in Vermittlungssystem $S_{1b}$ die Requests triggern.

20   Im folgenden werden einige Ausfallszenarien diskutiert:

Für die Lösung gemäss der Erfindung stellt ein Totalausfall der Steuereinrichtung SC (Doppel-Ausfall der beiden Hälften)

25   kein Problem dar, zumal ein solcher Fall extrem unwahrscheinlich ist. Dies stört in dieser Ausführungsvariante den normalen Vermittlungsbetrieb nicht. Nur die automatische Umschaltefunktion der Steuereinrichtung SC ist nicht mehr vorhanden. Sollte während dieser Zeit ein Umschalten erforderlich wer-

30   den, kann es manuell vom Netzwerkmanagement NM durchgeführt werden.

Ebenso kann eine gestörte Kommunikation zwischen Vermittlungssystem $S_1$ und und Steuereinrichtung SC abgefangen wer-

35   den. In diesem Fall kann mit sehr geringer Wahrscheinlichkeit das "split brain" Szenario auftreten. Dies bedeutet, dass die beiden Vermittlungssysteme $S_1$, $S_{1b}$ zugleich einen aktiven Be-

11

BLUEPRINT 000423

triebszustand einnehmen und beide auch dieselben IP Adressen verwenden.

Um dieses gänzlich Szenario auszuschließen wird vorgeschla-
gen, eine gegenseitige Überwachung auf act / stb zwischen
Vermittlungssystem $S_1$ und Vermittlungssystem $S_{1b}$ einführen.
Die Überwachung kann dieselben Mechanismen verwenden, die o-
ben beschrieben sind. So kann beispielsweise ein dediziertes
IP Interface von Vermittlungssystem $S_{1b}$ (hot-standby) regel-
mässig BOOTP Requests an sein Partner Interfaces in Vermitt-
lungssystem $S_1$ schicken und überwachen, ob sein Partner In-
terface aktiv ist. Soll nun Vermittlungssystem $S_{1b}$ von hot-
standby nach activ gehen, kann vorher geprüft werden, ob das
Partner Interface ausgefallen ist (d.h. keine responses mehr
schickt). Ist es weiterhin aktiv (was beim korrekten Switcho-
ver nicht der Fall sein darf und zum "split brain" führen
würde), wird das Umschalten stb -> act in Vermittlungssystem
$S_{1b}$ verhindert – und damit auch das "split brain". Vermitt-
lungssystem $S_1$ ist in diesem Fall mit hoher Wahrscheinlich-
keit noch activ.

Sollte ein "split brain" Szenario doch einmal auftreten, be-
steht immer noch eine einfache Korrekturmöglichkeit vom Netz-
werkmanagement NM aus. Demnach wird eines der beiden Vermitt-
lungssysteme wieder in den stb Betriebszustand gebracht und
durchläuft gegebenenfalls ein Wiederhochlauf (Recovery).

12

BLUEPRINT 000424

200318829

Patentansprüche

1. Verfahren zum Ersatzschalten von räumlich getrennten Vermittlungssystemen, die in einer 1:1 Redundanz paarweise

5    angeordnet sind, wobei das eine Vermittlungssystem ($S_1$) sich in einem aktiven Betriebszustand ("act") und das verbleibende redundante Vermittlungssystem ($S_{1b}$) sich in einem hot-standby Betriebszustand ("idle") befindet,
dadurch gekennzeichnet,

10   dass jeweils zwischen dem im aktiven Betriebszustand befindlichen Vermittlungssystem ($S_1$) sowie dem hierzu redundanten, im hot-standby Betriebszustand befindlichen Vermittlungssystem und einem übergeordneten Monitor (SC) nach Maßgabe des Betriebszustandes der beiden Vermittlungssysteme

15   eine Kommunikation gesteuert wird, und
dass bei Kommunikationsverlust zu dem im aktiven Betriebszustand befindlichen Vermittlungssystem ($S_1$) vom übergeordneten Monitor (SC) in Realzeit dieses deaktiviert und das im hot-standby Betriebszustand befindliche Vermittlungssystem ($S_{1b}$)

20   aktiviert wird.

2. Verfahren nach Anspruch 1,
dadurch gekennzeichnet,
dass der Betriebszustand eines Vermittlungssystems durch eine

25   vorgebbare Anzahl von paketbasierten Interfaces definiert und/ oder gesteuert wird.

3. Verfahren nach Anspruch 1, 2,
dadurch gekennzeichnet,

30   dass paketbasierte Interfaces eines als hot-standby definierten Vermittlungssystems einen inaktiven Betriebszustand ("IDLE") einnehmen und regelmäßig IP Adressanforderungen ("BOOTP Request") an den Monitor (SC) senden, der diese im fehlerfreien Betrieb nicht beantwortet.

35

13

BLUEPRINT 000425

4. Verfahren nach Anspruch 1 bis 3,
dadurch gekennzeichnet,
dass paketbasierte Interfaces eines als aktiv definierten
Vermittlungssystems einen aktiven Betriebszustand ("act")
5   einnehmen wobei regelmäßige IP Adressanforderungen ("BOOTP
Request") an den Monitor (SC) unterbleiben.


5. Verfahren nach einem der vorstehenden Ansprüche,
dadurch gekennzeichnet,
10  dass lediglich im Falle einer positiven Rückantwort vom Moni-
tor (SC) ein bis dahin inaktives, paketbasiertes Interface in
den aktiven Betriebszustand ("act") versetzt wird.


6. Verfahren nach einem der vorstehenden Ansprüche,
15  dadurch gekennzeichnet,
dass vom übergeordneten Monitor (SC) Überwachungsnachrichten
an die im aktiven Betriebzustand befindlichen Interfaces ge-
sendet werden, die von diesen quittiert werden.


20  7. Verfahren nach einem der vorstehenden Ansprüche,
dadurch gekennzeichnet,
dass bei Ausbleiben der Quittung auf die Überwachungsnach-
richten von dem übergeordneten Monitor (SC) auf einen Fehler
geschlossen wird, und in diesem Fall mittels einer besonderen
25  Nachricht die paketbasierte Interfacees des bislang aktiven
Vermittlungssystems in einen inaktiven Betriebszustand ge-
steuert werden.


8. Verfahren nach einem der vorstehenden Ansprüche,
30  dadurch gekennzeichnet,
dass bei Ausbleiben der Quittung auf die Überwachungsnach-
richten von dem übergeordneten Monitor (SC) auf einen Fehler
geschlossen wird, und in diesem Fall die zyklischen IP Ad-
ressanforderungen der inaktiven Interfaces durch die positive
35  Rückantwort beantwortet werden.


14

BLUEPRINT 000426

200318829

9. Verfahren nach einem der vorstehenden Ansprüche, dadurch gekennzeichnet,
dass die positive Rückantwort vom Monitor (SC) die IP Adresse des anfordernden paketbasierten Interfaces enthält.

5

10. Verfahren nach einem der vorstehenden Ansprüche, dadurch gekennzeichnet,
dass ein vormals aktives Vermittlungssystem nach Beseitigung des Fehlerfalles solange als hot-standby Vermittlungssystem definiert bleibt, bis ein neuer Fehlerfall die Umschaltung erzwingt.

10

15

BLUEPRINT 000427

Zusammenfassung

Verfahren zum Ersatzschalten von räumlich getrennten Vermitt-
lungssystemen

5

Beim Stand der Technik besteht das Problem, dass zeitgemäße
Vermittlungssysteme durch redundantes Bereitstellen wichtiger
interner Komponenten zwar über ein hohes Maß an interner Be-
triebssicherheit verfügen. Treten jedoch massive äußere Ein-
10   wirkungen auf (z. B. Erdbeben, Terroranschläge, kriegerische
Einwirkungen etc.), so nutzen die getroffenen Vorkehrungen in
der Regel wenig, weil Original- und Ersatzkomponenten des
Vermittlungssystems sich am gleichen Ort befinden und damit
in einem solchen Katastrophenfall mit hoher Wahrscheinlich-
15   keit beide Komponenten zerstört sind. Erfindungsgemäß ist ein
Protokoll vorgesehen, das auf einer 1:1 Redundanz zum Ablauf
gelangt. Demgemäss wird jedem zu schützenden Vermittlungssys-
tem ein identischer Klon als Redundanzpartner mit identischer
Hardware, Software und Datenbasis zugeordnet. Die Umschaltung
20   erfolgt schnell, sicher und automatisch durch einen überge-
ordneten, realzeitfähigen Monitor, der eine Kommunikation zu
den paarweise angeordneten Vermittlungssystemen aufbaut. Bei
Kommunikationsverlust zu dem aktiven Vermittlungssystem wird
auf das redundante Vermittlungssystem in Realzeit
25   umgeschaltet.

Figur 1

16

BLUEPRINT 000428

200318829

1/1



BLUEPRINT 000429

**(12) NACH DEM VERTRAG ÜBER DIE INTERNATIONALE ZUSAMMENARBEIT AUF DEM GEBIET DES PATENTWESENS (PCT) VERÖFFENTLICHTE INTERNATIONALE ANMELDUNG**

**(19) Weltorganisation für geistiges Eigentum**
Internationales Büro



**(43) Internationales Veröffentlichungsdatum**
23. Juni 2005 (23.06.2005)

PCT



**(10) Internationale Veröffentlichungsnummer**
## WO 2005/057853 A1

| | |
|---|---|
| **(51) Internationale Patentklassifikation[7]:** H04L 12/24 | **(72) Erfinder; und** |
| **(21) Internationales Aktenzeichen:** PCT/EP2004/051925 | **(75) Erfinder/Anmelder** *(nur für US)*: **LÖBIG**, Norbert [DE/DE]; Im Erlich 79, 64291 Darmstadt (DE). **TEGELER, Jürgen** [DE/DE]; Auf der Leiten 2, 82377 Penzberg (DE). |
| **(22) Internationales Anmeldedatum:** 26. August 2004 (26.08.2004) | |
| **(25) Einreichungssprache:** Deutsch | **(74) Gemeinsamer Vertreter:** **SIEMENS AKTIENGESELLSCHAFT**; Postfach 22 16 34, 80506 München (DE). |
| **(26) Veröffentlichungssprache:** Deutsch | |
| **(30) Angaben zur Priorität:** 10358344.0   12. Dezember 2003 (12.12.2003)   DE | **(81) Bestimmungsstaaten** *(soweit nicht anders angegeben, für jede verfügbare nationale Schutzrechtsart)*: AE, AG, AL, AM, AT, AU, AZ, BA, BB, BG, BR, BW, BY, BZ, CA, CH, CN, CO, CR, CU, CZ, DE, DK, DM, DZ, EC, EE, EG, ES, FI, GB, GD, GE, GH, GM, HR, HU, ID, IL, IN, IS, JP, KE, KG, KP, KR, KZ, LC, LK, LR, LS, LT, LU, LV, MA, MD, |
| **(71) Anmelder** *(für alle Bestimmungsstaaten mit Ausnahme von US)*: **SIEMENS AKTIENGESELLSCHAFT** [DE/DE]; Wittelsbacherplatz 2, 80333 München (DE). | |

*[Fortsetzung auf der nächsten Seite]*

**(54) Title:** METHOD FOR SUBSTITUTE SWITCHING OF SPATIALLY SEPARATED SWITCHING SYSTEMS

**(54) Bezeichnung:** VERFAHREN ZUM ERSATZSCHALTEN VON RÄUMLICH GETRENNTEN VERMITTLUNGSSYSTEMEN




**(57) Abstract:** According to prior art, contemporary switching systems are provided with a high degree of internal operational security by redundant provision of important internal components but when large-scale external effects occur (such as natural disasters, terrorist attacks, war) the above-mentioned measures are generally of little use because original and replacement components of the switching system are located in the same place. As a result, when a disaster occurs it is highly probable that both components will be destroyed. According to the invention, a protocol is provided, said protocol being executed with a redundancy of 1:1. As a result, an identical clone, with identical hardware, identical software and an identical data base, is allocated to each switching system to be protected, as a redundancy partner. Switching is carried out in a quick, secure and automatic manner by a superordinate, real-time enabled monitor which establishes communication with the switching systems which are arranged in pairs. In the event of communication loss with respect to the active communication system, real-time switching to the redundant switching system is carried out.

**(57) Zusammenfassung:** Beim Stand der Technik besteht das Problem, dass zeitgemässe Vermittlungssysteme durch redundantes Bereitstellen wichtiger interner Komponenten zwar über ein hohes Mass an interner Betriebssicherheit verfügen. Treten jedoch massive äussere Ein- wirkungen auf (z. B. Erdbeben, Terroranschläge, kriegerische

*[Fortsetzung auf der nächsten Seite]*

**BLUEPRINT 000430**

## WO 2005/057853  A1

MG, MK, MN, MW, MX, MZ, NA, NI, NO, NZ, OM, PG, PH, PL, PT, RO, RU, SC, SD, SE, SG, SK, SL, SY, TJ, TM, TN, TR, TT, TZ, UA, UG, US, UZ, VC, VN, YU, ZA, ZM, ZW.

(84)  **Bestimmungsstaaten** *(soweit nicht anders angegeben, für jede verfügbare regionale Schutzrechtsart):* ARIPO (BW, GH, GM, KE, LS, MW, MZ, NA, SD, SL, SZ, TZ, UG, ZM, ZW), eurasisches (AM, AZ, BY, KG, KZ, MD, RU, TJ, TM), europäisches (AT, BE, BG, CH, CY, CZ, DE, DK, EE, ES, FI, FR, GB, GR, HU, IE, IT, LU, MC, NL, PL, PT,

RO, SE, SI, SK, TR), OAPI (BF, BJ, CF, CG, CI, CM, GA, GN, GQ, GW, ML, MR, NE, SN, TD, TG).

**Veröffentlicht:**

—   *mit internationalem Recherchenbericht*

*Zur Erklärung der Zweibuchstaben-Codes und der anderen Abkürzungen wird auf die Erklärungen ("Guidance Notes on Codes and Abbreviations") am Anfang jeder regulären Ausgabe der PCT-Gazette verwiesen.*

---

Einwirkungen etc.), so nutzen die getroffenen Vorkehrungen in der Regel wenig, weil Original- und Ersatzkomponenten des Vermittlungssystems sich am gleichen Ort befinden und damit in einem solchen Katastrophenfall mit hoher Wahrscheinlichkeit beide Komponenten zerstört sind. Erfindungsgemäss ist ein Protokoll vorgesehen, das auf einer 1:1 Redundanz zum Ablauf gelangt. Demgemäss wird jedem zu schützenden Vermittlungssystem ein identischer Klon als Redundanzpartner mit identischer Hardware, Software und Datenbasis zugeordnet. Die Umschaltung erfolgt schnell, sicher und automatisch durch einen übergeordneten, realzeitfähigen Monitor, der eine Kommunikation zu den paarweise angeordneten Vermittlungssystemen aufbaut. Bei Kommunikationsverlust zu dem aktiven Vermittlungssystem wird auf das redundante Vermittlungssystem in Realzeit umgeschaltet.

BLUEPRINT 000431

# DO/ EO WORKSHEET

### Paralegal/ National Stage Division

U.S. Appl. No. **10/582589**                    International Appl. No. *EP2004/051925*

Application filed by : ☐ 20 months   ☑ 30 months

## WIPO PUBLICATION INFORMATION :                    *EP*

Publication No.: WO **2005/057853**  Publication Language : ☐ English ☑ German ☐ Japanese ☐ Chinese ☐ Korean
*A1*                                              ☐ French ☐ Spanish ☐ Russian ☐ Other : _____

Publication Date : **23 June 2005**   Not Published : ☐ U.S. only designated   ☐ EP request    Published : ☐ EP request

## INTERNATIONAL APPLICATION PAPERS IN THE APPLICATION FILE :

☑ International Application *(RECORD COPY)*          ☐ PCT/IB/331

☐ Article 19 Amendments                              ☐ Request form PCT/RO/101

☐ PCT/IPEA/409 IPER : ☐ EP ☐ JP ☐ SE ☐ AU     ☑ PCT/ISA/210 - Search Report : ☑ EP ☐ JP ☐ SE ☐ AU
☐ US ☐ FR ☐ CN ☐ ES ☐ RU ☐ AT ☐ KR ☐ ___        ☐ US ☐ FR ☐ CN ☐ ES ☐ RU ☐ AT ☐ KR ☐ OTHER
☐ PCT/IPEA/409 IPER was NOT AVAILABLE at the time of    ☐ NONE
paralegal review

☐ Annexes to 409                                     ☐ Search Report References

☑ Priority Document (s) No. **1**                   ☑ Other : **220,237**

## RECEIPTS FROM THE APPLICANT *(other than checked above)* :

☑ Basic National Fee *(or authorization to charge)*   ☑ Preliminary Amendment(s) Filed on :
                                                      1. **09 June 06**  3. _____

☑ Description  ☑ Claims  ☑ Abstract                  ☑ Information Disclosure Statement(s) Filed on :
**Total    Indep.**                                   1. **09 June 06** 2. _____ 3. _____
**17 - 1**                                            
☑ Drawing Figures - (# of drwgs. **1** )             ☑ Assignment Document (forwarded to
                                                      Assignment Branch)    1. _____

☐ Translation of Article 19 Amendments               ☐ Assignee PG Publication Notice
☐ entered  ☐ not entered :                           
        ☐ not a page for page substitution          ☑ Substitute Specification Filed on : **+ marked-up**
        ☐ replaced by Article 34 Amendment           **09 June 06** _____ **copy**

☐ Annexes to 409                                     ☑ Verified Small Status Statement 1. _____
☐ entered  ☐ not entered :                           
        ☐ not a page for page substitution          ☑ Oath/ Declaration (executed)
        ☐ no translation  ☐ other : _____                ☐ unsigned    ☐ no citizenship

☐ Application Data Sheet                             ☐ DNA Diskette   ☐ Sequence Listing
☑ Power of Attorney/ Change of Address
**Inclused in Decl.**                                ☐ Other : _____

NOTES :    ☐ I.A. used as Specification   ☐ Other : _____

35 U.S.C. 371 - Receipt of Request (PTO-1390)
**09 June 2006**
Date Acceptable Oath/ Declaration Received
**09 June 2006**
Date of Completion of requirements under 35 U.S.C. 371
**09 June 2006**
Date of Completion of ALL requirements
**09 June 2006**
Date of Completion of DO/ EO 903 - Notification of Acceptance
**07 Feb. 2007**
Date of Completion of DO/ EO 905 - Notification of Missing Requirements

Date of Completion of DO/ EO 909 - Notification of Abandonment

Date of Completion of DO/ EO 916 - Notification of Defective Response

Date of Completion of DO/ EO 922 - Notification to Comply w/ Requirements for Patent
Applications Containing Nucleotide and/or Amino Acid Sequence Disclosures
Date of Completion of DO/ EO 923

# MULTIPLE DEPENDENT CLAIM
## FEE CALCULATION SHEET
### (FOR USE WITH FORM PTO-875)

SERIAL NO. 10/582589

FILING DATE

APPLICANT(S)

## CLAIMS

| | AS FILED IND. | AS FILED DEP. | AFTER 1st AMENDMENT IND. | AFTER 1st AMENDMENT DEP. | AFTER 2nd AMENDMENT IND. | AFTER 2nd AMENDMENT DEP. |
|---|---|---|---|---|---|---|
| 1 | / | | | | | |
| 2 | | | | | | |
| TOTAL IND. | / | | / | | | |
| TOTAL DEP. | 9 | | 16 | | | |
| TOTAL CLAIMS | 10 | | 17 | | | |

PTO - 1360 (REV. 11/04)

U.S. DEPARTMENT of COMMERCE
Patent and Trademark Office

BLUEPRINT 000433

# PATENT APPLICATION FEE DETERMINATION RECORD
### Effective December 8, 2004

**Application or Docket Number**
10/582589

## CLAIMS AS FILED - PART I

| | (Column 1) | (Column 2) | SMALL ENTITY TYPE ☐ OR | | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|
| | | | RATE | FEE | RATE | FEE |
| U.S. NATIONAL STAGE FEES | | | | | | |
| BASIC FEE | SMALL ENT. = $ 150 | LARGE ENT. = $ 300 | BASIC FEE | | OR BASIC FEE | 300 |
| EXAMINATION FEE | Satisfies PCT Article 33(1) (4) = $ 50 / $ 100 | All other situations = $ 100 / $ 200 | EXAM. FEE | | EXAM. FEE | 200 |
| SEARCH FEE | U.S. is ISA = $ 50 / $ 100 ALL other countries = $ 200 / $ 400 | All other situations = $ 250 / $ 500 | SEARCH FEE | | SEARCH FEE | 400 |
| FEE FOR EXTRA SPEC. PGS. | minus 100 = | / 50 = | X $ 125 = | | X $ 250 = | |
| TOTAL CHARGEABLE CLAIMS | 17 minus 20 = * | | X $ 25 = | | OR X $ 50 = | |
| INDEPENDENT CLAIMS | 1 minus 3 = * | | X $ 100 = | | OR X $ 200 = | |
| MULTIPLE DEPENDENT CLAIM PRESENT | | ☐ | + $ 180 = | | OR + $ 360 = | |
| * If the difference in column 1 is less than zero, enter "0" in column 2 | | | TOTAL | | OR TOTAL | 900 |

## CLAIMS AS AMENDED - PART II

### AMENDMENT A

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY OR | | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|
| | | | | | RATE | ADDI-TIONAL FEE | RATE | ADDI-TIONAL FEE |
| | Total | * | Minus ** | = | X $ 25 = | | OR X $ 50 = | |
| | Independent | * | Minus *** | = | X $ 100 = | | OR X $ 200 = | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM ☐ | | | | + $ 180 = | | OR + $ 360 = | |
| | | | | | TOTAL ADDIT. FEE | | OR TOTAL ADDIT. FEE | |

### AMENDMENT B

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE | ADDI-TIONAL FEE | RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|---|---|
| | Total | * | Minus ** | = | X $ 25 = | | OR X $ 50 = | |
| | Independent | * | Minus *** | = | X $ 100 = | | OR X $ 200 = | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM ☐ | | | | + $ 180 = | | OR + $ 360 = | |
| | | | | | TOTAL ADDIT. FEE | | OR TOTAL ADDIT. FEE | |

\* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than '20', enter '20'.
\*\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than '3', enter '3'.
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-876   (Rev. 02/2005)                    Patent and Trademark Office - U.S. DEPARTMENT OF COMMERCE

BLUEPRINT 000434

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTO/SB/06 (08-03)
Approved for use through 7/31/2006. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

## PATENT APPLICATION FEE DETERMINATION RECORD
Substitute for Form PTO-875

Application or Docket Number: 10/582,589

### CLAIMS AS FILED – PART I

| FOR | (Column 1) NUMBER FILED | (Column 2) NUMBER EXTRA | | SMALL ENTITY RATE | FEE | OR | OTHER THAN SMALL ENTITY RATE | FEE |
|---|---|---|---|---|---|---|---|---|
| BASIC FEE (37 CFR 1.16(a)) | | | | | $ | OR | | $300 00 |
| TOTAL CLAIMS (37 CFR 1.16(c)) | 10 minus 20 = | * | | x $25 00 = | | OR | x $50 00 = | 500 00 |
| INDEPENDENT CLAIMS (37 CFR 1.16(b)) | 1 minus 3 = | * | | x $100 00 = | | OR | x $200 00 = | 200 00 |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(d)) | | | | + $ | | OR | + $ | |
| | | | | | TOTAL | OR | TOTAL | 1000 00 |

* If the difference in column 1 is less than zero, enter "0" in column 2.

### CLAIMS AS AMENDED – PART II

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | | SMALL ENTITY RATE | ADDI-TIONAL FEE | OR | OTHER THAN SMALL ENTITY RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|
| **AMENDMENT A** Amdt 6/9/06 Total (37 CFR 1.16(c)) | 17 | Minus ** | = | | X $ = | | OR | X $ = | |
| Independent (37 CFR 1.16(b)) | 1 | Minus *** | = | | X $ = | | OR | X $ = | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(d)) | | | | | + $ = | | OR | + $ = | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | 1000 00 |

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | | RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|
| **AMENDMENT B** Total (37 CFR 1.16(c)) | * | Minus ** | = | | X $ = | | OR | X $ = | |
| Independent (37 CFR 1.16(b)) | * | Minus *** | = | | X $ = | | OR | X $ = | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(d)) | | | | | + $ = | | OR | + $ = | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | | RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|
| **AMENDMENT C** Total (37 CFR 1.16(c)) | | Minus ** | = | | X $ = | | OR | X $ = | |
| Independent (37 CFR 1.16(b)) | | Minus *** | = | | X $ = | | OR | X $ = | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(d)) | | | | | + $ = | | OR | + $ = | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

BLUEPRINT 000435